# EXHIBIT A
# REDACTED

# EXHIBIT B



**Belvac Production Machinery**

A DOVER DIVERSIFIED COMPANY

E. JAMES SCHNEIDERS
PRESIDENT

January 6, 1995

Mr. Richard Deneau
Senior Vice President, Beverage Cans
 North America
American National Can Company
8770 West Bryn Mawr
Chicago, IL 60631

Subject: Smooth Die Necking License Agreement Effective 4/17/94

Re: Paragraphs 2.1 and 2.3

Dear Rick:

Attached are the text of letters sent to:

- All customers to whom we shipped die necking machinery from 3/19/93 to 1/6/95 (A).
- All customers who have placed purchase orders for die necking machinery but have not yet received shipment of same (B).
- All prospects with whom we have open quotations (C).

These letters were signed by Belvac's Vice President - Sales and Marketing and sent 1/6/95.

Very truly yours,

E. James Schneiders

EJS/dh

Attachments: Letters marked (A), (B), (C)



(A)

January 6, 1995

———————————
———————————
———————————
———————————

Dear Mr. —————,

Earlier Belvac entered into an agreement with American National Can Company for a license involving smooth die necking. Although we now have a replacement agreement with ANC, this letter is to notify you that neither agreement conveys a license for commercial operation of the equipment under U.S. Patent No. 4,744,839. A license to commercially operate the machine is available from ANC, the patent owner, for necking machines that employ smooth die neck tooling. It is your responsibility to determine if such a license is required.

This equipment was covered by your purchase order(s) as indicated below:

| Purchase Order Number | Belvac Serial Number | Month Shipped |
|---|---|---|
| ———————— | ———————— | ———————— |
| ———————— | ———————— | ———————— |

Yours truly,



Wayne H. Dahlgren
Vice President - Sales & Marketing

WD/dl

P.O. Box 4276, 237 Graves Mill Road • Lynchburg, VA 24502-4203 U.S.A. • TEL (804) 239-0358 • FAX (804) 239-1964



**Belvac Production Machinery**

A DOVER DIVERSIFIED COMPANY

E. JAMES SCHNEIDERS
PRESIDENT

January 6, 1995

Mr. Richard Deneau
Senior Vice President, Beverage Cans
  North America
American National Can Company
8770 West Bryn Mawr
Chicago, IL  60631

Subject: Smooth Die Necking License Agreement Effective 4/17/94

Re: Paragraphs 2.1 and 5.1

Dear Rick:

Attached are Belvac Production Machinery's Terms and Conditions of Sale dated 1/3/95.

These are sent to each prospective customer as part of Belvac's formal quotation package and again as part of Belvac's Purchase Order Acknowledgment.

Very truly yours,

E. James Schneiders

EJS/dh

Attachment: Belvac Production Machinery, Inc.
            Terms & Conditions of Sale
            Dated 1/3/95

# TERMS AND CONDITIONS

*TERMS OF PAYMENT*

All machinery is sold F.O.B. [EX WORKS] Lynchburg, Virginia. Thirty percent (30%) with purchase order. Sixty percent (60%) due upon shipment. Ten percent (10%) due ninety (90) days after shipment.

*ACCEPTANCE OF ORDER*

This proposal is conditional upon its acceptance within thirty (30) days from date hereof, and in the meantime is subject to change upon notice. All previous agreements, understandings and quotations are superseded by this proposal and no modification hereof shall be binding unless duly accepted in writing by the Purchaser and approved by Belvac Production Machinery Inc. (herein after referred to as Belvac).

*SHIPPING DATES*

Shipping dates are approximate, based on prompt receipt by Belvac of all necessary information and are subject to change by reason of factory conditions. Receipt of the machinery by the Purchaser shall constitute a waiver of all claims for delay.

*PRICES*

All prices quoted are subject to change upon notice at any time prior to Belvac's acceptance of the Purchaser's purchase order to prices prevailing at time of acceptance. If there is a delay in completion of shipment of said order, due to any change requested by Purchaser or as the result of any delay on Purchaser's part in furnishing information required for completion of the order, the price is subject to change. There will be added to the quoted price, any sales or other tax or duty Belvac may be required to collect or pay upon the sale of equipment quoted. If such amount is not included in the invoice for the equipment, it may be invoiced separately at a later date.

