IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CROWN PACKAGING TECHNOLOGY, INC., Plaintiff, and CROWN CORK & SEAL USA, INC., Plaintiff and Counterclaim Defendant | ) ) ) ) | |
| | ) | Civil Action No. 05-608 (KAJ) |
| v. | ) ) | |
| REXAM BEVERAGE CAN COMPANY, | ) ) | |
| Defendant Counterclaimant. | ) ) ) ) | |

## REXAM'S FOURTH NOTICE OF DEPOSITION UNDER RULE 30(b)(6)

TO:      Barry M. Klayman
Wolf, Block, Schorr and
Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, DE 19801

Chad E. Ziegler
ziegler@woodcock.com
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

Dale M. Heist
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

**PLEASE TAKE NOTICE** that Defendant, Rexam Beverage Can Company ("Rexam"), will take the deposition of Plaintiffs, Crown Packaging Technology, Inc., and Crown Cork & Seal USA, Inc. ("Crown"), regarding the subject matters set forth in the attached Schedule A, pursuant to Fed. R. Civ. P. 30(b)(6), at 9:00 am on November 28, 2006 or such other date as is mutually agreed upon by the parties, at the offices of McAndrews, Held & Malloy, Ltd., 500 West Madison Street, Suite 3400, Chicago, Illinois, or at another location that is mutually agreed

upon by the parties. The deposition will be taken upon oral examination before an officer authorized by law to administer oaths and will continue day to day until completed or as mutually agreed to by counsel for the respective parties. The deposition will be recorded stenographically and also will be recorded on videotape.

The deposition will be conducted according to Rule 30(b)(6), which states in pertinent part:

> A party may . . . name as the deponent a public or private corporation . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

FED. R. CIV. P. 30(b)(6) (2006). This Notice of Deposition is directed to the topics in the attached Schedule A. Rexam reserves the right to serve additional Rule 30(b)(6) deposition notices and topics on Crown.

Of Counsel:
George P. McAndrews
Steven J. Hampton
Richard T. McCaulley
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
Tel: 312-775-8000

Dated: November 9, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
  Attorneys for Defendant-Counterclaimant
  Rexam Beverage Can Co.

<u>SCHEDULE A</u>

<u>INSTRUCTIONS AND DEFINITIONS:</u>

The Instructions and Definitions set forth in (1) Rexam's First Sets of Interrogatories, (2) Rexam's First Set of Document Requests and (3) Rexam's First Requests for Admission are herein incorporated by reference. Additionally, the following Instructions and Definitions apply.

1.    "Crown" refers to either or both of Plaintiff Crown Packaging Technology, Inc. and Plaintiff and Counterclaim Defendant Crown Cork & Seal USA, Inc. and each of their subsidiaries, parents, subsidiaries of subsidiaries, divisions, affiliates in which it owns a majority or a controlling interest, and other organizational or operating units, each of their respective predecessors and successors, and each of their respective employees, officers, directors, attorneys, agents, representatives, and all persons acting on their behalf.

2.    The term "document" or "documents" includes documents and things as broadly defined in Rule 34, and includes papers of all kinds and includes non-paper information storage means, including by way of example and without limitation, originals and copies, however made, of letters, memoranda, notes, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, legal instruments, agreements, drawings, sketches, graphs, prints, handwritten notes, rough drafts, secretarial notes, workpads, diaries, films, tapes, pictures, photographs, videotapes, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, or any other writings, records or tangible objects where produced or reproduced mechanically, electrically, electronically, photographically or chemically including and without limitation by facsimile and e-mail.

3.    "Person" means any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity and the acts and

knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

4.    "Standard LOE can end" means a "202 Diameter, B64, Large Opening Aperture End" or a BZ-202-A107 can end as identified in Crown's response to Rexam's Interrogatory No. 3, such as the can ends produced by Crown bearing Crown production numbers CCS0029434 A-G, which were identified by Brian Fields at pages 155 and 171.

5.    "Anti-fracture score" means the inner score line on a can end.

6.    "Base reforming" means using an internal roller or rollers to put a bead on the internal wall of the bottom of a can after the bottom has been formed as described by Richard Golding at pages 16 and 17 of the transcript of his depositions that was taken on June 14, 2006.

7.    "Reformed base" means the base of a can that has been through base reforming.

8.    "Smooth neck" means the neck of a can that has a smooth appearance and does not have bumps or lines as described by Joseph Bauder at pages 32 and 35 of the transcript of his depositions that was taken on July 21, 2006.

9.    "Smooth die necking" means shaping the neck of a can using dies to create a smooth neck.

## SCHEDULE OF TOPICS:

1.    Identification of the dates on which Crown first made, sold, and/or offered for sale in the United States the standard LOE can end.

2.    Identification of the dates on which Crown first made, sold, and/or offered for sale in the United States can bodies having a reformed base.

3.    Identification of the dates on which Crown first made, sold, and/or offered for sale in the United States can bodies manufactured using smooth die necking.

4.     The total unit volume, by month and by year, of standard LOE can ends Crown has made, sold, offered for sale in the United States, and/or exported from the United States, from 1999 to the present.

5.     The total unit volume, by month and by year, of can bodies Crown has made at Crown's Fort Bend, Texas manufacturing plant, from 1999 to the present.

6.     The total unit volume, by month and by year, of can bodies Crown has made, sold, and /or offered for sale in the United States, and/or exported from the United States, from 1999 to the present.

