## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CROWN PACKAGING TECHNOLOGY, )
INC., Plaintiff, and CROWN CORK & SEAL )
USA, INC., )
                                   )
       Plaintiff and Counterclaim Defendant, )
                                   )
v. )
                                   )
REXAM BEVERAGE CAN CO., )
                                   )
       Defendant Counterclaimant. )

Civil Action No. 05-608 (MPT)

**REDACTED - PUBLIC VERSION**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NOS. 4,774,839 AND 5,697,242

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: January 25, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
    *Attorneys for Defendant/Counterclaimant*
    *Rexam Beverage Can Co.*

## Table of Contents

TABLE OF AUTHORITIES ........................................................................... ii

I. NATURE OF THE PROCEEDINGS ................................................. 1

II. SUMMARY OF THE ARGUMENT ................................................. 2

III. CONCISE STATEMENT OF FACTS .............................................. 2

    A. The '839 Patent ...................................................................... 2

    B. The '242 Patent ...................................................................... 4

IV. ARGUMENT ..................................................................................... 6

    A. Summary Judgment Is Appropriate In Patent Cases ............... 6

    B. Patent Infringement Is Determined By A Two-Step Analysis ... 7

    C. Crown's Die Necking Methods Infringe The '839 Patent ......... 8

        1. Crown Has Infringed Claim 1 Of The '839 Patent .......... 8

        2. Crown Has Infringed Claim 2 Of The '839 Patent .......... 13

        3. Crown Has Infringed Claim 5 Of The '839 Patent .......... 15

    D. Crown's Bottom Reforming Methods At Its Fort Bend Facility Infringe The Asserted Claims Of The '242 Patent ......... 17

        1. Crown Has Infringed Claim 11 Of The '242 Patent ......... 17

        2. Crown Has Infringed Claim 12 Of The '242 Patent ......... 20

V. CONCLUSION ................................................................................... 20

## Table of Authorities

**Cases**

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,*
   853 F.2d 1557 (Fed. Cir. 1988) ............................................................................ 2, 7

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,*
   15 F.3d 1573 (Fed. Cir. 1993) .................................................................................. 7

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................... 6, 7

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,*
   868 F.2d 1251 (Fed. Cir. 1989) ............................................................................... 8

*First Nat. Bank of Ariz. v. Cities Service Co.,*
   391 U.S. 253 (1968) ............................................................................................... 7

*Glaxo Wellcome Inc. v. Impax Labs., Inc.,*
   356 F.3d 1348 (Fed. Cir. 2004) ............................................................................... 9

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,*
   62 F.3d 1512 (Fed. Cir. 1995) .................................................................................. 8

*Johns Hopkins Univ. v. CellPro, Inc.,*
   152 F.3d 1342 (Fed. Cir. 1998) ............................................................................ 7, 8

*Kegel Co., Inc., v. AMF Bowling, Inc.,*
   127 F.3d 1420 (Fed. Cir. 1997) ............................................................................ 7, 8

*Laitram Corp. v. Rexnord, Inc.,*
   939 F.2d 1533 (Fed. Cir. 1991) ............................................................................... 8

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995) ............................................................................... 7, 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................................................... 7

*McGinley v. Franklin Sports, Inc.,*
   262 F.3d 1339 (Fed. Cir. 2001) ............................................................................... 7

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) .................................................................................. 8

*Zygo Corp. v. Wyko Corp.,*
   79 F.3d 1563 (Fed. Cir. 1996) .................................................................................. 8

**Rules**

Fed. R. Civ. P. 1 ............................................................................................... 7

Fed. R. Civ. P. 56 .......................................................................................... 1, 7

RLF1-3108778-1

## I.    NATURE OF THE PROCEEDINGS

Pursuant to Fed. R. Civ. P. 56, Defendant/Counterclaimant, Rexam Beverage Can Company ("Rexam"), has moved for partial summary judgment on the issue of infringement with respect to the asserted claims of U.S. Patent Nos. 4,774,839 ("the '839 Patent") (relating to methods for smooth die necking beverage containers) and 5,697,242 ("the '242 Patent") (relating to methods for reforming the shape of the bottom of beverage containers) that have been asserted in the above captioned action against Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. (hereinafter referred to collectively as "Crown"). Although Crown originally denied infringement of the asserted claims of these patents in its reply to Rexam's counterclaims, Crown has offered no defense to the undisputed evidence of its infringement of these patents.

