IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CROWN PACKAGING TECHNOLOGY, INC. and CROWN CORK & SEAL USA, INC., ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 05-608 (MPT) |
| v. ) | |
| REXAM BEVERAGE CAN CO., ) | Redacted Public Version |
| Defendant. ) | |

APPENDIX TO CROWN'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
BIFURCATE TRIAL OF REXAM'S COUNTERCLAIMS I-V AND
TO SUBMIT EVIDENCE RELATING TO LACHES TO THE JURY

Barry Klayman (ID # 3676)
WOLF, BLOCK, SCHORR and
SOLIS-COHEN LLP
Wilmington Trust Center
1100 N. Market Street
Wilmington, DE 19801
(302) 777-0313

Dale M. Heist
Lynn Malinoski
Chad E. Ziegler
WOODCOCK WASHBURN, LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

*Attorneys for Plaintiffs*
*Crown Packaging Technology, Inc. and*
*Crown Cork & Seal USA, Inc.*

Dated: February 1, 2007

# INDEX

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 6,848,875 |
| Exhibit 2 | U.S. Patent No. 6,935,826 |
| Exhibit 3 | Rexam's Responses to Crown's Second Set of Interrogatories |
| Exhibit 4 | U.S. Patent No. 4,774,839 |
| Exhibit 5 | U.S. Patent No. 5,222,385 |
| Exhibit 6 | U.S. Patent No. 5,697,242 |
| Exhibit 7 | U.S. Patent No. 6,129,230 |
| Exhibit 8 | U.S. Patent No. 6,260,728 |
| Exhibit 9 | Rexam's Responses to Crown's Second Set of Requests For Admission |
| Exhibit 10 | Plaintiff's Deposition Exhibit 120 – **CONFIDENTIAL – Filed Under Seal** |
| Exhibit 11 | Expert Report of Richard J. Gering Concerning Damages – **CONFIDENTIAL – Filed Under Seal** |
| Exhibit 12 | Expert Report of Catharine M. Lawton Concerning Damages – **CONFIDENTIAL – Filed Under Seal** |

## UNPUBLISHED DECISIONS INDEX

Exhibit A                    *Enzo Life Sciences, Inc. v. Digene Corp.*, No. 02-
                             212, 2003 U.S. Dist. LEXIS 10202 (D. Del. June
                             10, 2003)

Exhibit B                    *Avia Group Int'l, Inc. v. Nike, Inc.*, Cv. No. 91-326-
                             U, 1991 U.S. Dist. LEXIS 20492 (D. Or. Sept. 17,
                             1991)

Exhibit C                    *McKesson Info. Solutions LLC v. Trizetto Group,
                             Inc.*, Civ. No. 04-1258, 2006 U.S. Dist. LEXIS
                             18655 (D. Del. Apr. 11, 2006)

Exhibit D                    *Accuscan, Inc. v. Xerox Corp.*, 96 Civ. 2579, 1998
                             U.S. Dist. LEXIS 7825 (S.D.N.Y. May 27, 1998)

Exhibit E                    *Virginia Panel Corp. v. MAC Panel Co.*, Civ. A. No. 93-
                             0006-H, 1996 U.S. Dist. LEXIS 8514 (W.D. Va. May
                             29, 1996)

Exhibit F                    *Collins Licensing L.P. v. Am. Tele. & Telegraph Co.*,
                             MO-90-CA-201, 1992 U.S. Dist. LEXIS 4648 (W.D.
                             Tex. Mar. 23, 1992)

# Exhibit 1

(12) **United States Patent**
Brifcani et al.

(10) Patent No.: **US 6,848,875 B2**
(45) Date of Patent: **Feb. 1, 2005**

(54) **CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY**

(75) Inventors: **Mouayed Mamdooh Brifcani**, Oxfordshire (GB); **Peter James Hinton**, Swindon Wiltshire (GB); **Mark Christopher Kysh**, Wantage (GB)

(73) Assignee: **Crown Cork & Seal Technologies Corporation**, Alsip, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 5 days.

(21) Appl. No.: **10/024,862**

(22) Filed: **Dec. 18, 2001**

(65) **Prior Publication Data**

US 2003/0150866 A1 Aug. 14, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/650,664, filed on Aug. 30, 2000, now abandoned, which is a continuation of application No. 09/552,668, filed on Apr. 19, 2000, now abandoned, which is a continuation of application No. 08/945, 698, filed as application No. PCT/GB96/00709 on Mar. 25, 1996, now Pat. No. 6,065,634.

(30) **Foreign Application Priority Data**

May 24, 1995    (GB) ............................................. 9510515

(51) **Int. Cl.**$^7$ ............................................. **B21D 51/32**
(52) **U.S. Cl.** ............................................. **413/6**; 413/31
(58) **Field of Search** ............................... 413/31, 36, 37, 413/43, 2, 4, 6, 8

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,023,927 A | 3/1962 | Ehman | 220/619 |
| 3,526,486 A | 9/1970 | Smith et al. | 291/835 |
| 3,843,014 A | 10/1974 | Cospen et al. | 220/623 |
| 3,967,752 A | 7/1976 | Cudzik | 220/269 |
| 4,015,744 A | 4/1977 | Brown | 220/269 |
| 4,024,981 A | 5/1977 | Brown | 220/269 |

| | | | |
|---|---|---|---|
| 4,093,102 A | 6/1978 | Kraska | 220/623 |
| 4,148,410 A | 4/1979 | Brown | 220/269 |
| 4,150,765 A | 4/1979 | Mazurek | 220/269 |
| 4,210,257 A | 7/1980 | Radtke | 220/269 |
| 4,217,843 A | 8/1980 | Kraska | 413/12 |
| 4,276,993 A | 7/1981 | Hasegawa | 220/269 |
| 4,286,728 A | 9/1981 | Fraze et al. | 220/270 |
| 4,365,724 A | 12/1982 | Walden | 220/611 |
| 4,402,421 A | 9/1983 | Ruemer, Jr. | 220/269 |
| 4,448,322 A | * 5/1984 | Kraska | 220/623 |
| D279,265 S | 6/1985 | Turner et al. | D9/438 |
| 4,559,801 A | * 12/1985 | Smith et al. | 72/348 |
| 4,578,007 A | 3/1986 | Diekhoff | 413/6 |
| 4,606,472 A | 8/1986 | Taube et al. | 220/500 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 92 11 788.0 | 1/1993 |
| EP | 0 153 115 A3 | 8/1985 |
| EP | 0 153 115 A2 | 8/1985 |

(List continued on next page.)

OTHER PUBLICATIONS

United States Brewers Association, Inc., "Brewing Industry Recommended Can Specifications Manual," pp. 1–1, 2–1, and 3–2, Washington, DC, May 1983.
Society of Soft Drink Technologists, "Beverage Can, End, & Double Seam Dimensional Specifications," pp. 2, 1B–2 to 5, Hartfield, VA, Fourth Revision, Aug. 1993.

(List continued on next page.)

*Primary Examiner*—Lowell A. Larson
(74) *Attorney, Agent, or Firm*—Woodcock Washburn LLP

(57) **ABSTRACT**

A can end comprising a peripheral cover hook, a chuck wall dependent from a first point on the interior of the cover hook, an outwardly concave annular reinforcing bead extending radially inwards from a second point on the interior of the chuck wall, and a central panel supported by an inner portion of the reinforcing bead, characterized in that, a line connecting the first point and the second point is inclined to an axis perpendicular to the exterior of the central panel at an angle between 30° and 60°.

**62 Claims, 4 Drawing Sheets**



**US 6,848,875 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D285,661 | S | 9/1986 | Brownbill ..................... D9/435 |
| 4,674,649 | A | 6/1987 | Pavely ....................... 220/271 |
| 4,681,238 | A | 7/1987 | Sanchez ..................... 220/260 |
| 4,685,582 | A | 8/1987 | Pulciani et al. ............ 220/606 |
| 4,716,755 | A | 1/1988 | Bulso, Jr. et al. ........... 72/349 |
| 4,782,594 | A | 11/1988 | Porucznik et al. .......... 30/417 |
| 4,808,052 | A | 2/1989 | Bulso, Jr. et al. ........... 413/8 |
| 4,809,861 | A | 3/1989 | Wilkinson et al. ......... 220/623 |
| D300,608 | S | 4/1989 | Taylor et al. ............... D9/438 |
| D304,302 | S | 10/1989 | Dalli et al. ................ D9/438 |
| 4,893,725 | A | 1/1990 | Ball et al. .................. 220/269 |
| 4,930,658 | A | 6/1990 | McEldowney .............. 220/269 |
| 5,046,637 | A | * 9/1991 | Kysh ......................... 220/610 |
| 5,049,019 | A | * 9/1991 | Franek et al. ............... 413/19 |
| 5,064,087 | A | 11/1991 | Koch ......................... 220/269 |
| 5,129,541 | A | 7/1992 | Voigt et al. ................ 220/269 |
| 5,143,504 | A | 9/1992 | Braakman .................... 413/6 |
| D337,521 | S | 7/1993 | McNulty .................... D9/438 |
| 5,252,019 | A | 10/1993 | Saunders et al. ........... 413/67 |
| D347,172 | S | 5/1994 | Heynen et al. ............. D9/520 |
| 5,356,256 | A | 10/1994 | Turner et al. ................ 413/8 |
| D352,898 | S | 11/1994 | Vacher ...................... D9/438 |
| 5,494,184 | A | 2/1996 | Noguchi et al. ........... 220/269 |
| 5,582,319 | A | 12/1996 | Heyes et al. ........... 220/62.22 |
| 5,839,869 | A | * 11/1998 | Moran et al. ............... 413/31 |
| D406,236 | S | 3/1999 | Brifcani et al. ............. D9/438 |
| 5,911,551 | A | 6/1999 | Moran ........................ 413/31 |
| 5,957,647 | A | 9/1999 | Hinton ......................... 413/4 |
| 5,971,259 | A | 10/1999 | Bacon ...................... 229/5.6 |
| 6,024,239 | A | 2/2000 | Turner et al. .............. 220/269 |
| 6,065,634 | A | 5/2000 | Brifcani et al. ............ 220/619 |
| 6,089,072 | A | 7/2000 | Fields ..................... 72/379.4 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0 340 955 A1 | 11/1989 | |
| GB | 1444470 | 7/1976 | |
| GB | 2 143 202 | 2/1985 | |
| GB | 2 196 891 | 5/1988 | |
| GB | 2 218 024 | 11/1989 | |
| JP | 57-117323 | 7/1982 | |
| JP | 01167050 A | * 6/1989 | ........... B65D/8/20 |
| WO | WO 93/17864 | 9/1993 | |

### OTHER PUBLICATIONS

Beverage Can "Mini Seams" by Pete Moran published by CMB Engineering Group plc contents page, pp. 3 through 30 and figures, published mid–1980s.

"Modern Beverage Can Double Seaming" published by Continental Beverage Packaging Cover page and 2 unnumbered pages, undated.

"Aluminium canstock" The Canmaker, Jan. 1994 pp. 38 through 43.

Notice of Opposition to a European Patent 96908205.6/828,663 Opposed by American National Can Company (Facts and Arguments), Dec. 12, 1999, 21 pages.

Letter From Ismay Ratliff Of Crown Cork & Seal To EPO, Apr. 19, 2001, One Page, Enclosing Patentee's Observations And Amendments In Response To The Opposition, 9 pages, and Summary of Main and Auxiliary Requests, Main Request, and Auxiliary Requests 1, 2, and 3, 14 pages.

Letter From PRB Lawrence of Gill Jennings & Every To EPO, Nov. 6, 2001, Nine Pages, Beginning, "The opponent that the patentee has not responded to the detailed argumentation . . ." with three pages of graphics and with EPO Cover Page dated Nov. 15, 2001.

Letter From PRB Lawrence of Gill Jennings & Every To EPO, Nov. 27, 2001, Two Pages, beginning, "I refer to the final paragraph of page 9 of my comments of 6th Nov. and . . ." with three page attachment having graphics and with EPO Cover Page dated Dec. 5, 2001.

Letter From Ismay Ratliff of Crown Cork & Seal to EPO, Nov. 28, 2001, One Page, beginning, "I refer to the letter from the Opponent of Nov. 6, 2001".

Letter From PRB Lawrence of Gill Jennings & Every To EPO, Dec. 11, 2001, One Page, Beginning "I not the patentee's comments of Nov. 28".

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Jan. 18, 2002, One Page, beginning, "I refer to the communications of Nov. 15, 2001, Dec. 5, 2001, Jan. 7, 2002 . . . ".

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Mar. 18, 2002, Three Pages, beginning "Further to my letter of Jan. 18, 2002, I enclose further submissions in response to the Opponent's letters of Nov.15, Nov. 27, and Dec. 11, 2001" with 10 pages of claims including Main Request, Auxiliary Request, and Auxiliary Request 2.

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, May 2, 2002, 7 Pages, Beginning, "I maintain all the objections in the original opposition and in the submission of the Nov. 6 and 27, 2001 . . . " with cover page from EPO dated May 16, 2002.

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Jul. 4, 2002, Four Pages, Beginning, "This is in response to the Opponents' further submission dated May 2, 2002.".

Summons to Attend Oral Proceedings Pursuant to Rule 71 (1) EPC, Oct. 21, 2001, 7 pages.

Letter from PRB Lawrence of Gill Jennings & Every, Jun. 24, 2002, with Affidavit of Thomas T. Tung with Attachments A thru D, Jun. 14, 2002.

Letter from PRB Lawrence of Gill Jennings & Every, Jul. 19, 2002, with Extracts of the Pechiney Annual REport 1989, 5 pages, Triangle Industries, Inc., Annual Report, 1987, 2 pages.

Final Submission by the EP patentee in the EPO opposition proceeding: European Patent Application No. 96908205.6 (now European Patent No. 0 828 663), CarnaudMetalbox, Plc, Opposition by American National Can Company, (Copy), Feb. 11, 2003, with Attachments, 38 pages.

Final submissions by the EP opponent in the EPO opposition proceeding: European Patent Application No. 96908205.6–2308/0828663, CarnaudMetalbox Plc, (Copy), Feb. 18, 2003, with Attachments, Affidavit by John Davy, Statement of Facts of John Zapps, 53 pages.

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Feb. 19, 2003, One Page, beeginning, "There are two points supplementary to my letter of Feb. 18. . . ".

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Feb. 20, 2003, Two Pages, Beginning We Have Been Considering Further The Recent Assertion By The Patentee About The Alleged Non–Enabling Nature . . . :.

Interlocutory Decision of the Opposition Division of the European Patent Office in Respect of the EP Patent No. 0828663, (Copy), May 5, 2003, 25 pages.

**US 6,848,875 B2**

Page 3

Grounds of Appeal against the Interlocutory Decision by the Opposition Division, (Copy), filed by EP patentee, Sep. 2, 2003, European Patent No. 0 828 663 (Formerly European Patent Application No. 96908205.6) CarnaudMetalbox Plc and CarnmaudMetalbox SA Appeal against the Interlocutory Decision of the Opposition Division, May 5, 2003, with attached copies of Main Request, and Auxiliary Request 1 thru 8, 32 pages.

