# Exhibit 4

US005222385A

# United States Patent [19]

## Halasz et al.

[11] **Patent Number:** 5,222,385

[45] **Date of Patent:** Jun. 29, 1993

[54] **METHOD AND APPARATUS FOR REFORMING CAN BOTTOM TO PROVIDE IMPROVED STRENGTH**

[75] Inventors: **Andrew Halasz,** Crystal Lake; **Sylvan Praturlon,** Chicago; **Paul Azzaline,** Crystal Lake; **Christopher Caliendo,** Bridgeview, all of Ill.

[73] Assignee: **American National Can Company,** Chicago, Ill.

[21] Appl. No.: **735,994**

[22] Filed: **Jul. 25, 1991**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 730,794, Jul. 24, 1991.

[51] Int. Cl.⁵ ............................................. **B21D 51/26**

[52] U.S. Cl. ................................. **72/117; 72/123; 72/393**

[58] Field of Search .................. 72/92, 117, 122, 123, 72/124, 125, 393; 413/69

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 744,672 | 11/1903 | Baeumle | 72/122 |
| 994,468 | 6/1911 | Kane . | |
| 1,031,264 | 7/1912 | Hinde et al. . | |
| 1,441,674 | 1/1923 | Foster et al. . | |
| 1,461,729 | 7/1923 | Foster et al. . | |
| 1,524,946 | 2/1925 | Nystrom | 72/123 |
| 2,158,312 | 5/1939 | Terrell | 72/353.4 |
| 2,618,182 | 11/1952 | Teetor | 72/122 |
| 3,417,898 | 12/1968 | Bozek et al. . | |
| 3,693,828 | 9/1972 | Kneusel | 220/66 |
| 3,904,069 | 9/1975 | Toukmanian | 220/66 |
| 3,905,507 | 9/1975 | Lyu | 220/66 |
| 3,942,673 | 3/1976 | Lyu et al. | 220/66 |
| 4,108,324 | 8/1978 | Krishnakumar et al. | 215/1 C |
| 4,120,419 | 10/1978 | Saunders | 220/66 |
| 4,134,354 | 1/1979 | Cvacho et al. | 113/120 |
| 4,147,271 | 4/1979 | Yamaguchi | 220/70 |
| 4,151,927 | 5/1979 | Cvacho et al. | 220/70 |
| 4,199,073 | 4/1980 | Gombas | 220/66 |
| 4,280,353 | 7/1981 | Murphy | 72/345 |
| 4,289,014 | 9/1981 | Maeder et al. | 72/348 |
| 4,294,097 | 10/1981 | Gombas | 72/94 |
| 4,294,373 | 10/1981 | Miller et al. | 220/70 |
| 4,341,321 | 7/1982 | Gombas | 220/66 |
| 4,372,143 | 2/1983 | Elert et al. | 72/343 |

| | | | |
|---|---|---|---|
| 4,381,061 | 4/1983 | Cerny et al. | 215/1 C |
| 4,402,419 | 9/1983 | MacPherson | 220/70 |
| 4,412,627 | 11/1983 | Houghton et al. | 220/66 |
| 4,419,319 | 12/1983 | Reynolds, Jr. et al. | 264/292 |
| 4,454,742 | 6/1984 | Gombas | 72/115 |
| 4,470,281 | 9/1984 | Kaporovich et al. | 72/28 |
| 4,515,284 | 5/1985 | Lee, Jr. et al. | 220/70 |
| 4,598,831 | 7/1986 | Nakamura et al. | 215/1 C |
| 4,620,434 | 11/1986 | Pulciano et al. | 72/347 |
| 4,650,628 | 3/1987 | Evely | 264/531 |
| 4,685,582 | 8/1987 | Pulciani et al. | 220/66 |
| 4,717,523 | 1/1988 | Evely | 264/527 |
| 4,732,292 | 3/1988 | Supik | 220/70 |
| 4,768,672 | 9/1988 | Pulciani et al. | 220/66 |
| 4,834,256 | 5/1989 | McMillin | 220/66 |
| 4,885,924 | 12/1989 | Claydon et al. | 72/109 |
| 4,919,294 | 4/1990 | Kawamoto et al. | 220/70 |
| 4,953,738 | 9/1990 | Stirbis | 220/606 |
| 5,105,973 | 4/1991 | Jentzsch et al. | 220/606 |
| 5,111,679 | 5/1992 | Kobayashi et al. | 72/348 |

#### FOREIGN PATENT DOCUMENTS

02577  8/1983  World Int. Prop. O. ........... 413/69

*Primary Examiner*—Lowell A. Larson
*Attorney, Agent, or Firm*—Wallenstein, Wagner & Hattis, Ltd.

[57] **ABSTRACT**

A method and apparatus for reforming the bottom of a drawn and ironed or a drawn beverage container, and a container made by that method. The container for which this method and apparatus are suitable has a vertical axis; a generally cylindrical side wall parallel with the vertical axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially vertical wall joining the domed portion and the convex U-shaped portion. The method comprises supporting the container in a jig, the jig having a bottom peripheral profile portion substantially corresponding in shape to the outer annular wall of the container. The bottom peripheral profile portion of the jig is then mated with the outer annular wall. A reforming roller is brought into engagement with the substantially vertical wall. The reforming roller rotates along the vertical wall and about an arcuate path, affecting the angle of the substantially vertical wall.

**27 Claims, 10 Drawing Sheets**





FIG. I

FIG. 3

FIG. 2

# FIG. IA



# FIG. 4



# FIG. 5



# FIG. 6



# FIG. 7





FIG. 8

FIG. 9

FIG. 10

# FIG. II



# FIG. 12



# FIG. 13



# FIG. 14

# FIG. 15







FIG. 16

FIG. 18

FIG. 17

# FIG. 19





FIG.20



FIG.21



FIG.22

5,222,385

**1**

## METHOD AND APPARATUS FOR REFORMING CAN BOTTOM TO PROVIDE IMPROVED STRENGTH

### RELATED APPLICATIONS

This is a continuation-in-part of U.S. application Ser. No. 07/730,794, filed by Express Mail on Jul. 24, 1991, which is in turn based upon International Application No. PCT/US 90/00451, having an International filling date of Jan. 26, 1990.

### DESCRIPTION

1. Technical Field

The invention relates generally to a method and apparatus for forming an improved, reformed can bottom, with a result that the entire can is strengthened. Typically, this method and apparatus are used for reforming the bottoms of drawn and ironed beverage containers. The reformed can bottom is an integral part of beer and beverage cans, and increases the strength of those cans above that of prior art cans.

2. Background of the Invention

Drawn and ironed containers are among the most widely used containers for carbonated beverages, including such beverages as beer and soft drinks. Such drawn and ironed containers are made from a disc of stock material which is converted into a shallow "cup" with short side walls. The base of this cup ultimately forms the bottom of the container, and the short side walls of the cup become the elongated side walls of the container.

The shallow cup is passed through a succession of ironing rings. As the spacing between successive rings becomes increasingly narrow, passage of the cup through these successive rings decreases the thickness and increases the height of the side walls.

The configuration of the bottom of such drawn and ironed containers has, over the last several years, been a topic of interest to both can manufacturers, packagers, shippers, retailers and the ultimate consumer who purchases products in such containers. This is because the configuration of the bottom is a factor in the ability of the container to resist its internal pressures and achieve adequate columnar strength. These internal pressures result from the weight, pressurization and carbonation of the liquids in the container. Columnar strength is the ability of a container to resist axial loads imposed by cans that are stacked upon other cans, as during transport and storage.

Can manufacturers are constantly striving to obtain high strength with relatively low weight. Generally, however, these goals are incompatible. Low weight, and a lowering of material cost, is generally achieved by reducing the thickness of the stock material. A reduction in stock material thickness, without more, lowers the strength of the container. Retailers and consumers desire a container which is stackable and which is of the lowest possible weight for ease in handling.

The bottom shape of the container has been found to be of importance in determining its strength. Issued U.S. patents disclosing this importance include U.S. Pat. No. 4,685,582, issued to Pulciani et al. on Aug. 11, 1987, and entitled "Container Profile With Stacking Feature." This patent, which is assigned to the assignee of the present invention, discloses a so-called ANC-1A container having an inverted dome-shaped bottom. Other U.S. patents are also generally relevant. For example,

**2**

U.S. Pat. Nos. 3,904,069, 3,979,009 and 4,412,627 disclose containers having bottom wall constructions designed to permit selected and controlled outward flexing or bulging of the bottom wall when the container is sealed and subjected to internal pressures developed by the contents.

Reforming of the bottom wall of a container of the general type described in this application has also been described in an International Publication to Metal Box plc. This publication is International Publication Number WO 83/02577, published on Aug. 4, 1983. This reforming takes place by applying a roller along the exterior transition wall 7 of the bottom of the container, rather than along its interior. See International Publication Number WO 83/02577, FIG. 7.

### SUMMARY OF THE INVENTION

The invention is a method of reforming the bottom of a drawn and ironed or a drawn beverage container. The container for which this method is suitable has a vertical axis, a generally cylindrical side wall parallel with the vertical axis, an outer annular wall, a convex U-shaped portion, a preformed bottom wall including a center domed portion, and an annular, substantially vertical wall joining the domed portion and the convex U-shaped portion. The method comprises supporting the container in a jig, the jig having a bottom peripheral profile portion substantially corresponding in shape to the outer annular wall of the container. The bottom peripheral profile portion of the jig is then mated with the outer annular wall. A reforming roller is brought into engagement with the substantially vertical wall. The reforming roller rotates along the vertical wall and about an arcuate path, affecting the angle of the substantially vertical wall.

According to one aspect of the method, the reforming roller affects the angle of the substantially vertical wall, achieving a negative angle from the vertical axis of the container.

According to another aspect of the method, the reforming roller is rotated about an arcuate path equidistant from an axis that is coaxial with the axis of the container.

According to yet another aspect of the method, the roller has a peripheral configuration which, upon engagement with the substantially vertical wall, reforms the substantially vertical wall to achieve the desired negative angle from the vertical axis of the container.

In another aspect of the invention, an actuator moves upwardly and towards the can to cause radial outward movement of a camming surface. In this way, a roller that moves as a result of the movement of this camming surface is caused to engage a substantially vertical wall. This roller may pivot, about a horizontal pivot point, from an inward non-engaging position to a radially outward position where the roller engages the substantially vertical wall.

As will be seen below, this application is also directed to an apparatus which can be used to practice the method of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a top view of a pivoting apparatus in accordance with the invention, and in a radially inward, non-engaging position.

5,222,385

3

FIG. 1A is a view of the apparatus of FIG. 1, but with the rollers in a radially outward position and engaging the wall of a container.

FIG. 2 is a side-sectional view of the apparatus of FIG. 1, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 3 is a detail of a portion of the apparatus of FIG. 2, showing the pivot pin about which the roller pivots.

FIG. 4 is a top view of a second pivoting embodiment of the apparatus in accordance with the invention.

FIG. 5 is a side-sectional view of the apparatus of FIG. 4, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 6 is a top view of a third pivoting embodiment of the apparatus in accordance with the invention.

FIG. 7 is a side-sectional view of the apparatus of FIG. 6, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 8 is a side perspective view of a container which is suitable for treatment by the process and apparatus of the invention.

FIG. 9 is an enlarged view of the lower left hand corner of the container of FIG. 8, prior to reforming.

FIG. 10 is an enlarged view of the lower left hand corner of the container of FIG. 8, after reforming.

FIG. 11 is a top view of a non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 12 is a side-sectional view of the apparatus of FIG. 11, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 13 is a top view of a second non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 14 is a side-sectional view of the apparatus of FIG. 13, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 15 is a detail of the roller and bearing of FIG. 14, taken ,along lines 15—15 of FIG. 13.

FIG. 16 is a top view of a third non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 17 is a side-sectional view of the apparatus of FIG. 16, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 18 is a detail of the actuator and dovetail slide portion of a portion of the apparatus of FIG. 16, taken along lines 18—18 of FIG. 16.

FIG. 19 is a side-sectional view of a fourth non-pivoting apparatus in accordance with the invention, including a single roller, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 20 is a photographic profile of a cross-section of a lower portion of a can reformed by a prior art process.

FIG. 21 is a photographic profile of a cross-section of a lower portion of a can reformed by the process of the present invention.

FIG. 22 is a photographic profile of a cross-section of a lower portion of a "control" can prior to reforming.

4

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

This invention is susceptible to embodiment in many different forms. The drawings and this specification show a preferred embodiment of the invention. It will be understood, however, that this disclosure is to be considered an exemplification of the principles of the invention. The inventor does not intend to limit the broadest aspect of the invention to the illustrated embodiments.

According to one aspect of the invention, the performance characteristics of a container formed by normal drawing and ironing procedures are improved by reforming the bottom end wall of the container from the initial configuration. This initial configuration is disclosed in the above-mentioned '582 patent and is shown in FIG. 8.

As described and shown in FIGS. 9 and 10 of co-pending International Application No. PCT/US 90/00451, after the fluted container has been necked, flanged, internally spray coated and externally printed, the bottom profile or countersink area of the bottom wall is reshaped. This is done by reforming the inner wall of the countersink to further improve buckle resistance and decrease can growth.

In the prior co-pending application, the finished drawn and ironed container of FIG. is supported in a suitable jig that has an internal opening which corresponds to the outer peripheral diameter of the container. The jig has a lower profile portion that conforms to the countersink wall portion the bottom wall of the container, as originally formed in accordance with the process disclosed in the '582 patent.

A plug is inserted into the upper end of the opening and securely held in the top of the container. During processing, this container is rotated about its axis. The bottom peripheral profile of the jig is in extended contact with the container bottom. A reforming roller is brought into engagement with the substantially vertical wall of the domed end of the container and is supported on a shaft. That shaft is designed to be rotated along an arcuate path around the center axis for the container. The roller has a peripheral configuration which defines a substantially vertical upwardly and outwardly tapered wall having a generally arcuate upper portion. The inner wall of the countersink is reformed to a more vertical profile while the dome is stretched to a small degree. The outer wall is held to its original configuration. Alternatively, the outer wall could also be reformed with the inner wall.

It was found in the co-pending application that this reforming operation significantly improves buckle resistance and decreases the amount of can growth, i.e., the amount that the bottom end wall is elongated when pressure is applied internally of the container.

The container produced according to the method and apparatus described in the co-pending application exhibited significantly greater column strength, i.e., resistance to crushing by vertical loads applied to the container side wall. That container also exhibited significantly less container growth during internal pressurization and improved buckle resistance. The container constructed in accordance with that invention was thus capable of being produced from stock flat disc material having a significantly reduced thickness.

The present invention is a further elaboration and refinement upon the invention described in the co-pend-

5,222,385

| 5 | 6 |

ing application. The invention is directed to the type of drawn or drawn and ironed container shown in FIG. 8. Such containers are well known in the art and are generally described and shown in U.S. Pat. No. 4,685,582, issued to the assignee of the present application on Aug. 11, 1987. This container 20 is symmetrical about a vertical axis 22. A generally cylindrical side wall 24 parallel with this vertical axis forms the panel on which graphics, such as a bottler's trademark, may be printed. An outer annular wall 26 forms a transitional portion between this side wall 24 and a convex, U-shaped portion 28 that defines a flange-like ridge. The outer annular wall 26 and U-shaped portion 28 enable these cans to be stacked. In particular, the bottom of a first can may be securely nested into the top of a second can.

The container 20 also includes a preformed bottom wall 30 including a center domed portion 32. An annular, substantially vertical wall 34 joins the domed portion 32 to the convex U-shaped portion 28. This "substantially vertical wall," for the purposes of this application, has an angle from the vertical of 0 to +5 degrees, and may be as high as +10 degrees. A positive angle is shown by angle C in FIG. 8.

Various kinds of apparatus may be used to effect the method of reforming container 20, as that method is described and claimed in the present application. As may be seen in FIGS. 1–3, one such apparatus includes a plurality of rollers 36. In a preferred embodiment, three rollers 36 may be used. The use of three rollers 36 has advantages over the use of fewer rollers, for example, a single roller. These rollers 36 are used to contact the annular, substantially vertical wall 34. The use of one roller would concentrate the forces transferred from the roller 36 to the wall 34 at one point. In contrast, three rollers 36 will spread the force on this wall 34 over three points.

As may be seen in FIG. 2, each of these rollers 36 is indirectly secured to a pivot plate 38. Securing the rollers 36 are a bearing clamp 40 and a bearing 42.

Each of the pivot plates 38 are designed to pivot around their respective pivot pin 44 (FIG. 1). In this embodiment, this pivot pin 44 is vertically disposed. As will be seen in other embodiments, however, other pivot pins may instead be horizontally disposed.

A tooling head collar 46 provides a support surface for a jig 48, or lower can support. This jig 48 is removable from the tooling head collar 46 and may be interchanged with another jig having a different shape to accommodate containers having various different lower end configurations.

Each jig 48 is manufactured so as to accommodate and support a given size container 20. Accordingly, a bottom peripheral profile portion 50 of the jig 48 substantially corresponds in shape to the outer annular wall 26 of the container 20. As will be explained below, this bottom peripheral profile portion 50 of the jig 48 is mated with the outer annular wall 26 of the container 20. In the embodiment shown in FIG. 2, it may be seen that the lowermost part 52 of this jig 48 also corresponds in shape to the radially outermost region of the convex U-shaped portion 28. In this way, the jig 48 provides greater support around the circumference of the container 20.

Supporting the bearings 42 and enclosing portions of the reforming rollers 36 are bearing housings 54. These bearing housings 54 are fixedly secured to their respective pivot plates 38. Thus, the motion of the pivot plates 38 and the bearing housings 54 is synchronous.