*INSPECTION AND ACCEPTANCE OF EQUIPMENT*

Purchaser will be notified prior to shipment of any portion of the order and afforded reasonable opportunity to inspect the same at Belvac's plant, at Purchaser's cost, a representation for acceptance of each piece of equipment must be received within seven (7) days of notification. All materials required for testing of equipment, for purposes of acceptance are furnished by the Purchaser. Such materials shall be delivered at no cost to Belvac

Rev. 1/3/95

1



The following represents the maximum number of cans to be tested for each item of equipment purchased from Belvac.

| | |
|---|---|
| *Belvac Rotary Can Trimmers* | 300 each (untrimmed cans) |
| *Belvac Neckers and Flangers* | 1400 each (decorated, sprayed, unnecked, unflanged cans) |
| *Belvac Inside Spray Machines* | 200 each (decorated, sprayed, unnecked, unflanged cans) |
| *Belvac Outside Spray Machines* | 200 each (completed necked & flanged cans) |
| *Belvac Waxers* | 200 each (decorated, sprayed, unnecked, unflanged cans) |

DELAYS

If the Purchaser delays acceptance of any part of the purchase order, the Purchaser agrees to promptly pay any invoices submitted by Belvac for the following:

1. The full purchase price of the machine(s) as shown on the purchase order.

2. Any additional cost incurred by Belvac including, but not limited to, storage.

CANCELLATION

Orders placed with and accepted by Belvac are entered with the explicit understanding that they shall not be subject to cancellation, except by Belvac's written consent, and then only under the following conditions:

1. Any part of the order that can be completed within fifteen (15) working days from the date written notice of cancellation is accepted may, at Belvac's option, be completed and shipped and in such event will be paid for in full conformity with Belvac's customary terms.

2. Orders accepted and already placed into Belvac's manufacturing schedule are subject to cancellation charges of not less than thirty percent (30%) of the total purchase price.

3. Upon receipt by Purchaser of invoice for the same, Purchaser shall pay the cancellation charges which shall be in the amount agreed upon prior to Belvac's consenting to such cancellation.

Rev. 1/3/95


Case 1:05-cv-00608-MPT    Document 48-2    Filed 01/31/2006    Page 8 of 14

## PATENTS

In the event that any claim is made or action brought against the Purchaser based on any claim that the equipment supplied or manufactured by Belvac or any part thereof, furnished hereunder infringes any U.S. or foreign letters patent, the Purchaser is to notify Belvac immediately thereof. Belvac shall have the option with the Purchaser's assistance if required, but at Belvac's expense, to conduct settlement negotiations or any litigation and, subject to the limitation hereinafter, assume all damages awarded against Purchaser.

A license for commercial operation of die necking equipment for smooth die necking is not granted under U.S. Patent No. 4,744,839. A license to commercially operate the machine is available from the patent owner for necking machines that employ smooth die neck tooling. It is the responsibility of the purchaser to determine if such a license is required.

In case the equipment supplied or manufactured by Belvac or any part thereof as sold herein, is judicially held to be an infringement of a U.S. or Foreign patent and its use enjoined, or if as a result of a settlement, Belvac deems the continued use inadvisable, then provided (a) that the Purchaser has given Belvac the immediate notice provided for above, (b) that the allegedly infringed equipment is employed for the same use contemplated by this contract and (c) that it shall not have been altered or changed in any material way. Belvac shall, at it's option and expense, either procure a license or immunity for the Purchaser or replace the equipment with non-infringing apparatus or part, or remove the same and refund the purchase price less reasonable depreciation. The foregoing states our entire obligation for patent infringement and in no event shall our liability hereunder exceed the purchase price of the equipment sold herein.

## LIABILITIES

Belvac will not be responsible for any consequential damages or loss of profits resulting from failure or delay caused by its repair.

## PROPRIETARY DATA

All of the technical data disclosed in quotations is confidential and has been prepared by Belvac for Purchaser's use solely in considering the purchase of the equipment described. Transmissions of all or any part of such information to others or use by Purchaser for other purposes is unauthorized without Belvac's written consent.
Rev. 1/3/95

*CHANGES*

Belvac assumes no responsibility for any changes in specifications, unless such changes are confirmed in writing by Purchaser and accepted in writing by Belvac. Any price variation resulting from such changes shall become effective immediately upon the acceptance of such changes.

*WAIVERS*

No waiver by Belvac of any breach of any provision of a contract of sales shall constitute a waiver of any other breach or of such provision. Belvac's failure to object to provisions contained in any communication from Purchaser shall not be deemed an acceptance of such provision or as a waiver of the provisions of the contract.