7.     The total number of Crown manufacturing plants in the United States.

8.     The total number of 595 series necking machines (including 595 K necking machines) in Crown manufacturing plants in the United States.

9.     The total revenues, by month and year, from sales and exports of standard LOE can ends, from 1999 to the present.

10.    The total revenues, by month and year, from sales and exports of can bodies produced at the Fort Bend, Texas manufacturing plant, from 1999 to the present.

11.    The total revenues, by month and year, from sales and exports of all can bodies produced by Crown, from 1999 to the present.

12.    The total costs (variable and fixed), by month and year associated with sales and exports of standard LOE can ends, from 1999 to the present.

13.    The total costs (variable and fixed), by month and year associated with sales and exports of can bodies produced at the Fort Bend manufacturing plant, from 1999 to the present.

14.    The total costs (variable and fixed), by month and year associated with sales and exports of all can bodies produced by Crown, from 1999 to the present.

15.    The average costs associated with the manufacture, sale and export of standard LOE can ends, from 1999 to present.

16.    The average costs associated with the manufacture, sale and export of can bodies produced at the Fort Bend, Texas manufacturing plant, from 1999 to present.

17.    The average costs associated with the manufacture, sale and export of all can bodies produced by Crown, from 1999 to present.

18.    The gross profit margins associated with the manufacture, sale and/or export of standard LOE can ends, from 1999 to present.

19.    The gross profit margins associated with the manufacture, sale and/or export of can bodies produced at the Fort Bend, Texas manufacturing plant, from 1999 to present.

20.    The gross profit margins associated with the manufacture, sale and/or export of all can bodies produced by Crown, from 1999 to present.

21.    The average profit margins associated with the manufacture, sale and/or export of standard LOE can ends, from 1999 to present.

22.    The average profit margins associated with the manufacture, sale and/or export of can bodies produced at the Fort Bend, Texas manufacturing plant, from 1999 to present.

23.    The average profit margins associated with the manufacture, sale and/or export of all can bodies produced by Crown, from 1999 to present.

24.    Crown's analysis of cost savings associated with the manufacture, sale and/or export of can bodies having a reformed base, as compared to a non-reformed base.

25.    Crown's valuation, such as avoiding litigation costs, of cans ends having an anti-fracture score formed to prevent detachment of the pour panel from the end.

26.    Crown's valuation, such as for added advertising space, of can bodies having a smooth die neck.

27.    Crown's analysis and/or tracking of the price of aluminum, including without limitation the price of aluminum futures and aluminum ingot.

28.    Crown's projections of future volumes of standard LOE can ends to be made, sold, and/or offered for sale in the United States, and/or exported from the United States, from 2006 onward.

29.    Crown's projections of future volumes of can bodies having a reformed base to be made, sold, and/or offered for sale in the United States, and/or exported from the United States, from 2006 onward.

30.    Crown's projections of future volumes of total can bodies to be made, sold, and/or offered for sale in the United States, and/or exported from the United States, from 2006 onward.

31.    Identification of documents in Crown's possession, custody or control, setting forth, corroborating, or supporting identified topics 1-30.

32.    The content of, circumstances surrounding the negotiation and execution of, and compliance with the terms of, all license agreement under which Crown granted or received a grant of any license of can technology relating to smooth die necking.

33.    The content of, circumstances surrounding the negotiation and execution of, and compliance with the terms of, all license agreement under which Crown granted or received a grant of any license of can technology relating to base reforming.

34.  The content of, circumstances surrounding the negotiation and execution of, and compliance with the terms of, all license agreement under which Crown granted or received a grant of any license of can technology relating to anti-fracture scores.

35.  Royalty payments made by Crown or received by Crown under the terms of any and all license agreements covered by Topics 32-34.

36.  Features and benefits of the can bodies having a reformed base making them attractive to current and/or potential customers.

37.  Features and benefits of can bodies having a smooth neck making them attractive to current and/or potential customers.

38.  Features and benefits of can ends having an anti-fracture score that prevents detachment of the pour panel making them attractive to current and/or potential customers.

39.  The total sales in the United States of Superend can ends (including Superend SP and Superend DA, but excluding LOF and LOF+), from 1999 to present.

40.  The gross profit margins associated with the manufacture, sale and/or export of Superend can ends (including Superend SP and Superend DA, but excluding LOF and LOF+), from 1999 to present.

41.  The average profit margins associated with the manufacture, sale and/or export of Superend can ends (including Superend SP and Superend DA, but excluding LOF and LOF+), from 1999 to present.

42.  Crown's projections of future volumes of Superend can ends (including Superend SP and Superend DA, but excluding LOF and LOF+) to be made, sold, and/or offered for sale in the United States, and/or exported from the United States, from 2006 onward.

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>  and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE   19801

I hereby certify that on November 9, 2006,  I caused to be sent in the manner indicated

below the foregoing document to the following non-registered participants:

| VIA FACSIMILE | VIA ELECTRONIC MAIL |
|---|---|
| Dale M. Heist, Esq. | Chad E. Ziegler, Esq. |
| Woodcock Washburn LLP | Woodcook Washburn LLP |
| One Liberty Place, 46th Floor | One Liberty Place, 46th Floor |
| Philadelphia, PA 19103 | Philadelphia, PA 19103 |

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700