At this point in the proceedings, fact discovery has been completed, and the parties have exchanged opening and rebuttal expert reports on issues of infringement and validity. Depositions of the technical experts have also been completed. The parties have also served and filed their opening briefs setting forth their respective positions relating to claim construction.

Summary judgment on the issue of infringement is appropriate in this case because:

- The undisputed facts show that Crown is practicing each and every limitation of the methods in the asserted claims of the '839 and '242 Patents; and

- Crown's expert has only offered non-infringement opinions relating to the asserted claims of U.S. Patent No. 5,222,385 (Rexam's other patent relating to reforming the bottom of beverage containers).

Summary judgment on the issue of infringement of the '839 and '242 Patents is not only appropriate, but necessary at this time so that the parties and the Court may focus on the remaining issues for trial.

1

## II.    SUMMARY OF THE ARGUMENT

1.    Rexam is the rightful owner of the '839 and '242 Patents. In its counterclaims, Rexam has asserted that Crown has infringed certain method claims of the '839 Patent (claims 1, 2, 5 and 11) and certain method claims of the '242 Patent (claims 11, 12 and 17), by using those patented methods in its manufacturing process for beverage cans.

2.    Rexam has established a prima facie case of infringement of the asserted claims of the '839 and '242 Patents.

3.    Rexam's retained expert prepared an expert report setting forth the bases of Rexam's infringement claims.

## REDACTED

6.    The Federal Circuit "has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.'" *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) (citation omitted).

## III.    CONCISE STATEMENT OF FACTS

### A.    The '839 Patent

The technology of Rexam's '839 Patent relates to what is now known as smooth die necking. (Attached hereto, A1-21.) The claims at issue regarding Rexam's smooth die necking patent are all method claims. Starting in the early 1980s and up until recent years, the beverage can industry has continually reduced the diameter of the beverage can end that is attached to the beverage can body in an effort to reduce the amount of metal that is used in the can end.

2

In the late 1980s, Rexam's engineers invented a method to achieve a smooth profile for beverage can necks that had never been seen or used before. The can industry had been using dies to reduce the diameter of can ends for many years, but the known method of using dies to reduce the diameter of the top of the can body left ridges, bumps or steps on the neck of the can.

**REDACTED**        ; '839 Patent, Col.1, ln. 62 – Col. 2, ln. 8, A10.)  In order to eliminate the ridges, bumps and steps in the necking operation left by the dies, the industry's can manufacturers would use rollers to smooth out the neck of the can in order to give the neck a smooth and clean profile. ('839 Patent, Col. 2, lns. 20-26, A10.)  The industry believed that the die necking method could not be effective in producing a totally smooth neck construction in a fast, economical, efficient and reliable manner.  (*Id*., at Col.2 ln.56-59, A10.)  However, the use of rollers required employing an additional station (or stations) in the manufacturing process and often left markings on the neck of the finished can.  The inventors of the '839 Patent invented a method of using dies to achieve a smooth profile without resorting to the additional manufacturing step of using rollers.  The method involves using dies in a specific way to create a smooth profile, as shown below.



The patented method requires that each die form a predetermined taper that only reforms an upper portion of what was reformed by the previous die. Claim 1 states in relevant part:

> Forcing said second taper downwardly until it is contiguous with said first taper and reforms only an upper portion of said first taper while producing an extension of said first taper to produce an enlarged smoothly-shaped necked in profile.

('839 Patent, Col. 18, lns. 36-40, A18.) This method was a breakthrough in can manufacturing because it gave customers (beer and soft drink manufacturers) what they wanted—a smooth necked-in profile—and the can manufacturers what they wanted—a smooth necked-in profile without the need for an additional manufacturing station.