Grounds of Appeal against the Interlocutory Decision by the Opposition Division, (Confirmation), filed by EP opponent, Sep. 12, 2003, with attachments including graphics and English translation of JP–U57–117323 and Technical Statement of Facts of Bill Hartman in Opposition to EP 828 663, with attachments, Technical Statement by Dean Scranton, Technical Statement of Facts of Christopher Sjostrom in Opposition to EP 828 663, Technical Statement by Gary Smith for Opposition to EP 828 663, Technical Statment by Timothy L. Turner, 57 pages.

Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories; Civil Action No. 03–C–0137–S; Interrogatory No. 2; pp. 1, 9, 10, and 11. (Pp. 1 and 11 are redacted); dated Jun. 16, 2003.

Opinion of the United States District Court for the Western District of Wisconsin in Anheuser–Busch Companies, Inc. v. Crown Cork & Seal Co., Inc.; Case No. 03–C–137–S; dated Nov. 20, 2003, 35 pages.

Submission of Enclosed Office Action dated Feb. 3, 2004, that issued in U.S. Appl. No. 10/417,980 which claims priority to the instant application.

Reply Brief in the EPO Opposition Proceeding: European Patent No. 0 828 663 (Formerly European Application No. 96908205.6) CarnaudMetalbox Plc and CarnaudMetalbox SA Appeal against the Interlocutory Decision of the Opposition, Letter dated May 13, 2004, 24 pages, Letter from James P. Tanner to Ismay Ratliff dated May 14, 2004, Beginning "This is further to our discussion on May 13, 2004 . . . ", 1 page.

* cited by examiner



FIG. 1
*PRIOR ART*

FIG. 2
*PRIOR ART*

FIG. 3
*PRIOR ART*



## FIG. 4



## FIG. 5



**FIG. 6**



**FIG. 7**



**FIG. 8**

**FIG. 9**

US 6,848,875 B2

# CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY

## CROSS-REFERENCE TO RELATED APPLICATIONS

This is a continuation of U.S. patent application Ser. No. 09/650,664, filed Aug. 30, 2000 now abandoned, which is a continuation of U.S. patent application Ser. No. 09/552,668, filed Apr. 19, 2000, now abandoned, which is a continuation of U.S. patent application Ser. No. 08/945,698, filed Nov. 21, 1997, which issued May 23, 2000 as U.S. Pat. No. 6,065,634, which is the U.S. National Phase of PCT/GB96/00709, filed Mar. 25, 1996, which claims priority to UK 9510515.1, filed May 24, 1995.

This invention relates to an end wall for a container and more particularly but not exclusively to an end wall of a can body and a method for fixing the end wall to the can body by means of a double seam.

U.S. Pat. No. 4,093,102 (KRASKA) describes can ends comprising a peripheral cover hook, a chuck wall dependent from the interior of the cover hook, an outwardly concave annular re-inforcing bead extending radially inwards from the chuck wall and a central panel joined to an inner wall of the reinforcing bead by an annular outwardly convex bead. This can end is said to contain an internal pressure of 90 psi by virtue of the inclination or slope of the chuck wall, bead outer wall and bead inner wall to a line perpendicular to the centre panel. The chuck wall slope D° is between 14° and 16°, the outer wall slope E is less than 4° and the inner wall slope C° is between 10 and 16° leading into the outwardly convex bead. We have discovered that improvements in metal usage can be made by increasing the slope of the chuck wall and limiting the width of the anti peaking bead.

U.S. Pat. No. 4,217,843 (KRASKA) describes an alternative design of can end in which the countersink has inner and outer flat walls, and a bottom radius which is less than three times the metal thickness. The can end has a chuck wall extending at an angle of approximately 24° to the vertical. Conversely, the specification of our U.S. Pat. No. 5,046,637 describes a can end in which the chuck wall extends at an angle of between 12° and 20° to the vertical.

The detailed description of our U.S. Pat. No. 4,571,978 describes a method of making a can end suitable for closing a can body containing a beverage such as beer or soft drinks. This can end comprises a peripheral flange or cover hook, a chuck wall dependant from the interior of the cover hook, an outwardly concave reinforcing bead extending radially inwards from the chuck wall from a thickened junction of the chuck wall with the bead, and a central panel supported by an inner portion of the reinforcing bead. Such can ends are usually formed from a prelacquered aluminum alloy such as an aluminum magnesium manganese alloy such as alloy 5182.

The specification of our U.S. Pat. No. 5,582,319 describes a can end suitable for a beverage can and formed from a laminate of aluminum/manganese alloy coated with a film of semi crystalline thermoplastic polyester. This polyester/aluminum alloy laminate permitted manufacture of a can end with a narrow, and therefore strong reinforcing bead in the cheaper aluminum manganese alloy.

Continuing development of a can end using less metal, whilst still permitting stacking of a filled can upon the end of another, this invention provides a can end comprising a peripheral cover hook, a chuck wall dependant from the interior of the chuck wall, an outwardly concave annular reinforcing bead extending radially inwards from the chuck

wall, and a central panel supported by an inner portion of the reinforcing bead, characterised in that, the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 30° and 60°, and the concave bead narrower than 1.5 mm (0.060"). Preferably, the angle of the chuck wall to the perpendicular is between 40° and 45°.

In a preferred embodiment of the can end an outer wall of the reinforcing bead is inclined to a line perpendicular to the central panel at an angle between −15° to +150 and the height of the outer wall is up to 2.5 mm.

In one embodiment the reinforcing bead has an inner portion parallel to an outer portion joined by said concave radius.

The ratio of the diameter of the central panel to the diameter of the peripheral curl is preferably 80% or less.

The can end may be made of a laminate of thermoplastic polymer film and a sheet aluminium alloy such as a laminate of a polyethylene teraphthalate film on an aluminium-manganese alloy sheet or ferrous metal typically less than 0.010 (0.25 mm) thick for beverage packaging. A lining compound may be placed in the peripheral cover hook.

In a second aspect this invention provides a method of forming a double seam between a can body and a can end according to any preceding claim, said method comprising the steps of:

placing the curl of the can end on a flange of a can body supported on a base plate, locating a chuck within the chuck wall of the can end to centre the can end on the can body flange, said chuck having a frustoconical drive surface of substantially equal slope to that of the chuck wall of the can end and a cylindrical surface portion extending away from the drive surface within the chuck wall, causing relative motion as between the assembly of can end and can body and a first operation seaming roll to form a first operation seam, and thereafter causing relative motion as between the first operation seam and a second operation roll to complete a double seam, during these seaming operations the chuck wall becoming bent to contact the cylindrical portion of the chuck.

Various embodiments will now be described by way of example and with reference to the accompanying drawings in which:

FIG. 1 is a diagrammatic sketch of known apparatus for forming a double seam;

FIG. 2 is an enlarged sectioned side view of a known chuck and can end before seaming;

FIG. 3 is a sectioned view of a fragment of a known double seam;

FIG. 4 is a sectioned side view of a can end according to this invention before edge curling;

FIG. 5 is a sectioned side view of the can end of FIG. 4 on a can body before forming of a double seam;

FIG. 6 is a like view of the can end and body during first operation seaming;

FIG. 7 is a like view of the can end and body during final second operation seaming to create a double seam;

FIG. 8 is a fragmentary section of a chuck detail; and

FIG. 9 is a side view of the cans stacked one on the other.

In FIG. 1, apparatus for forming a double seam comprises a base plate 1, an upright 2 and a top plate 3.

A lifter 4 mounted in the base plate is movable towards and away from a chuck 5 mounted in the top plate. The top plate supports a first operation seaming roll 6 on an arm 7 for pivotable movement towards and away from the chuck. The top plate also supports a second operation seaming roll 8 on

US 6,848,875 B2

3

an arm 9 for movement towards and away from the chuck after relative motion as between the first operation roll and can end on the chuck creates a first operation seam.

As shown in FIG. 1 the chuck 5 holds a can end 10 firmly on the flange 11 of a can body 12 against the support provided by the lifter plate 4. Each of the first operation roll 6 and second operation roll 7 are shown clear of chuck before the active seam forming profile of each roll is moved in turn to form the curl of the can end and body flange to a double seam as shown in FIG. 3.

FIG. 2 shows on an enlarged scale the chuck 5 and can end 10. The can end comprises a peripheral curl 13, a chuck wall 14 dependent from the interior of the curl, an outwardly concave anti-peaking bead 15 extending inwards from the chuck wall to support a central panel 16. Typically the chuck wall flares outwardly from the vertical at an angle C about 12° to 15°.

The chuck 5 comprises a body 17 having a threaded bore 18 permitting attachment to the rest of the apparatus (not shown). An annular bead 19 projects from the body 17 of the chuck to define with the end face of the body a cavity to receive the central panel 16 of the can end. The fit of panel 16 in annulus 19 may be slack between panel wall and chuck.

The exterior surface of the projecting bead 19 extends upwards towards the body at a divergent angle B of about 12° to the vertical to join the exterior of the chuck body 17 which tapers off an angle A° of about 4° to a vertical axis perpendicular to the central panel. The outer wall of the chuck 5 engages with the chuck wall at a low position marked "D" within the 12° shaped portion of the chuck bead 15.

As can ends are developed with narrower anti-peaking beads the chuck bead 19 becomes narrower and more likely to fracture. There is also a risk of scuffing of the can end at the drive position D which can leave unacceptable unsightly black marks after pasteurisation.

FIG. 3 shows a sectioned fragment of a typical double seam showing a desirable overlap of body hook 21 and end hook 20 between the can end 10 and can body 12.

FIG. 4 shows a can end, according to the invention, comprising a peripheral cover hook 23, a chuck wall 24 extending axially and inwardly from the interior of the peripheral cover hook, an outwardly concave reinforcing or anti-peaking bead 25 extending radially inwards from the chuck wall, and a central panel 26 supported or an inner portion panel with 27. The panel wall is substantially upright allowing for any metal spring back after pressing. The chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle C, between 20° and 60°; preferably between 40° and 45°. Typically the cross sectional radius of the antipeaking bead is about 0.5 mm.

Preferably the anti-peaking bead 25 is parallel sided, however the outer wall may be inclined to a line perpendicular to the central panel at an angle between −15° to +15° and the height $h_4$ of the outer wall may be up to 2.5 mm.

This can end is preferably made from a laminate of sheet metal and polymeric coating. Preferably the laminate comprises an aluminium magnesium alloy sheet such as 5182, or aluminium manganese alloy such as 3004 with a layer of polyester film on one side. A polypropylene film may be used on the "other side" if desired.

Typical dimensions of the example of the invention are:

| | | | |
|---|---|---|---|
| d5 | overall diameter (as stamped) | 65.83 | mm |
| d4 | PC diameter of seaming panel radius | 61.54 | mm |
| d3 | PC diameter of seaming panel/chuck wall radius | 59.91 | mm |
| $r_1$ | seaming panel/chuck wall radius | 1.27 | mm |

4

-continued

| | | | |
|---|---|---|---|
| $r_2$ | seaming panel radius | 5.56 | mm |
| $r_3$ | concave radius in antipeaking bead | <1.5 | mm |
| $d_2$ | maximum diameter of antipeaking bead | 50.00 | mm |
| $d_1$ | minimum diameter of antipeaking bead | 47.24 | mm |
| $h_2$ | overall height of panel | 6.86 | mm |
| $h_1$ | height to top of antipeaking bead | 5.02 | mm |
| $h_3$ | panel depth | 2.29 | mm |
| $h_4$ | outer wall height | 1.78 | mm |
| c | chuck wall angle to vertical | 43° | |

From these dimensions it can be calculated that the ratio of central panel diameter of 47.24 mm to overall diameter of can end 65.84 is about 0.72 to 1.

For economy the aluminium alloy is in the form of sheet metal less than 0.010" (0.25 mm). A polyester film on the metal sheet is typically 0.0005" (0.0125 mm).

Although this example shows an overall height $h_2$ at 6.86 mm we have also found that useful can ends may be made with an overall height as little as 6.35 mm (0.25").

FIG. 5 shows the peripheral flange 23 of can end 22 of FIG. 4 resting on the flange 11 of a can body 12 before formation of a double seam as discussed with reference to FIG. 1.

In FIG. 5 a modified chuck 30 comprises a chuck body 31 having a frustoconical drive surface 32 engaging with the chuck wall 24 of the can end 22.

The frustoconical drive surface is inclined outwardly and axially at an angle substantially equal to the angle of inclination C° of between 20° and 60°; in this particular example on chuck angle C of 43° is preferred. The drive surface 32 is a little shorter than the chuck wall 24 of the chuck body. The substantially cylindrical surface portion 33, rising above the drive surface 32, may be inclined at an angle between +4° and −4° to a longitudinal axis of the chuck. As in FIG. 2, this modified chuck 30 has a threaded aperture to permit attachment to the rest of the double seam forming apparatus (not shown).

In contrast to the chuck of FIG. 2 the modified chuck 30 is designed to drive initially on the relatively large chuck wall 32 without entering deeply into the anti-peaking bead 25. Further drive is obtained at the juncture of chuck wall 32 and cylindrical wall 33 as chuck wall of end 24 is deformed during 1st and 2nd operation seaming FIGS. 6 and 7. The chuck 30 shown in FIG. 5 has an annular bead of arcuate cross section but this bead is designed to enter the chuck wall without scratching or scuffing a coating on the can end; not to drive on the concave surface as shown in FIG. 2.

It will be understood that first operation seaming is formed using apparatus as described with reference to FIG. 1.

FIG. 6 shows the modified can end and chuck during formation of a first operation seam shown at the left of FIG. 2 as formed by a first operation roll 34 adjacent the interfolded peripheral flange of the can end and flange 11 body 12.

During relative rotation as between the can end 22 and first operation roll 34 the edge between the chuck drive wall 32 and cylindrical wall 33 exerts a pinching force between chuck 30 and roll 34 to deform the chuck wall of the can end as shown.

After completion of the first operation seam the first operation roll is swung away from the first operation seam and a second operation roll 38 is swung inwards to bear upon the first operation seam supported by the chuck 30. Relative rotation as between the second operation roll 38 and first operation seam supported by a chuck wall 30 completes a double seam as shown in FIG. 7 and bring the upper portion 24 of the chuck wall 24 to lie tightly against the can body

US 6,848,875 B2

5

neck in a substantially upright attitude as the double seam is tightened by pinch pressure between the second operation roll 38 and chuck 30.

Can ends according to the invention were made from aluminium alloy 5182 and an aluminium alloy 3004/polymer laminate sold by CarnaudMetalbox under the trade mark ALULITE. Each can end was fixed by a double seam to a drawn and wall ironed (DWI) can body using various chuck angles and chuck wall angle as tabulated in Table 1 which records the pressure inside a can at which the can ends failed:

6

It will be observed that the container pressures achieved for samples J, K, L, 4.89 bar (70.9 psig), 4.83 bar (70.0 psig) and 4.74 bar (68.7 psig) respectively were much enhanced by clamping the double seam.