Movement of the pivot plates 38 and bearing housings 54 is facilitated by a vertically movable actuator ball 56. As shown in FIG. 2, this actuator ball 56 is positioned in a first, non-engaging position. In this position, the actuator ball 56 merely abuts against camming surfaces 58 on the bearing housing 54.

Upward, vertical movement urges the actuator ball 56 to a second position in which it contacts and pushes upwardly on camming surfaces 58. As a result of the shape of these camming surfaces 58, this upward movement causes the bearing housing 54 and pivot plate 38 to pivot together about the pivot pin 44 in a radially outward direction. This pivoting movement continues until rollers 36 contact the annular, substantially vertical wall 34.

The rollers 36, upon contact with this wall 34, rotate rapidly to force the wall from its configuration as shown in FIG. 9 to that shown in FIG. 10. Particularly, FIGS. 9 and 10 depict a vertical line V—V. Vertical line V—V is coincident with the vertical axis of container 20. FIG. 9 shows a container 20 before reforming. In this FIG. 9, the wall is substantially vertical and may even have a so-called "positive" angle. With reference to FIG. 9, a positive angle is one in which wall 34 angles upwardly and to the right of line V—V. An example of a positive angle appears as angle C in FIG. 9.

After contact by rollers 36, as described above, this wall 34 is reformed to achieve a negative angle A. The results of reforming are shown, for example, in FIG. 10. As a result of this negative angle, as will be described below, container 20 has enhanced physical characteristics.

In the apparatus of FIGS. 1–3, the pivot pin is substantially vertically disposed. As a result, the pivoting of the bearing housing 54 and the pivot plate 38 occur in a horizontal plane. Other embodiments, as described below, will include horizontal pivot pins, causing pivoting of the bearing housing and pivot plate in a vertical plane.

As may be seen in greatest detail in FIGS. 2 and 3, the reforming rollers 36 have a perimeter portion 60 that is downwardly tapered. It is this downwardly tapered configuration 60 which, when rollers 36 are placed against the substantially vertical wall 34, results in the reformation of that substantially vertical wall 34 to a wall having a negative angle.

After the completion of the reforming, the rollers 36 are retracted from the wall 34 and return from the position shown in FIG. 1A to the original position shown in FIG. 2. Each pivot plate 38 and bearing housing 54 assembly returns to this original position as a result of pressure from a compression spring 62.

A slight modification of the reforming apparatus described above is shown in FIGS. 4 and 5. Each of the components of the embodiments of FIGS. 1–3 are correspondingly numbered in FIGS. 4 and 5, except that the reference numerals for the corresponding components in the latter figures include the suffix "a." The only component which differs significantly is the spring. Spring 62 of FIGS. 1–3 is an extension spring, whereas spring 62a of FIGS. 4–5 is a compression spring. As a result, the apparatus of FIGS. 4–5 works in a slightly different manner than the apparatus of FIGS. 1–3. Particularly, in FIGS. 1–3, upon completion of reforming, the rollers 36 are retracted from the wall 34 and returned to their original position as a result of both applied pressure from an extension spring 62 and retraction of the actuator ball 56. In FIGS. 4–5, upon comple-

7

8

tion of the reforming, the rollers 36a are retracted from the wall 34 and returned to their original position as a result of both applied pressure from a compression spring 62a and retraction of actuator ball 56a.

Still another embodiment is shown in FIGS. 6 and 7. This embodiment also includes three rollers 64. As may be seen in FIG. 7, each of these rollers 64 is indirectly secured to a pivot plate 66. Securing the rollers 64 are a bearing clamp 68 and at least one bearing 70.

Each of the pivot plates 66 are designed to pivot around their respective pivot pin 72. As may be seen in FIG. 7, this pivot pin 72 is horizontally disposed. As a result, the pivoting of the bearing housing 74 and the pivot plate 66 occur in a vertical plane.

As in the embodiment of FIGS. 1–3, the embodiment includes a tooling head collar 76 to provide a support surface for a jig 78, or lower can support. This jig 78 is also removable from the tooling head collar 76 and may be interchanged with another jig having a different shape to accommodate containers having various different lower end configurations.

Movement of the pivot plates 66 and bearing housings 74 is facilitated by a vertically movable actuator 80. As shown in FIG. 7, this actuator 80 is positioned in a first, non-engaging position. In this position, the actuator 80 merely abuts against camming surfaces 82 on the bearing housing 74.

Upward, vertical movement urges the actuator 80 to a second position in which it contacts and pushes upwardly on camming surfaces 82. As a result, this upward movement causes the bearing housing 74 and pivot plate 66 to pivot together about the pivot pin 72 in a vertical plane and a radially outward direction. This pivoting movement continues until rollers 64 contact the annular, substantially vertical wall 34 of container 20.

After the completion of the reforming, the rollers 64 are retracted from the wall 34 and return from the position shown in the dotted lines of FIG. 7 to the original position shown the solid lines of FIG. 7. Each pivot plate 66 and bearing housing 74 assembly returns to this original position as a result of pressure from a coil spring 84. This coil spring 84 encircles and is held upon a retaining post 86. The coil spring 84 is tensioned by compressing it between the top, abutting surfaces of bearing housings 74 and hex nut 88 secured to retaining post 86.

Still other embodiments of the present apparatus are depicted at FIGS. 11–19. As will be seen, the apparatus of these embodiments does not include a pivot pin for moving the rollers into engagement with the vertical wall 34 of the container 20. In many other respects, however, these apparatus are similar to those shown in FIGS. 1–7.

For example, the apparatus of FIG. 11 includes three rollers 90 secured to a bearing housing 92 with a bearing 94 and a bearing clamp 96. The solid lines of FIG. 12 show these rollers in a radially inward position, where the rollers 90 do not contact the annular, substantially vertical wall 34. These rollers 90 are movable from this position to a radially outward position where the roller contacts the annular, substantially vertical wall 34.

Bearing housings 92 are spring-biased. In particular, a tensioned garter spring 98 (FIG. 12) encircles the lower periphery of bearing housings 92. In their first, non-engaging position, as shown in the dotted lines of FIG. 11, the housings 92 and their related rollers 90 are re-

tained by the garter spring 98 in a radially inward position.

The second position of the bearing housings 92 is shown in the solid lines of FIG. 11. The housings 92 attain this position when actuator 100 is moved upwardly against camming surfaces 102 of housing 92. This upward movement of actuator 100 pushes housings 92 radially outwardly until rollers 90 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with rollers 90, the actuator 100 is withdrawn and garter spring 98 urges the bearing housings 92 back into their first position.

As in the prior embodiments, the embodiment of FIGS. 11 and 12 includes a jig 104 to support the container along a bottom peripheral profile portion 106 that substantially corresponds in shape to the outer annular wall 26 of the container 20. As in the prior embodiments, the perimeter 108 of the rollers 90 also include a downwardly tapered configuration which, when placed against the substantially vertical wall 34, reforms that wall 34 to achieve a negative angle relative to the vertical axis of the container 20.

Another three-roller, non-pivoting embodiment of the apparatus of the invention is shown in FIGS. 13–15. In this embodiment, the spring 110 is horizontally disposed and acts along a horizontal plane. In particular, spring 110 is in contact with the bearing housing 112 to bias that housing 112 in a radially inward direction.

The apparatus of FIG. 13 also includes three rollers 114 secured to bearing housing 112 with a bearing 116 and a bearing clamp 118. These rollers 114 are movable from their first position, as shown in FIGS. 13–15, to a radially outward position where the rollers 114 contact the annular, substantially vertical wall 34 of container 20.

Upward movement of actuator 120 pushes housings 112 radially outwardly until rollers 122 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with rollers 122, the actuator 120 is withdrawn and spring 110 urges the bearing housings 112 back into their first position.

Still another non-pivoting embodiment of the apparatus of the invention is shown in FIGS. 16–18. In this embodiment, however, conventional rollers are not used. Rather, four roller segments 124 are mounted to the apparatus for radial movement towards and away from the container 20. In the dashed lines of FIG. 16, these segments 124 are shown in their normal, radially inward position. They are held in this position by a plurality of horizontally tensioned springs 126.

Each of these roller segments 124 may be secured to a housing 128. When an actuator 130 is moved vertically upwardly against camming surfaces 132, housings 128 are pushed radially outwardly, as shown in the solid lines of FIG. 16, until roller segments 124 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with roller segments 124, the actuator 130 is withdrawn and springs 126 urge the housings 128 back into their first position.

A final version of a non-pivoting embodiment of the apparatus is shown in FIG. 19. In this embodiment, only one roller is used. This roller 134 has a substantially larger diameter than the rollers of the other embodiments. In fact, the diameter of this roller 134 is in excess of 80 percent of the distance between opposite, facing walls 34. This distance is referred to as "D" in FIG. 19.

Again, this embodiment includes a compression spring 136 which acts along a horizontal plane. Spring

5,222,385

**9**

136 is in contact with the housing 138 to bias that housing 138 in a rightward direction. Roller 134 is movable from its first position, as shown in FIG. 19, to a radially outward position where the roller 134 contacts the annular, substantially vertical wall 34.

In the embodiment of FIG. 19, actuator 140 is vertically movable, as in the apparatus of the previously described embodiments. The actuator 140 encircles a dovetailed collar 142, and this collar 142 is fixed. Housing 138, however, is horizontally movable when it is contacted by the upwardly-moving actuator 140. The horizontal movement of the housing 138 is guided by a dovetail groove in collar 142.

Housing 138 abuts against camming surface 146. In addition, with reference to the directions depicted in FIG. 19, spring 136 biases the housing 183 to the right. Thus, housing 138 is moved to the right along the camming surface 146. This rightward movement of the housing 138 continues until the periphery of roller 134 contacts the wall 34 of container 20. Reforming takes place in the same manner as with a three-roller apparatus, but at only one point along the wall 34.

Upon completion of treatment of the wall 34 with roller 134, the actuator 140 is lowered and the weight of the housing/roller combination moves that assembly back onto the collar 142, i.e., to the first position of the device. This collar 142 acts as a limit on the downward movement of the housing 138. In this embodiment and in the others, it is preferred that the actuator 140 rotate at the same speed as housing 138.

A comparison of FIGS. 9 and 10 will disclose the differences in containers before and after bottom reforming in accordance with the method of the present invention. Particularly, FIG. 9 shows a container before bottom reforming. The wall 34 in this Figure is substantially vertical and may, in fact, have a slight positive angle. For the left portion of the container shown in FIG. 9, a wall 34 having a slight positive angle would angle upwardly and to the right from vertical line V—V. Referring to FIG. 8, and stated differently, when wall 34 has a positive angle, diameter D1 is greater than diameter D2.

As stated above, the container of FIG. 8 that may be reformed in accordance with this invention is generally symmetrical about a vertical axis 22. The container includes a generally cylindrical side wall 24 parallel with the vertical axis 22. The container 20 also includes an outer annular wall 26, a convex U-shaped portion 28, a preformed bottom wall 30, including a center domed portion 32 and an annular, substantially vertical wall 34 joining the domed portion 32 and the convex U-shaped portion 28.

The method of the present invention may be described with reference to the apparatus of FIGS. 1–3, and comprises several steps. The container 20 is supported on a jig 48. This jig 48 has a bottom peripheral profile portion 50 substantially corresponding in shape to the outer annular wall 26 of the container 20.

The bottom peripheral profile portion 50 of jig 48 is mated with the outer annular wall 26. Reforming rollers 36 are brought into engagement with the substantially vertical wall 34. The reforming rollers 36 rotate along the vertical wall 34 and about an arcuate path. Through this action, the reforming rollers 36 affect the angle of the substantially vertical wall 34. In particular, the angle of the substantially vertical wall 34 is changed to a negative angle from the vertical axis of the container 20.

**10**

As may be seen in FIG. 1A, the reforming rollers 36 of this apparatus are rotated about an arcuate path equidistant from an axis that is coaxial with the axis 22 of the container. Alternatively, as may be appreciated from a review of FIG. 19 and the above description of that figure, the reforming roller 134 of that apparatus may be rotated about an arcuate path that is equidistant from an axis that is not coaxial with the axis 22 of the container 20. This occurs because in order to contact wall 34, the roller 134 is shifted to the right of its position as shown in FIG. 19.

In one aspect of the preferred method, the roller has a peripheral configuration which, upon engagement with the substantially vertical wall, reforms the substantially vertical wall to achieve a negative angle from the vertical axis of the container. Rollers having such peripheral configurations are shown in FIGS. 2, 5, 7, 12, 14, 17 and 19.

In another aspect of the preferred method, an actuator is moved upwardly and towards the can to move a camming surface and its housing in a radially outward direction. In this way, a roller movable with the camming surface engages the substantially vertical wall.

In still another aspect of the preferred method, the roller pivots about a horizontal pivot point. In particular, the apparatus may include a horizontal pivot point about which the roller pivots from an inward non-engaging position to a radially outward position wherein the roller engages the substantially vertical wall.

After this method of bottom reforming, as may be seen in FIG. 10, the wall 34 exhibits a slight negative angle A. The preferred angle A for an ANC-2A can should be no more than approximately −4 degrees from the vertical line V—V. It is believed that enhanced container characteristics could be attained by providing a wall 34 with an angle of as much as −8 to −10 degrees. For the left portion of the container shown in FIG. 10, a wall 34 having a slight negative angle would angle upwardly and to the left from vertical line V—V. Referring to FIG. 8, and stated differently, when wall 34 has a negative angle, diameter D1 would be less than diameter D2. The value of the preferred negative angle will vary with each different type of container.

Containers treated by the apparatus of the present invention exhibit distinctly superior characteristics when compared with prior art, untreated containers. Actual tests were conducted with so-called "ANC-2A" cans, manufactured by American National Can Company. These cans have the general configurations shown in FIGS. 8 and 9, and were made with aluminum having a gauge of 0.120. Prior to treatment of these cans by the method and apparatus of the invention, they exhibited the following characteristics:

TABLE 1

| | ANC-2A Dome Profile | | | |
| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .394 | .052 | 98 | .0120 |
| Maximum | .396 | .060 | 99 | .0120 |
| Average | .396 | .054 | 98 | .0120 |
| Spec/Aim | .394 | .064 | 90 | Ref. |
| | ±.004 | Max. | Min. | |

After treatment of these cans by the method and one roller apparatus of the invention, they exhibited the following characteristics:

| 11 | 12 |

TABLE 2

graphic profile of a lower portion of one of these cans is shown in FIG. 21.

### TABLE 4

| | | Body Strength 206/211 × 413 ANC Reformed Dome Cans | | | | |
|---|---|---|---|---|---|---|
| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness | Vertical Crush | Sidewall Thickness |
| Minimum | .397 | .003 | 104 | .0120 | 305 | .0045 |
| Maximum | .410 | .007 | 114 | .0120 | 321 | .0047 |
| Average | .404 | .004 | 110 | .0120 | 313* | .0046 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. | 250 Min. | |

**ANC Reformed Dome Profile**

| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .398 | .005 | 110 | .0120 |

Table 5 shows results from "control" cans, i.e., standard ANC-2A cans prior to reforming of any kind. A photographic profile of a lower portion of one of these cans is shown in FIG. 22.

### TABLE 5

| | | Body Strength 206/211 × 413 ANC-2A Control Cans | | | | |
|---|---|---|---|---|---|---|
| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness | Vertical Crush | Sidewall Thickness |
| Minimum | .396 | .042 | 98 | .0120 | 310 | .0045 |
| Maximum | .398 | .059 | 99 | .0120 | 322 | .0046 |
| Average | .397 | .048 | 99 | .0120 | 317* | .0046 |
| Spec/Aim | .394 ±.004 | .064 Max. | 90 Min. | Ref. | 250 Min. | |

| Maximum | .401 | .006 | 113 | .0120 |
|---|---|---|---|---|
| Average | .400 | .006 | 112 | .0120 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. |

As can be seen from a comparison of these Tables, Buckles Strength of treated cans increased from an average of about 99 to an average of 112. The growth in the dome, which results in a downward extension of the U-shaped portion 28 of the container of FIG. 9, decreased markedly from an average of 0.555 to 0.006 inches.

When these same tests were conducted with cans produced from 0.110 gauge aluminum, Buckle Strength increased from an average of 90 to an average of 98. Dome growth tests after 90 PSIG were not meaningful, as the non-reformed cans failed and buckled at 90 PSIG or less.

A number of standard ANC-2C cans were reformed. In the first set, the outside of the countersink was reformed in accordance with a CMB method, and its results are shown in Table 3. A photographic profile of a lower portion of one of these cans is shown in FIG. 20.

As may be seen by a comparison of these Tables, dome growth in the untreated can of Table 5 averages 0.050 inches. Both reformed cans show improvement, but the average dome growth of the can reformed in accordance with the present invention is significantly superior (0.005 vs. 0.010 inches). Buckle strength is also somewhat improved (109 vs. 106). Finally, while average vertical crush of the present reformed cans (313) remains virtually the same as the control can (317), average vertical crush drops significantly (279) after reforming by the CMB method.

As may be seen by a comparison of FIGS. 20 and 21, the can that has been reformed in accordance with the present invention is less sharply peaked along its bottom. As a result, this can will exhibit more stability when moving along fill lines.

While the specific embodiments have been demonstrated and described, numerous modifications come to mind without markedly departing from the spirit of the invention. The scope of protection is, thus, only intended to be limited by the scope of the accompanying Claims.