*CLAIMS*

1. Belvac shall not be liable for loss, damage, detention, or delay resulting from causes beyond its control or by acts of God, including floods, and acts of foreign nations, or caused by fire, strike, civil or military authority insurrection or riot, embargoes, car shortages, wrecks or delay in transportation.

2. No claim of any nature will be allowed unless made by Purchaser within seven (7) days from receipt of shipment.

3. No responsibility is assumed in any event by Belvac for loss or damage to the machinery after delivery to carrier.

*WARRANTIES*

Belvac warrants that the equipment of its own manufacture to be delivered hereunder shall be of the kind and quality described in the specifications, and that it shall be suitable for performing the work herein described; provided, however, that the work for which it is intended shall have been fully and adequately presented, shown and described to Belvac. No other warranty shall be implied. If any failure to comply with specifications, or to perform the work described appears within one year from date of shipment the Purchaser shall notify Belvac thereof immediately and Belvac shall thereupon correct the defects by repair or by replacement, F.O.B. factory, of the defective part or parts.

The liability of Belvac arising out of the supplying of said machinery, or its use whether on warranties or otherwise shall not in any way exceed the cost of accepting it F.O.B. Belvac's factory for credit. Upon the expiration of said one year all such liability shall terminate.

Rev. 1/3/95

Equipment, parts and accessories made by other manufacturers, including temperature indicating, recording or controlling apparatus, combustion safeguard equipment, pumps and motors are warranted only to the extent of the original manufacturer's warranty to Belvac.

## MODIFICATION

The Terms and Conditions set forth herein may be accepted only in accordance with their terms. They may not be modified except by written agreement referring specifically to these Terms and Conditions and signed by a duly authorized officer or representative of Belvac. Any provisions of Purchaser's purchase order which are inconsistent with the foregoing shall be of no force and effect, unless Belvac shall have agreed to modification of these Terms and Conditions in the manner set forth herein.

## SERVICE - INSTRUCTION

Belvac will furnish service manuals on equipment to Purchaser describing installation, operation and maintenance procedures. All equipment shall be installed by the Purchaser at Purchaser's expense. Should Purchaser request use of Belvac's servicemen not specifically provided for and included in the contract price, additional charges for this service will be invoiced by Belvac and will be payable at the prevailing per diem service rates for such services, plus necessary travel and living expenses.

## OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

Belvac Production Machinery, Inc. designs and builds it's products to meet what it believes to be the requirements of the Occupational Safety and Health Act of 1970 and all other applicable standards and regulations of which it has knowledge. Because the interpretations of the Occupational Safety and Health Act of 1970 are found to vary in different jurisdictions, Belvac Production Machinery, Inc. does not guarantee nor warrant that its products comply with the requirements of all codes and standards in all parts of the country. If you require specific apparatus or components that you feel are necessary, please contact us.

Rev. 1/3/95

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CROWN PACKAGING TECHNOLOGY, INC., | ) <br> ) <br> ) |
| Plaintiff, and | ) <br> ) |
| CROWN CORK & SEAL USA, INC., | ) <br> ) Civil Action No. 05-608 (KAJ) |
| Plaintiff/Counterclaim Defendant, | ) <br> ) |
| v. | ) <br> ) |
| REXAM BEVERAGE CAN CO., | ) <br> ) |
| Defendant/Counterclaimant. | ) |

## ORDER

The Court having considered Rexam Beverage Can Company's Motion to Withdraw Without Prejudice Its Motion for Summary Judgment That Damages For Infringement of U.S. Patent No. 4,774,839 Are Not Precluded By the Marking Provision of 35 U.S.C. § 287(a) (the "Motion to Withdraw Without Prejudice"),

IT IS HEREBY ORDERED this _____ day of _____, 2006 that the Motion to Withdraw Without Prejudice is GRANTED and that Rexam Beverage Can Company may renew, if necessary, its Motion for Summary Judgment That Damages For Infringement of U.S. Patent No. 4,774,839 Are Not Precluded By the Marking Provision of 35 U.S.C. § 287(a) at an appropriate time.

_____<br>
Hon. Kent A. Jordan

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Barry M. Klayman
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, Delaware 19801

I hereby certify that on January 24, 2006, I sent by facsimile the foregoing document to the following non-registered participants:

Dale M. Heist
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

RLF1-2949563-1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Barry M. Klayman
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, Delaware 19801

I hereby certify that on January 31, 2006, I sent by facsimile the foregoing document to the following non-registered participants:

Dale M. Heist
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

RLF1-2949563-1