Rexam's expert submitted his opinions as to why he believes Crown is infringing the methods of claims 1, 2, 5 and 11 of the '839 Patent. (Attached hereto A18-19.) Rexam's expert's opinions regarding infringement were based upon the tooling drawings produced by Crown, the physical samples of cans produced by Crown demonstrating how each can looks after each stage of necking, and the testimony of Crown's witnesses.

## REDACTED

Crown produced necking tooling drawings and physical samples of cans after each stage of necking from several of Crown's manufacturing facilities in the United States. (Attached hereto at A60-93; A139-153.)

## REDACTED

### B.    The '242 Patent

Rexam's '242 Patent relates to a method of reforming the bottom of a can body, also known as the base of the can body. ('242 Patent, A22-40.) The base has a number of identifiable features. The diagram below is a cross section of the bottom of a can indicating the

stand bead, dome, outer wall and inner wall (also known as the reverse wall, substantially vertical wall or substantially longitudinal wall).



The initial shape of the base is formed in a typical can bodymaker. After the basic shape has been formed, a doming station uses a die to create the dome and the inner wall of the base. After doming, the inner wall can then be reformed using the method from Rexam's '385 and '242 Patents.

Rexam developed this method in response to can manufacturers' interest in increasing the strength of the can bottom and the can body, particularly for carbonated beverages and beer, which has to be pasteurized. It had been determined that the strength of the can bottom could be improved by changing the shape of the inner wall to a more vertical, or even past vertical, i.e., negative, angle.                    Carnaud Metal Box ("CMB") patented a method of reforming the bottom of the can by using rollers on the outer wall of the can bottom.


**REDACTED**


In order to retain the strength of the base while decreasing the thickness of the metal, Rexam engineers determined optimal shapes for the inner wall through testing and finite element analysis.                    These shapes typically included angles that could not

5

be formed using a doming station alone. To achieve these optimal shapes, Rexam developed a process called internal bottom reforming. The '242 Patent relates to Rexam's internal bottom reforming process as shown below in Figure 7 of the patent.



Rexam's expert submitted his opinions as to why Crown is infringing the asserted method claims 11, 12 and 17 of the '242 Patent. Rexam's expert relied upon the drawings produced by Crown and Belvac Production Machinery, Inc., which made and sold the bottom reforming equipment to Crown. Rexam's expert also relied upon the testimony of Crown's witnesses and the physical samples of Crown's cans. (Gillest Report A105-153.)

**REDACTED**

However, the asserted claims of the '242 Patent do not include that limitation.

## IV.    ARGUMENT

### A.    Summary Judgment Is Appropriate In Patent Cases

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24,

(1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (citing Fed. R. Civ. P. 1).

The Federal Circuit "has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other,'" *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) (citation omitted), and that partial summary judgment of infringement is appropriate when there is no genuine issue of material fact. *See McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339 (Fed. Cir. 2001) (affirming the district court's grant of partial summary judgment on the issue of infringement); *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998) ("[T]he district court's [claim] construction . . . and its subsequent grant of summary judgment of infringement are affirmed."). Summary judgment "shall be rendered forthwith" where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289, (1968)).

**B.    Patent Infringement Is Determined By A Two-Step Analysis**

"'The determination whether a claim has been infringed requires a two-step analysis: First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" *Johns Hopkins*, 152 F.3d at 1353 (quoting *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)); *see also Kegel Co., Inc., v. AMF Bowling, Inc.*, 127 F.3d 1420,

7

1425 (Fed. Cir. 1997). Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd by* 517 U.S. 370 (1996). The court should look first to the intrinsic evidence, *i.e.*, the claims, the specification, and if necessary the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.* "The plaintiff has the burden of proving infringement by a preponderance of the evidence." *Kegel*, 127 F.3d at 1425 (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)). To prove infringement, "the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996) (citations omitted); *see also Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1538 (Fed. Cir. 1995) (*en banc*) *rev'd and remanded*, 520 U.S. 17 (1997), *reaff'd m*, 114 F.3d 1161 (Fed. Cir. 1997); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989).

### C.    Crown's Die Necking Methods Infringe The '839 Patent

As noted above, the question of infringement requires (1) a proper claim construction and then (2) application of the properly construed claims to the accused infringing product. *John Hopkins*, 152 F.3d at 1353. Even though the Court has not ruled on claim construction, summary judgment is proper at this time because under either parties' proposed claim construction, Crown infringes.