In order to provide seam strength without use of a clamping ring, modified chucks were used in which the drive slope angle C° was about 43° and the cylindrical surface 33 was generally +4° and −4°. Results are shown in Table 3.

TABLE 1

| | CAN END DATA | | | PRESSURE IN BAR (PSIG) TO FAILURE FOR VARIOUS SEAMING CHUCK ANGLES B° | | | | |
|---|---|---|---|---|---|---|---|---|
| Sample Code | Material Thickness mm | Minimum Diameter D1 mm | CHUCK Wall Angle "C" | 23° | 10°/23° | 4°/23° | 23° with D. Seam Ring | 10°/23° with D. Seam Ring |
| A | ALULITE 0.23 | 52.12 (2.052") | 21.13° | 5.534 (80.20) | 5.734 (83.10) | 5.311 (76.97) | 6.015 (87.17) | 5.875 (85.14) |
| B | 5182 0.244 | 52.12 (2.052") | 21.13° | 5.599 (81.15) | 5.575 (80.79) | 5.381 (77.99) | 5.935 (86.01) | 5.895 (85.43) |
| C | 5182 0.245 | 52.12 (2.052") | 21.13° | 6.004 (87.02) | 5.910 (85.65) | 5.800 (84.06) | 6.224 (90.21) | 6.385 (92.54) |
| D | ALULITE 0.23 | 51.92 (2.044") | 21.13° | 5.334 (77.31) | 5.229 (75.78) | 5.238 (75.91) | 5.730 (83.04) | 5.404 (78.32) |
| E | 5182 0.224 | 51.92 (2.044") | 21.13° | 5.555 (80.50) | 5.514 (79.92) | 5.354 (77.60) | 5.895 (85.43) | 5.930 (85.94) |
| F | 5182 0.245 | 51.92 (2.044") | 23° | 5.839 (84.63) | 5.804 (84.12) | 5.699 (82.59) | 6.250 (90.58) | 6.435 (93.26) |
| G | ALULITE 0.23 | 51.92 (2.044") | 23° | | | 5.123 (74.25) | | |
| H | 5182 0.224 | (51.92) (2.044") | 23° | | | 5.474 (79.34) | | |
| I | 5182 0.245 | 51.92 (2.044") | 23° | | | 5.698 (82.58) | | |

All pressures on unaged shells in bar (psig). 5182 is an aluminium-magnesium-manganese alloy lacquered. The "ALULITE" used is a laminate of aluminium alloy and polyester film.

The early results given in Table 1 showed that the can end shape was already useful for closing cans containing relatively low pressures. It was also observed that clamping of the double seam with the "D" seam ring resulted in improved pressure retention. Further tests were done using a chuck wall angle and chuck drive surface inclined at nearly 45°: Table 2 shows the improvement observed:

TABLE 2

| | h₂ | h₃ | | Chuck Angles B° | |
|---|---|---|---|---|---|
| Sample Code | mm (inches) | mm (inches) | h₄ mm (inches) | 43° | 43° with seam ring |
| J | 6.86 (0.270) | 2.39 (0.094) | 2.29 (0.09) | 4.89 (70.9) | 6.15 (89.1) |
| K | 7.11 (0.280) | 2.64 (0.104) | 2.54 (0.10) | 4.83 (70.0) | 5.98 (86.6) |
| L | 7.37 (0.290) | 2.90 (0.114) | 2.79 (0.11) | 4.74 (68.7) | 6.44 (93.3) |

Table 2 is based on observations made on can ends made of aluminium coated with polymer film (ALULITE) to have a chuck wall length of 5.029 mm (0.198") up the 43° slope.

TABLE 3

| | Results | | | |
|---|---|---|---|---|
| SAMPLE CODE | MATERIAL | LINING COMPOUND | CHUCK ANGLES DRIVE/WALL | PRESSURE |
| c | 0.224 5182 | with | 43° | 4.60 (66.7) |
| g | 0.23 Alulite | with | 43°/4° | 5.45 (79.0) |
| h | 0.224 5182 | with | 43°/4° | 6.46 (93.6) |
| j | 0.23 Alulite | without | 43°/4° | 5.91 (85.6) |
| k | 0.244 5182 | without | 43°/4° | 6.18 (89.6) |
| l | 0.23 Alulite | without | 43°/−4° | 5.38 (77.9) |
| m | 0.25 Alulite | without | 43°/−4° | 6.20 (89.8) |
| n | 0.23 Alulite | without | 43°/0° | 6.11 (88.5) |
| o | 0.25 Alulite | without | 43°/0° | 6.62 (95.9) |

ALL PRESSURES IN BAR (PSIG)

ALL CODES

Reform Pad Dia. 47.24 mm (1.860") (202 Dia).
6.86 mm (0.270") unit Depth h₂ 2.39 mm (0.094") Panel Depth

Table 3 shows Code "0" made from 0.25 mm Alulite to give 6.62 bar (95 psi) Pressure Test Result indicating a can end suitable for pressurised beverages. Further chucks with various land lengths (slope) were tried as shown in Table 4.

US 6,848,875 B2

7

TABLE 4

CHUCK WALL ANGLE

| | 43°/0° 1.9 mm LAND SHARP TRANSITION | | 43°/0° 1.27 MM LAND R. 0.5 MM BLEND | |
| VARIABLE CODE | NO. D.SEAM RING | WITH D.SEAM RING | NO. D.SEAM RING | WITH D.SEAM RING |
|---|---|---|---|---|
| 7 | 6.699 (97.08) | 7.017 (101.7) | 6.779 (98.24) | 7.006 (101.54) |
| 8 | 6.315 (91.52) | 6.521 (94.5) | 6.293 (91.2) | 6.236 (90.37) |
| 9 | 6.095 (88.33) | 6.30 (91.3) | 6.238 (90.4) | 6.719 (97.38) |

ALL PRESSURES IN BAR (PSIG)
CODE

7=0.25 mm Alulite, 47.24 mm (1.860") Reform Pad, 6.86 mm (0.270") $h_2$ Depth, 2.38 mm (0.094") Panel; $h_4$ depth=2.29 mm (0.09")

8=0.23 mm Alulite, 47.24 mm (1.860") Reform Pad, 7.11 mm (0.280") $h_2$ Depth, 2.64 mm (0.104") Panel; $h_4$ depth=2.54 mm (0.10")

9=0.23 mm Alulite, 47.24 mm (1.860") Reform Pad, 7.37 mm (0.290") $h_2$ Depth, 2.90 mm (0.114") Panel; $h_4$ depth=2.79 mm (0.11")

Table 4 shows results of further development to seaming chuck configuration to bring closer the pressure resistance of ring supported and unsupported double seams.

Table 4 identifies parameters for length of generally vertical cylindrical surface 33 on the seaming chuck 30, and also identifies a positional relationship between the chuck wall 24 of the end and the finished double seam. It will be understood from FIG. 7 that the forces generated by thermal processing or carbonated products are directed towards and resisted by the strongest portions of the completed double seam.

Table 5 shows results obtained from a typical seam chuck designed to give double seam in accordance with parameters and relationships identified in Table 4. Typically:—As shown in FIG. 8 the chuck comprises a cylindrical land of length '1' typically 1.9 mm (0.075") and frustoconical drive surface 32 inclined at an angle Y°, typically 43°, to the

8

cylindrical to which it is joined by a radius R typically 0.5 mm (0.020"). Angle "X" is typically 90°.

TABLE 5

| | | DIMENSIONS mm | | PRESSURE | |
| CODE | GAUGE | $h_2$ | $h_3$ | bar | (psi) |
|---|---|---|---|---|---|
| 20 | .23 mm | 7.37 (.290") | 2.36 (.093") | 6.383 | (92.6) |
| 21 | .23 mm | 7.37 (.290") | 2.36 (.093") with compound | 6.402 | (92.8) |
| 26 | .23 mm | 6.87 (.2705") | 2.37 (.0935") | 6.144 | (89.88) |
| 27 | .23 mm | 6.87 (.2705") | 2.37 (.0934") with compound | 6.071 | (88.0) |
| 28 | .23 mm | 7.37 (.290") | 2.36 (.093") | 6.414 | (93.0) |
| 29 | .23 mm | 7.37 (.290") | 2.84 (.112") | 6.725 | (97.5) |
| 30 | .23 mm | 6.86 (.270") | 2.37 (.0935") | 6.062 | (87.9) |
| 31 | .23 mm | 6.86 (.270") | 2.37 (.0935") | 6.013 | (87.2) |
| 34 | .25 mm | 7.37 (.290") | 2.87 (.113") | 7.787 | (112.9) |
| 36 | .25 mm | 7.32 (.288") | 2.34 (.092") | 7.293 | (105.8) |
| 37 | .25 mm | 7.32 (.288") | 2.34 (.092") with compound | 7.402 | (107.3) |
| 38 | .25 mm | 6.87 (.2705") | 2.41 (.095") | 7.077 | (102.6) |
| 516 | .25 mm | 6.35 (.250") | 2.34 (.092") with compound | 6.937 | (100.6) |

All variables made from Alulite, 10 Cans per variable.

The can ends may be economically made of thinner metal if pressure retention requirements permit because these can ends have a relatively small centre panel in a stiffer annulus.

FIG. 9 shows a can 12a, closed according to this invention, stacked upon a like can 12b shown sectioned so that stacking of the upper can on the lower can end is achieved by a stand bead 31a of the upper can fits inside the chuck wall 24 of the lower can end with the weight of the upper can resting on the double seam 34 of the lower can end.

The clearance between the bottom of the upper can body and lower can end may be used to accommodate ring pull features (not shown) in the can end or promotional matter such as an coiled straw or indicia.

Using the experimental data presented above, a computer programme was set up to estimate the resistance to deformation available to our can ends when joined to containers containing pressurised beverage. The last two entries on the table relate to a known 206 diameter beverage can end and an estimate of what we think the KRASKA patent teaches.

TABLE 6

| END SIZE Bead OD:1D | OVERALL DIA mm | PANEL DIA $d_1$ mm | RATIO OVERALL DIA: PANEL DIA | CHUCK WALL ANGLE °C. | CHUCK WALL LENGTH L mm | RE-INFORCING RAD $r_3$ mm | INNER WALL HEIGHT $h_3$ mm | OUTER WALL HEIGHT $h_4$ mm | PREDICTED CUT EDGE Ø (*DENOTES ACTUAL) | ACTUAL THICK-NESS TO CONTAIN PSI |
|---|---|---|---|---|---|---|---|---|---|---|
| 206-204 | 64.39 (2.535") | 49.49 (1.9485") | 1.3010 | 33.07° | 4.22 (0.166") | 0.52 (0.204") | 2.34 (0.092") | 1.78 (0.070") | 75.230 (2.9618") | 0.255 |
| 206-202 | 64.39 (2.535") | 47.33 (1.8634") | 1.3604 | 42.69° | 4.95 (0.195") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 74.272 (2.9241")* | 0.255 |
| 206-200 | 64.39 (2.535") | 45.07 (1.7744") | 1.4287 | 50.053° | 5.82 (0.229") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.13 (2.9021") | 0.255 |
| 204-202 | 62.18 (2.448") | 47.33 (1.8634") | 1.3137 | 29.78° | 3.96 (0.156") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.767 (2.9042") | 0.24 |

US 6,848,875 B2

9　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　10

TABLE 6-continued

| END SIZE Bead OD:1D | OVERALL DIA mm | PANEL DIA $d_1$ mm | RATIO OVERALL DIA: PANEL DIA | CHUCK WALL ANGLE ° C. | CHUCK WALL LENGTH L mm | RE-INFORCING RAD $r_3$ mm | INNER WALL HEIGHT $h_3$ mm | OUTER WALL HEIGHT $h_4$ mm | PREDICTED CUT EDGE Ø (*DENOTES ACTUAL) | ACTUAL THICK-NESS TO CONTAIN PSI |
|---|---|---|---|---|---|---|---|---|---|---|
| 204-200 | 62.18 (2.448") | 45.07 (1.7744") | 1.3796 | 40.786° | 4.70 (0.185") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 72.911 (2.8705") | 0.24 |
| 202-200 | 71.98 (2.834") | 45.07 (1.7744") | 1.597 | 30.266° | 4.09 (0.161") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 71.984 (2.834") | 0.225 |
| 206 std | 64.69 (2.547") | 51.92 (2.044") | 1.2461 | 15.488° | 4.39 (0.173") | 0.56 (0.022") | 2.03 (0.080") | — | 76.454 (3.010")* | 0.28 |
| KRASKA ESTIMATE | 64.39 (eg 2.535") | — | — | 15° | 2.54 (0.100") | 0.81 (0.032") | 1.65 (0.065") | 2.29 (0.090") | 78.080 (3.074") | 0.292 (0.0115") |

All experiments modelled on a notional aluminium alloy of yield strength 310 mpa 0.25 mm thick. The standard was also 310 mpa BUT 0.275 mm thick.

What is claimed is:

1. A method of forming a double seam between a can body and a can end, said method comprising the steps of:

a) providing a can end having a circumferentially extending peripheral curl and a wall extending circumferentially and radially inward from said curl and an annular reinforcing bead extending radially inward from said wall, said reinforcing bead having an interior surface, said peripheral curl comprising a seaming panel and a radiused portion extending from said seaming panel to said wall, said wall inclined between about 20° and about 60° with respect to an axial centerline of said can end;

b) placing said curl of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck having first and second circumferentially extending walls, said first and second walls forming a juncture therebetween; bringing said chuck into engagement with said can end so that said juncture of said first and second walls of said chuck contacts said inclined wall of said can end;

d) rotating said chuck;

e) performing a first seaming operation by placing a first seaming roll into contact with said can end curl while rotating said can end so as to partially deform said curl and said can body flange into a partial seam, said rotation of said can end during said first seaming operation driven by said rotating chuck through driving contact between said juncture of said first and second walls of said chuck and said inclined wall of said can end without driving contact between said chuck and said can end bead interior surface;

f) performing a second seaming operation by placing a second seaming roll into contact with said partially deformed can end curl so as to further deform said curl and said can body flange so as to further form said seam.

2. The method according to claim 1, wherein said first and second seaming operations reform said can end inclined wall by bending a first portion of said inclined wall upward by an angle of at least about 16°.

3. The method according to claim 1, wherein as a result of said first and second seaming operations said can end inclined wall is reformed so that a first portion of said wall is oriented substantially cylindrically.

4. The method according to claim 1, wherein prior to performing said first seaming operation said wall of said can end is inclined between about 30° and about 50° with respect to an axial centerline of said can end.

5. The method according to claim 4, wherein as a result of said first and second seaming operations said can end inclined wall is reformed so that a first portion of said wall is oriented substantially cylindrically.

6. The method according to claim 4, wherein said first and second seaming operations reform said can end inclined wall by bending a first portion of said inclined wall upward by an angle of at least about 26°.