We claim:

1. A method of reforming the bottom of a container,

### TABLE 3

| | | Body Strength 206/211 × 413 CMB Reformed Dome Cans | | | | |
|---|---|---|---|---|---|---|
| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness | Vertical Crush | Sidewall Thickness |
| Minimum | .385 | .008 | 104 | .0120 | 266 | .0045 |
| Maximum | .395 | .012 | 109 | .0120 | 292 | .0046 |
| Average | .392 | .010 | 106 | .0120 | 279* | .0046 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. | 250 Min. | |

The second set of cans was reformed on the inside of the countersink in accordance with the present invention, and its results are shown in Table 4. A photo-

said container having a longitudinal axis; a generally cylindrical side wall parallel with said longitudinal axis;

5,222,385

13 | 14

an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said method comprising:

supporting said container in a jig, said jig having a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container;

mating the bottom peripheral profile portion of said jig with said outer annular wall; and

bringing a reforming roller into engagement with said substantially longitudinal wall, said reforming roller rotating along said longitudinal wall and about an arcuate path in substantially radial alignment with said mating of said jig and said outer annular; wherein said reforming roller affects the angle of said substantially longitudinal wall.

2. The method of claim 1, wherein said reforming roller affects the angle of said substantially longitudinal wall by achieving a negative angle from the longitudinal axis of said controller.

3. The method of claim 1, said reforming roller being rotated about an arcuate path equidistant from an axis that is coaxial with the axis of the container.

4. The method of claim 3, wherein an actuator moves longitudinally towards said container to thereby radially outwardly move a camming surface so that a roller actuatable with said camming surface is moved into engagement with said substantially longitudinal wall.

5. The method of claim 1, said roller having a longitudinally tapered peripheral configuration which, upon engagement with said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle from the longitudinal axis of said container.

6. The method of claim 1, including a radial pivot point about which said roller pivots from an inward non-engaging position to an radially outward position wherein said roller engages said substantially longitudinal wall.

7. An apparatus for the reforming of the bottom of a container, said container having a longitudinal axis; a side wall parallel with said longitudinal axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said apparatus comprising:

means for radially inwardly supporting said outer annular wall;

a plurality of rollers, each of said rollers movable from a radially inward position where said each of rollers does not contact said annular, substantially longitudinal wall to a radially outward position where each of said rollers contact said annular, substantially longitudinal wall;

a plurality of pivot plates, one associated with a respective one of said rollers, to which each of said rollers is secured;

a plurality of pins, one associated with each of said pivot plates, about which each of said pivot plates pivots; and

a movable actuator, said actuator being movable from a first, non-engaging position to a second position in which said actuator contacts a camming surface to move each of said pivot plates and said respective rollers into engagement with said annular,

substantially longitudinal wall in substantial radial alignment with said radial inward supporting means.

8. The apparatus of claim 7, wherein said pin is substantially vertical.

9. The apparatus of claim 7, wherein said pin is substantially horizontal.

10. The apparatus of claim 7, wherein said radially inwardly supporting means comprises a jig, said jig supporting said container along a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, said bottom peripheral profile portion of said jig being mated with said outer annular wall of said container.

11. The apparatus of claim 7, wherein the perimeter of each of said rollers has downwardly tapered configuration which, when placed against said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle relative to the longitudinal axis of said container.

12. The apparatus of claim 7, wherein said apparatus includes three rollers.

13. An apparatus for the reforming of the bottom of a container, said container having a longitudinal axis; a side wall parallel with said longitudinal axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said apparatus comprising:

a roller being movable from a radially inward position where said roller does not contact said annular, substantially longitudinal wall to a radially outward position where said roller contacts said annular, substantially longitudinal wall, the perimeter of said rollers having a downwardly tapered configuration which, when placed against said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle relative to the longitudinal axis of said container;

a pivot plate to which said roller is secured;

a pin about which said pivot plate pivots;

a jig, said jig supporting said container along a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, said bottom peripheral profile portion of said jig being mated with said outer annular wall of said container; and

an actuator being movable from a first, non-engaging position to a second position in which said actuator contacts a camming surface to move said pivot plate and said rollers into engagement with said annular, substantially longitudinal wall in substantially radial alignment with said mating of said jig and said outer annular wall.

14. The apparatus of claim 13, wherein said pin is substantially vertical.

15. The apparatus of claim 13, wherein said pin is substantially horizontal.

16. An apparatus for the reforming of the bottom of a container, said container having a longitudinal axis; a generally cylindrical side wall parallel with said longitudinal axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said apparatus comprising:

5,222,385

| 15 | 16 |

a jig, said jig supporting said container along a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, said bottom peripheral profile portion of said jig being mated with said outer annular wall of said container;

a roller movable from a radially inward position where said roller does not contact said annular, substantially longitudinal wall to a radially outward position where said roller contacts said annular substantially longitudinal wall;

a spring;

a housing biased by said spring, said roller being secured to said housing; and

an actuator being movable from a first, non-engaging position to a second position in which said actuator contacts said housing to move said housing and said roller into engagement with said annular, substantially longitudinal wall in substantial radial alignment with said jig.

**17.** A method of reforming the bottom of a container, said container having a longitudinal and a radial axis, a generally cylindrical side wall parallel with said longitudinal axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said method comprising:

providing radially inward support for said container;

providing a reforming roller; and

moving said reforming roller radially into engagement with said substantially longitudinal wall, said reforming roller rotating along said longitudinal wall and about an arcuate path in substantial radial alignment with said radial inward support;

wherein said reforming roller affects the angle of said substantially longitudinal wall.

**18.** The method of claim 17, wherein said reforming roller affects the angle of said substantially longitudinal wall by achieving a negative angle from the longitudinal axis of said container.

**19.** The method of claim 17, said reforming roller being rotated about an axis that is coaxial with the longitudinal axis of the container.

**20.** The method of claim 19, wherein an actuator moves upwardly and towards said container to thereby radially outwardly move a camming surface so that a roller actuatable with said camming surface is moved into engagement with said substantially longitudinal wall.

**21.** The method of claim 17, said roller having a tapered peripheral configuration which, upon engagement with said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle from the longitudinal axis of said container.

**22.** The method of claim 17, including a radial pivot point about which said roller pivots from an inward non-engaging position to an radially outward position wherein said roller engages said substantially longitudinal wall.

**23.** An apparatus for the reforming of a bottom of a container, said container having a longitudinal axis; a side wall parallel with said axis; an outer annular wall; a convex U-shaped portion; a preformed bottom wall including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said apparatus comprising:

means for radially inwardly supporting said container;

a roller means movable from a radially inward position where said roller does not contact said longitudinal wall to a radially outward position where said roller contacts said annular, substantially vertical wall;

a pivot plates to which said roller is secured;

a pin about which said pivot plate pivots; and

means for moving said pivot plate about said pivot pin to engage said roller with said longitudinal wall in substantially radial alignment with said supporting means to affect the angle of said substantially longitudinal wall.

**24.** The apparatus of claim 23 wherein said moving means comprises a vertically movable actuator, said actuator being movable from a first, non-engaging position to a second position in which said actuator contacts a camming surface to move said pivot plate and said rollers into engagement with said annular substantially longitudinal wall.

**25.** The apparatus of claim 23, wherein said radially inwardly supporting means comprises a jig, said jig supporting said container along a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, said bottom peripheral profile portion of said jig being mated with said outer annular wall of said container.

**26.** The apparatus of claim 23, wherein the perimeter of said roller has a tapered configuration which, when placed against said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle relative to the longitudinal axis of said container.

**27.** The apparatus of claim 23, wherein said apparatus includes three rollers.

* * * * *

55

60

65

Exhibit 5

US005697242A

# United States Patent [19]

## Halasz et al.

[11] Patent Number: 5,697,242

[45] Date of Patent: *Dec. 16, 1997

[54] **METHOD AND APPARATUS FOR REFORMING CAN BOTTOM TO PROVIDE IMPROVED STRENGTH**

[75] Inventors: **Andrew Halasz**, Crystal Lake; **Sylvan Praturlon**, Oak Park; **Paul Azzaline**, Crystal Lake; **Christopher Caliendo**, Wood Dale, all of Ill.

[73] Assignee: **American National Can Company**, Chicago, Ill.

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,222,385.

[21] Appl. No.: **670,324**

[22] Filed: **Jun. 25, 1996**

### Related U.S. Application Data

[62] Division of Ser. No. 563,900, Nov. 22, 1995, abandoned, which is a continuation of Ser. No. 343,837, Nov. 23, 1994, abandoned, which is a continuation of Ser. No. 212,647, Mar. 3, 1994, abandoned, which is a continuation of Ser. No. 50,526, Apr. 20, 1993, abandoned, which is a continuation of Ser. No. 735,994, Jul. 25, 1991, Pat. No. 5,222,385, which is a continuation-in-part of Ser. No. 730,794, filed as PCT/US90/00451, Jan. 26, 1990, Pat. No. 5,349,837.

[51] Int. Cl.⁶ .................................................. **B21D 51/26**

[52] U.S. Cl. ............................................. **72/117**; 72/379.4

[58] Field of Search ............................... 72/111, 110, 94, 72/117, 122, 123, 124, 125, 379.4; 413/69

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 994,468 | 6/1911 | Kane . |
| 1,031,264 | 7/1912 | Hinde et al. . |
| 1,441,674 | 1/1923 | Foster et al. . |
| 1,461,729 | 7/1923 | Foster et al. . |
| 2,158,312 | 5/1939 | Terrell . |
| 3,417,898 | 12/1968 | Bozek et al. . |
| 3,693,828 | 9/1972 | Kneusel et al. . |
| 3,904,069 | 9/1975 | Toukmanian . |
| 3,905,507 | 9/1975 | Lyu . |
| 3,942,673 | 3/1976 | Lyu et al. . |

| | | |
|---|---|---|
| 4,108,324 | 8/1978 | Krishnakumar et al. . |
| 4,120,419 | 10/1978 | Saunders . |
| 4,134,354 | 1/1979 | Cvacho et al. . |
| 4,147,271 | 4/1979 | Yamaguchi . |
| 4,151,927 | 5/1979 | Cvacho et al. . |
| 4,199,073 | 4/1980 | Gombas . |
| 4,280,353 | 7/1981 | Murphy . |
| 4,289,014 | 9/1981 | Maeder et al. . |
| 4,294,097 | 10/1981 | Gombas . |
| 4,294,373 | 10/1981 | Miller et al. . |
| 4,341,321 | 7/1982 | Gombas . |
| 4,372,143 | 2/1983 | Elert et al. . |
| 4,381,061 | 4/1983 | Cerny et al. . |
| 4,402,419 | 9/1983 | MacPherson . |
| 4,412,627 | 11/1983 | Houghton et al. . |
| 4,419,319 | 12/1983 | Reynolds, Jr. et al. . |
| 4,454,742 | 6/1984 | Gombas . |
| 4,470,281 | 9/1984 | Kaporovich et al. . |
| 4,515,284 | 5/1985 | Lee, Jr. et al. . |

(List continued on next page.)

*Primary Examiner*—Lowell A. Larson
*Attorney, Agent, or Firm*—Wallenstein & Wagner, Ltd.

[57] **ABSTRACT**

A method and apparatus for reforming a bottom of a drawn and ironed beverage container is disclosed. The container has a longitudinal axis and a side wall parallel with the longitudinal axis. The bottom has an outer annular wall, a convex U-shaped portion and a preformed bottom wall. The preformed bottom wall includes a center domed portion. The bottom further has an annular, substantially longitudinal wall joining the domed portion and the convex U-shaped portion. The apparatus comprises a roller movable from an inward position where the roller does not contact the annular, substantially longitudinal wall to an outward position where the roller contacts the annular, substantially longitudinal wall, and a movable actuator to move the roller into engagement with and circumferentially about the annular, substantially longitudinal wall to reform the substantially longitudinal wall. The movable actuator moves the roller into engagement with the annular, substantially longitudinal wall to reform the substantially longitudinal wall to achieve a negative angle (A) relative to the longitudinal axis of the container.

**22 Claims, 10 Drawing Sheets**



**5,697,242**
Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,598,831 | 7/1986 | Nakamura et al. . |
| 4,620,434 | 11/1986 | Pulciano et al. . |
| 4,650,628 | 3/1987 | Evely . |
| 4,685,582 | 8/1987 | Pulciani et al. . |
| 4,717,523 | 1/1988 | Evely . |
| 4,722,215 | 2/1988 | Taube et al. . |
| 4,732,292 | 3/1988 | Supik . |
| 4,768,672 | 9/1988 | Pulciani et al. . |
| 4,834,256 | 5/1989 | McMillin . |
| 4,885,924 | 12/1989 | Claydon et al. . |
| 4,919,294 | 4/1990 | Kawamoto et al. . |
| 4,953,738 | 9/1990 | Stirbis . |
| 5,016,463 | 5/1991 | Johansson et al. . |
| 5,024,077 | 6/1991 | Bulso, Jr. et al. . |
| 5,069,052 | 12/1991 | Porucznik et al. . |
| 5,105,973 | 4/1992 | Jentzsch et al. . |
| 5,111,679 | 5/1992 | Kobayashi et al. . |
| 5,222,385 | 6/1993 | Halasz et al. ............................ 72/117 |
| 5,253,500 | 10/1993 | Willoughby . |
| 5,341,667 | 8/1994 | Lee, Jr. . |
| 5,372,028 | 12/1994 | Brilman et al. . |
| 5,433,098 | 7/1995 | Bowlin et al. . |
| 5,467,628 | 11/1995 | Bowlin et al. . |



# FIG. IA



# FIG. 4



# FIG. 5



# FIG. 6



# FIG. 7





FIG. 8





FIG. 9



FIG. 10

# FIG. II



# FIG. I2



FIG. 13



FIG. 14



FIG. 15





FIG. 16

FIG. 18

FIG. 17

# FIG. 19



FIG.20



FIG.21



FIG.22



5,697,242

## 1

### METHOD AND APPARATUS FOR REFORMING CAN BOTTOM TO PROVIDE IMPROVED STRENGTH

#### RELATED APPLICATIONS

This is a divisional application of U.S. application Ser. No. 08/563,900, filed Nov. 22, 1995, now abandoned, which is a continuation of U.S. application Ser. No. 08/343,837, filed Nov. 23, 1994, now abandoned, which is a continuation of U.S. application Ser. No. 08/212,647, filed Mar. 3, 1994, now abandoned, which is a continuation of U.S. application Ser. No. 08/050,526, filed Apr. 20, 1993, now abandoned, which is a continuation-in-part of U.S. application Ser. No. 07/735,994, filed Jul. 25, 1991 (now U.S. Pat. No. 5,222,385) which is a continuation-in-part of U.S. application Ser. No. 07/730,794, filed Jul. 24, 1991 (now U.S. Patent No. 5,349,837), which is in turn based upon International Application No. PCT/US 90/00451, having an International filing date of Jan. 26, 1990.

#### TECHNICAL FIELD

The invention relates generally to a method and apparatus for reforming the bottoms of drawn and ironed beverage containers (or cans). The reformed can bottom is an integral part of beer and beverage cans, and increases the strength of those cans above that of prior art cans.

#### BACKGROUND OF THE INVENTION

Drawn and ironed cans are among the most widely used cans for carbonated beverages, including such beverages as beer and soft drinks. Such drawn and ironed cans are made from a disc of stock material which is converted into a shallow "cup" with short side walls. The base of this cup ultimately forms the bottom of the can, and the short side walls of the cup become the elongated side walls of the can.

The shallow cup is passed through a succession of ironing rings. As the spacing between successive rings becomes increasingly narrow, passage of the cup through these successive rings decreases the thickness and increases the height of the side walls.

The configuration of the bottom of such drawn and ironed cans has, over the last several years, been a topic of interest to both can manufacturers, packagers, shippers, retailers and the ultimate consumer who purchases products in such cans. This is because the configuration of the bottom is a factor in the ability of the can to resist its internal pressures and achieve adequate columnar strength. These internal pressures result from the weight, pressurization and carbonation of the liquids in the can. Columnar strength is the ability of a can to resist axial loads imposed by cans that are stacked upon other cans, as during transport and storage.

Can manufacturers are constantly striving to obtain high strength with relatively low weight. Generally, however, these goals are incompatible. Low weight, and a lowering of material cost, is generally achieved by reducing the thickness of the stock material. A reduction in stock material thickness, without more, lowers the strength of the can. Retailers and consumers desire a container which is stackable and which is of the lowest possible weight for ease in handling.

The bottom shape of the container has been found to be of importance in determining its strength. Issued U.S. patents disclosing this importance include U.S. Pat. No. 4,685,582, issued to Pulciani et al. on Aug. 11, 1987, and entitled "Container Profile With Stacking Feature." This patent,

## 2

which is assigned to the assignee of the present invention, discloses a so-called ANC-1A container having an inverted dome-shaped bottom. Other U.S. patents are also generally relevant. For example, U.S. Pat. Nos. 3,904,069, 3,979,009 and 4,412,627 disclose containers having bottom wall constructions designed to permit selected and controlled outward flexing or bulging of the bottom wall when the container is sealed and subjected to internal pressures developed by the contents.

Reforming of the bottom wall of a container of the general type described in this application has also been described in an International Publication to Metal Box plc. This publication is International Publication Number WO 83/02577, published on Aug. 4, 1983. This reforming takes place by applying a roller along the exterior transition wall 7 of the bottom of the container, rather than along its interior. See International Publication Number WO 83/02577, FIG. 7.

#### SUMMARY OF THE INVENTION

It is an object of the invention to provide an apparatus for reforming a bottom of a drawn and ironed beverage container. The container has a longitudinal axis and a side wall parallel with the longitudinal axis. The bottom has an outer annular wall, a convex U-shaped portion, a preformed bottom wall, including a center domed portion, and an annular, substantially longitudinal wall joining the domed portion and the convex U-shaped portion.