### 1.    Crown Has Infringed Claim 1 Of The '839 Patent

As stated above, the subject of the '839 Patent relates to methods for smooth die necking beverage containers. Figure 16 below, shows a visual representation of the claimed methods.

8



Claim 1 of the 839 patent recites:

A method of necking an open end of a container side wall to form a smoothly-shaped neck profile comprising the steps of:

This is the preamble to claim 1, and it is Rexam's position that this is not a limitation of the claim. A claim preamble acts as a regular limitation on a claim if "it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Glaxo Wellcome Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1353 (Fed. Cir. 2004). However, if the Court determines that the preamble of claim 1 is a limitation – regardless of whose proposed claim construction is adopted by the Court – **REDACTED**

The first limitation of claim 1 states:

producing relative axial movement between a container and a first necking die to engage the external surface of a portion of the open end of the container with said first die at a small acute angle to compress said side wall radially inwardly along a

9

length of said container to produce a reduced cylindrical neck at said open end
and form a first taper having a first arcuate segment on the end of said wall and a
second arcuate segment on the end of said reduced cylindrical neck;

The parties did not contest the terms of this limitation. Applying the plain and customary meaning to this claim limitation simply requires a die to be moved axially, or vertically if looking at a can in an upright position. The die engages, or makes contact with, the outside open portion of the top of the can, whereby the die compresses a portion of the top of the can inward, or toward the center of the can, at a slight angle. The die is shaped to reduce the diameter of the top of the can and does so in a consistent and equal manner around the entire cylindrical area of the top of the can. The die forms a taper (an even reduction of the diameter of the top of the can body) consisting of a predetermined radius on the sidewall curving inward (reducing the diameter of the open end as shown above in blue as item CA2 in Fig. 16 of the '839 Patent) and a second predetermined radius curving upward (extending the height of the neck as shown above in pink as item CR2).

The                   **REDACTED**                   and the physical samples of cans produced by Crown, which show the cans during each stage of smooth die necking, establish that Crown's process of forming smooth die necked cans incorporates all of the elements of this limitation. (Attached hereto, A60-93; A42; A139-153.)

The second limitation of claim 1 states:

removing said container from said first necking die;

This limitation is necessary and common, as all cans are removed from dies in order to proceed to the next die and Crown's process is no exception. It is Rexam's understanding that Crown is not contesting that its process includes removing the container from the first necking die.

The third limitation of Claim 1 continues:

10

producing relative axial movement between a second die and said container to engage the external surface of the container with the second die at an acute angle to further compress said reduced cylindrical neck inwardly along a length of the container and form a second taper; and

The parties did not contest the terms of this limitation. Applying the plain and customary meaning to this claim limitation, simply requires, as did the first element, that a die be moved axially, or vertically if looking at a can in an upright position. The die engages, or makes contact with, the outside open portion of the top of the can, whereby the die compresses a portion of the top of the can inward, or toward the center of the can, again at a slight angle. The second die further reduces the diameter of the opening of the can body forming a second taper.

Here again,                    **REDACTED**                    and the physical samples of cans produced by Crown, which show the cans during each stage of smooth die necking, establish that Crown's process of forming smooth die necked cans incorporates all of the elements of this limitation.

The fourth limitation of Claim 1 states:

forcing said second taper downwardly *until it is contiguous with said first taper and reforms only an upper portion of said first taper while producing an extension of said first taper* to produce an *enlarged smoothly-shaped necked-in profile.*

The parties do have a dispute with respect to this limitation. Crown argues that "until it is contiguous with said first taper and reforms only an upper portion of said first taper while producing an extension of said first taper" means: "until it touches the first gradually decreased diameter section and reforms the top but not the remainder while producing an extension of it." Rexam argues that this limitation means: "Overlaps an upper portion of the first taper and extends the first taper, thereby forming a larger uninterrupted taper." (D.I. 158.)