7. The method according to claim 1, wherein prior to performing said first seaming operation said wall of said can end is inclined between about 40° and about 45° with respect to an axial centerline of said can end.

8. The method according to claim 7, wherein as a result of said first and second seaming operations said can end inclined wall is reformed so that a first portion of said wall is oriented substantially cylindrically.

9. The method according to claim 7, wherein said first and second seaming operations reform said can end inclined wall by bending a first portion of said inclined wall upward by an angle of at least about 36°.

10. The method according to claim 1, wherein said first circumferentially extending wall of said chuck is oriented so as to be substantially cylindrical.

11. The method according to claim 10, wherein said substantially cylindrical first wall of said chuck is oriented so as to be inclined with respect to an axial centerline of said chuck by no more than about 4°.

12. The method according to claim 1, wherein the distance from the lowermost point on said annular bead to the uppermost point on said curl defines a height of said can end, and wherein as a result of said first and second seaming operations said can end inclined wall is reformed so that a first portion of said wall is bent upwardly so as to substantially increase said height of said can end.

13. The method according to claim 1, wherein said chuck second wall is inclined with respect to an axial centerline of said chuck that substantially matches said inclination of said can end wall, and wherein said rotation of said can end during said first seaming operation is aided by driving contact between said second wall of said chuck and said inclined wall of said can end.

14. A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:

a) providing a can end having (i) a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation, (ii) an annular reinforcing bead, and (iii) a circumferentially extending wall extending from said

11

seaming panel to said reinforcing bead, said wall comprising first and second wall portions, said first wall portion to be formed into another portion of said double seam during said seaming operation, said first wall portion extending from said seaming panel to a first location on said wall and comprising a radiused portion extending from said seaming panel, said second wall portion extending from said first wall portion at said first wall location to a second location on said wall that forms a transition with said reinforcing bead, whereby said first and second locations form end points of said second wall portion, and wherein a straight line extending between said first and second locations on said wall is inclined between about 20° and about 60° with respect to an axial centerline of said can end;

b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck comprising a first circumferentially extending wall, said chuck first wall being substantially cylindrical;

d) bringing said chuck into engagement with said can end; and

e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end while said can end rotates so as to deform said seaming panel of said cover hook and said first wall portion and said can body flange into said double seam, said seaming operation deforming said first wall portion such that at least a portion of said first wall portion after seaming is substantially cylindrical, said first location on said wall after seaming operation forming the transition from said substantially cylindrical wall portion to said second wall portion, said line between said first and second locations on said wall remaining inclined between about 20° and about 60° with respect to said axial centerline after completion of said seaming operation.

**15**. The method according to claim **14**, wherein during said seaming operation at least a portion of said can end wall first portion is reformed by bending upward by an angle of at least about 16°.

**16**. The method according to claim **14**, wherein said line between said first and second locations on said wall of said can end is inclined between about 30° and about 50° with respect to an axial centerline of said can end prior to performing said seaming operation.

**17**. The method according to claim **16**, wherein during said seaming operation at least a portion of said can end wall first portion is reformed by bending upward by an angle of at least about 26°.

**18**. The method according to claim **14**, wherein said line between said first and second locations on said second wall of said can end is inclined between about 40° and about 45° with respect to an axial centerline of said can end.

**19**. The method according to claim **18**, wherein during said seaming operation at least a portion of said can end wall first portion is reformed by bending upward by an angle of at least about 36°.

**20**. The method according to claim **14**, wherein said substantially cylindrical first wall of said chuck is oriented so as to be inclined with respect to an axial centerline of said chuck by no more than about 4°.

**21**. The method according to claim **14**, wherein the distance from the lowermost point on said annular bead to the uppermost point on said cover hook defines a height of said can end, and wherein as a result of said seaming

12

operation at least a portion of said can end first wall portion is bent upwardly into said substantially cylindrical orientation so as to substantially increase said height of said can end.

**22**. The method according to claim **14**, wherein

f) said annular bead has an interior surface thereof;

g) said chuck further comprises a second wall, said first and second walls of said chuck form a juncture therebetween;

h) said seaming operation comprises (i) performing a first seaming operation by placing a first seaming roll into contact with said can end cover hook while said can end is rotated so as to partially deform said cover hook and said first wall portion and said can body flange into a partial seam, and (ii) performing a second seaming operation by placing a second seaming roll into contact with said partially deformed can end cover hook so as to further deform said cover hook and said first portion and said can body flange so as to further form said seam;

i) said rotation of said can end during said first seaming operation is accomplished by imparting driving contact between said juncture of said first and second walls of said chuck and said wall of said can end but without imparting driving contact between said chuck and said can end bead interior surface.

**23**. The method according to claim **14**, further comprising the step of filling the can body with a carbonated beverage prior to performing said seaming operation.

**24**. The method according to claim **14**, wherein said chuck further comprises a second chuck wall depending from said substantially cylindrical first chuck wall, said second chuck wall not being substantially cylindrical whereby said first and second chuck walls form a juncture therebetween, and wherein the step of bringing said chuck into engagement with said can end comprises bringing said chuck wall juncture into engagement with said can end wall proximate said first location on said can end wall.

**25**. The method according to claim **24**, wherein the step of performing said seaming operation further comprises bending said first wall portion of said can end upwardly around said chuck wall juncture so as to permanently deform said first wall portion.

**26**. The method according to claim **14**, wherein said wall of said can end is substantially frustoconical prior to performing said seaming operation.

**27**. The method according to claim **14**, wherein said first and second portions of said wall of said can end lie along a substantially straight line prior to performing said seaming operation.

**28**. The method according to claim **14**, wherein said line between the first and second locations on said second wall remains inclined between about 30° and about 50° after seaming.

**29**. The method according to claim **14**, wherein said line between the first and second locations on said second wall remains inclined between about 40° and about 45° after seaming.

**30**. The method according to claim **14**, wherein, in said step c) of performing the seaming operation, rotation of said can end is achieved without imparting driving contact between said chuck and a bottom interior surface of said reinforcing bead.

**31**. The method according to claim **14**, wherein said chuck further comprises a second chuck wall depending from said substantially cylindrical first chuck wall, said second chuck wall being substantially frustoconical.

13

**32.** A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:

a) providing a can end having (i) a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation and (ii) a circumferentially extending wall comprising first and second portion, said first wall portion to be formed into another portion of said double seam during said seaming operation, said first wall portion extending from said seaming panel to a first location on said wall and comprising a radiused portion extending from said seaming panel, said second wall portion extending from said first wall portion at said first wall location on said wall to a second location on said wall, whereby said first and second locations form end points of said second wall portion, said second wall location being the lowermost point of said wall, and wherein a straight line extending between said first and second locations on said wall is inclined between about 20° and about 60° with respect to an axial centerline of said can end;

b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck comprising a first circumferentially extending wall, said first chuck wall being substantially cylindrical;

d) bringing said chuck into engagement with said can end; and

e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end so as to deform said seaming panel of said cover hook and said first wall portion and said can body flange into said double seam, said first portion of said can end wall being pressed against said chuck first wall so that at least a portion of said first portion of said can end wall is bent upward through an angle of at least about 16°, said first location on said wall after said seaming operation forming the transition from said double seam to said second wall portion, said line between said first and second locations remaining inclined between about 20° and about 60° with respect to said axial centerline.

**33.** The method according to claim **32**, wherein said line between said first and second locations on said wall of said can end is inclined between about 30° and about 50° with respect to said axial centerline of said can end prior to performing said seaming operation.

**34.** The method according to claim **33**, wherein during said seaming operation at least a portion of said can end wall first portion is reformed by bending upward by an angle of at least about 26°.

**35.** The method according to claim **33**, wherein said line between the first and second locations on said second wall portion remains inclined between about 30° and about 50° after seaming.

**36.** The method according to claim **32**, wherein said line between said first and second locations on said wall of said can end is inclined between about 40° and about 45° with respect to said axial centerline of said can end prior to performing said seaming operation.

**37.** The method according to claim **36**, wherein during said seaming operation at least a portion of said can end wall first portion is reformed by bending upward by an angle of at least about 36°.

14

**38.** The method according to claim **36**, wherein said line between the first and second locations on said second wall portion remains inclined between about 40° and about 45° after seaming.

**39.** The method according to claim **32**, wherein the can end further comprises a reinforcing bead extending radially inward from said second portion of said wall at said second wall location, the distance from a lowermost point on said annular bead to the uppermost point on said cover hook defines a height of said can end, and wherein said upward bending of said first portion of can end wall during said seaming operation substantially increases said height of said can end.

**40.** The method according to claim **32**, wherein

f) said can end comprises an annular reinforcing bead extending radially inward from said wall, said annular bead having an interior surface thereof;

g) said chuck further comprises a second wall, said first and second walls of said chuck form a juncture therebetween;

h) said seaming operation comprises (i) performing a first seaming operation by placing a first seaming roll into contact with said can end peripheral cover hook while said can end is rotated so as to partially deform said cover hook and said first wall portion and said can body flange into a partial seam, and (ii) performing a second seaming operation by placing a second seaming roll into contact with said partially deformed can end cover hook so as to further deform said cover hook and said first wall portion and said can body flange so as to further form said seam;

i) said rotation of said can end during said first seaming operation is accomplished by imparting driving contact between said juncture of said first and second walls of said chuck and said wall of said can end but without imparting driving contact between said chuck and said can end bead interior surface.

**41.** The method according to claim **32**, further comprising the step of filling the can body with a carbonated beverage prior to performing said seaming operation.

**42.** The method according to claim **32**, wherein said chuck further comprises a second chuck wall depending from said substantially cylindrical first chuck wall, said second chuck wall not being substantially cylindrical whereby said first and second chuck walls form a juncture therebetween, and wherein the step of bringing said chuck into engagement with said can end comprises bringing said chuck wall juncture into engagement with said can end wall proximate said second location on said can end wall.

**43.** The method according to claim **42**, wherein said bending of said first wall portion during said seaming operation comprises bending said first wall portion upwardly around said chuck wall juncture.

**44.** The method according to claim **42**, wherein said can end includes an annular reinforcing bead extending from said second wall portion and, in said step e) of performing the seaming operation, rotation of said can end is achieved without imparting driving contact between said chuck and a bottom interior surface of said reinforcing bead.

**45.** The method according to claim **32**, wherein the can end includes a reinforcing bead extending radially inward from said lowermost point of said second portion of the wall.

**46.** The method according to claim **32**, wherein said wall of said can end is substantially frustoconical prior to performing said seaming operation.

**47.** The method according to claim **32**, wherein said first and second portions of said wall of said can end lie along a substantially straight line prior to performing said seaming operation.

US 6,848,875 B2

15

**48**. The method according to claim **32**, wherein after said seaming operation said first and second portions of said can end wall intersect at an obtuse angle.

**49**. The method according to claim **32**, wherein said chuck further comprises a second chuck wall depending from said substantially cylindrical first chuck wall, said second chuck wall being substantially frustoconical.

**50**. A method of forming a double seam between a can body and a can end intended for use in packaging a carbonated beverage, said method comprising the steps of:

a) providing a can end having (i) a circumferentially extending peripheral cover hook, said peripheral cover hook comprising a seaming panel to be formed into a portion of said double seam during a seaming operation, (ii) an annular reinforcing bead, and (iii) a circumferentially extending wall extending from said seaming panel to said reinforcing bead, said wall and said reinforcing bead forming a transition therebetween;

b) placing said cover hook of said can end into contact with a circumferentially extending flange of a can body;

c) providing a rotatable chuck comprising first and second circumferentially extending walls, said second chuck wall depending from said first chuck wall so as to form a juncture therebetween;

d) bringing said chuck into engagement with said can end; and

e) performing said seaming operation by placing one or more seaming rolls into contact with said peripheral cover hook of said can end while said can end rotates so as to deform said seaming panel of said cover hook and to bend a portion of said can end wall upwardly around said juncture of said chuck walls at a first location on said can end wall, a straight line extending from said first location on said can end wall to said transition between said can end wall and said reinforcing bead inclined between about 20° and about 60° with respect to said axial centerline both before and after said seaming operation.

**51**. The method according to claim **50** wherein at least a portion of said portion of said can end wall bent upwardly during said seaming operation is bent upward through an angle of at least about 16°.

**52**. The method according to claim **50**, wherein said line extending from said first location to said transition is inclined between about 30° and about 50° with respect to said axial centerline of said can end both before and after performing said seaming operation.

**53**. The method according to claim **52**, wherein at least a portion of said portion of said can end wall bent upwardly

16

during said seaming operation is bent upward through an angle of at least about 26°.

**54**. The method according to claim **50**, wherein said line extending from said first location to said transition is inclined between about 40° and about 45° with respect to said axial centerline of said can end both before and after performing said seaming operation.

**55**. The method according to claim **54**, wherein at least a portion of said portion of said can end wall bent upwardly during said seaming operation is bent upward through an angle of at least about 36°.

**56**. The method according to claim **50**, wherein at least a portion of said portion of said can end wall bent upwardly during said seaming operation is bent upward into a substantially cylindrical configuration.

**57**. The method according to claim **50**, wherein said wall of said can end is substantially frustoconical prior to performing said seaming operation.

**58**. The method according to claim **50**, wherein said first wall of said chuck is oriented so as to be inclined with respect to an axial centerline of said chuck by no more than about 4°.

**59**. The method according to claim **50**, wherein said first wall of said chuck is substantially cylindrical.

**60**. The method according to claim **59**, wherein said second chuck wall being substantially frustoconical.

**61**. The method according to claim **50**, wherein the distance from a lowermost point on said annular bead to the uppermost point on said cover hook defines a height of said can end, and said seaming operation increases said height of said can end.

**62**. The method according to claim **50**, wherein

f) said annular bead has an interior surface thereof;

g) said seaming operation comprises (i) performing a first seaming operation by placing a first seaming roll into contact with said can end curl while said can end is rotated so as to partially deform said cover hook and a first portion of said can end wall and said can body flange into a partial seam, and (ii) performing a second seaming operation by placing a second seaming roll into contact with said partially deformed can end cover hook so as to further deform said cover hook and said can end wall first portion and said can body flange so as to further form said seam;

h) said rotation of said can end during said first seaming operation is accomplished without imparting driving contact between said chuck and said can end bead interior surface.

*   *   *   *   *

Exhibit 2

US006935826B2

(12) **United States Patent** (10) Patent No.: **US 6,935,826 B2**
Brifcani et al. (45) **Date of Patent:** **Aug. 30, 2005**

(54) **CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY**

(75) Inventors: **Mouayed Mamdooh Brifcani**, Oxfordshire (GB); **Peter James Hinton**, Swindon (GB); **Mark Christopher Kysh**, Wantage (GB)

(73) Assignee: **Crown Cork & Seal Technologies Corporation**, Alsip, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/417,980**

(22) Filed: **Apr. 17, 2003**

(65) **Prior Publication Data**

US 2003/0202862 A1 Oct. 30, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 10/024,862, filed on Dec. 18, 2001, now Pat. No. 6,848,875, which is a continuation of application No. 09/650,664, filed on Aug. 30, 2000, now abandoned, which is a continuation of application No. 09/552,668, filed on Apr. 19, 2000, now abandoned, which is a continuation of application No. 08/945,698, filed as application No. PCT/GB96/00709 on Mar. 25, 1996, now Pat. No. 6,065,634.