In accordance with the present invention, the apparatus comprises a roller movable from a radially inward position where the roller does not contact the annular, substantially longitudinal wall to a radially outward position where the roller contacts the annular, substantially longitudinal wall, and a movable actuator to move the roller into engagement with and circumferentially about the annular, substantially longitudinal wall to reform the substantially longitudinal wall.

It is comprehended that the movable actuator moves the roller into engagement with the annular, substantially longitudinal wall to reform the substantially longitudinal wall to achieve a negative angle (A) relative to the longitudinal axis of the container.

It is further comprehended that the apparatus includes a plurality of rollers. Each of the rollers is movable from a radially inward position where the rollers do not contact the annular, substantially longitudinal wall to a radially outward position where the rollers contact the annular, substantially longitudinal wall.

It is still further comprehended that the apparatus includes a radially inward support for the container. The radially inward support may comprises a jig supporting the container in opposition to the rollers along a lower end of the container. For example, the jig may have a bottom peripheral profile portion substantially corresponding in shape to the outer annular wall of the container, such that the bottom peripheral profile portion of the jig is mated with the outer annular wall of the container.

It is a further object of the invention to provide a method of reforming a bottom of a drawn and ironed container. The container has a longitudinal axis and a generally cylindrical side wall parallel with the longitudinal axis. The bottom has an outer annular wall, a convex U-shaped portion, a preformed bottom wall including a center domed portion, and an annular, substantially longitudinal wall joining the domed portion and the convex U-shaped portion.

In accordance with the invention, the method comprises providing the drawn and ironed container, providing a

5,697,242

3

reforming roller, and moving the reforming roller radially into engagement with the substantially longitudinal wall. The reforming roller rotates along the longitudinal wall and circumferentially about an arcuate path, wherein the reforming roller affects the angle of the substantially longitudinal wall.

It is comprehended that the reforming roller affects the angle of the substantially longitudinal wall by achieving a negative angle (A) from the longitudinal axis of the container.

It is further comprehended that a radial inward support for the container is provided. The radial inward support may include supporting the container in a jig which supports the container along a lower end of the container. For example, the jig may include a bottom peripheral profile portion substantially corresponding in shape to the outer annular wall of the container, and the bottom peripheral profile portion of the jig mates with the outer annular wall.

Other features and advantages of the invention will be apparent from the following specification taken in conjunction with the following drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a top view of a pivoting apparatus in accordance with the invention, and in a radially inward, non-engaging position.

FIG. 1A is a view of the apparatus of FIG. 1, but with the rollers in a radially outward position and engaging the wall of a container.

FIG. 2 is a side-sectional view of the apparatus of FIG. 1, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 3 is a detail of a portion of the apparatus of FIG. 2, showing the pivot pin about which the roller pivots.

FIG. 4 is a top view of a second pivoting embodiment of the apparatus in accordance with the invention.

FIG. 5 is a side-sectional view of the apparatus of FIG. 4, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 6 is a top view of a third pivoting embodiment of the apparatus in accordance with the invention.

FIG. 7 is a side-sectional view of the apparatus of FIG. 6, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 8 is a side perspective view of a container which is suitable for treatment by the process and apparatus of the invention.

FIG. 9 is an enlarged view of the lower left hand corner of the container of FIG. 8, prior to reforming.

FIG. 10 is an enlarged view of the lower left hand corner of the container of FIG. 8, after reforming.

FIG. 11 is a top view of a non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 12 is a side-sectional view of the apparatus of FIG. 11, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 13 is a top view of a second non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 14 is a side-sectional view of the apparatus of FIG. 13, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

4

FIG. 15 is a detail of the roller and bearing of FIG. 14, taken along lines 15—15 of FIG. 13.

FIG. 16 is a top view of a third non-pivoting embodiment of the apparatus in accordance with the invention.

FIG. 17 is a side-sectional view of the apparatus of FIG. 16, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 18 is a detail of the actuator and dovetail slide portion of a portion of the apparatus of FIG. 16, taken along lines 18—18 of FIG. 16.

FIG. 19 is a side-sectional view of a fourth non-pivoting apparatus in accordance with the invention, including a single roller, and with a container shown in solid lines above the apparatus and in phantom lines in place for processing by the apparatus.

FIG. 20 is a photographic profile of a cross-section of a lower portion of a can reformed by a prior art process.

FIG. 21 is a photographic profile of a cross-section of a lower portion of a can reformed by the process of the present invention.

FIG. 22 is a photographic profile of a cross-section of a lower portion of a "control" can prior to reforming.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

This invention is susceptible of embodiment in many different forms. The drawings and this specification show a preferred embodiment of the invention. It will be understood, however, that this disclosure is to be considered an exemplification of the principles of the invention. The inventors do not intend to limit the broadest aspect of the invention to the illustrated embodiments.

According to one aspect of the invention, the performance characteristics of a container formed by normal drawing and ironing procedures are improved by reforming the bottom end wall of the container from the initial configuration. This initial configuration is disclosed in the above-mentioned '582 patent and is shown in FIG. 8.

As described and shown in FIGS. 9 and 10 of copending International Application No. PCT/US 90/00451, after the fluted container has been necked, flanged, internally spray coated and externally printed, the bottom profile or countersink area of the bottom wall is reshaped. This is done by reforming the inner wall of the countersink to further improve buckle resistance and decrease can growth.

In the prior co-pending application, the finished drawn and ironed container of FIG. 11 is supported in a suitable jig that has an internal opening which corresponds to the outer peripheral diameter of the container. The jig has a lower profile portion that conforms to the countersink wall portion the bottom wall of the container, as originally formed in accordance with the process disclosed in the '582 patent.

A plug is inserted into the upper end of the opening and securely held in the top of the container. During processing, this container is rotated about its axis. The bottom peripheral profile of the jig is in extended contact with the container bottom. A reforming roller is brought into engagement with the substantially vertical wall of the domed end of the container and is supported on a shaft. That shaft is designed to be rotated along an arcuate path around the center axis for the container. The roller has a peripheral configuration which defines a substantially vertical upwardly and outwardly tapered wall having a generally arcuate upper portion. The inner wall of the countersink is reformed to a more

5,697,242

5

vertical profile while the dome is stretched to a small degree. The outer wall is held to its original configuration. Alternatively, the outer wall could also be reformed with the inner wall.

It was found in the co-pending application that this reforming operation significantly improves buckle resistance and decreases the amount of can growth, i.e., the amount that the bottom end wall is elongated when pressure is applied internally of the container.

The container produced according to the method and apparatus described in the co-pending application exhibited significantly greater column strength, i.e., resistance to crushing by vertical loads applied to the container side wall. That container also exhibited significantly less container growth during internal pressurization and improved buckle resistance. The container constructed in accordance with that invention was thus capable of being produced from stock flat disc material having a significantly reduced thickness.

The present invention is a further elaboration and refinement upon the invention described in the copending application. The invention is directed to the type of drawn or drawn and ironed container shown in FIG. 8. Such containers are well known in the art and are generally described and shown in U.S. Pat. No. 4,685,582, issued to the assignee of the present application on Aug. 11, 1987. This container 20 is symmetrical about a vertical axis 22. A generally cylindrical side wall 24 parallel with this vertical axis forms the panel on which graphics, such as a bottler's trademark, may be printed. An outer annular wall 26 forms a transitional portion between this side wall 24 and a convex, U-shaped portion 28 that defines a flange-like ridge. The outer annular wall 26 and U-shaped portion 28 enable these cans to be stacked. In particular, the bottom of a first can may be securely nested into the top of a second can.

The container 20 also includes a preformed bottom wall 30 including a center domed portion 32. An annular, substantially vertical wall 34 joins the domed portion 32 to the convex U-shaped portion 28. This "substantially vertical wall," for the purposes of this application, has an angle from the vertical of 0 to +5 degrees, and may be as high as +10 degrees. A positive angle is shown by angle C in FIG. 8.

Various kinds of apparatus may be used to effect the method of reforming container 20, as that method is described and claimed in the present application. As may be seen in FIGS. 1–3, one such apparatus includes a plurality of rollers 36. In a preferred embodiment, three rollers 36 may be used. The use of three rollers 36 has advantages over the use of fewer rollers, for example, a single roller. These rollers 36 are used to contact the annular, substantially vertical wall 34. The use of one roller would concentrate the forces transferred from the roller 36 to the wall 34 at one point. In contrast, three rollers 36 will spread the force on this wall 34 over three points.

As may be seen in FIG. 2, each of these rollers 36 is indirectly secured to a pivot plate 38. Securing the rollers 36 are a bearing clamp 40 and a bearing 42.

Each of the pivot plates 38 are designed to pivot around their respective pivot pin 44 (FIG. 1). In this embodiment, this pivot pin 44 is vertically disposed. As will be seen in other embodiments, however, other pivot pins may instead be horizontally disposed.

A tooling head collar 46 provides a support surface for a jig 48, or lower can support. This jig 48 is removable from the tooling head collar 46 and may be interchanged with another jig having a different shape to accommodate containers having various different lower end configurations.

6

Each jig 48 is manufactured so as to accommodate and support a given size container 20. Accordingly, a bottom peripheral profile portion 50 of the jig 48 substantially corresponds in shape to the outer annular wall 26 of the container 20. As will be explained below, this bottom peripheral profile portion 50 of the jig 48 is mated with the outer annular wall 26 of the container 20. In the embodiment shown in FIG. 2, it may be seen that the lowermost part 52 of this jig 48 also corresponds in shape to the radially outermost region of the convex U-shaped portion 28. In this way, the jig 48 provides greater support around the circumference of the container 20.

Supporting the bearings 42 and enclosing portions of the reforming rollers 36 are bearing housings 54. These bearing housings 54 are fixedly secured to their respective pivot plates 38. Thus, the motion of the pivot plates 38 and the bearing housings 54 is synchronous.

Movement of the pivot plates 38 and bearing housings 54 is facilitated by a vertically movable actuator ball 56. As shown in FIG. 2, this actuator ball 56 is positioned in a first, non-engaging position. In this position, the actuator ball 56 merely abuts against camming surfaces 58 on the bearing housing 54.

Upward, vertical movement urges the actuator ball 56 to a second position in which it contacts and pushes upwardly on camming surfaces 58. As a result of the shape of these camming surfaces 58, this upward movement causes the bearing housing 54 and pivot plate 38 to pivot together about the pivot pin 44 in a radially outward direction. This pivoting movement continues until rollers 36 contact the annular, substantially vertical wall 34.

The rollers 36, upon contact with this wall 34, rotate rapidly to force the wall from its configuration as shown in FIG. 9 to that shown in FIG. 10. Particularly, FIGS. 9 and 10 depict a vertical line V—V. Vertical line V—V is coincident with the vertical axis of container 20. FIG. 9 shows a container 20 before reforming. In this FIG. 9, the wall is substantially vertical and may even have a so-called "positive" angle. With reference to FIG. 9, a positive angle is one in which wall 34 angles upwardly and to the right of line V—V. An example of a positive angle appears as angle C in FIG. 9.

After contact by rollers 36, as described above, this wall 34 is reformed to achieve a negative angle A. The results of reforming are shown, for example, in FIG. 10. As a result of this negative angle, as will be described below, container 20 has enhanced physical characteristics.

In the apparatus of FIGS. 1–3, the pivot pin is substantially vertically disposed. As a result, the pivoting of the bearing housing 54 and the pivot plate 38 occur in a horizontal plane. Other embodiments, as described below, will include horizontal pivot pins, causing pivoting of the bearing housing and pivot plate in a vertical plane.

As may be seen in greatest detail in FIGS. 2 and 3, the reforming rollers 36 have a perimeter portion 60 that is downwardly tapered. It is this downwardly tapered configuration 60 which, when rollers 36 are placed against the substantially vertical wall 34, results in the reformation of that substantially vertical wall 34 to a wall having a negative angle.

After the completion of the reforming, the rollers 36 are retracted from the wall 34 and return from the position shown in FIG. 1A to the original position shown in FIG. 2. Each pivot plate 38 and bearing housing 54 assembly returns to this original position as a result of pressure from a compression spring 62.

5,697,242

7

A slight modification of the reforming apparatus described above is shown in FIGS. 4 and 5. Each of the components of the embodiments of FIGS. 1–3 are correspondingly numbered in FIGS. 4 and 5, except that the reference numerals for the corresponding components in the latter figures include the suffix "a." The only component which differs significantly is the spring. Spring 62 of FIGS. 1–3 is an extension spring, whereas spring 62a of FIGS. 4–5 is a compression spring. As a result, the apparatus of FIGS. 4–5 works in a slightly different manner than the apparatus of FIGS. 1–3. Particularly, in FIGS. 1–3, upon completion of reforming, the rollers 36 are retracted from the wall 34 and returned to their original position as a result of both applied pressure from an extension spring 62 and retraction of the actuator ball 56. In FIGS. 4–5, upon completion of the reforming, the rollers 36a are retracted from the wall 34 and returned to their original position as a result of both applied pressure from a compression spring 62a and retraction of actuator ball 56a.

Still another embodiment is shown in FIGS. 6 and 7. This embodiment also includes three rollers 64. As may be seen in FIG. 7, each of these rollers 64 is indirectly secured to a pivot plate 66. Securing the rollers 64 are a bearing clamp 68 and at least one bearing 70.

Each of the pivot plates 66 are designed to pivot around their respective pivot pin 72. As may be seen in FIG. 7, this pivot pin 72 is horizontally disposed. As a result, the pivoting of the bearing housing 74 and the pivot plate 66 occur in a vertical plane.

As in the embodiment of FIGS. 1–3, the embodiment includes a tooling head collar 76 to provide a support surface for a jig 78, or lower can support. This jig 78 is also removable from the tooling head collar 76 and may be interchanged with another jig having a different shape to accommodate containers having various different lower end configurations.

Movement of the pivot plates 66 and bearing housings 74 is facilitated by a vertically movable actuator 80. As shown in FIG. 7, this actuator 80 is positioned in a first, non-engaging position. In this position, the actuator 80 merely abuts against camming surfaces 82 on the bearing housing 74.

Upward, vertical movement urges the actuator 80 to a second position in which it contacts and pushes upwardly on camming surfaces 82. As a result, this upward movement causes the bearing housing 74 and pivot plate 66 to pivot together about the pivot pin 72 in a vertical plane and a radially outward direction. This pivoting movement continues until rollers 64 contact the annular, substantially vertical wall 34 of container 20.

After the completion of the reforming, the rollers 64 are retracted from the wall 34 and return from the position shown in the dotted lines of FIG. 7 to the original position shown the solid lines of FIG. 7. Each pivot plate 66 and bearing housing 74 assembly returns to this original position as a result of pressure from a coil spring 84. This coil spring 84 encircles and is held upon a retaining post 86. The coil spring 84 is tensioned by compressing it between the top, abutting surfaces of bearing housings 74 and hex nut 88 secured to retaining post 86.

Still other embodiments of the present apparatus are depicted at FIGS. 11–19. As will be seen, the apparatus of these embodiments does not include a pivot pin for moving the rollers into engagement with the vertical wall 34 of the container 20. In many other respects, however, these apparatus are similar to those shown in FIGS. 1–7.

8

For example, the apparatus of FIG. 11 includes three rollers 90 secured to a bearing housing 92 with a bearing 94 and a bearing clamp 96. The solid lines of FIG. 12 show these rollers in a radially inward position, where the rollers 90 do not contact the annular, substantially vertical wall 34. These rollers 90 are movable from this position to a radially outward position where the roller contacts the annular, substantially vertical wall 34.

Bearing housings 92 are spring-biased. In particular, a tensioned garter spring 98 (FIG. 12) encircles the lower periphery of bearing housings 92. In their first, non-engaging position, as shown in the dotted lines of FIG. 11, the housings 92 and their related rollers 90 are retained by the garter spring 98 in a radially inward position.

The second position of the bearing housings 92 is shown in the solid lines of FIG. 11. The housings 92 attain this position when actuator 100 is moved upwardly against camming surfaces 102 of housing 92. This upward movement of actuator 100 pushes housings 92 radially outwardly until rollers 90 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with rollers 90, the actuator 100 is withdrawn and garter spring 98 urges the bearing housings 92 back into their first position.

As in the prior embodiments, the embodiment of FIGS. 11 and 12 includes a jig 104 to support the container along a bottom peripheral profile portion 106 that substantially corresponds in shape to the outer annular wall 26 of the container 20. As in the prior embodiments, the perimeter 108 of the rollers 90 also include a downwardly tapered configuration which, when placed against the substantially vertical wall 34, reforms that wall 34 to achieve a negative angle relative to the vertical axis of the container 20.

Another three-roller, non-pivoting embodiment of the apparatus of the invention is shown in FIGS. 13–15. In this embodiment, the spring 110 is horizontally disposed and acts along a horizontal plane. In particular, spring 110 is in contact with the bearing housing 112 to bias that housing 112 in a radially inward direction.

The apparatus of FIG. 13 also includes three rollers 114 secured to bearing housing 112 with a bearing 116 and a bearing clamp 118. These rollers 114 are movable from their first position, as shown in FIGS. 13–15, to a radially outward position where the rollers 114 contact the annular, substantially vertical wall 34 of container 20.

Upward movement of actuator 120 pushes housings 112 radially outwardly until rollers 122 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with rollers 122, the actuator 120 is withdrawn and spring 110 urges the bearing housings 112 back into their first position.