Crown further argues that the element "an *enlarged smoothly-shaped necked-in profile*" means: "sideview decreasing in diameter towards the open end with no substantial bumps, steps,

11

or ribs." (*Id.*)  Rexam argues that this limitation means: "Smooth shaped neck profile towards the top of the can" and "longer or taller section of a container side wall that smoothly reduces in diameter." (*Id.*)

Under either construction, this claim element requires that the second taper, formed as described above, form a taper that continues and adds to or extends the first taper by necking only an upper portion of the first taper such that there are no bumps, steps or ribs.  Thus, the second die extends the first taper while maintaining a smooth inward overall taper.  The primary problem with Crown's proposed construction pertains to Crown's insertion of the term "substantial" to modify bumps, steps or ribs.  It is Rexam's contention that Crown is attempting to incorporate the term "substantial" into the claim limitation to bolster Crown's invalidity argument.

Here again, the                         and physical samples produced by Crown establish that Crown's method of necking reforms only an upper portion of the first taper such that it gradually reduces the diameter of the first taper and extends the first taper without any bumps, steps or ribs.  (CCS0058042-43, A61-62; A139-153.)  Hence, Crown's method of smooth die necking utilizes all of the elements of this limitation of claim 1.  The diagram below was taken from Crown's specification sheet and shows nine steps of continuous necking dies, which create a smooth neck profile.

**REDACTED**

12

REDACTED

The necking dimensions                          **REDACTED**
                                                                        , also

show that Crown is using the smooth die necking methods of the '839 Patent. (A60-76)  Each of

the stages of necking                    represents a gradually reduced neck diameter along with a

gradually increased vertical neck diameter, to produce the patented die necking method of the

'839 patent.  As the diameter of the neck portion of the can wall is narrowed, the vertical neck

portion must increase slightly to maintain a consistent height of the can, which will ultimately be

trimmed and flanged to prepare the can to be seamed with the can end.

The undisputed facts clearly establish that Crown's method of die necking employs each

limitation of claim 1 of the '839 Patent and that Crown is in fact using the patented smooth die

necking process of claim 1.  The undisputed facts therefore establish that Crown's method of

smooth die necking infringes claim 1 of the '839 Patent.

### 2.    Crown Has Infringed Claim 2 Of The '839 Patent

Claim 2 of the '839 Patent depends from claim 1 and, as such, for all of the reasons set

forth above, each of the limitations of claim 1 are being used by Crown.  Claim 2 of the '839

Patent adds an additional limitation.  Claim 2 states:

> A method of die necking as defined in claim 1, wherein said second arcuate
> segment is *reformed as a part of said second taper on* said first taper whereby the
> two tapers *combine and blend* into a smooth neck profile.

13

Thus, claim 2 adds an additional limitation relating to the second arcuate segment shown by the designations "CR" in the figure 16 of the '839 Patent shown below.



Here again, the parties have offered two separate proposed constructions for a "second arcuate segment is **reformed as a part of said second taper on** said first taper." Crown argues that this term means "changed to become part of" while Rexam argues that it means "a second curved segment is changed as a result of the second taper being forced downwardly on the first taper." (D.I. 158.) The claims and specification of the '839 Patent show that the inventors did not give the disputed terms any special or unique definitions.

The second arcuate segment, as shown above, is the portion of the necked-in can body that curves upward, extending the height of the neck. The second die is formed in such a way that the upward curve of the second arcuate portion (as shown above in green as item CR3) overlaps with the second arcuate portion of the first taper (as shown above in pink as item CR2) to form a smooth and continuous taper curving upward toward the vertical axis of the open end of the can. Under either party's proposed construction,                **REDACTED**

REDACTED

and the physical samples of Crown's cans all establish that Crown's method employs this limitation.

Crown and Rexam also disagree on the meaning of "combine and blend" in claim 2 Crown argues that "combine and blend" means "overlap." Rexam argues that combine and blend are words that should retain their ordinary meaning because there is no indication in the specification that the inventors intended a special or unique meaning to that term. (D.I. 158.) Crown's proposed construction is overly broad and ignores the remaining words of the limitation "into a smooth neck profile." In other words, the "overlap" must be sufficiently "blended" with the previous taper in order to maintain the "smooth" profile.