(30) **Foreign Application Priority Data**

May 24, 1995 (GB) .............................................. 9510515

(51) Int. Cl.[7] ......................... **B21D 51/32; B21D 51/44**

(52) **U.S. Cl.** ........................ **413/31**; 220/619; 220/620; 220/623; 220/906

(58) **Field of Search** .............................. 413/2, 4, 8, 31, 413/27, 36, 37, 43; 220/268, 269, 270, 619, 620, 623, 621, 617, 62.22, 62.12, 906

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,023,927 A | | 3/1962 | Ehman | 220/619 |
| 3,526,486 A | * | 9/1970 | Smith et al. | 428/626 |
| 3,843,014 A | * | 10/1974 | Cospen et al. | 220/623 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | G 92 11 788.0 | 1/1993 |
| EP | 0 153 115 A3 | 8/1985 |
| EP | 0 153 115 A2 | 8/1985 |
| EP | 0 340 955 A1 | 11/1989 |
| GB | 1444470 | 7/1976 |
| GB | 2 143 202 | 2/1985 |
| GB | 2 196 891 | 5/1988 |
| GB | 2 218 024 | 11/1989 |
| JP | 57-117323 | 7/1982 |
| JP | 63-125152 | 5/1988 |
| JP | 01 1 167 050 | 6/1989 |
| JP | 03-032835 | 2/1991 |
| JP | 03-043349 | 2/1991 |
| WO | WO 93/17864 | 9/1993 |

OTHER PUBLICATIONS

Translation copy of Japanese Utility Model Application No. 57–117323.*

(Continued)

*Primary Examiner*—Lowell A. Larson
*Assistant Examiner*—Jimmy T Nguyen
(74) *Attorney, Agent, or Firm*—Woodcock Washburn LLP

(57) **ABSTRACT**

A can end includes a peripheral cover hook a chuck wall dependent from the interior of the cover hook, an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall, and a central panel supported by an inner portion of the reinforcing bead, characterized in that, the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 20° and 60°, and the concave cross-sectional radius of the reinforcing bead is less than 0.75 mm.

**14 Claims, 4 Drawing Sheets**



## US 6,935,826 B2
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,967,752 A | 7/1976 | Cudzik | 220/269 |
| 4,015,744 A | 4/1977 | Brown | 220/269 |
| 4,024,981 A | 5/1977 | Brown | 220/269 |
| 4,093,102 A | 6/1978 | Kraska | 220/623 |
| 4,148,410 A | 4/1979 | Brown | 220/269 |
| 4,150,765 A | 4/1979 | Mazurek | 220/269 |
| 4,210,257 A | 7/1980 | Radtke | 220/269 |
| 4,217,843 A | 8/1980 | Kraska | 413/12 |
| 4,276,993 A | 7/1981 | Hasegawa | 220/269 |
| 4,286,728 A | 9/1981 | Fraze et al. | 220/270 |
| 4,365,724 A | 12/1982 | Walden | 220/611 |
| 4,402,421 A | 9/1983 | Ruemer, Jr. | 220/269 |
| 4,448,322 A | 5/1984 | Kraska | 220/623 |
| D279,265 S | 6/1985 | Turner et al. | D9/438 |
| 4,559,801 A | 12/1985 | Smith et al. | 72/348 |
| 4,578,007 A | 3/1986 | Diekhoff | 413/6 |
| 4,606,472 A | 8/1986 | Taube et al. | 220/500 |
| D285,661 S | 9/1986 | Brownbill | D9/435 |
| 4,674,649 A | 6/1987 | Pavely | 220/271 |
| 4,681,238 A | 7/1987 | Sanchez | 220/260 |
| 4,685,582 A | 8/1987 | Pulciani et al. | 220/606 |
| 4,716,755 A | 1/1988 | Bulso, Jr. et al. | 72/349 |
| 4,782,594 A | 11/1988 | Porucznik et al. | 30/417 |
| 4,808,052 A | 2/1989 | Bulso, Jr. et al. | 413/8 |
| 4,809,861 A | 3/1989 | Wilkinson et al. | 220/623 |
| D300,608 S | 4/1989 | Taylor et al. | D9/438 |
| D304,302 S | 10/1989 | Dalli et al. | D9/438 |
| 4,893,725 A | 1/1990 | Ball et al. | 220/269 |
| 4,930,658 A | 6/1990 | McEldowney | 220/269 |
| 5,046,637 A | * 9/1991 | Kysh | 220/610 |
| 5,049,019 A | 9/1991 | Franek et al. | 413/319 |
| 5,064,087 A | 11/1991 | Koch | 220/269 |
| 5,129,541 A | 7/1992 | Voigt et al. | 220/269 |
| 5,143,504 A | 9/1992 | Braakman | 413/6 |
| D337,521 S | 7/1993 | McNulty | D9/438 |
| 5,252,019 A | 10/1993 | Saunders et al. | 413/67 |
| D347,172 S | 5/1994 | Heynen et al. | D9/520 |
| 5,356,256 A | 10/1994 | Turner et al. | 413/8 |
| D352,898 S | 11/1994 | Vacher | D9/438 |
| 5,494,184 A | 2/1996 | Noguchi et al. | 220/269 |
| 5,582,319 A | * 12/1996 | Heyes et al. | 220/62.22 |
| 5,839,869 A | 11/1998 | Moran et al. | 413/31 |
| D406,236 S | 3/1999 | Brifcani et al. | D9/438 |
| 5,911,551 A | * 6/1999 | Moran | 413/31 |
| 5,957,647 A | 9/1999 | Hinton | 413/4 |
| 5,971,259 A | 10/1999 | Bacon | 229/5.6 |
| 6,024,239 A | 2/2000 | Turner et al. | 220/269 |
| 6,065,634 A | 5/2000 | Brifcani et al. | 220/619 |
| 6,089,072 A | 7/2000 | Fields | 72/379.4 |

### OTHER PUBLICATIONS

Decision of United States Court of Appeals for the Federal Circuit, Anheuser–Busch Companies, Inc., Metal Container Corporation, and Anheuser v. Crown Cork & Seal Technologies Corporation and Crown Cork & Seal Co. (USA), Inc., 04–1185,1188; Dec. 23, 2004, pp. 1–13.

United States Brewers Association, Inc., "Brewing Industry Recommended Can Specifications Manual," pp. 1–1, 2–1, and 3–2, Washington, DC, May 1983.

Society of Soft Drink Technologists, "Beverage Can, End, & Double Seam Dimensional Specifications," pp. 2, 1B–2 to 5, Hartfield, VA, Fourth Revision, Aug. 1993.

Beverage Can "Mini Seams" by Pete Moran published by CMB Engineering Group plc contents page, pp. 3 through 30 and figures, published mid–1980s.

"Modrn Beverage Can Double Seaming" published by Continental Beverage Packaging Cover page and 2 unnumbered pages , undated.

"Aluminium canstock" The Canmaker, Jan. 1994 pp. 38 through 43.

Notice of Opposition to a European Patent 96908205.6/828, 663 Opposed by American National Can Company (Facts and Arguments), Dec. 12, 1999, 21 pages.

Letter From Ismay Ratliff Of Crown Cork & Seal To EPO, Apr. 19, 2001, One Page, Enclosing Patentee's Observations And Amendments In Response To The Opposition, 9 pages, and Summary of Main and Auxiliary Requests, Main Request, and Auxiliary Requests 1,2, and 3, 14 pages.

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Nov. 6, 2001, Nine Pages, Beginning, "The opponent notes that the patentee has not responded to the detailed argumentation . . . " with three pages of graphics and with EPO Cover Page dated Nov. 15, 2001.

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Nov. 27, 2001, Two Pages, beginning, "I refer to the final paragraph of p. 9 of my comments of 6th November and . . . " with three page attachment having graphics and with EPO Cover Page dated Dec. 5, 2001.

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Nov. 28, 2001, One Page, beginning, "I refer to the letter from the Opponent of Nov. 6, 2001".

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Dec. 11, 2001, One Page, Beginning "I not the patentee's comments of 28th Nov.".

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Jan. 18, 2002, One Page, Beginning, "I refer to the communications of Nov. 15, 2001, Dec. 5, 2001, Jan. 7, 2002 . . . ".

Letter from Ismay Ratliff of Crown Cork & Seal to EPO, Mar. 18, 2002, Three Pages, beginning "Further to my letter of Jan. 18, 2002, I enclose further submissions in response to the Opponent's letters of 15th Nov., 27th Nov., and Dec. 11, 2001" with 10 pages of claims including Main Request, Auxiliary Request , and Auxiliary Request 2.

Letter From PRB Lawrence of Gill Jennings & Every To EPO, May 2, 2002, 7 Pages, Beginning, "I maintain all the objections in the original opposition and in the submission of the and Nov. 6–27, 2001 . . . " with cover page from EPO dated May 16, 2002.

Letter form Ismay Ratliff of Crown Cork & Seal to EPO, Jul. 4, 2002, Four Pages, Beginning, "This is in response to the Opponents' further submissions dated 2nd May 2002."

Summons to Attend Oral Proceedings Pursuant to Rule 71(1) EPC, Oct. 21, 2002, 7 pages.

Letter from PRB Lawrence of Gill Jennings & Every, Jun. 24, 2002, with Affidavit of Thomas T. Tung with Attachments A thru D, Jun. 14, 2002.

Letter form PRB Lawrence of Gill Jennings & Every, Jul. 19, 2002, with Extracts of the Pechiney Annual Report 1989, 5 pages, Triangle Industries, Inc., Annual Report, 1987, 2 pages.

Final submission by the EP patentee in the EPO opposition proceeding: European Patent Application No. 96908205.6 (now European Patent No. 0.828 663), CarnaudMetalbox Plc, Opposition by American National Can Company, (Copy), Feb. 11, 2003, with Attachments, 38 pages.

**US 6,935,826 B2**

Page 3

Final submissions by the EP opponent in the EPO opposition proceedings: European Patent Application No. 96908205.6–2308/0828663, CarnaudMetalbox Plc, (Copy), Feb. 18, 2003, with Attachments, Affidavit by John Davy, Statement of Facts of John Zappa, 53 pages.

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Feb. 19, 2003, One Page, beginning, "There are two points supplementary to my letter of 18 Feb. . . .".

Letter From PRB Lawrence Of Gill Jennings & Every To EPO, Feb. 20, 2003, Two Pages, Beginning We Have Been Considering Further The Recent Assertion By The Patentee About The Alleged Non–Enabling Nature . . . .

Interlocutory Decision of the Oppositon Division of the European Patent Office in Respect of the EP Patent No. 0828663, (Copy), May 5, 2003, 25 pages.

Grounds of Appeal against the Interlocutory Decision by the Opposition Division, (Copy), filed by EP patentee, Sep. 2, 2003, European Patent No. 0 828 663 (Formerly European Patent Application No. 96908205.6) CarnaudMetalbox Plc and CarnaudMetalbox SA Appeal against the Interlocutory Decision of the Opposition Division, May 5, 2003, with attached copies of Main Request, and Auxiliary Request 1 thru 8, 32 pages.

Grounds of Appeal against the Interlocutory Decision by the Opposition Division, (Confirmation), filed by EP opponent, Sep. 12, 2003, with attachments including graphics and English translation of JP–U57–117323 and Technical Statement of Facts of Bill Hartman in Opposition to EP 828 663, with attachments, Technical Statement by Dean Scranton, Technical Statement of Facts of Christopher Sjostrom in Opposition to EP 828 663, Technical Statement by Gary Smith for Opposition to EP 828 663, Technical Statement by Timothy L. Turner, 57 pages.

Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories; Civil Action No. 03–C–0137–S; Interrogatory No. 2; pp. 1, 9, 10, and 11. (pp. 1 and 11 are redacted); dated Jun. 16, 2003.

Opinion of the United States District Court for the Western District of Wisconsin in Anheuser–Busch Companies, Inc. v. Crown Cork & Seal Co., Inc.; Case No. 03–C–137–S; dated Nov. 20, 2003, 35 pages.

Reply Brief in the EPO Opposition Proceeding: European Patent No. 0 828 663 (Formerly European Patent Application No. 96908205.6) CarnaudMetalbox Plc and Carnaud-Metalbox SA Appeal against the Interlocutory Decision of the Opposition, Letter dated May 13, 2004, 24 pages, Letter from James P. Tanner to Ismay Ratliff dated May 14, 2004, Beginning "This is further to our discussion on May 13, 2004 . . . ", 1 page.

* cited by examiner



**FIG. 1**
*PRIOR ART*

**FIG. 2**
*PRIOR ART*

**FIG. 3**
*PRIOR ART*

Fig.4.



Fig.5.



Fig.6.



Fig.7.





Fig.8.

Fig.9.

US 6,935,826 B2

1

## CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY

This is a continuation of U.S. patent application Ser. No. 10/024,862, which issued Feb. 1, 2005 as U.S. Pat. No. 6,848,875, filed Dec. 18, 2001, which is a continuation of U.S. patent application Ser. No. 09/650,664, filed Aug. 30, 2000, now abandoned which is a continuation of U.S. patent application Ser. No. 09/552,668, filed Apr. 19, 2000, now abandoned, which is a continuation of U.S. patent application Ser. No. 08/945,698, filed Nov. 21, 1997, which issued May 23, 2000 as U.S. Pat. No. 6,065,634, which is the U.S. National Phase of PCT/GB96/00709, filed Mar. 25, 1996, which claims priority to UK 9510515.1, filed May 24, 1995.

### BACKGROUND OF THE INVENTION

This invention relates to an end wall for a container and more particularly but not exclusively to an end wall of a can body and a method for fixing the end wall to the can body by means of a double seam.

U.S. Pat. No. 4,093,102 (KRASKA) describes can ends comprising a peripheral cover hook, a chuck wall dependent from the interior of the cover hook, an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall and a central panel joined to an inner wall of the reinforcing bead by an annular outwardly convex bead. This can end is said to contain an internal pressure of 90 psi by virtue of the inclination or slope of the chuck wall, bead outer wall and bead inner wall to a line perpendicular to the centre panel. The chuck wall slope D° is between 14° and 16°, the outer wall slope E is less than 4° and the inner wall slope C° is between 10 and 16° leading into the outwardly convex bead. We have discovered that improvements in metal usage can be made by increasing the slope of the chuck wall and limiting the width of the anti peaking bead.

U.S. Pat. No. 4,217,843 (KRASKA) describes an alternative design of can end in which the countersink has inner and outer flat walls, and a bottom radius which is less than three times the metal thickness. The can end has a chuck wall extending at an angle of approximately 24° to the vertical. Conversely, the specification of our U.S. Pat. No. 5,046,637 describes a can end in which the chuck wall extends at an angle of between 12° and 20° to the vertical.