Still another non-pivoting embodiment of the apparatus of the invention is shown in FIGS. 16–18. In this embodiment, however, conventional rollers are not used. Rather, four roller segments 124 are mounted to the apparatus for radial movement towards and away from the container 20. In the dashed lines of FIG. 16, these segments 124 are shown in their normal, radially inward position. They are held in this position by a plurality of horizontally tensioned springs 126.

Each of these roller segments 124 may be secured to a housing 128. When an actuator 130 is moved vertically upwardly against camming surfaces 132, housings 128 are pushed radially outwardly, as shown in the solid lines of FIG. 16, until roller segments 124 contact the annular, substantially vertical wall 34. Upon completion of treatment of the wall 34 with roller segments 124, the actuator 130 is withdrawn and springs 126 urge the housings 128 back into their first position.

5,697,242

9

A final version of a non-pivoting embodiment of the apparatus is shown in FIG. 19. In this embodiment, only one roller is used. This roller 134 has a substantially larger diameter than the rollers of the other embodiments. In fact, the diameter of this roller 134 is in excess of 80 percent of the distance between opposite, facing walls 34. This distance is referred to as "D" in FIG. 19.

Again, this embodiment includes a compression spring 136 which acts along a horizontal plane. Spring 136 is in contact with the housing 138 to bias that housing 138 in a rightward direction. Roller 134 is movable from its first position, as shown in FIG. 19, to a radially outward position where the roller 134 contacts the annular, substantially vertical wall 34.

In the embodiment of FIG. 19, actuator 140 is vertically movable, as in the apparatus of the previously described embodiments. The actuator 140 encircles a dovetailed collar 142, and this collar 142 is fixed. Housing 138, however, is horizontally movable when it is contacted by the upwardly-moving actuator 140. The horizontal movement of the housing 138 is guided by a dovetail groove in collar 142.

Housing 138 abuts against camming surface 146. In addition, with reference to the directions depicted in FIG. 19, spring 136 biases the housing 183 to the right. Thus, housing 138 is moved to the right along the camming surface 146. This rightward movement of the housing 138 continues until the periphery of roller 134 contacts the wall 34 of container 20. Reforming takes place in the same manner as with a three-roller apparatus, but at only one point along the wall 34.

Upon completion of treatment of the wall 34 with roller 134, the actuator 140 is lowered and the weight of the housing/roller combination moves that assembly back onto the collar 142, i.e., to the first position of the device. This collar 142 acts as a limit on the downward movement of the housing 138. In this embodiment and in the others, it is preferred that the actuator 140 rotate at the same speed as housing 138.

A comparison of FIGS. 9 and 10 will disclose the differences in containers before and after bottom reforming in accordance with the method of the present invention. Particularly, FIG. 9 shows a container before bottom reforming. The wall 34 in this Figure is substantially vertical and may, in fact, have a slight positive angle. For the left portion of the container shown in FIG. 9, a wall 34 having a slight positive angle would angle upwardly and to the right from vertical line V—V. Referring to FIG. 8, and stated differently, when wall 34 has a positive angle, diameter D1 is greater than diameter D2.

As stated above, the container of FIG. 8 that may be reformed in accordance with this invention is generally symmetrical about a vertical axis 22. The container includes a generally cylindrical side wall 24 parallel with the vertical axis 22. The container 20 also includes an outer annular wall 26, a convex U-shaped portion 28, a preformed bottom wall 30, including a center domed portion 32 and an annular, substantially vertical wall 34 joining the domed portion 32 and the convex U-shaped portion 28.

The method of the present invention may be described with reference to the apparatus of FIGS. 1–3, and comprises several steps. The container 20 is supported on a jig 48. This jig 48 has a bottom peripheral profile portion 50 substantially corresponding in shape to the outer annular wall 26 of the container 20.

The bottom peripheral profile portion 50 of jig 48 is mated with the outer annular wall 26. Reforming rollers 36 are

10

brought into engagement with the substantially vertical wall 34. The reforming rollers 36 rotate along the vertical wall 34 and about an arcuate path. Through this action, the reforming rollers 36 affect the angle of the substantially vertical wall 34. In particular, the angle of the substantially vertical wall 34 is changed to a negative angle from the vertical axis of the container 20.

As may be seen in FIG. 1A, the reforming rollers 36 of this apparatus are rotated about an arcuate path equidistant from an axis that is coaxial with the axis 22 of the container. Alternatively, as may be appreciated from a review of FIG. 19 and the above description of that figure, the reforming roller 134 of that apparatus may be rotated about an arcuate path that is equidistant from an axis that is not coaxial with the axis 22 of the container 20. This occurs because in order to contact wall 34, the roller 134 is shifted to the right of its position as shown in FIG. 19.

In one aspect of the preferred method, the roller has a peripheral configuration which, upon engagement with the substantially vertical wall, reforms the substantially vertical wall to achieve a negative angle from the vertical axis of the container. Rollers having such peripheral configurations are shown in FIGS. 2, 5, 7, 12, 14, 17 and 19.

In another aspect of the preferred method, an actuator is moved upwardly and towards the can to move a camming surface and its housing in a radially outward direction. In this way, a roller movable with the camming surface engages the substantially vertical wall.

In still another aspect of the preferred method, the roller pivots about a horizontal pivot point. In particular, the apparatus may include a horizontal pivot point about which the roller pivots from an inward non-engaging position to a radially outward position wherein the roller engages the substantially vertical wall.

After this method of bottom reforming, as may be seen in FIG. 10, the wall 34 exhibits a slight negative angle A. The preferred angle A for an ANC-2A can should be no more than approximately −4 degrees from the vertical line V—V. It is believed that enhanced container characteristics could be attained by providing wall 34 with an angle of as much as −8 to −10 degrees. For the left portion of the container shown in FIG. 10, a wall 34 having a slight negative angle would angle upwardly and to the left from vertical line V—V. Referring to FIG. 8, and stated differently, when wall 34 has a negative angle, diameter D1 would be less than diameter D2. The value of the preferred negative angle will vary with each different type of container.

Containers treated by the apparatus of the present invention exhibit distinctly superior characteristics when compared with prior art, untreated containers. Actual tests were conducted with so-called "ANC-2A" cans, manufactured by American National Can Company. These cans have the general configurations shown in FIGS. 8 and 9, and were made with aluminum having a gauge of 0.120. Prior to treatment of these cans by the method and apparatus of the invention, they exhibited the following characteristics:

TABLE 1

| | | ANC-2A Dome Profile | | |
|---|---|---|---|---|
| | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
| Minimum | .394 | .052 | 98 | .0120 |
| Maximum | .396 | .060 | 99 | .0120 |

5,697,242

11

12

### TABLE 1-continued

ANC-2A Dome Profile

|  | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Average | .396 | .054 | 98 | .0120 |
| Spec/Aim | .394 ± .004 | .064 Max. | 90 Min. | Ref. |

After treatment of these cans by the method and one roller apparatus of the invention, they exhibited the following characteristics:

### TABLE 2

ANC Reformed Dome Profile

|  | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .398 | .005 | 100 | .0120 |
| Maximum | .401 | .006 | 113 | .0120 |
| Average | .400 | .006 | 112 | .0120 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. |

As can be seen from a comparison of these Tables, Buckle Strength of treated cans increased from an average of about 99 to an average of 112. The growth in the dome, which results in a downward extension of the U-shaped portion 28 of the container of FIG. 9, decreased markedly from an average of 0.055 to 0.006 inches.

When these same tests were conducted with cans produced from 0.110 gauge aluminum, Buckle Strength increased from an average of 90 to an average of 98. Dome growth tests after 90 PSIG were not meaningful, as the non-reformed cans failed and buckled at 90 PSIG or less.

A number of standard ANC-2A cans were reformed. In the first set, the outside of the countersink was reformed in accordance with a CMB method, and its results are shown in Table 3. A photographic profile of a lower portion of one of these cans is shown in FIG. 20.

### TABLE 3

Body Strength
206/211 × 413 CMB Reformed Dome Cans

|  | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .385 | .008 | 104 | .0120 |
| Maximum | .395 | .012 | 109 | .0120 |
| Average | .392 | .010 | 106 | .0120 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. |

|  | Vertical Crush | Sidewall Thickness |
|---|---|---|
| Minimum | 226 | .0045 |
| Maximum | 292 | .0046 |
| Average | 279* | .0046 |
| Spec/Aim | 250 Min |  |

The second set of cans was reformed on the inside of the countersink in accordance with the present invention, and its results are shown in Table 4. A photographic profile of a lower portion of one of these cans is shown in FIG. 21.

### TABLE 4

Body Strength
206/211 × 413 ANC Reformed Dome Cans

|  | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .397 | .003 | 104 | .0120 |
| Maximum | .410 | .007 | 114 | .0120 |
| Average | .404 | .004 | 110 | .0120 |
| Spec/Aim | N/A | .064 Max. | 90 Min. | Ref. |

|  | Vertical Crush | Sidewall Thickness |
|---|---|---|
| Minimum | 305 | .0045 |
| Maximum | 321 | .0047 |
| Average | 313* | .0046 |
| Spec/Aim | 250 Min |  |

Table 5 shows results from "control" cans, i.e., standard ANC-2A cans prior to reforming of any kind. A photographic profile of a lower portion of one of these cans is shown in FIG. 22.

### TABLE 5

Body Strength
206/211 × 413 ANC-2A Control Cans

|  | Dome Depth | Dome Growth After 90 PSIG | Buckle Strength | Plate Thickness |
|---|---|---|---|---|
| Minimum | .396 | .042 | 98 | .0120 |
| Maximum | .398 | .059 | 99 | .0120 |
| Average | .397 | .048 | 99 | .0120 |
| Spec/Aim | .394 ± .004 | .064 Max. | 90 Min. | Ref. |

|  | Vertical Crush | Sidewall Thickness |
|---|---|---|
| Minimum | 310 | .0045 |
| Maximum | 322 | .0046 |
| Average | 317* | .0046 |
| Spec/Aim | 250 Min |  |

As may be seen by a comparison of these Tables, dome growth in the untreated can of Table 5 averages 0.050 inches. Both reformed cans show improvement, but the average dome growth of the can reformed in accordance with the present invention is significantly superior (0.005 vs. 0.010 inches). Buckle strength is also somewhat improved (109 vs. 106). Finally, while average vertical crush of the present reformed cans (313) remains virtually the same as the control can (317), average vertical crush drops significantly (279) after reforming by the CMB method.

As may be seen by a comparison of FIGS. 20 and 21, the can that has been reformed in accordance with the present invention is less sharply peaked along its bottom. As a result, this can will exhibit more stability when moving along fill lines.

While the specific embodiments have been demonstrated and described, numerous modifications come to mind without markedly departing from the spirit of the invention. The scope of protection is, thus, only intended to be limited by the scope of the accompanying claims.

We claim:

1. An apparatus for reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall, including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion; said apparatus comprising:

5,697,242

13

a roller movable from an inward position where said roller does not contact said annular, substantially longitudinal wall to an outward position where said roller contacts said annular, substantially longitudinal wall; and

a movable actuator to move said roller into engagement with and circumferentially about said annular, substantially longitudinal wall to reform said substantially longitudinal wall.

2. The apparatus of claim 1 wherein said movable actuator moves said roller into engagement with said annular, substantially longitudinal wall to reform said substantially longitudinal wall to achieve a negative angle (A) relative to said longitudinal axis of said container.

3. The apparatus of claim 1, wherein said apparatus includes a plurality of rollers, each of said rollers movable from a radially inward position where said rollers do not contact said annular, substantially longitudinal wall to a radially outward position where said rollers contact said annular, substantially longitudinal wall.

4. The apparatus of claim 1 including a container support for inwardly supporting said container.

5. The apparatus of claim 4 wherein said container support supports said container along a lower end of said container.

6. The apparatus of claim 4 wherein said container support comprises a jig, said jig supporting said container along a lower end of said container.

7. The apparatus of claim 4, wherein said container support comprises a jig, said jig supporting said container along a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, said bottom peripheral profile portion of said jig being mated with said outer annular wall of said container.

8. The apparatus of claim 4 wherein said movable actuator moves said roller into engagement with said annular, substantially longitudinal wall in opposition to said container support.

9. The apparatus of claim 1, wherein the perimeter of said roller has a downwardly tapered portion which, when placed against said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle (A) relative to the longitudinal axis of said container.

10. The apparatus of claim 1 wherein said apparatus includes three rollers.

11. A method of reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a generally cylindrical side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall including a center domed portion, and an annular, substantially longitudinal wall joining said center domed portion and said convex U-shaped portion, said method comprising:

providing said drawn and ironed beverage container;

providing a reforming roller; and

moving said reforming roller radially into engagement with said substantially longitudinal wall of said beverage container, said reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path, wherein said reforming roller affects the angle of said substantially longitudinal wall.

12. The method of claim 11 including the step of providing radial inward support for said container.

13. The method of claim 12, wherein said reforming roller is rotated about an arcuate path equidistant from an axis that is coaxial with the longitudinal axis of the container.

14. The method of claim 12 wherein said providing radial inward support includes supporting said container along a lower end of said container.

15. The method of claim 12 wherein said providing radial inward support includes supporting said container in a jig, said jig supporting said container along a lower end of said container.

14

16. The method of claim 12 wherein said providing radial inward support includes supporting said container in a jig, said jig supporting a bottom peripheral profile portion substantially corresponding in shape to said outer annular wall of said container, and mating the bottom peripheral profile portion of said jig with said outer annular wall.

17. The method of claim 11, wherein said reforming roller affects the angle of said substantially longitudinal wall by achieving a negative angle (A) from the longitudinal axis of said container.

18. The method of claim 11, wherein said roller has a tapered peripheral portion which, upon engagement with said substantially longitudinal wall, reforms said substantially longitudinal wall to achieve a negative angle from the longitudinal axis of said container.

19. An apparatus for reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall, including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion; said apparatus comprising:

means for radially inwardly supporting a lower end of said container;

a roller movable from a radially inward position where said roller does not contact said annular, substantially longitudinal wall to a radially outward position where said roller contacts said annular, substantially longitudinal wall; and

a movable actuator to move said roller in opposition to said radial inward supporting means and into engagement with and circumferentially about said annular, substantially longitudinal wall to reform said substantially longitudinal wall.

20. The apparatus of claim 19 wherein said movable actuator moves said roller into engagement with said annular, substantially longitudinal wall to reform said substantially longitudinal wall to achieve a negative angle (A) relative to said longitudinal axis of said container.

21. A method for reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall, including a center domed portion; and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion; said method comprising:

providing said drawn and ironed beverage container;

radially inwardly supporting a lower end of said container;

providing a roller;

moving said roller from a radially inward position where said roller does not contact said annular, substantially longitudinal wall to a radially outward position where said roller contacts said annular, substantially longitudinal wall; and

circumferentially moving said roller in opposition to said radial inward supporting means and in engagement with said annular, substantially longitudinal wall to reform said substantially longitudinal wall.

22. The method of claim 21 wherein said movable actuator moves said roller into engagement with said annular, substantially longitudinal wall to reform said substantially longitudinal wall to achieve a negative angle (A) relative to said longitudinal axis of said container.

\* \* \* \* \*

Exhibit 6

US006129230A

# United States Patent [19]

## Turner et al.

[11] **Patent Number:** 6,129,230

[45] **Date of Patent:** Oct. 10, 2000

[54] **END CLOSURE WITH IMPROVED NON-DETACHABLE OPENING PANEL**

[75] Inventors: **Timothy L. Turner**, Cary; **Randy G. Forrest**, Park Ridge, both of Ill.

[73] Assignee: **American National Can Company,** Chicago, Ill.

[21] Appl. No.: **09/215,897**

[22] Filed: **Dec. 18, 1998**

[51] Int. Cl.[7] .................................................. **B65D 17/34**
[52] U.S. Cl. ................................................... **220/269**
[58] Field of Search ............................................. 220/269

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,952,912 | 4/1976 | Perry . |
| 3,967,752 | 7/1976 | Cudzik . |
| 4,015,744 | 4/1977 | Brown . |
| 4,024,981 | 5/1977 | Brown . |
| 4,084,721 | 4/1978 | Perry ....................................... 220/269 |
| 4,184,607 | 1/1980 | Potts . |
| 4,363,419 | 12/1982 | Walz, Sr. . |
| 4,402,421 | 9/1983 | Ruemer, Jr. . |
| 4,901,880 | 2/1990 | Tatham et al. . |
| 5,011,037 | 4/1991 | Moen et al. . |
| 5,064,087 | 11/1991 | Koch . |
| 5,219,257 | 6/1993 | Koch . |
| 5,307,947 | 5/1994 | Moen et al. . |
| 5,375,729 | 12/1994 | Schubert . |
| 5,405,039 | 4/1995 | Komura . |
| 5,555,992 | 9/1996 | Sedgeley . |
| 5,692,636 | 12/1997 | Schubert . |
| 5,738,237 | 4/1998 | McEldowney . |
| 5,860,553 | 11/1999 | Schubert ................................. 220/271 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 1-308744 | 12/1989 | Japan . |
| 8-244769 | 9/1996 | Japan ..................................... 220/269 |

*Primary Examiner*—Stephen K. Cronin
*Attorney, Agent, or Firm*—Wallenstein & Wagner, Ltd.

[57] **ABSTRACT**

A stay-on-tab container end having a panel wall with a tab attached by a rivet and having a tear panel. The tear panel being defined by a frangible score with a first end and a second end and a non-frangible hinge segment. A second groove is formed in the panel wall with a tail portion extending from the tear panel through the hinge segment. The second groove tail portion has a reduced residual differential compared to the frangible score residual. Also the tail portion includes a curved terminal end that partially surrounds the second end of the score.