In any event, Crown's **REDACTED** and the physical can samples that Crown provided establish that Crown's methods of die necking incorporate all of the limitations of claim 2. The confirm that the second arcuate segment is reformed as part of the second taper and that Crown does so in such a manner that the second taper combines and blends with the first taper to form a smooth neck profile.

### 3.    Crown Has Infringed Claim 5 Of The '839 Patent

Claim 5 of the '839 Patent, like claim 2, depends from claim 1 and, as such, for all of the reasons set forth above, each of the limitations of claim 1 are being used by Crown. Claim 5 of the '839 Patent adds an additional limitation. Claim 5 states:

> A method of die necking as in claim 1, further comprising the steps of forming necked-in profile by a series of die elements with each die element forming only a part of the neck profile, and the *part formed by each die element partially integrates and blends with the portion formed by a preceding die element*, and in which the neck profile is axially enlarged by each of said die elements.

Here again the parties have offered competing constructions for a portion of this claim. Crown argues that the "*part formed by each die element partially integrates and blends with the portion formed by a preceding die element*" means: "the portion of the necked-in profile formed

15

by each necking die, other than the first, partially overlaps the portion formed during the preceding operation, so that no substantial bumps, steps, or ribs are present." (D.I. 158.) Rexam argues that this limitation means: "the portion of the neck profile formed by each die partially overlaps and is continuous with the profile formed by the preceding die." (Id.) The primary problem with Crown's proposed construction again pertains to Crown's insertion of the term "substantial" to modify bumps, steps or ribs. It is Rexam's contention that Crown is attempting to incorporate the term "substantial" into the claim limitation to bolster Crown's invalidity argument.

However,                REDACTED            and physical samples produced by Crown establish that Crown's method of necking uses a series of dies to reform only a part of the neck profile. Those and samples show that the part formed by each die element partially integrates and blends with the portion formed by the preceding die element such that it gradually reduces the diameter of the preceding taper and axially enlarges the neck profile **without** any bumps, steps or ribs. (CCS0058042-43, A61-62.) Hence, Crown's method of smooth die necking utilizes all of the elements of this limitation of claim 5.

Thus, Crown's method of smooth die necking includes each element or limitation of claim 5 of the '839 Patent. Crown's method of smooth die necking therefore infringes claim 5 of the '839 Patent.

Similar arguments would be applicable to claim 11 of the '839 Patent, but for purposes of brevity, and due to the fact that Crown has not offered any non-infringement arguments, Rexam will not address claim 11 at this time. However, should the Court deny Rexam's Motion for summary judgment as to claims 1, 2 and 5 of the '839 Patent, Rexam reserves the right to present its case to the jury on each of the asserted claims, 1, 2, 5 and 11 at trial.

Additionally, Crown's expert did not offer any opinions regarding non-infringement of any of the asserted claims of the '839 Patent in response to Rexam's expert report relating to infringement of the '839 Patent. (Aschberger Rebuttal Report, A154-158.)

## REDACTED

The undisputed facts establish that Crown has infringed the asserted claims of the '839 Patent, and Crown cannot cite any factual basis to rebut those facts. Therefore, Rexam is entitled to summary judgment that Crown's smooth die necking process(es) (in the U.S.) infringe the asserted claims of the '839 Patent.

### D.    Crown's Bottom Reforming Methods At Its Fort Bend Facility Infringe The Asserted Claims Of The '242 Patent

In this case, Rexam has asserted that Crown has infringed claims 11, 12 and 17 of the '242 Patent. Rexam's expert prepared and served his opinions regarding Crown's infringement of the '242 Patent. (Gillest Report, A105-133.) However, Crown's expert offered no rebuttal to the opinions of Rexam's expert.

The undisputed facts establish that Crown is using an internal bottom reforming process at its Fort Bend, Texas manufacturing facility. The manual for the machine that Crown is using, the technical drawings produced by Crown and Belvac (the manufacturer), and the      **REDACTED** establish that Crown is infringing the method claims of the '242 Patent.