The detailed description of our U.S. Pat. No. 4,571,978 describes a method of making a can end suitable for closing a can body containing a beverage such as beer or soft drinks. This can end comprises a peripheral flange or cover hook, a chuck wall dependant from the interior of the cover hook, an outwardly concave reinforcing bead extending radially inwards from the chuck wall from a thickened junction of the chuck wall with the bead, and a central panel supported by an inner portion of the reinforcing bead. Such can ends are usually formed from a prelacquered aluminum alloy such as an aluminum magnesium manganese alloy such as alloy 5182.

The specification of our U.S. Pat. No. 5,582,319 describes a can end suitable for a beverage can and formed from a laminate of aluminum/manganese alloy coated with a film of semi crystalline thermoplastic polyester. This polyester/aluminum alloy laminate permitted manufacture of a can end with a narrow, and therefore strong reinforcing bead in the cheaper aluminum manganese alloy.

These known can ends are held during double seaming by an annular flange of chuck, the flange being of a width and height to enter the anti-peaking bead. There is a risk of scuffing if this narrow annulus slips. Furthermore a narrow annular flange of the chuck is susceptible to damage.

2

Continuing development of a can end using less metal, whilst still permitting stacking of a filled can upon the end of another, this invention provides a can end comprising a peripheral cover hook, a chuck wall dependant from the interior of the chuck wall, an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall, and a central panel supported by an inner portion of the reinforcing bead, characterized in that, the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 30° and 60°, and the concave bead narrower than 1.5 mm (0.060″). Preferably, the angle of the chuck wall to the perpendicular is between 40° and 45°.

In a preferred embodiment of the can end an outer wall of the reinforcing bead is inclined to a line perpendicular to the central panel at an angle between −15° to +15° and the height of the outer wall is up to 2.5 mm.

In one embodiment the reinforcing bead has an inner portion parallel to an outer portion joined by said concave radius.

The ratio of the diameter of the central panel to the diameter of the peripheral curl is preferably 80% or less.

The can end may be made of a laminate of thermoplastic polymer film and a sheet aluminum alloy such as a laminate of a polyethylene terephthalate film on an aluminum-manganese alloy sheet or ferrous metal typically less than 0.010 (0.25 mm) thick for beverage packaging. A lining compound may be placed in the peripheral cover hook.

In a second aspect this invention provides a method of forming a double seam between a can body and a can end according to any preceding claim, said method comprising the steps of:

placing the curl of the can end on a flange of a can body supported on a base plate, locating a chuck within the chuck wall of the can end to centre the can end on the can body flange, said chuck having a frustoconical drive surface of substantially equal slope to that of the chuck wall of the can end and a cylindrical surface portion extending away from the drive surface within the chuck wall, causing relative motion as between the assembly of can end and can body and a first operation seaming roll to form a first operation seam, and thereafter causing relative motion as between the first operation seam and a second operation roll to complete a double seam, during these seaming operations the chuck wall becoming bent to contact the cylindrical portion of the chuck.

### BRIEF DESCRIPTION OF THE FIGURES

Various embodiments will now be described by way of example and with reference to the accompanying drawings in which:

FIG. 1 is a diagrammatic sketch of known apparatus for forming a double seam;

FIG. 2 is an enlarged sectioned side view of a known chuck and can end before seaming;

FIG. 3 is a sectioned view of a fragment of a known double seam;

FIG. 4 is a sectioned side view of a can end according to this invention before edge curling;

FIG. 5 is a sectioned side view of the can end of FIG. 4 on a can body before forming of a double seam;

FIG. 6 is a like view of the can end and body during first operation seaming;

FIG. 7 is a like view of the can end and body during final second operation seaming to create a double seam;

US 6,935,826 B2

3

FIG. 8 is a fragmentary section of a chuck detail; and
FIG. 9 is a side view of the cans stacked one on the other.

DETAILED DESCRIPTION

In FIG. 1, apparatus for forming a double seam comprises
a base plate 1, an upright 2 and a top plate 3.

A lifter 4 mounted in the base plate is movable towards
and away from a chuck 5 mounted in the top plate. The top
plate supports a first operation seaming roll 6 on an arm 7 for
pivotable movement towards and away from the chuck. The
top plate also supports a second operation seaming roll 8 on
an arm 9 for movement towards and away from the chuck
after relative motion as between the first operation roll and
can end on the chuck creates a first operation seam.

As shown in FIG. 1 the chuck 5 holds a can end 10 firmly
on the flange 11 of a can body 12 against the support
provided by the lifter plate 4. Each of the first operation roll
6 and second operation roll 8 are shown clear of chuck
before the active seam forming profile of each roll is moved
in turn to form the curl of the can end and body flange to a
double seam as shown in FIG. 3.

FIG. 2 shows on an enlarged scale the chuck 5 and can
end 10. The can end comprises a peripheral curl 13, a chuck
wall 14 dependent from the interior of the curl, an outwardly
concave anti-peaking bead 15 extending inwards from the
chuck wall to support a central panel 16. Typically the chuck
wall flares outwardly from the vertical at an angle C about
12° to 15°.

The chuck 5 comprises a body 17 having a threaded bore
18 permitting attachment to the rest of the apparatus (not
shown). An annular bead 19 projects from the body 17 of the
chuck to define with the end face of the body a cavity to
receive the central panel 16 of the can end. The fit of panel
16 in annulus 19 may be slack between panel wall and
chuck.

The exterior surface of the projecting bead 19 extends
upwards towards the body at a divergent angle B of about
12° to the vertical to join the exterior of the chuck body 17
which tapers off an angle A° of about 4° to a vertical axis
perpendicular to the central panel. The outer wall of the
chuck 5 engages with the chuck wall at a low position
marked "D" within the 12° shaped portion of the chuck bead
15.

As can ends are developed with narrower anti-peaking
beads the chuck bead 19 becomes narrower and more likely
to fracture. There is also a risk of scuffing of the can end at
the drive position D which can leave unacceptable unsightly
black marks after pasteurization.

FIG. 3 shows a sectioned fragment of a typical double
seam showing a desirable overlap of body hook 21 and end
hook 20 between the can end 10 and can body 12.

FIG. 4 shows a can end, according to the invention,
comprising a peripheral cover hook 23, a chuck wall 24
extending axially and inwardly from the interior of the
peripheral cover hook, an outwardly concave reinforcing or
anti-peaking bead 25 extending radially inwards from the
chuck wall, and a central panel 26 supported or an inner
portion panel with 27. The panel wall is substantially upright
allowing for any metal spring back after pressing. The chuck
wall is inclined to an axis perpendicular to the exterior of the
central panel at an angle $C_1$ between 20° and 60°; preferably
between 40° and 45°. Typically the cross sectional radius of
the antipeaking bead is about 0.5 mm.

Preferably the anti-peaking bead 25 is parallel sided,
however the outer wall may be inclined to a line perpen-

4

dicular to the central panel at an angle between −15° to +15°
and the height $h_4$ of the outer wall may be up to 2.5 mm.

This can end is preferably made from a laminate of sheet
metal and polymeric coating. Preferably the laminate com-
prises an aluminum magnesium alloy sheet such as 5182, or
aluminum manganese alloy such as 3004 with a layer of
polyester film on one side. A polypropylene film may be
used on the "other side" if desired.

Typical dimensions of the example of the invention are:

| | | |
|---|---|---|
| d5 | overall diameter (as stamped) | 65.83 mm |
| d4 | PC diameter of seaming panel radius | 61.54 mm |
| d3 | PC diameter of seaming panel/chuck wall radius | 59.91 mm |
| $r_1$ | seaming panel/chuck wall radius | 1.27 mm |
| $r_2$ | seaming panel radius | 5.56 mm |
| $r_3$ | concave radius in antipeaking bead | <1.5 mm |
| $d_2$ | maximum diameter of antipeaking bead | 50.00 mm |
| $d_1$ | minimum diameter of antipeaking bead | 47.24 mm |
| $h_2$ | overall height of can end | 6.86 mm |
| $h_1$ | height to top of antipeaking bead | 5.02 mm |
| $h_3$ | panel depth | 2.29 mm |
| $h_4$ | outer wall height | 1.78 mm |
| c | chuck wall angle to vertical | 43° |

From these dimensions it can be calculated that the ratio
of central panel diameter of 47.24 mm to overall diameter of
can end 65.84 mm is about 0.72 to 1.

For economy the aluminum alloy is in the form of sheet
metal less than 0.010" (0.25 mm). A polyester film on the
metal sheet is typically 0.0005" (0.0125 mm).

Although this example shows an overall height $h_2$ at 6.86
mm we have also found that useful can ends may be made
with an overall height as little as 6.35 mm (0.25").

FIG. 5 shows the peripheral flange 23 of can end 22 of
FIG. 4 resting on the flange 11 of a can body 12 before
formation of a double seam as discussed with reference to
FIG. 1.

In FIG. 5 a modified chuck 30 comprises a chuck body 31
having a frustoconical drive surface 32 engaging with the
chuck wall 24 of the can end 22.

The frustoconical drive surface is inclined outwardly and
axially at an angle substantially equal to the angle of
inclination C° of between 20° and 60°; in this particular
example on chuck angle C of 43° is preferred. The drive
surface 32 is a little shorter than the chuck wall 24 of the
chuck body. The substantially cylindrical surface portion 33,
rising above the drive surface 32, may be inclined at an angle
between +4° and −4° to a longitudinal axis of the chuck. As
in FIG. 2, this modified chuck 30 has a threaded aperture to
permit attachment to the rest of the double seam forming
apparatus (not shown).

In contrast to the chuck of FIG. 2 the modified chuck 30
is designed to drive initially on the relatively large chuck
wall 32 without entering deeply into the anti-peaking bead
25. Further drive is obtained at the juncture of chuck wall 32
and cylindrical wall 33 as chuck wall of end 24 is deformed
during 1st and 2nd operation seaming FIGS. 6 and 7. The
chuck 30 shown in FIG. 5 has an annular bead of arcuate
cross section but this bead is designed to enter the chuck

US 6,935,826 B2

5

wall without scratching or scuffing a coating on the can end; not to drive on the concave bead surface as shown in FIG. **2**.

It will be understood that first operation seaming is formed using apparatus as described with reference to FIG. **1**.

FIG. **6** shows the modified can end and chuck during formation of a first operation seam shown at the left of FIG. **2** as formed by a first operation roll **34** adjacent the interfolded peripheral flange of the can end and flange **11** body **12**.

During relative rotation as between the can end **22** and first operation roll **34** the edge between the chuck drive wall **32** and cylindrical wall **33** exerts a pinching force between chuck **30** and roll **34** to deform the chuck wall of the can end as shown.

After completion of the first operation seam the first operation roll is swung away from the first operation seam and a second operation roll **38** is swung inwards to bear upon the first operation seam supported by the chuck **30**. Relative rotation as between the second operation roll **38** and first operation seam supported by a chuck wall **30** completes a double seam as shown in FIG. **7** and bring the upper portion **24** of the chuck wall **24** to lie tightly against the can body neck in a substantially upright attitude as the double seam is tightened by pinch pressure between the second operation roll **38** and chuck **30**.

Can ends according to the invention were made from aluminum alloy 5182 and an aluminum alloy 3004/polymer laminate sold by CarnaudMetalbox under the trade mark ALULITE. Each can end was fixed by a double seam to a drawn and wall ironed (DWI) can body using various chuck angles and chuck wall angle as tabulated in Table 1 which records the pressure inside a can at which the can ends failed:—

6

The early results given in Table 1 showed that the can end shape was already useful for closing cans containing relatively low pressures. It was also observed that clamping of the double seam with the "D" seam ring resulted in improved pressure retention. Further tests were done using a chuck wall angle and chuck drive surface inclined at nearly 45°: Table 2 shows the improvement observed:—

TABLE 2

| Sample Code | $h_2$ mm (inches) | $h_3$ mm (inches) | $h_4$ mm (inches) | Chuck Angles B° | |
|---|---|---|---|---|---|
| | | | | 43° | 43° with seam ring |
| J | 6.86 (0.270) | 2.39 (0.094) | 2.29 (0.09) | 4.89 (70.9) | 6.15 (89.1) |
| K | 7.11 (0.280) | 2.64 (0.104) | 2.54 (0.10) | 4.83 (70.0) | 5.98 (86.6) |
| L | 7.37 (0.290) | 2.90 (0.114) | 2.79 (0.11) | 4.74 (68.7) | 6.44 (93.3) |

Table 2 is based on observations made on can ends made of aluminum coated with polymer film (ALULITE) to have a chuck wall length of 5.029 mm (0.198") up the 43° slope.

It will be observed that the container pressures achieved for samples J, K, L, 4.89 bar (70.9 psig), 4.83 bar (70.0 psig) and 4.74 bar (68.7 psig) respectively were much enhanced by clamping the double seam.

In order to provide seam strength without use of a clamping ring, modified chucks were used in which the drive slope angle C° was about 43° and the cylindrical surface **33** was generally +4° and −4°. Results are shown in Table 3.

TABLE 1

| | CAN END DATA | | | PRESSURE IN BAR (PSIG) TO FAILURE FOR | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Minimum | CHUCK | VARIOUS SEAMING CHUCK ANGLES B° | | | | |
| Sample Code | Material Thickness mm | Diameter D1 mm | Wall Angle "C" | 23° | 10°/23° | 4°/23° | 23° with D. Seam Ring | 10°/23° with D. Seam Ring |
| A | ALULITE 0.23 | 52.12 (2.052") | 21.13° | 5.534 (80.20) | 5.734 (83.10) | 5.311 (76.97) | 6.015 (87.17) | 5.875 (85.14) |
| B | 5182 0.244 | 52.12 (2.052") | 21.13° | 5.599 (81.15) | 5.575 (80.79) | 5.381 (77.99) | 5.935 (86.01) | 5.895 (85.43) |
| C | 5182 0.245 | 52.12 (2.052") | 21.13° | 6.004 (87.02) | 5.910 (85.65) | 5.800 (84.06) | 6.224 (90.21) | 6.385 (92.54) |
| D | ALULITE 0.23 | 51.92 (2.044") | 21.13° | 5.334 (77.31) | 5.229 (75.78) | 5.238 (75.91) | 5.730 (83.04) | 5.404 (78.32) |
| E | 5182 0.224 | 51.92 (2.044") | 21.13° | 5.555 (80.50) | 5.514 (79.92) | 5.354 (77.60) | 5.895 (85.43) | 5.930 (85.94) |
| F | 5182 0.245 | 51.92 (2.044") | 23° | 5.839 (84.63) | 5.804 (84.12) | 5.699 (82.59) | 6.250 (90.58) | 6.435 (93.26) |
| G | ALULITE 0.23 | 51.92 (2.044") | 23° | | | 5.123 (74.25) | | |
| H | 5182 0.224 | (51.92) (2.044") | 23° | | | 5.474 (79.34) | | |
| I | 5182 0.245 | 51.92 (2.044") | 23° | | | 5.698 (82.58) | | |

All pressures on unaged shells in bar (psig). 5182 is an aluminum-magnesium-manganese alloy lacquered. The "ALULITE" used is a laminate of aluminum alloy and polyester film.