**23 Claims, 3 Drawing Sheets**





FIG.1



FIG.2





FIG. 6

FIG. 7

6,129,230

**1**

# END CLOSURE WITH IMPROVED NON-DETACHABLE OPENING PANEL

## DESCRIPTION

### 1. Technical Field

The present invention relates to end closures for two-piece beer and beverage metal containers having a non-detachable operating panel. More specifically, the present invention relates to improved characteristics of a frangible panel of the end with integral attachment of the frangible panel to prevent full detachment of the frangible panel.

### 2. Background of the Invention

Common end closures for beer and beverage containers have a central panel that has a frangible panel (sometimes called a "tear panel," "opening panel," or "pour panel") defined by a score formed on the outer surface, the "consumer side," of the end closure. Popular "ecology" can ends are designed to provide a way of opening the end by fracturing the scored metal of the panel, while not allowing separation of any parts of the end. For example, the most common such beverage-container end has a tear panel that is retained to the end by a non-scored hinge region joining the tear panel to the reminder of the end, with a rivet to attach a leverage tab provided for opening the tear panel. This type of container end, typically called a "stay-on-tab" ("SOT") end has a tear panel that is defined by an incomplete circular-shaped score, with the non-scored segment serving as the retaining fragment of metal at the hinge-line of the displacement of the tear panel.

The container is typically a drawn and ironed metal can, usually constructed from a thin plate of aluminum. End closures for such containers are also typically constructed from a cut-edge of thin plate of aluminum or steel, formed into a blank end, and manufactured into a finished end by a process often referred to as end conversion. These ends are formed in the process of first forming a cut-edge of thin metal, forming a blank end from the cut-edge, and converting the blank into an end closure which may be seamed onto a container. Although not presently a popular alternative, such containers and/or ends may be constructed of plastic material, with similar construction of non-detachable parts provided for openability.

These types of "stay-on-tab" ecology container ends have been used for many years, with a retained tab and a tear panel of various different shapes and sizes. Throughout the use of such ends, manufacturers have sought to save the expense of the metal by down-gauging the metal of the ends and the tabs. However, because ends are used for containers with pressurized contents and are sometimes subject to pasteurization, there are conditions causing great stresses to the components of the end during pasteurization, transit and during opening by a user. These conditions limit the available gauge reduction of the end metal, and make it difficult to alter design characteristics of the end, such as by reducing metal gauge or the thickness of the metal residual in the score defining the tear panel.

Further, abuse during shipping, retail stocking and vending, due to rough handling of the filled containers, often causes problems with openability of the end. As an example of a problematic condition caused by handling abuse is the poor openability of a buckled container end. Due to dropping or abusive handling of filled containers, excessive pressure loads on regions of the end may cause a buckle of the end material. Such abuse, typically caused by dropping an upright container that is filled with carbonated fluid, results in a buckled end panel that deforms to form a bulge of metal of the panel.

**2**

The possibility of such buckling is a prevalent concern due to down-gauging of the end material, pressurization of the container, pasteurizing filled containers, environmental conditions such as excessive heat, and rough handling of pallets or cases of filled containers. In a metal container end, the buckle appears as a deformation or bulge of the metal in a region of the end panel, a condition that adversely effects the users ability to open the end. Due to the geometry of the container and the ecology end panel, buckling of the end frequently is noticeable as a bulge of the end with a buckle in the 5:00 to 7:00 range of the end (with the middle of the tear panel positioned at 6:00). This type of buckled container end very often results in opening failure and resulting problems of a user trying to open the end.

Such a buckled end usually cannot be opened properly by the user. Instead, when the user lifts the tab and applies pressure on the tear panel with the tab nose, the score fractures at the wrong locations at the wrong time, usually resulting in a dramatic loss in leverage of the tab for opening the panel. In this situation, the tab is actuated against the tear panel by lifting the finger pull end of the tab, but the tab nose passes beyond the proximal peripheral edge of the tear panel, a condition often called "tuck under" of the tab.

The tab that tucks under is, therefore, fully lifted by the user, though the tear panel is still not fully opened. In this situation, the tear panel remains attaches by a segment of the score usually at about the 5:00 to 11:00 of the tear panel (defined with the tab nose being at about the 12:00 region of the tear panel). When this condition occurs, the user often tries to open the tear panel with something other than the tab, often by applying force by an object or the user's finger. However, such attempts at completing the opening sequence of the tear panel often causes fracture of the hinge of the tear panel, causing the tear panel to open entirely and become detached from the remainder of the end. When the user applies such force, a common result is for the hinge-line region of the metal, the non-scored fragment of metal that is intended to not fracture and to retain the tear panel, fails by fracturing along a non-specific tear of the metal away from the score. As a result, the tear panel is fully separated from the remainder of the end panel, and is usually pushed into the container. The fully detached tear panel then becomes a choking hazard or is otherwise a nuisance to the user and a potential pollutant. Therefore, there is a need for an end having design characteristics that prevents separation of the tear panel during user manipulation of ends with opening failure.

Further, with the more recent popular use of large-open ends, such problems with buckled ends is potentially greater. Because of the enlarged size and the shape of the opening panel (or tear panel), the score in certain regions of the large-open tear panel are more difficult to open by the tab leveraging against the tear panel. This is especially true for the region of the score which is in the 5:00 to 6:00 clock position. Therefore, large-opening ends may be difficult to open even when there is no noticeable sign of damage or buckle. Because of the additional force that may be required to open the large-opening tear panel with a tab, there may be more likelihood for non-specific tear of the metal away from the score. Also, because of the difficulty in opening the large-opening end, there is an increase in potential opening failure that results in "tuck tinder" of the tab. This type of opening failure also may result from the user opening the container too rapidly, not permitting proper venting of pressure from the container.

Because of these conditions, and the problem of potential tuck under of the tab and subsequent detachment of the tear

6,129,230

3

panel when a buckled end results in opening failure and the user manipulates the end to open it, there is a need for an improved end structure that prevents or inhibits the total removal of the tear panel in the situation of an opening failure.

## SUMMARY OF THE INVENTION

It is an object of the present invention to provide an end closure for a container having a circumferential sidewall and a peripheral seaming edge adapted to be integrally connected to the sidewall. The end has a central panel wall with a means for opening a frangible panel segment of the panel wall and a rivet in the central panel adapted to integrally attach a tab lever having a nose portion overlying at least a vent region of the frangible panel segment and a lift end opposite said nose. A score groove is formed in the central panel wall to define an outer perimeter of the frangible panel. The score groove has a first end adjacent the vent region and a second end joined to the first end by a curvilinear segment of the score groove, whereby the first end and the second end is separated by a generally linear hinge segment of the central panel wall. The hinge segment is non-frangible to integrally connect the frangible panel segment to an adjacent area of the panel. A second groove is formed in the end, having a tail portion passing from the frangible panel through the hinge segment and extending into the adjacent area of the central panel.

It is also an object of the present invention to provide such an end member wherein the second groove has a curvilinear segment generally parallel an extent of the score groove. The invention further provides an end member in which the score groove and the second groove together form a double scoreline, the double scoreline being separated at the second end of the score groove, such that the tail portion of the second groove is longer than the second end of the score groove.

It is another object of the present invention to provide such an end member whereby the score groove is a generally v-shaped recess having a score depth into the thickness of the central panel, and the second groove is also a generally v-shaped recess having a groove depth into the thickness of the central panel less than that of the score groove.

It is further an object of the present invention to provide an end member having a curvilinear score groove with two ends separated by a hinge segment extending along a generally straight line between the two ends. A second groove is formed in the end, extending along a length that intersects the hinge segment generally transverse to the generally straight line between the two ends of the score groove.

It is yet another object of the present invention to provide an ecology end having a frangible panel with an outer score and an inner anti-fracture score, wherein the anti-fracture score has a tail portion that passes through the hinge region of the frangible tear panel. It is an object of the invention to provide an anti-fracture score that extends beyond the score groove to at least partially surround the end of the score groove.

It is further an object of the present invention to provide an ecology stay-on-tab end having a frangible panel defined by a score and first hinge region between a first and second end of the score groove, and having a second hinge region passing between a second groove and the second end of the score groove.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a plan view of the upper side an end closure of one embodiment of the present invention;

4

FIG. 2 is a plan view of the under side of the end of FIG. 1;

FIG. 3 is a cross-sectional view along 3—3 of FIG. 1;

FIG. 4 is a plan view of the upper side of an end closure of an alternative embodiment of the present invention;

FIG. 5 is a cross-sectional view depicting the score and second groove of the present invention, with a partial sectional view depiction of the score tooling used to form the score and groove;

FIG. 6 is a plan view of the scoreline of an embodiment of the present invention;

FIG. 7 is a plan view of the scoreline of an alternative embodiment of the present invention.

## DETAILED DESCRIPTION

While this invention is susceptible of embodiment in many different forms, there is shown in the drawings and will herein be described in detail preferred embodiments of the invention with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the broad aspect of the invention to the embodiments illustrated.

The container end of the present invention is a stay-on-tab end member **10** with improved opening characteristics, having structure adapted to prevent detachment of the tear panel, which potentially results from a user forcing open a damaged end with opening failure. Essentially, the present invention provides a score groove inward from the main score to guard the main score when a fracture forms in the hinge of the opening panel of the end, as explained below.

In the preferred embodiment of FIGS. 1–3, the end closure **10** for a container (not shown) has a central panel wall **12** having a seaming curl **14** for joining the wall to the container. The container is typically a drawn and ironed metal can, usually constructed from a thin plate of aluminum or steel, such as the common beer and beverage containers. End closures for such containers are also typically constructed from a cutedge of thin plate of aluminum or steel, formed into blank end, and manufactured into a finished end by a process often referred to as end conversion. In the embodiment shown in the Figures, the central panel is joined to a container by a seaming curl **14** which is joined to a mating curl of the container. The seaming curl **14** of the end closure **10** is integral with the central panel **12** by a countersink area **16** which is joined to the panel outer edge **18** of the central panel **12**. This type of means for joining the central panel **12** to a container is presently the typical means for joining used in the industry, and the structure described above is formed in the process of forming the blank end from a cutedge of metal plate, prior to the end conversion process. However, other means for joining the central panel **12** to a container may be employed with the present invention.

The central panel wall **12** has a displaceable tear panel **20** defined by a curvilinear frangible score **22** with an adjacent anti-fracture score **24** on the tear panel **20**, and a non-frangible hinge segment **26**. The hinge segment **26** is defined by a generally straight line between a first end **28** and a second end **30** of the frangible score **22**. The tear panel **20** of the central panel **12** may be opened, that is the frangible score **22** may be severed and the tear panel **20** displaced at an angular orientation relative to the remaining portion of the central panel **12**, while the tear panel **20** remains hingeably connected to the central panel **12** through the hinge segment **26**. In this opening operation, the tear panel

6,129,230

<table>
<tr><td>5</td><td>6</td></tr>
</table>

**20** is displaced at an angular deflection, as it is opened by being displaced away from the plane of the panel **12**.

As best shown in FIG. 5, the frangible score **22** is preferably a generally V-shaped groove formed into the public side **34** of the panel wall **12**. Similarly, the anti-fracture score **24**, is preferably a generally V-shaped groove **36** formed into the public side **34** of the panel wall **12** on the tear panel **20**. As is explained in more detail below, the score groove **32** is preferably deeper than the anti-fracture score groove **36**. Accordingly, the score residual **38**, being the amount of frangible material remaining below the score groove **32**, is greater than the adjacent anti-fracture score residual **40**. This difference between score residual **38** and adjacent anti-fracture score residual **40** is the score residual differential.

The score **22** and the second groove or anti-fracture score **24** are formed using conventional-type of scoring operation during the can end conversion process, using a tools that include an upper (public side) die with a score knife and a lower (product side) die with an anvil surface. As is partially shown in cross-section view in FIG. 5, the upper die **35** is applied to the public side **34** of the end wall **12** to form the V-shaped groove **32** of the score **22** and the V-shaped groove **36** of the second groove **24** on the tear panel **20**.

The score residual differential is adapted to provide a tear panel **20** with a score **22** more readily frangible than the anti-fracture score **24**, a significant factor for providing efficient opening of the end member **10**. Having a double score comprised of a frangible score **22** and an anti-fracture score **24** wherein there is a score residual differential is common in the industry. The common types of end members have a differential maintained generally constant throughout the length of the score **22** and anti-fracture score **24**. For example, if the score residual differential of commonly-used ends is set at approximately 0.002 inch, then that differential is maintained along the entire length of the double score, that is, along the entire length of the score **22** and the adjacent parallel area of the anti-fracture score **24**. According to one aspect of the present invention, the score residual differential is reduced in a tail portion **25** of the anti-fracture score **24**. This reduction of score residual differential at the tail portion **25** provides a tail segment of the anti-fracture score **24** that is more easily severed relative to the remaining regions of the anti-fracture score **24**. In more general terms, the structure of the present invention is adapted to provide a tail portion of the inner score (the anti-fracture score) **24** that has a score residual **40** adapted to be severed. In the preferred embodiment of the invention the segment of the anti-fracture score that is adapted to be severed by having a reduced score residual differential is at least 0.050 inch in linear path length **80**, and preferably in the range of 0.200 inch in linear path length **80** to fully direct any fracture in the hinge segment **26**.

The stay-on-tab end member **10** has a tab **42** secured to the end panel **12** adjacent the tear panel **20** by a rivet **44**. The tab has a lift end **46**, a central region **48**, and a nose portion **50**. The lift end **46** and the nose portion **50** are generally aligned along a central longitudinal axis **52** of the end **10** passing through the rivet **44**. A bead **54** is optionally formed in the tear panel **20** inward of the score **22** and the anti-fracture score **24**. The tear panel bead **54** is useful to draw excess metal, or slack of metal, from the tear panel **20** to tighten the metal of the tear panel and improve opening characteristics of the end member **10** by the tab **42** being lifted to push against the ear panel **20**.

During opening of the end member **10** by the user, the user lifts the lift end **46** of the tab **42** to displace the nose portion **50** downward against the tear panel **20**. The force of the nose portion **50** against the tear panel **20** causes the score **22** to fracture, typically in a vent region **56** of the tear panel **20**. As the tab displacement is continued, the fracture of the score **22** propagates around the tear panel **20**, preferably in progression from the first end **28** of the score **22** toward the second end **30** of the score **22**.

When the end member **10** has sustained damage, such as physical deformation often referred to as "buckle" due to dropping a filled container, then opening failure may result. The common buckle of an end is a bulge of the end panel wall **12**, usually in the region of 5:00 to 7:00 (the central longitudinal axis **52** of the end **10** bing the 12:00 to 6:00 axis). This type of buckled end often results in an opening failure when the user tries to open the container tear panel **20**. When the user lifts the lift end **46** of the tab **42** and the nose portion **50** is forced against the tear panel **20**, the buckle in the end causes resistance to the propagation of the score **22** being severed in progression from the first end **28** toward the second end **30**. The result is often that the hinge segment **26** severs, resulting in a fractured segment joining the first end **28** to the second end **30**, and the tear panel **20** being held in place by a remaining segment of the frangible score **22** that has not yet fractured due to the buckle in the panel **12**. Further, because the user continues to lift the tab **42** lift end **46** in attempt to open the tear panel **20**, the nose **50** of the tab **42** is pushed downward into the container and back toward the rivet **44**, such that the nose **50** goes beyond the tear panel **20** and is then in a position called "tuck under."

With prior art type ends, when the tab **42** is in tuck under position, the tab **42** is then useless for opening the tear panel **20**. The user often then tries to open the tear panel **20** by pushing down on the tear panel **20** with his or her finger, or with some object. The force applied by the user results in completion of the fracture of the score **22**, such that the tear panel is then fully severed, and is free of the panel wall **12**, without attachment by the hinge segment **26**. The structure of the present invention prevents such full separation of the tear panel **20** when the above-described conditions exist, by providing a ribbon of metal of the end wall **12**, regardless of fracture of the hinge segment **26**. With the present invention, the anti-fracture score **24** has a tail portion **25** that intersects the hinge segment **26**. When the user pushes down on the tear panel **20** of the buckled end **10**, and such force causes the hinge segment **26** to be severed, the fracture of the metal tends to follow the path of the tail portion **25** when the fracture propagation reaches the score groove **36** of the tail portion **25**. The end result of the present invention being so opened, therefore, is that a ribbon **58** of material between the second end **30** of the score and the terminal end of the tail portion **60** of the tail portion **25**. This ribbon **58** of material also includes the area between remaining area of the tail portion **25** and the adjacent parallel area of the score **22**.

In alternative embodiments of the present invention, the tail portion **25** and/or the second end **30** of the score **22** vary in specific design or arrangements. Also, as an another alternative embodiment, the anti-fracture score **24** is absent except for the tail portion **25**, as shown in FIG. 4. In this embodiment, the end member **10** has a panel wall **12** having a tear panel **20** defined by a frangible score **22** with a first end **28** and a second end **30**, and a hinge segment **26** along a straight line between the ends of the score **22**. The end **10** includes a score grove **62** that passes through the hinge segment **26**, preferably generally transverse to the straight line defining the hinge segment **26**. Much like the operation and structure described above regarding the anti-fracture score **24**, the second groove is a groove into the panel wall

6,129,230

7

12 that has a groove depth and remaining residual. The residual in the tail portion of the second groove is preferably approximately the same as or only slightly less than the score residual 38 of the score 22. For example, in a preferred embodiment of this invention, the tail portion 64 of the second groove 62 has groove score residual that is approximately 0.000 to 0.002 inch greater than the score residual 38 at the adjacent area of the end of the score 22.