### 1.    Crown Has Infringed Claim 11 Of The '242 Patent

Claim 11 of the '242 Patent states:

A method of reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a generally cylindrical side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall including a center domed portion, and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said method comprising:

17

The first limitation of claim 11 basically recites the parts of the bottom of the can. The cross section profile of the can bottom shown below identifies the parts of the can bottom, with more common terms. For instance: (1) The "longitudinal wall" is commonly called the "inner wall;" (2) the "outer annular wall" is the "outer wall"; (3) a "convex U-shaped portion" is the "stand bead"; and (4) the "center domed portion" is the "dome."



Rexam does not believe that Crown is claiming that any of the elements of this limitation are missing from the can bottoms to which Crown performs its bottom reforming process.

The second limitation of Claim 11 calls for a "drawn and ironed beverage container." Typically, this element is referring to a two-piece beverage can and Rexam does not believe Crown is claiming that any of the elements of this limitation are missing from the can bottoms to which Crown performs its bottom reforming process.

The third limitation of claim 11 states: "providing a reforming roller." The documents produced by Crown and Belvac,                    **REDACTED**                    , establish Crown's method of bottom reforming includes a reforming roller. (A94-104; Golding, 79, A44.)

The fourth limitation of claim 11 states:

*moving said reforming roller radially* into engagement with said substantially longitudinal wall of said beverage container, said *reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path*, wherein said reforming roller *affects the angle* of said substantially longitudinal wall.

18

The diagram below shows the can bottom as it is set down into the jig or dome receptacle. The roller is then moved into the dome area, and then moved radially, or to the side, to contact the inner wall. The roller then moves in a circular path around the inner wall, where the roller changes the configuration of the inner wall.



Initially, the parties disagreed with the portions of this limitation highlighted above. However, after further consideration, Rexam has agreed with Crown's proposed construction whereby: (1) "moving said reforming roller radially" means "moving the reforming roller from a radially inward position to a radially outward position with respect to the longitudinal axis"; (2) said "reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path" means "reforming roller revolving around its own axis and rolling along the longitudinal wall on a circular path adjacent to the wall"; and (3) "affects the angle" means "changes the inclination or shape." (D.I. 158.)

The drawings produced by Crown and Belvac in this case,



**REDACTED**

19

**REDACTED**

The drawings that Crown has produced also

Further, the physical samples showing the

bottom profile <u>before and after reforming</u> confirm this fact as well. Therefore, the undisputed

facts establish that Crown's bottom reforming method infringes claim 11 of the '242 Patent.

### 2.    Crown Has Infringed Claim 12 Of The '242 Patent

Claim 12 depends from claim 11, Therefore, for all of the reasons set forth above, each of

the limitations of claim 11 are being used by Crown. Claim 12 of the '242 Patent adds an

additional limitation to claim 11. Claim 12 states:

> The method of claim 11 including the steps of providing radial inward support for
> said container.

The drawings produced by Crown and Belvac, and the

establish that the additional limitation of claim 12 is also used in Crown's bottom reforming

method. The drawings show that the dome receptacle that    **REDACTED**

Therefore, the evidence establishes

that Crown's bottom reforming method infringes claim 12 of the '242 Patent.   Should the Court

deny Rexam's motion, Rexam reserves the right to present its case to the jury on each of the

asserted claims, 11, 12, and 17 at trial.

### V.    CONCLUSION

The undisputed facts set forth herein establish that Crown is practicing Rexam's patented

methods for smooth die necking and bottom reforming. For all of the reasons set forth above,

Rexam requests that the Court enter summary judgment in Rexam's favor and hold that Crown's

20

smooth die necking and bottom reforming manufacturing processes infringe claims 1, 2 and 5 of

the '839 Patent and claims 11 and 12 of the '242 Patent.

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL   60601
312-775-8000

Dated:  January 25, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
    *Attorneys for Defendant/Counterclaimant
    Rexam Beverage Can Co.*

21

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2007, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>  and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE  19801

I hereby certify that on February 1, 2007, I caused the foregoing document to be served via electronic mail on the following non-registered participants:

> Dale M. Heist, Esq.
> heist@woodcock.com
> Chad E. Ziegler, Esq.
> ziegler@woodcock.com
> Woodcock Washburn LLP
> Cira Centre
> 2929 Arch Street, 12th Floor
> Philadelphia, PA 19104-2891

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700