US 6,935,826 B2

**7**

### TABLE 3

| | | | Results | |
|---|---|---|---|---|
| SAMPLE CODE | MATERIAL | LINING COMPOUND | CHUCK ANGLES DRIVE/ WALL | PRESSURE |
| c | 0.224 5182 | with | 43° | 4.60 (66.7) |
| g | 0.23 Alulite | with | 43°/4° | 5.45 (79.0) |
| h | 0.224 5182 | with | 43°/4° | 6.46 (93.6) |
| j | 0.23 Alulite | without | 43°/4° | 5.91 (85.6) |
| k | 0.244 5182 | without | 43°/4° | 6.18 (89.6) |
| l | 0.23 Alulite | without | 43°/−4° | 5.38 (77.9) |
| m | 0.25 Alulite | without | 43°/−4° | 6.20 (89.8) |
| n | 0.23 Alulite | without | 43°/0° | 6.11 (88.5) |
| o | 0.25 Alulite | without | 43°/0° | 6.62 (95.9) |

ALL PRESSURES IN BAR (PSIG)
ALL CODES
Reform Pad Dia. 47.24 mm (1.860″) (202 Día).
6.86 mm (0.270″) unit Depth h$_2$ 2.39 mm (0.094″) Panel Depth

Table 3 shows Code "O" made from 0.25 mm Alulite to give 6.62 bar (95 psi) Pressure Test Result indicating a can end suitable for pressurized beverages. Further chucks with various land lengths (slope) were tried as shown in Table 4.

### TABLE 4

| | CHUCK WALL ANGLE | | | |
|---|---|---|---|---|
| | 43°/0° 1.9 mm LAND SHARP TRANSITION | | 43°/0° 1.27 MM LAND R 0.5 MM BLEND | |
| VARIABLE CODE | NO. D. SEAM RING | WITH D. SEAM RING | NO. D. SEAM RING | WITH D. SEAM RING |
| 7 | 6.699 (97.08) | 7.017 (101.7) | 6.779 (98.24) | 7.006 (101.54) |
| 8 | 6.315 (91.52) | 6.521 (94.5) | 6.293 (91.2) | 6.719 (90.37) |
| 9 | 6.095 (88.33) | 6.30 (91.3) | 6.238 (90.4) | 6.719 (97.38) |

ALL PRESSURES IN BAR (PSIG) CODE
7 = 0.25 mm Alulite, 47.24 mm (1.860″) Reform Pad, 6.86 mm (0.270″) h$_2$ 2.38 mm (0.094″) Panel; h$_4$ depth = 2.29 mm (0.09″)
8 = 0.23 mm Alulite, 47.24 mm (1.860″) Reform Pad, 7.11 mm (0.280″) h$_2$ Depth, 2.64 mm (0.104″) Panel; h$_4$ depth = 2.54 mm (0.10″)
9 = 0.23 mm Alulite, 47.24 mm (1.860″) Reform Pad, 7.37 mm (0.290″) h$_2$ Depth, 2.90 mm (0.114″) Panel; h$_4$ depth = 2.79 mm (0.11″)

Table 4 shows results of further development to seaming chuck configuration to bring closer the pressure resistance of ring supported and unsupported double seams.

Table 4 identifies parameters for length of generally vertical cylindrical surface **33** on the seaming chuck **30**, and also identifies a positional relationship between the chuck wall **24** of the end and the finished double seam. It will be understood from FIG. **7** shows that the forces generated by

**8**

thermal processing or carbonated products are directed towards and resisted by the strongest portions of the completed double seam.

Table 5 shows results obtained from a typical seam chuck designed to give double seam in accordance with parameters and relationships identified in Table 4. Typically:—As shown in FIG. **8** the chuck comprises a cylindrical land of length '1' typically 1.9 mm (0.075″) and frustoconical drive surface **32** inclined at an angle Y°, typically 43°, to the cylindrical to which it is joined by a radius R typically 0.5 mm (0.020″). Angle "X" is typically 90°.

### TABLE 5

| | | DIMENSIONS mm | | PRESSURE | |
|---|---|---|---|---|---|
| CODE | GAUGE | h$_2$ | h$_3$ | bar | (psi) |
| 20 | .23 mm | 7.37 (.290″) | 2.36 (.093″) | 6.383 | (92.6) |
| 21 | .23 mm | 7.37 (.290″) | 2.36 (.093″) with compound | 6.402 | (92.8) |
| 26 | .23 mm | 6.87 (.2705″) | 2.37 (.0935″) | 6.144 | (89.88) |
| 27 | .23 mm | 6.87 (.2705″) | 2.37 (.0934″) with compound | 6.071 | (88.0) |
| 28 | .23 mm | 7.37 (.290″) | 2.36 (.093″) | 6.414 | (93.0) |
| 29 | .23 mm | 7.37 (.290″) | 2.84 (.112″) | 6.725 | (97.5) |
| 30 | .23 mm | 6.86 (.270″) | 2.37 (.0935″) | 6.062 | (87.9) |
| 31 | .23 mm | 6.86 (.270″) | 2.37 (.0935″) | 6.013 | (87.2) |
| 34 | .25 mm | 7.37 (.290″) | 2.87 (.113″) | 7.787 | (112.9) |
| 36 | .25 mm | 7.32 (.288″) | 2.34 (.092″) | 7.293 | (105.8) |
| 37 | .25 mm | 7.32 (.288″) | 2.34 (.092″) with compound | 7.402 | (107.3) |
| 38 | .25 mm | 6.87 (.2705″) | 2.41 (.095″) | 7.077 | (102.6) |
| 516 | .25 mm | 6.35 (.250″) | 2.34 (.092″) with compound | 6.937 | (100.6) |

All variables made from Alulite, 10 Cans per variable.

The can ends may be economically made of thinner metal if pressure retention requirements permit because these can ends have a relatively small centre panel in a stiffer annulus.

FIG. **9** shows a can **12**a, closed according to this invention, stacked upon a like can **12**b shown sectioned so that stacking of the upper can on the lower can end is achieved by a stand bead **31**a of the upper can fits inside the chuck wall **24** of the lower can end with the weight of the upper can resting on the double seam **34** of the lower can end.

The clearance between the bottom of the upper can body and lower can end may be used to accommodate ring pull features (not shown) in the can end or promotional matter such as an coiled straw or indicia.

Using the experimental data presented above, a computer program was set up to estimate the resistance to deformation available to our can ends when joined to containers containing pressurized beverage. The last two entries on the table relate to a known 206 diameter beverage can end and an estimate of what we think the KRASKA patent teaches.

US 6,935,826 B2

9 10

TABLE 6

| END SIZE Bead OD:ID | OVERALL DIA mm | PANEL DIA $d_1$ mm | RATIO OVERALL DIA: PANEL DIA | CHUCK WALL ANGLE C° | CHUCK WALL LENGTH L mm | RE-ENFORC-ING RAD $r_3$ mm | INNER WALL HEIGHT $h_3$ mm | OUTER WALL HEIGHT $h_4$ mm | PREDICTED CUT EDGE Ø (*DENOTES ACTUAL) | ACTUAL THICK-NESS TO CONTAIN PSI |
|---|---|---|---|---|---|---|---|---|---|---|
| 206–204 | 64.39 (2.535") | 49.49 (1.9485") | 1.3010 | 33.07° | 4.22 (0.166") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 75.230 (2.9618") | 0.255 |
| 206–202 | 64.39 (2.535") | 47.33 (1.8634") | 1.3604 | 42.69° | 4.95 (0.195") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 74.272 (2.9241")* | 0.255 |
| 206–200 | 64.39 (2.535") | 45.07 (1.7744") | 1.4287 | 50.053° | 5.82 (0.229") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.713 (2.9021") | 0.255 |
| 204–202 | 62.18 (2.448") | 47.33 (1.8634") | 1.3137 | 29.78° | 3.96 (0.156") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.767 (2.9042") | 0.24 |
| 204–200 | 62.18 (2.448") | 45.07 (1.7744") | 1.3796 | 40.786° | 4.70 (0.185") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 72.911 (2.8705") | 0.24 |
| 202–200 | 71.98 (2.834") | 45.07 (1.7744") | 1.597 | 30.266° | 4.09 (0.161") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 71.984 (2.834") | 0.225 |
| 206 std | 64.69 (2.547") | 51.92 (2.044") | 1.2461 | 15.488° | 4.39 (0.173") | 0.56 (0.022") | 2.03 (0.080") | — | 76.454 (3.010")* | 0.28 |
| KRASKA estimate | 64.39 (eg 2.535") | — | — | 15° | 2.54 (0.100") | 0.81 (0.032") | 1.65 (0.065") | 2.29 (0.090") | 78.080 (3.074") | 0.292 (0.0115") |

All experiments modeled on a notional aluminum alloy of yield strength 310 mpa 0.25 mm thick. The standard was also 310 mpa BUT 0.275 mm thick.

What is claimed is:

1. A metal can end adapted to be joined to a can body for packaging beverages under pressure, said can end comprising;

a peripheral cover hook adapted to be seamed onto a can body so as to form a joint therewith;

a wall extending inwardly and downwardly from the cover hook;

an outwardly concave annular reinforcing bead extending inwardly and downwardly from the wall; and

a central panel supported by and extending inwardly from the reinforcing bead;

wherein, prior to being joined to said can body: (i) the location at which said wall extends from said peripheral cover hook defines a first point, (ii) the location at which said reinforcing bead extends from said wall defines a second point, and (iii) a line extending between the first point and the second point is inclined to an axis perpendicular to the exterior of the central panel at an angle of between 30° and 60°.

2. The can end of claim 1, wherein a base of the concave reinforcing bead is arcuate in cross-section and has a cross-sectional radius of less than 0.75 mm.

3. The can end of claim 1, wherein the base of the concave reinforcing bead is approximately semi-circular in cross section.

4. The can end of claim 1, wherein the reinforcing bead comprises an outer wall that is inclined to said axis at an angle between −15° and +15°.

5. The can end of claim 1, wherein the reinforcing bead has inner and outer walls, a lower portion of the outer wall spaced apart from a lower portion of the inner wall by less than 1.5 mm.

6. The can end of claim 1, wherein the reinforcing bead has an outer wall and an inner wall that is parallel to the outer wall, said inner wall and said outer wall being joined by a concave radius.

7. The can end of claim 1, wherein the wall extends between said first and second points along an essentially straight line.

8. The can end of claim 7, wherein the line extending between the first point and the second point is inclined to said axis at an angle between 40° and 45°.

9. The can end of claim 1, wherein the ratio of the diameter of the central panel to the diameter of the peripheral cover hook is 80% or less.

10. The can end of claim 1, wherein the can end is made of a laminate of thermoplastic polymer film and a sheet aluminium alloy.

11. The can end of claim 1, wherein the can end is made of tinplate.

12. The can end of claim 1, wherein the can end is made of electrochrome coated steel.

13. A metal can end for use in packaging beverages under pressure and adapted to be joined to a can body by a seaming process so as to form a double seam therewith using a rotatable chuck comprising first and second circumferentially extending walls, said first and second chuck walls forming a juncture therebetween, said can end comprising;

a peripheral cover hook, said peripheral cover hook comprising a seaming panel adapted to be formed into a portion of said double seam during said seaming operation;

a central panel;

a wall extending inwardly and downwardly from said cover hook, a first portion of said wall extending from said cover hook to a first point on said wall, said first wall portion adapted to be deformed during said seaming operation so as to be bent upwardly around said juncture of said chuck walls at said first point on said wall, a second portion of said wall extending from said first point to a second point forming a lowermost end of said wall, a line extending between said first and second points being inclined to an axis perpendicular to said central panel at an angle of between 30° and 60°.

14. The end according to claim 13, further comprising an annular reinforcing bead connected to said wall at said second point, said annular reinforcing bead connecting said wall to said central panel.

* * * * *

Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CROWN PACKAGING TECHNOLOGY, )
INC., Plaintiff, and CROWN CORK & )
SEAL USA, INC., )
　 )
　　　Plaintiff and Counterclaim )
　　　Defendant, )
　 )　　　Civil Action No. 05-608 (KAJ)
v. )
　 )
REXAM BEVERAGE CAN COMPANY, )
　 )
　　　Defendant and Counterclaimant. )
　 )

### DEFENDANT-COUNTERCLAIMANT REXAM BEVERAGE CAN COMPANY'S RESPONSES TO CROWN TECHNOLOGY, INC.'S AND CROWN CORK & SEAL USA, INC.'S SECOND SET OF INTERROGATORIES

Defendant-Counterclaimant Rexam Beverage Can Company ("Rexam"), through its counsel, hereby submits its general objections, specific objections and responses to Crown Packaging Technology, Inc.'s and Crown Cork & Seal USA, Inc.'s ("Plaintiffs") Second Set Of Interrogatories.

### GENERAL OBJECTIONS:

Rexam objects to Plaintiffs' Interrogatories to the extent they seek information, documents or things protected by the attorney-client privilege, are immune from discovery pursuant to the work product doctrine, or are protected or immunized by any other applicable privilege, immunity, doctrine or protection from discovery. All of the following responses and answers are made subject to this objection and none of the following responses or answers, none of the information, documents or things identified in

these Interrogatory responses, and none of the responses or answers to any other discovery attempts by Plaintiffs (including, but not limited to, questions posed at any oral deposition) will include any such privileged, protected or immune information, documents or things.

Rexam objects to each Interrogatory, including all accompanying Definitions and Instructions, to the extent that they attempt to impose upon Rexam discovery obligations beyond those required by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Delaware and/or judge specific rules and/or the Court's scheduling order establishing a discovery schedule and pretrial requirements.

Rexam objects to Plaintiffs' definition of the phrase "provide a detailed description of the factual basis" to the extent it renders the scope of any Interrogatory overly broad and/or unduly burdensome. Rexam objects to Plaintiffs' Interrogatories to the extent they pertain to former counsel, agents, employers or employees or other persons who formerly acted on behalf of Rexam. Rexam cannot reasonably be expected in all instances to speak now for former counsel, agents or employees or other persons who formerly acted on behalf of Rexam.

Rexam objects to each Interrogatory and each Definition and/or Instruction to the extent it is overly broad, unduly burdensome, vague, ambiguous, indefinite, lacking in reasonable particularity, untimely, premature or seeks information, documents or things uniquely in the possession, custody or control of Plaintiffs, its divisions, affiliates, officers, directors, employees, agents, representatives, distributors and/or customers.

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 2*

To the extent that Rexam provides a response arguably within the scope of any definition set forth by Plaintiffs, such response by Rexam shall not be construed to be an admission by Rexam as to the validity or scope of any such definition.