In the alternative embodiment of FIGS. 6 and 7, the score 22 and the anti-fracture score 24 follow a specific shape that is adapted to permit unrestricted deflection of the tab 42. In this embodiment, the curvilinear score 22 has a hip region 70 with a radius of curvature that is adapted to provide clearance for the tab 42 being deflected into the container. In the preferred embodiment, the radius of curvature of the hip region 70 is approximately 0.120 inch. Another preferred embodiment provides a score 22 wherein the hip region 70 is aligned with the score first end 28 along an transverse axis 72, that is a linear alignment 72 that is generally transverse to the central longitudinal axis 52 of the end member 10.

According to another aspect of an alternative embodiment of the invention as is best shown in FIGS. 6 and 7, the cord shape of the score 24 proximal to the second end 30, and the cord shape of the tail portion 25, may vary from that which is shown in FIGS. 1 and 2. In the alternative embodiment of FIG. 6, the tail portion 25 terminates in the end wall 12 beyond the score 22, and at least slightly transecting the line defining the hinge segment 26. Alternatively, the tail portion 25 extends further away from the tear panel 20 and curves away from the tab 42 and rivet 44 to at least partially surround the second end 30 of the score 22. This embodiment results in a tail portion 25 that not only transects the line defining the hinge segment 26, but also extends and encircles the second end 30 to transect arcuate or some other curvilinear path of a fracture through the hinge segment 26 between the first end 28 and the second end 30. Therefore, having the tail portion 25 at least partially surrounding the second end 30 ensures that the path of a fracture of the metal of the hinge segment 26 can avoid being transected by the tail portion 25. In another embodiment of the invention, the cord shape of the second end 30 of the score 22 shown in FIG. 7 may alternatively curve outward away from the tear panel 20.

In the preferred embodiment of the present invention, the tail portion 25 that transects the line defining the hinge segment 26 has a length adapted to direct a path of fracture in the metal of the hinge segment 26, directing the path of fracture along the cord shape of the tail portion 25. In the preferred embodiment, the length of the tail portion 25 is at least 0.050 inch, as measured in overall linear-path length shown as 80 in the Figures, and preferably having a length in the range of approximately 0.200 inch.

While the invention has been described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes may be made and equivalents may be substituted for elements thereof without departing from the broader aspects of the invention. Also, it is intended that broad claims not specifying details of a particular embodiment disclosed herein as the best mode contemplated for carrying out the invention should not be limited to such details.

We claim:

1. An end member for a container having a circumferential sidewall, the end member having a peripheral seaming edge adapted to be integrally connected to the sidewall, and having a central panel wall with a means for opening a frangible panel segment of the panel wall, the end member comprising;

8

a rivet formed in the central panel and adapted to integrally attach a tab lever to the panel, the tab having a nose portion overlying at least a vent region of the frangible panel segment and having a lift end opposite said nose;

a primary score groove in the central panel wall defining an outer perimeter of the frangible panel segment, the score groove having a first end adjacent the vent region, and a second end joined to the first end by a curvilinear segment of the score groove, the first end and the second end being separated by a generally linear hinge segment of the central panel wall, said hinge segment being non-frangible to integrally connect the frangible panel segment to an adjacent area of the panel; and,

a second score groove having a tail portion passing from the frangible panel into said adjacent area of the central panel and transecting said hinge segment.

2. The end member of claim 1, wherein, the second score groove has a curvilinear segment generally parallel an extent of the primary score groove, said curvilinear segment being positioned on the frangible panel radially inward of the outer perimeter.

3. The end member of claim 1, wherein, at least a terminal length of the second score groove curves to a direction away from said first end of the primary score.

4. The end member of claim 1, wherein, the tail of the second score groove passes through the hinge line generally transverse to a hinge line passing between the first end and the second end of the primary score groove.

5. The end member of claim 1, wherein, said second end of the score groove curves away from an adjacent segment of said second groove.

6. The end member of claim 1, wherein, the primary score groove has a score residual of the central panel wall, and said second score groove has a groove residual of the central panel wall, the primary score residual being less than the second score groove residual along said tail portion.

7. The end member of claim 6, wherein, the primary score residual of said second end is in the range of 0.003 to 0.005 inches, and the second score groove residual along the tail portion is between 0.001 to 0.002 inch greater than the score residual of said second end.

8. The end member of claim 1, wherein, the tail portion of the second score groove end extends into said adjacent area of the central panel and partially surrounds the second end of the primary score groove.

9. The end member of claim 8, wherein, the tail portion has a curvilinear end extending generally away from the first end of the primary score groove to partially surround said second end of the primary score groove.

10. The end member of claim 1, wherein, the primary score groove and the second score groove together form a double scoreline, the double scoreline being separated at the second end of the primary score groove and said tail portion of the second score groove extending longer than said primary score groove second end.

11. The end member of claim 10, wherein, the primary score groove has a score residual at terminal region of said second end and the second score groove has a groove residual at the tail portion, the groove residual of the second score being less than 0.002 inch greater than said score residual of said second terminal region of the primary score.

12. The end member of claim 11, wherein, the tail of the second score groove tail portion is approximately 0.020 inches in length.

13. An end member for a container having a circumferential sidewall, the end member having a peripheral seaming

6,129,230

9

edge adapted to be integrally connected to the sidewall, and having a central panel wall, the end member comprising;

a frangible panel formed in the panel wall and being defined by a curvilinear score groove and a hinge segment, the score groove having a thickness residual and having a first end and a second end, said hinge segment having a length defined by a generally straight line between said first end and said second end;

a rivet formed in the central panel and adapted to integrally attach a tab lever to the panel, the tab having a nose portion overlying at least a region of the frangible panel segment and having a lift end opposite said nose; and,

a curvilinear anti-fracture score formed in the frangible panel generally parallel to said score groove, said anti-fracture score having a tail portion passing through the hinge segment.

**14**. The end member of claim **13**, wherein, the tail portion passes through the hinge segment generally transverse to said straight line between the first and second end.

**15**. The end member of claim **13**, wherein the anti-fracture groove has a thickness residual greater than said score groove thickness residual, said greater thickness defining a thickness residual differential between said score groove and said anti-fracture score, said thickness differential being reduced along the tail portion of said anti-fracture score.

**16**. The end member of claim **15**, wherein said residual differential along an extent of said score groove is approximately 0.002 inch, and said residual differential being approximately 0.001 inch along said tail portion of the anti-fracture groove.

**17**. The end member of claim **16**, wherein, the tail portion is at least 0.050 inch in length.

10

**18**. The end member of claim **13** wherein, said curvilinear score groove has a first segment leading from said first end to a hip region of said score groove, said first segment passing under a nose portion of said tab and said hip region having a radius of curvature adapted to permit unobstructed passage of the tab when a user lifts the tab to open the frangible tear panel.

**19**. The end member of claim **18** wherein, the radius of curvature of said hip region is approximately 0.120 inch.

**20**. The end member of claim **18** wherein, the end member has a central longitudinal axis, the hip region and said first end of the score groove being generally aligned along a transverse axis relative to said central longitudinal axis.

**21**. An end member for a container, the end member having a central panel wall adapted to be secured to the container at the outer edge of the end member, the end member comprising:

a frangible panel formed in the panel wall and at least partially defined by a score groove with a first end and a second end, wherein the score groove at the second end is curved outward toward the outer edge of the panel;

a hinge line passing between the first and second end of the score groove; and,

a second score groove in the panel wall and transecting the hinge line.

**22**. The end member of claim **21**, wherein the second score groove is an anti-fracture score with an extended end passing through the hinge line.

**23**. The end member of claim **21**, wherein the second score groove has a terminal end curved outward toward the outer edge of the panel.

*   *   *   *   *

Exhibit 7

US006260728B1

(12) **United States Patent**
Turner et al.

(10) **Patent No.:     US 6,260,728 B1**
(45) **Date of Patent:        *Jul. 17, 2001**

(54) **END CLOSURE WITH IMPROVED NON-DETACHABLE OPENING PANEL**

(75) Inventors: **Timothy L. Turner**, Cary; **Randy G. Forrest**, Park Ridge, both of IL (US)

(73) Assignee: **Rexam Beverage Can Company**, Chicago, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/618,898**

(22) Filed: **Jul. 18, 2000**

**Related U.S. Application Data**

(63) Continuation of application No. 09/215,897, filed on Dec. 18, 1998, now Pat. No. 6,129,230.

(51) Int. Cl.[7] .................................................. **B65D 17/34**
(52) U.S. Cl. ............................................... **220/269**
(58) Field of Search ............................................ 220/269

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,952,912 | 4/1976 | Perry . |
| 3,967,752 | 7/1976 | Cudzik . |
| 4,015,744 | 4/1977 | Brown . |
| 4,024,981 | 5/1977 | Brown . |
| 4,084,721 | 4/1978 | Perry . |
| 4,184,607 | 1/1980 | Potts . |

| | | | |
|---|---|---|---|
| 4,363,419 | 12/1982 | Walz, Sr. . | |
| 4,402,421 | 9/1983 | Ruemer, Jr. . | |
| 4,901,880 | 2/1990 | Tatham et al. . | |
| 5,011,037 | 4/1991 | Moen et al. . | |
| 5,064,087 | 11/1991 | Koch . | |
| 5,219,257 | 6/1993 | Koch . | |
| 5,307,947 | 5/1994 | Moen et al. . | |
| 5,375,729 | 12/1994 | Schubert . | |
| 5,405,039 | 4/1995 | Komura . | |
| 5,555,992 | 9/1996 | Sedgeley . | |
| 5,692,636 | 12/1997 | Schubert . | |
| 5,711,448 | * 1/1998 | Clarke, III | 220/269 |
| 5,738,237 | 4/1998 | McEldowney . | |
| 5,860,553 | * 1/1999 | Schubert | 220/271 |
| 6,079,583 | * 6/2000 | Chasteen | 220/269 |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 0432659 | * 6/1991 | (EP) | | 220/269 |
| 1-308744 | 12/1989 | (JP) . | | |
| 8-244769 | * 9/1996 | (JP) | | 220/269 |

* cited by examiner

*Primary Examiner*—Stephen K. Cronin
(74) *Attorney, Agent, or Firm*—Wallenstein & Wagner

(57) **ABSTRACT**

A stay-on-tab container end having a panel wall with a tab attached by a rivet and having a tear panel. The tear panel being defined by a frangible score with a first end and a second end and a non-frangible hinge segment. A second groove is formed in the panel wall with a tail portion extending from the tear panel through the hinge segment. The second groove tail portion has a reduced residual differential compared to the frangible score residual. Also, the tail portion includes a curved terminal end that partially surrounds the second end of the score.

**18 Claims, 3 Drawing Sheets**





FIG.1



FIG.2

**U.S. Patent**      Jul. 17, 2001      Sheet 2 of 3      US 6,260,728 B1





US 6,260,728 B1

1

# END CLOSURE WITH IMPROVED NON-DETACHABLE OPENING PANEL

This application is a continuation of prior U.S. application Ser. No. 09/215,897 filed Dec. 18, 1998, now U.S. Pat. No. 6,129,230.

## TECHNICAL FIELD

The present invention relates to end closures for two-piece beer and beverage metal containers having a non-detachable operating panel. More specifically, the present invention relates to improved characteristics of a frangible panel of the end with integral attachment of the frangible panel to prevent full detachment of the frangible panel.

## BACKGROUND OF THE INVENTION

Common end closures for beer and beverage containers have a central panel that has a frangible panel (sometimes called a "tear panel", "opening panel", or "pour panel") defined by a score formed on the outer surface, the "consumer side", of the end closure. Popular "ecology" can ends are designed to provide a way of opening the end by fracturing the scored metal of the panel, while not allowing separation of any parts of the end. For example, the most common such beverage-container end has a tear panel that is retained to the end by a non-scored hinge region joining the tear panel to the reminder of the end, with a rivet to attach a leverage tab provided for opening the tear panel. This type of container end, typically called a "stay-on-tab" ("SOT") end has a tear panel that is defined by an incomplete circular-shaped score, with the non-scored segment serving as the retaining fragment of metal at the hinge-line of the displacement of the tear panel.

The container is typically a drawn and ironed metal can, usually constructed from a thin plate of aluminum. End closures for such containers are also typically constructed from a cut-edge of thin plate of aluminum or steel, formed into a blank end, and manufactured into a finished end by a process often referred to as end conversion, These ends are formed in the process of first forming a cut-edge of thin metal, forming a blank end from the cut-edge, and converting the blank into an end closure which may be seamed onto a container. Although not presently a popular alternative, such containers and/or ends may be constructed of plastic material, with similar construction of non-detachable parts provided for openability.

These types of "stay-on-tab" ecology container ends have been used for many years, with a retained tab and a tear panel of various different shapes and sizes. Throughout the use of such ends, manufacturers have sought to save the expense of the metal by down-gauging the metal of the ends and the tabs. However, because ends are used for containers with pressurized contents and are sometimes subject to pasteurization, there are conditions causing great stresses to the components of the end during pasteurization, transit and during opening by a user. These conditions limit the available gauge reduction of the end metal, and make it difficult to alter design characteristics of the end, such as by reducing metal gauge or the thickness of the metal residual in the score defining the tear panel.

Further, abuse during shipping, retail stocking and vending, due to rough handling of the filled containers, often causes problems with openability of the end. As an example of a problematic condition caused by handling abuse is the poor openability of a buckled container end. Due to dropping or abusive handling of filled containers, excessive pressure loads on regions of the end may cause a buckle of the end material. Such abuse, typically caused by dropping an upright container that is filled with carbonated fluid, results in a buckled end panel that deforms to form a bulge of metal of the panel.

The possibility of such buckling is a prevalent concern due to downgauging of the end material, pressurization of the container, pasteurizing filled containers, environmental conditions such as excessive heat, and rough handling of pallets or cases of filled containers. In a metal container end, the buckle appears as a deformation or bulge of the metal in a region of the end panel, a condition that adversely effects the users ability to open the end. Due to the geometry of the container and the ecology end panel, buckling of the end frequently is noticeable as a bulge of the end with a buckle in the 5:00 to 7:00 range of the end (with the middle of the tear panel positioned at 6:00). This type of buckled container end very often results in opening failure and resulting problems of a user trying to open the end.

Such a buckled end usually cannot be opened properly by the user. Instead, when the user lifts the tab and applies pressure on the tear panel with the tab nose, the score fractures at the wrong locations at the wrong time, usually resulting in a dramatic loss in leverage of the tab for opening the panel. In this situation, the tab is actuated against the tear panel by lifting the finger pull end of the tab, but the tab nose passes beyond the proximal peripheral edge of the tear panel, a condition often called "tuck under" of the tab.

The tab that tucks under is, therefore, fully lifted by the user, though the tear panel is still not fully opened. In this situation, the tear panel remains attaches by a segment of the score usually at about the 5:00 to 11:00 of the tear panel (defined with the tab nose being at about the 12:00 region of the tear panel). When this condition occurs, the user often tries to open the tear panel with something other than the tab, often by applying force by an object or the user's finger. However, such attempts at completing the opening sequence of the tear panel often causes fracture of the hinge of the tear panel, causing the tear panel to open entirely and become detached from the remainder of the end. When the user applies such force, a common result is for the hinge-line region of the metal, the non-scored fragment of metal that is intended to not fracture and to retain the tear panel, fails by fracturing along a non-specific fragment of the metal away from the score. As a result, the tear panel is fully separated from the remainder of the end panel, and is usually pushed into the container. The fully detached tear panel then becomes a choking hazard or is otherwise a nuisance to the user and a potential pollutant. Therefore, there is a need for an end having design characteristics that prevents separation of the tear panel during user manipulation of ends with opening failure.

Further, with the more recent popular use of large-open ends, such problems with buckled ends is potentially greater. Because of the enlarged size and the shape of the opening panel (or tear panel), the score in certain regions of the large-open tear panel are more difficult to open by the tab leveraging against the tear panel. This is especially true for the region of the score which is in the 5:00 to 6:00 clock position. Therefore, large-opening ends may be difficult to open even when there is no noticeable sign of damage or buckle. Because of the additional force that may be required to open the large-opening tear panel with a tab, there may be more likelihood for non-specific tear of the metal away from the score. Also, because of the difficulty in opening the large-opening end, there is an increase in potential opening failure that results in "tuck under" of the tab. This type of

3

opening failure also may result from the user opening the container too rapidly, not permitting proper venting of pressure from the container.

Because of these conditions, and the problem of potential tuck under of the tab and subsequent detachment of the tear panel when a buckled end results in opening failure and the user manipulates the end to open it, there is a need for an improved end structure that prevents or inhibits the total removal of the tear panel in the situation of an opening failure.

## SUMMARY OF THE INVENTION

It is an object of the present invention to provide an end closure for a container having a circumferential sidewall and a peripheral seaming edge adapted to be integrally connected to the sidewall. The end has a central panel wall with a means for opening a frangible panel segment of the panel wall and a rivet in the central panel adapted to integrally attach a tab lever having a nose portion overlying at least a vent region of the frangible panel segment and a lift end opposite said nose. A score groove is formed in the central panel wall to define an outer perimeter of the frangible panel. The score groove has a first end adjacent the vent region and a second end joined to the first end by a curvilinear segment of the score groove, whereby the first end and the second end is separated by a generally linear hinge segment of the central panel wall. The hinge segment is non-frangible to integrally connect the frangible panel segment to an adjacent area of the panel. A second groove is formed in the end, having a tail portion passing from the frangible panel through the hinge segment and extending into the adjacent area of the central panel.