Rexam objects to each Interrogatory to the extent that it seeks confidential, proprietary, and/or sensitive business information. Any answers, responses, documents, things or information provided by Rexam, should be treated as "Outside Attorneys' Eyes Only," limiting disclosure to Plaintiffs' outside **trial** counsel, Woodcock Washburn, LLP and Wolf, Block, Schorr and Solis-Cohen, LLP until an appropriate protective order is entered in this case.

Discovery is ongoing, and Rexam is continuing its preparation for trial. All responses to the following Interrogatories are based on information presently known to Rexam after a reasonable effort to compile information called for by these Interrogatories. All answers are given without prejudice to Rexam's right to supplement and/or modify its responses at a later time. In addition, Rexam's objections as set forth herein are made without prejudice to Rexam's right to assert any additional or supplemental objections.

## RESPONSES

## INTERROGATORY NO. 12:

Identify the date of, all persons having knowledge of, and identify all documents demonstrating, the conception, reduction to practice, diligence from conception to reduction to practice, first sale, first offer for sale, and first disclosure to any other person of the alleged inventions claimed in the 230 and 728 patents.

*Rexam's Response to Crown's Second Set of Interrogatories*

*Page 3*

## RESPONSE TO INTERROGATORY NO. 12:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity. Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory. Subject to those objections and the General objections, Rexam believes that the following individuals have knowledge about the information sought in this Interrogatory:

> Timothy A. Turner
> Manager End Development
> Rexam Beverage Can Company
> 2250 Lively Blvd.
> Elk Grove Village, IL 60007

> Randy Forest
> Rexam Beverage Can Company
> 2250 Lively Blvd.
> Elk Grove Village, IL 60007

Further responding, Rexam first sold and offered to sell can ends incorporating the technology of the inventions of the 230 and 728 Patents after March 22, 1999, which is when Rexam completed its final testing of the patented anti-fracture score technology. Documents corroborating the final testing are identified as REX042539.

At this time, after a reasonable inquiry, Rexam is claiming a conception date of at least as early as October 17, 1997. (REX042572.) Examples of documents showing

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 4*

diligence in reduction to practice are submitted herewith, including production numbers REX042527 through REX042593.

Pursuant to Rule 33(d), Rexam has produced or is in the process of producing documents that demonstrate conception and reduction to practice as identified above. If Rexam learns of documents evidencing an earlier conception date than that disclosed above, Rexam recognizes its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 13:

Identify the date of, all persons having knowledge of, and identify all documents demonstrating, the conception, reduction to practice, and diligence from conception to reduction to practice, first sale, first offer for sale, and first disclosure to any other person of the alleged inventions claimed in the 839 patent, including the first sale, and disclosure to any other person of cans formed using methods claimed in the 839 patent.

## RESPONSE TO INTERROGATORY NO. 13:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity. Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory. Subject to those objections and the General objections, Rexam reasonably believes that the following individuals who are former employees of Rexam have knowledge about the information sought in this Interrogatory:

T. William Ames
(Last Known Address)
2010 Garden Street
Park Ridge, IL 60068

Dietrich K. Naggert
10920 Bear Island Ave
Orland Park, IL 60467

Christopher Caliendo
(Last Known Address)
235 North Harvey
Wood Dale, IL 60191.

Additionally, Andrew Halasz and Sylvon Praturlon (addresses below) may have information that is relevant to this interrogatory.

Further responding, Rexam first sold and offered to sell can ends incorporating the technology of the inventions of the 839 Patent on or about 1986. Documents that reflect this first sale will be produced and identified as being responsive to this Interrogatory.

At this time, Rexam is not claiming a priority date earlier than the filing date and/or the priority date stated on the face of the 839 patent. Conception and constructive reduction to practice are established as of the filing date of the patent application. *Stevens v. Tamai* 366 F.3d 1325, 1330-31 (Fed. Cir. 2004) ("To establish priority, parties may rely on earlier filed applications because conception and constructive reduction to practice of the subject matter described in an application occur when the application is filed.") *See also, Hyatt v. Boone,* 146 F.3d 1348, 1352 (Fed. Cir. 1998).

*Rexam's Response to Crown's Second Set of Interrogatories*

*Page 6*

Pursuant to Rule 33(d), Rexam has produced or is in the process of producing documents that demonstrate conception and reduction to practice if it is necessary to establish an earlier conception date than the priority date set forth on the face of the 839 Patent and those documents will be identified as being responsive to this Interrogatory. Rexam recognizes its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 14:

Identify the date of, all persons having knowledge of, and identify all documents demonstrating, the conception, reduction to practice, diligence from conception to reduction to practice, first sale, first offer for sale, and first disclosure to any other person of the alleged inventions claimed in the 385 and 242 patents, including the first sale, offer for sale, and disclosure to any other person of cans formed using [sic] claimed in the 385 and 242 patents.

## RESPONSE TO INTERROGATORY NO. 14:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity. Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory. Subject to those objections and the General objections, Rexam reasonably believes that the following individuals have knowledge about the information sought in this Interrogatory:

Andrew Halasz
Rexam Beverage Can Company (retired)

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 7*

2250 Lively Blvd.
Elk Grove Village, IL 60007;

Sylvan Praturlon
Rexam Beverage Can Company (retired)
2250 Lively Blvd.
Elk Grove Village, IL 60007; and

Paul Azzaline
Rexam Beverage Can Company (retired)
2250 Lively Blvd.
Elk Grove Village, IL 60007.

Further responding, Rexam believes it first sold and offered to sell equipment incorporating the technology of the inventions of the 385 and 242 Patents in or about 1994. The "sale" was an internal sale to one of Rexam's affiliates and the documents corroborating the sale will be produced and identified as being responsive to this Interrogatory.

Rexam also states that at this time it is claiming a conception date of at least as early as August 3, 1989 which is corroborated by the documents identified by production number REX042594. Documents demonstrating diligence in reduction to practice have been produced, including, for example: REX019031-032; REX019175-182; REX027103-107; REX027108; REX027112; REX027113-116; REX027173-183; REX027196-201; REX027203; REX027228-229, REX027725 and REX042594 through REX042629. Rexam recognizes its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 15:

Identify the date (or dates) Rexam first became aware, or first came to an understanding or belief, that Crown was 1) selling smooth die-necked cans, 2) using methods of smooth die necking, and 3) was using methods that infringed the 839 patent, identify all persons knowledgeable about the same, identify how Rexam first became aware of this, and identify the circumstances surrounding the same.

## RESPONSE TO INTERROGATORY NO. 15:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity. Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory. Subject to those objections and the General objections, Rexam still does not "know" that Crown's smooth die necking processes infringe the method claims of the 839 Patent, which is why Rexam pled: "Upon information and belief, a reasonable opportunity for discovery will produce evidence that can bodies that Crown USA has made in the United States are made by a method as claimed by the '839 Patent." (Rexam's Answer and Counterclaims ¶ 9.)

After Crown filed suit against Rexam in August of 2005, Rexam reviewed its patent portfolio and after a reasonable inquiry under the circumstances, specifically identified certain patents that Rexam believed discovery would provide evidentiary support for the contentions alleged in its counterclaims. *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 844-45 (D.Md. 2005).

> Counsel is reminded of the provisions of Rule 11(b)(3) that specify that by presenting a pleading to the court, an attorney or a representative party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Id.*

Thus, although Rexam may have been aware that Crown was selling cans that appeared to be manufactured using some form of a smooth die necking process there was no way to be certain that Crown was employing the methods claimed in the 839 Patent because the documents, information and equipment that will show that Crown is in fact infringing the methods claimed in the 839 Patent are in the possession, custody and control of Crown.

Rexam states that it reasonably believes that the following individuals have knowledge about the information sought in this Interrogatory:

> Andrew Halasz
> Rexam Beverage Can Company (retired)
> 2250 Lively Blvd.
> Elk Grove Village, IL 60007;
>
> Sylvan Praturlon
> Rexam Beverage Can Company (retired)
> 2250 Lively Blvd.
> Elk Grove Village, IL 60007; and
>
> Timothy A. Turner
> Manager End Development
> Rexam Beverage Can Company
> 2250 Lively Blvd.
> Elk Grove Village, IL 60007.

Rexam recognizes its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 16:

Identify the date Rexam first became aware that Crown was using equipment that it purchased from Belvac for which Belvac paid Rexam a royalty under the License Agreement between American National Can Company and Belvac effective April 17, 1994, identify all persons knowledgeable about the same, identify how Rexam first became aware of this, and identify the circumstances surrounding the same.

## RESPONSE TO INTERROGATORY NO. 16:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity.  Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory.  Rexam further objects to this interrogatory to the extent it implies that Rexam received any royalties from Belvac relating to the method claims of the 839 Patent, which it did not.  Subject to those objections and the General objections, Rexam, at this time, is not aware of ever being advised by Belvac that Crown had purchased equipment under the 1994 License Agreement with Belvac.  Belvac was not required to disclose the names of companies that it sold necking machinery to and did not identify any such companies when it paid royalties to Rexam.  However, Belvac was required to notify its customers of Rexam's patent rights.

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 11*

Additionally, even if Belvac or some third party had advised Rexam that Belvac had sold necking equipment to Crown, it would not necessarily mean that Belvac sold Crown the tooling equipment that was needed to perform the claimed smooth die necking methods of the 839 Patent.   Crown could have purchased the tooling needed to practice the methods claimed in the 839 Patent from any number of tooling manufacturers. That information is known by Crown and not by Rexam.  Rexam recognizes its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 17:

Identify the date or dates Rexam first became aware, or first came to an understanding or belief, that Crown was 1) selling cans having an internally-reformed base, 2) using methods of internal base reforming, and 3) infringing either or both of the 385 and 242 patents, identify how Rexam first became aware of this, and identify the circumstances surrounding the same.

## RESPONSE TO INTERROGATORY NO. 17:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity.   Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory.  Subject to those objections and the General objections, Rexam, at this time, still does not "know" that Crown's bottom reforming equipment and methods of reforming can bottoms infringe the method and apparatus claims of the 385

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 12*

and 242 Patents, which is why Rexam pled: "Upon information and belief, a reasonable opportunity for discovery will produce evidence that can bodies that Crown USA has made in the United States are made by a method and/or using an apparatus as claimed by the '385 [and '242] Patent[s]." (Rexam's Answer and Counterclaims ¶¶ 17 and 26.)

After Crown filed suit against Rexam in August of 2005, Rexam reviewed its patent portfolio and after a reasonable inquiry under the circumstances, specifically identified certain patents that Rexam believed discovery would provide evidentiary support for the contentions alleged in its counterclaims. *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 844-45 (D.Md. 2005).

> Counsel is reminded of the provisions of Rule 11(b)(3) that specify that by presenting a pleading to the court, an attorney or a representative party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Id.*

Thus, although Rexam may have been aware that Crown was selling cans that appeared to be manufactured using some type of bottom reforming process, there was no way to be certain that Crown was or is using an apparatus and/or employing the methods claimed in the 385 242 Patents because the documents, information and equipment that will show that Crown is in fact infringing the apparatus and method claims of the 385 and 242 Patents are in the possession, custody and control of Crown. Rexam recognizes

*Rexam's Response to Crown's Second Set of Interrogatories*

*Page 13*

its obligation to supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

## INTERROGATORY NO. 18:

Identify the date Rexam first became aware that Crown was using equipment that it purchased from Belvac which performed a process of internal base reforming, including the Belvac N-595 High Speed necker/flanger/reformer system, identify all persons knowledgeable about the same, identify how Rexam first became aware of this, and identify the circumstances surrounding the same.

## RESPONSE TO INTERROGATORY NO. 18:

Rexam objects to this Interrogatory to the extent that it seeks to discover information that is subject to the attorney/client privilege and/or the work product immunity doctrine or any other applicable immunity. Rexam also objects to this Interrogatory to the extent that it is multiple Interrogatories (*i.e.*, has multiple subparts) rather than a single Interrogatory. Subject to those objections and the General objections, Rexam, at this time, is not aware of ever being advised by anyone that Crown had purchased bottom reforming equipment, including the Belvac N-595 High Speed necker/flanger/reformer system, from Belvac.

Additionally, even if Belvac or some third party had advised any of Rexam's employees that Belvac had sold bottom reforming equipment to Crown, it would not necessarily mean that Belvac sold Crown bottom reforming equipment that infringes the 385 and 242 Patents. The documents, information and equipment that will show that Crown is in fact infringing the apparatus and method claims of the 385 and 242 Patents are in the possession, custody and control of Crown. Rexam recognizes its obligation to

*Rexam's Response to Crown's Second Set*
*of Interrogatories*

*Page 14*

supplement this answer upon discovering additional relevant information and expressly reserves the right to do so.

*Rexam's Response to Crown's Second Set of Interrogatories*

*Page 15*

FOR THE OBJECTIONS TO INTERROGATORY NOS. 12-18, THE LEGAL CONTENTIONS SET FORTH HEREIN AND THE LEGAL AUTHORITY SET FORTH IN THE ANSWERS TO INTERROGATORY NOS. 12-18:

Date: 5/10/06

George P. McAndrews
Steven J. Hampton
Richard T. McCaulley
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60661
Tel: 312.775.8000
Fax: 312.775.8100

Frederick L. Cottrell, III,
Anne Shea Gaza
Richards, Layton & Finger, P.A.
One Rodney Square, 920 N. King Street,
P.O. Box 551
Wilmington, Delaware 19899-0551
Telephone: 302-651-7700
Telecopier: 302-651-7701

*Rexam's Response to Crown's Second Set of Interrogatories*

*Page 16*

## **VERIFICATION**

I, Timothy Turner, being duly sworn, state that I am the Manager, Beverage End Development for Rexam Beverage Can Company, have read the foregoing Interrogatory responses and, believe that the information contained in the answers is true and correct based on the use of channels of communication which I would normally rely upon in my position with Rexam Beverage Can Company  As presently informed, Rexam Beverage Can Company understands that it is bound by the information set forth in the foregoing Interrogatory responses unless future information received indicates that a correction must be made.

Date: _____

                                              _____

                                              Timothy Turner
                                              Title: Manager, Beverage End
                                              Development

**Sworn to before me this _____ day**

**of May, 2006**

_____
Notary Public
My commission expires on _____ .

*Verification*

## CERTIFICATE OF SERVICE

I hereby certify that on the date this proof of service is signed below, I served the foregoing

**DEFENDANT COUNTERCLAIMANT REXAM BEVERAGE CAN COMPANY'S RESPONSES TO CROWN TECHNOLOGY'S AND CROWN USA'S FIRST SET OF INTERROGATORIES**

in the above identified action, addressed as follows:

Barry Klayman
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 N. Market Street, Suite 1001
Wilmington, DE 19801

Tel.: (302) 777-0313
Fax: (302) 778-7813

☐ **(BY FACSIMILE)**

☐ **(BY MAIL)**  By placing a true copy thereof enclosed in a sealed envelope.  I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail.

☑ **(BY OVERNIGHT COURIER)**  By placing a true copy thereof enclosed in a sealed envelope.  I placed each such sealed envelope, with fees paid for overnight delivery.

Courier

Date:  5/10/06

_Certificate of Service_