It is also an object of the present invention to provide such an end member wherein the second groove has a curvilinear segment generally parallel an extent of the score groove. The invention further provides an end member in which the score groove and the second groove together form a double scoreline, the double scoreline being separated at the second end of the score groove, such that the tail portion of the second groove is longer than the second end of the score groove.

It is another object of the present invention to provide such an end member whereby the score groove is a generally v-shaped recess having a score depth into the thickness of the central panel, and the second groove is also a generally v-shaped recess having a groove depth into the thickness of the central panel less than that of the score groove.

It is further an object of the invention to provide an end member having a curvilinear score groove with two ends separated by a hinge segment extending along a generally straight line between the two ends. A second groove is formed in the end, extending along a length that intersects the hinge segment generally transverse to the generally straight line between the two ends of the score groove.

It its yet another object of the present invention to provide an ecology end having a frangible panel with an outer score and an inner anti-fracture score, wherein the anti-fracture score has a tail portion that passes through the hinge region of the frangible tear panel. It is an object of the invention to provide an anti-fracture score that extends beyond the score groove to at least partially surround the end of the score groove.

It is further an object of the present invention to provide an ecology stay-on-tab end having a frangible panel defined by a score and first hinge region between a first and second end of the score groove, and having a second hinge region passing between a second groove and the second end of the score groove.

4

## BRIEF DESCRIPTION OF THE INVENTION

FIG. 1 is a plan view of the upper side an end closure of one embodiment of the present invention;

FIG. 2 is a plan view of the under side of the end of FIG. 1;

FIG. 3 is a cross-sectional view along 3—3 of FIG. 1;

FIG. 4 is a plan view of the upper side of an end closure of an alternative embodiment of the present invention;

FIG. 5 is a cross-sectional view depicting the score and second groove of the present invention, with a partial sectional view depiction of the score tooling used to form the score and groove;

FIG. 6 is a plan view of the scoreline of an embodiment of the present invention;

FIG. 7 is a plan view of the scoreline of an alternative embodiment of the present invention.

## DETAILED DESCRIPTION

While this invention is susceptible of embodiment in many different forms, there is shown in the drawings and will herein be described in detail preferred embodiments of the invention with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the broad aspect of the invention to the embodiments illustrated.

The container end of the present invention is a stay-on-tab end member 10 with improved opening characteristics, having structure adapted to prevent detachment of the tear panel, which potentially results from a user forcing open a damaged end with opening failure. Essentially, the present invention provides a score groove inward from the main score to guard the main score when a fracture forms in the hinge of the opening panel of the end, as explained below.

In the preferred embodiment of FIGS. 1–3, the end closure 10 for a container (not shown) has a central panel wall 12 having a seaming curl 14 for joining the wall to the container. The container is typically a drawn and ironed metal can, usually constricted from a thin plate of aluminum or steel, such as the common beer and beverage containers. End closures for such containers are also typically constructed from a cutedge of thin plate of aluminum or steel, formed into blank end, and manufactured into a finished end by a process often referred to as end conversion. In the embodiment shown in the Figures, the central panel is joined to a container by a seaming curl 14 which is joined to a mating curl of the container. The seaming curl 14 of the end closure 10 is integral with the central panel 12 by a countersink area 16 which is joined to the panel outer edge 18 of the central panel 12. This type of means for joining the central panel 12 to a container is presently the typical means for joining used in the industry, and the structure described above is formed in the process of forming the blank end from a cutedge of metal plate, prior to the end conversion process. However, other means for joining the central panel 12 to a container may be employed with the present invention.

The central panel wall 12 has a displaceable tear panel 20 defined by a curvilinear frangible score 22 with an adjacent anti-fracture score 24 on the tear panel 20, and a non-frangible hinge segment 26. The hinge segment 26 is defined by a generally straight line between a first end 28 and a second end 30 of the frangible score 22. The tear panel 20 of the central panel 12 may be opened, that is the frangible score 22 may be severed and the tear panel 20 displaced at an angular orientation relative to the remaining portion of

5

the central panel **12**, while the tear panel **20** remains hingeably connected to the central panel **12** through the hinge segment **26**. In this opening operation, the tear panel **20** is displaced at an angular deflection, as it is opened by being displaced away from the plane of the panel **12**.

As best shown in FIG. **5**, the frangible score **22** is preferably a generally V-shaped groove formed into the public side **34** of the panel wall **12**. Similarly, the anti-fracture score **24**, is preferably a generally V-shaped groove **36** formed into the public side **34** of the panel wall **12** on the tear panel **20**. As is explained in more detail below, the score groove **32** is preferably deeper than the anti-fracture score groove **36**. Accordingly, the score residual **38**, being the amount of frangible material remaining below the score groove **32**, is greater than the adjacent anti-fracture score residual **40**. This difference between score residual **38** and adjacent anti-fracture score residual **40** is the score residual differential.

The score **22** and the second groove or anti-fracture score **24** are formed using conventional-type of scoring operation during the can end conversion process, using a tools that include an upper (public side) die with a score knife and a lower (product side) die with an anvil surface. As is partially shown in crosssection view in FIG. **5**, the upper die **35** is applied to the public side **34** of the end wall **12** to form the V-shaped groove **32** of the score **22** and the V-shaped groove **36** of the second groove **24** on the tear panel **20**.

The score residual differential is adapted to provide a tear panel **20** with a score **22** more readily frangible than the anti-fracture score **24**, a significant factor for providing efficient opening of the end member **10**. Having a double score comprised of a frangible score **22** and an anti-fracture score **24** wherein there is a score residual differential is common in the industry. The common types of end members have a differential maintained generally constant throughout the length of the score **22** and anti-fracture score **24**. For example, if the score residual differential of commonly-used ends is set at approximately 0.002 inch, then that differential is maintained along the entire length of the double score, that is, along the entire length of the score **22** and the adjacent parallel area of the anti-fracture score **24**. According to one aspect of the present invention, the score residual differential is reduced in a tail portion **25** of the anti-fracture score **24**. This reduction of score residual differential at the tail portion **25** provides a tail segment of the anti-fracture score **24** that is more easily severed relative to the remaining regions of the anti-fracture score **24**. In more general terms, the structure of the present invention is adapted to provide a tail portion of the inner score (the anti-fracture score) **24** that has a score residual **40** adapted to be severed. In the preferred embodiment of the invention, the segment of the anti-fracture score that is adapted to be severed by having a reduced score residual differential is at least 0.050 inch in linear path length **80**, and preferably in the range of 0.200 inch in linear path length **80** to fully direct any fracture in the hinge segment **26**.

The stay-on-tab end member **10** has a tab **42** secured to the end panel **12** adjacent the tear panel **20** by a rivet **44**. The tab has a lift end **46**, a central region **48**, and a nose portion **50**. The lift end **46** and the nose portion **50** are generally aligned along a central longitudinal axis **52** of the end **10** passing through the rivet **44**. A bead **54** is optionally formed in the tear panel **20** inward of the score **22** and the anti-fracture score **24**. The tear panel bead **54** is useful to draw excess metal, or slack of metal, from the tear panel **20** to tighten the metal of the tear panel and improve opening characteristics of the end member **10** by the tab **42** being lifted to push against the ear panel **20**.

6

During opening of the end member **10** by the user, the user lifts the lift end **46** of the tab **42** to displace the nose portion **50** downward against the tear panel **20**. The force of the nose portion **50** against the tear panel **20** causes the score **22** to fracture, typically in a vent region **56** of the tear panel **20**. As the tab displacement is continued, the fracture of the score **22** propagates around the tear panel **20**, preferably in progression from the first end **28** of the score **22** toward the second end **30** of the score **22**.

When the end member **10** has sustained damage, such as physical deformation often referred to as "buckle" due to dropping a filled container, then opening failure may result. The common buckle of an end is a bulge of the end panel wall **12**, usually in the region of 5:00 to 7:00 (the central longitudinal axis **52** of the end **10** being the 12:00 to 6:00 axis). This type of buckled end often results in an opening failure when the user tries to open the container tear panel **20**. When the user lifts the lift end **46** of the tab **42** and the nose portion **50** is forced against the tear panel **20**, the buckle in the end causes resistance to the propagation of the score **22** being severed in progression from the first end **28** toward the second end **30**. The result is often that the hinge segment **26** severs, resulting in a fractured segment joining the first end **28** to the second end **30**, and the tear panel **20** being held in place by a remaining segment of the frangible score **22** that has not yet fractured due to the buckle in the panel **12**. Further, because the user continues to lift the tab **42** lift end **46** in attempt to open the tear panel **20**, the nose **50** of the tab **42** is pushed downward into the container and back toward the rivet **44**, such that the nose **50** goes beyond the tear panel **20** and is then in a position called "tuck under."

With prior art type ends, when the tab **42** is in tuck under position, the tab **42** is then useless for opening the tear panel **20**. The user often then tries to open the tear panel **20** by pushing down on the tear panel **20** with his or her finger, or with some object. The force applied by the user results in completion of the fracture of the score **22**, Such that the tear panel is then fully severed, and is free of the panel wall **12**, without attachment by the hinge segment **26**. The structure of the present invention prevents such full separation of the tear panel **20** when the above-described conditions exist, by providing a ribbon of metal of the end wall **12**, regardless of fracture of the hinge segment **26**. With the present invention, the anti-fracture score **24** has a tail portion **25** that intersects the hinge segment **26**. When the user pushes down on the tear panel **20** of the buckled end **10**, and such force causes the hinge segment **26** to be severed, the fracture of the metal tends to follow the path of the tail portion **25** when the fracture propagation reaches the score groove **36** of the tail portion **25**. The end result of the present invention being so opened, therefore, is that a ribbon **58** of material between the second end **30** of the score and the terminal end of the tail portion **60** of the tail portion **25**. This ribbon **58** of material also includes the area between remaining area of the tail portion **25** and the adjacent parallel area of the score **22**.

In alternative embodiments of the present invention, the tail portion **25** and/or the second end **30** of the score **22** vary in specific design or arrangements. Also, as an another alternative embodiment, the anti-fracture score **24** is absent except for the tail portion **25**, as shown in Figure **4**. In this embodiment, the end member **10** has a panel wall **12** having a tear panel **20** defined by a frangible score **22** with a first end **28** and a second end **30**, and a hinge segment **26** along a straight line between the ends of the score **22**. The end **10** includes a score grove **62** that passes through the hinge segment **26**, preferably generally transverse to the straight line defining the hinge segment **26**. Much like the operation

7

8

and structure described above regarding the anti-fracture score 24, the second groove is a groove into the panel wall 12 that has a groove depth and remaining residual. The residual in the tail portion of the second groove is preferably approximately the same as or only slightly less than the score residual 38 of the score 22. For example, in a preferred embodiment of this invention, the tail portion 64 of the second groove 62 has groove score residual that is approximately 0.000 to 0.002 inch greater than the score residual 38 at the adjacent area of the end of the score 22.

In the alternative embodiment of FIGS. 6 and 7, the score 22 and the anti-fracture score 24 follow a specific shape that is adapted to permit unrestricted deflection of the tab 42. In this embodiment, the curvilinear score 22 has a hip region 70 with a radius of curvature that is adapted to provide clearance for the tab 42 being deflected into the container. In the preferred embodiment, the radius of curvature of the hip region 70 is approximately 0.120 inch. Another preferred embodiment provides a score 22 wherein the hip region 70 is aligned with the score first end 28 along an transverse axis 72, that is a linear alignment 72 that is generally transverse to the central longitudinal axis 52 of the end member 10.

According to another aspect of an alternative embodiment of the invention as is best shown in FIGS. 6 and 7, the cord shape of the score 24 proximal to the second end 30, and the cord shape of the tail portion 25, may vary from that which is shown in FIGS. 1 and 2. In the alternative embodiment of FIG. 6, the tail portion 25 terminates in the end wall 12 beyond the score 22, and at least slightly transecting the line defining the hinge segment 26. Alternatively, the tail portion 25 extends further away from the tear panel 20 and curves away from the tab 42 and rivet 44 to at least partially surround the second end 30 of the score 22. This embodiment results in a tail portion 25 that not only transects the line defining the hinge segment 26, but also extends and encircles the second end 30 to transect arcuate or some other curvilinear path of a fracture through the hinge segment 26 between the first end 28 and the second end 30. Therefore, having the tail portion 25 at least partially surrounding the second end 30 ensures that the path of a fracture of the metal of the hinge segment 26 can avoid being transected by the tail portion 25. In another embodiment of the invention, the cord shape of the second end 30 of the score 22 shown in FIG. 7 may alternatively curve outward away from the tear panel 20.

In the preferred embodiment of the present invention, the tail portion 25 that transects the line defining the hinge segment 26 has a length adapted to direct a path of fracture in the metal of the hinge segment 26, directing the path of fracture along the cord shape of the tail portion 25. In the preferred embodiment, the length of the tail portion 25 is at least 0.050 inch, as measured in overall linearpath length shown as 80 in the Figures, and preferably having a length in the range of approximately 0.200 inch.

While the invention has been described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes may be made and equivalents may be substituted for elements thereof without departing from the broader aspects of the invention. Also, it is intended that broad claims not specifying details of a particular embodiment disclosed herein as the best mode contemplated for carrying out the invention should not be limited to such details.

We claim:

1. An end member for a container having a circumferential sidewall, the end member having a peripheral seaming edge adapted to be integrally connected to the sidewall, and having a central panel wall with a vent region and a means for opening a frangible panel segment of the panel wall, the end member comprising:

    a primary score groove in the central panel wall defining an outer perimeter of the frangible panel segment, the score groove having a first end adjacent the vent region and a second end, the first end and the second end being separated by a generally linear hinge segment of the central panel wall, said hinge segment integrally connecting the frangible panel segment to an adjacent area of the panel; and,

    a second score groove adjacent the second end of said primary score and adjacent said hinge segment to direct fracture of metal of said hinge segment in a direction away from said second end of the score.

2. The end member of claim 1, wherein an extent of metal generally defined by a distance between said second groove and said second end of the score provides a connection of said frangible panel segment to said panel wall in event of fracture of a portion of said hinge segment.

3. The end member of claim 1, wherein, the second score groove has a curvilinear segment generally parallel an extent of the primary score groove.

4. The end member of claim 1, wherein, the primary score groove and the second score groove together form a double scoreline, the double scoreline being separated at the second end of the primary score groove and said tail portion of the second score groove extending away from said frangible panel beyond said primary score groove second end.

5. The end member of claim 1, wherein, the primary score groove has a score residual of the central panel wall, and at least a portion of said second score groove has a groove residual of the central panel wall less than the second score groove residual along said tail portion.

6. The end member of claim 1, wherein, at least a terminal length of the second score groove curves to a direction away from said first end of the primary score.

7. The end member of claim 1, wherein, at least a portion of the second score groove passes through the hinge line generally transverse to a hinge line passing between the first end and the second end of the primary score groove.

8. The end member of claim 1, wherein, at least a portion of the second score groove end extends into said adjacent area of the central panel and partially surrounds the second end of the primary score groove.

9. The end member of claim 1, wherein, the second score groove has a tail portion with a curvilinear end extending generally away from the first end of the primary score groove to partially surround said second end of the primary score groove.

10. An end member for a container, the end member having a metal central panel wall adapted to be secured to the container at the outer edge of the end member, the end member comprising:

    a frangible panel formed in the panel wall and at least partially defined by a primary score with a first end at a vent region and a second end, the first end and second end being separated by a hinge segment, the hinge segment being a generally linear region of the metal, adapted to form a bend for angular displacement of the frangible panel during normal use by a user;

    a means for providing an extent of metal joining said frangible panel to said panel wall in event of abuse opening of the end member with fracture being formed in a portion of said hinge segment;

    said means for providing an extent of metal joining said frangible panel comprises a second groove adjacent

US 6,260,728 B1

9

said second end of the primary score and adjacent the hinge segment to direct fracture of metal of said hinge segment in a direction away from said second end of the primary score.

**11**. The end member of claim **10**, wherein, the second groove has a curvilinear segment generally parallel an extent of the primary score groove, said curvilinear segment being positioned on the frangible panel radially inward of the outer perimeter.

**12**. The end member of claim **10**, wherein, the primary score groove and the second groove together form a double scoreline, the double scoreline being separated at the second end of the primary score and a tail portion of the second groove extending away from said frangible panel.

**13**. The end member of claim **10**, wherein, the primary score groove has a score residual of the central panel wall, and said second groove has a groove residual of the central panel wall, the primary score residual being less than the groove residual along at least a portion of said second groove.

**14**. The end member of claim **10**, wherein, at least a terminal length of the second groove curves to a direction away from said first end of the primary score.

**15**. The end member of claim **10**, wherein, at least a portion of the second score groove passes through a hinge line generally transverse to a hinge line passing between the first end and the second end of the primary score.

10

**16**. The end member of claim **10**, wherein, a tail portion of the second groove extends into said adjacent area of the central panel and partially surrounds the second end of the primary score.

**17**. The end member of claim **10**, wherein, a tail portion of said second groove has a curvilinear end extending generally away from the first end of the primary score to partially surround said second end of the primary score.

**18**. An end member for a container, the end member having a metal central panel wall adapted to be secured to the container at the outer edge of the end member, the end member comprising;

a frangible panel formed in the panel wall, the frangible panel having a vent region and being at least partially defined by a score groove with a first end adjacent said vent region and a second end separated from said first end by a hinge segment, the hinge segment with a hinge line area adapted to bend for angular displacement of the frangible panel during normal use by a user;

the end member having a second groove adjacent the second end of the score and positioned in said hinge segment to direct fracture of metal in the hinge segment in a direction away from said second end of the score.

\* \* \* \* \*