IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CROWN PACKAGING TECHNOLOGY, )
INC. and CROWN CORK & SEAL USA, )
INC., )
                         )
      Plaintiffs/Counterclaim Defendants, )
                         )
v.                              )   C. A. No. 05-608 (MPT)
                         )
REXAM BEVERAGE CAN COMPANY, )
                         )
      Defendant/Counterclaimant. )

**REXAM'S OPPOSITION TO CROWN'S MOTION TO
BIFURCATE REXAM'S COUNTERCLAIMS AND TO
SUBMIT EVIDENCE RELATING TO LACHES TO THE JURY**

Of Counsel:
George P. McAndrews
Steven J. Hampton
Richard T. McCaulley
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: February 8, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
Attorneys for Defendants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ii

I.    INTRODUCTION .........................................................................................1

II.   ARGUMENT ................................................................................................2

    A.    Crown's Motion To Separate The Trial Of Rexam's Counterclaims
    Should Be Denied .......................................................................................2

            1.    The Decision To Separate Lies Within The Trial Court's
            Discretion ....................................................................................2

            2.    Separation Is Not Necessary To Prevent Jury Confusion
            And Would Result In A Waste Of Jury Time And Judicial
            Resources ....................................................................................2

            3.    Granting Crown's Motion Will Not Reduce The Number
            Of Legal Principles To Be Considered By The Jury ....................5

            4.    Crown Will Not Be Prejudiced By Rexam's Rule 13(b)
            Counterclaims .............................................................................6

    B.    Crown Should Not Be Permitted To Present Laches-Related
    Evidence To The Jury ................................................................................8

            1.    Crown's Procedural Motion Regarding The Presentation Of
            Laches-Related Evidence Is Not Appropriately Before The
            Court ...........................................................................................8

            2.    Crown Should Not Be Able To Present Any Laches
            Defense With Regard To Rexam's Counterclaims IV and V ......9

            3.    Evidence Related To Laches, An Equitable Defense,
            Should Only Be Presented To The Court .....................................9

III.  CONCLUSION ...........................................................................................11

## TABLE OF AUTHORITIES

CASES

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ..................................................................................9

*Ciena Corp. v. Corvis Corp.*,
  210 F.R.D. 519 (D. Del. 2002) ................................................................................5, 6

*Enzo Life Sciences, Inc. v. Digene Corp.*,
  No. 02-212, 2003 U.S. Dist. LEXIS 10202 (D. Del. June 10, 2003) ....................................6

*eSpeed, Inc. v. Brokertec USA, LLC*,
  417 F. Supp. 2d 580 (D. Del. 2006) ...................................................................................9

*Joy Techs., Inc. v. Flakt, Inc.*,
  772 F. Supp. 842 (D. Del. 1991) .........................................................................................5

*Lifescan, Inc. v. Home Diagnostics, Inc.*,
  103 F. Supp. 2d 379 (D. Del. 2000) .................................................................................10

*Lis v. Robert Packer Hosp.*,
  579 F.2d 819 (3d Cir. 1978) ............................................................................................2, 4

*McKesson Info. Solutions LLC v. Trizetto Group, Inc.*,
  Civ. No. 04-1258, 2006 U.S. Dist. LEXIS 18655 (D. Del. Apr. 11, 2006) .........................8

*Synopsis, Inc. v. Magma Design Automation*,
  No. 05-701, 2006 U.S. Dist. LEXIS 33751, (D. Del. May 25, 2006) ...................................4

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
  163 F. Supp. 2d 426 (D. Del. 2001), *rev'd in part on other grounds*, 308
  F.3d 1167 (Fed. Cir. 2002) ...............................................................................................10

STATUTES

35 U.S.C. § 271 .......................................................................................................................6

RULES

FED. R. CIV. P. 13(b)................................................................................................................1

FED. R. CIV. P. 42....................................................................................................................2

RLF1-3113782-1

## I.    INTRODUCTION

Crown's motion to bifurcate is a thinly veiled attempt to prevent the same jury that hears Crown's case in chief from also learning of Crown's long-standing and continued infringement of Rexam's patents in suit. Putting this pretext aside, Crown's motion is completely at odds with Rule 13(b) of the Federal Rules of Civil Procedure and, worse yet, is an insult to the competence of the jury. Crown contends that the inclusion of Rexam's permissive counterclaims at trial would be too much for the jury to handle. Yet, all of Rexam's counterclaims, like those of Crown, deal with the design of aluminum beverage cans. This litigation does not involve microchips covered with DNA or complex nanotechnology. Every member of the jury will almost certainly have seen and touched at least one of the approximately 100 billion aluminum cans that are made in the United States every year. Furthermore, although the various claims in suit deal with different aspects of can-making, they are all accusations of patent infringement. There are no claims of antitrust violations, tortious interference with prospective business relationships, etc. In other words, this lawsuit involves patent infringement claims and counterclaims pertaining to features of one of the most recognizable products in society today.

As will be shown below, Crown's argument that this lawsuit involves four distinct aspects of aluminum can design and manufacture actually cuts against the possibility of jury confusion. The improper rationale underlying Crown's motion would suggest bifurcation whenever any Rule 13(b) permissive counterclaim is not narrowly circumscribed to the facts supporting the claims originally brought by the claimant. Crown simply does not have the right to burden the Court and the jury just because it doesn't want Rexam's counterclaims tried in its lawsuit. Crown's motion to bifurcate Rexam's counterclaims should be denied.

- 1 -

## II.    ARGUMENT

### A.    Crown's Motion To Separate The Trial Of Rexam's Counterclaims Should Be Denied

#### 1.    The Decision To Separate Lies Within The Trial Court's Discretion

Federal Rule 42(b) states:

> **Separate Trials.**  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b).  The Third Circuit has explained that "the decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hosp*, 579 F.2d 819, 824 (3d Cir. 1978).  The decision to order a separate trial of Rexam's counterclaims lies squarely within the Court's discretion.

#### 2.    Separation Is Not Necessary To Prevent Jury Confusion And Would Result In A Waste Of Jury Time And Judicial Resources

Crown's argument of jury confusion springs from its opinion that "Crown's and Rexam's patent infringement claims relate to four different unrelated aspects of can technology." (D.I. 202 at 9).    In response, Rexam suggests that the distinctions between the technologies at issue will actually assist the jury in keeping the various factual issues straight.  Because the jury will need to be educated as to the manufacture of beverage cans generally, it will be uniquely suited to explore the following four areas in more detail:

- 2 -

- Crown's 826 and 875 patents relate to the specific shape of the can lids, known as "ends" and the process of attaching those ends to can bodies

- Rexam's 230 and 728 patents relate to the configuration of the "score line" that forms the opening in a can end from which a person drinks.

- Rexam's 839 patent relates to forming the narrowed portion at the top of the can body, known as the "neck."

- Rexam's 385 and 242 patents relate to altering the shape of the bottom of the can to increase strength, known as "bottom reforming."

The fact that each of these four groups of patents relates to a unique area on a beverage can will allow the jury to compartmentalize the issues relating to each particular technology.

> Crown supports its argument of "inescapable" jury confusion by noting the following:
>
> Rexam's five counterclaims cover three groups of patents directed to three different areas of can manufacturing, *i e*, necking and bottom reforming, and can end manufacturing, *i.e*, score line configuration. Not only are these three groups of patents different from each other both technologically and factually, they are also technologically and factually different from Crown's 875 and 826 patents (collectively, "Crown's can end patents").

(D.I. 202 at 4). Assuming, *arguendo,* that Crown's jury confusion argument is not completely frivolous, its logical conclusion would be to separate this lawsuit into four trials rather than two. The technologies of the Rexam counterclaims are no more different from Crown's patents than they are from each other. Crown's proposed solution of a separate trial for the Rexam counterclaims shows that the only distinction underlying Crown's motion is the distinction between claims originally asserted by Crown and Rule 13(b) counterclaims asserted by Rexam. That is no basis for separate trials and would result in wasted jury time and judicial resources. Since the product, a beverage can, that embodies all of the asserted technologies in this lawsuit

- 3 -

will not be foreign to the jury, even Crown's proposed bifurcation would be an inefficient use of resources.

A recent opinion by Judge Sleet supports Rexam's position. In *Synopsis, Inc. v. Magma Design Automation*, No. 05-701, 2006 U.S. Dist. LEXIS 33751, (D. Del. May 25, 2006) (Ex. 1)[1], the Court rejected the plaintiff's motion to bifurcate the defendant's antitrust counterclaims. The patent claims brought by the plaintiff in that case related to "improvements in computer software used to design extremely complex integrated circuits." *Id* at *2. After articulating the case-by-case standard required under *Lis*, the Court explained:

> [T]he court is not convinced that bifurcation of the antitrust claims from the infringement claims is necessary to prevent jury confusion. In this court's experience, jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet unnamed jurors by assuming they are unable to digest the facts and law in this case. Moreover, the court is confident that the experienced attorneys handling this case will craft cogent presentations to aid the jury in this process.

*Synopsis, Inc.*, 2006 U.S. Dist. LEXIS 33751, at *11. It is clear that Crown is asking the Court to "pre-judge the yet unnamed jurors" by assuming that they will be unable to keep straight the four different aspects of can manufacturing that are at issue in this case. Rexam, confident in its ability to "craft cogent presentations to aid the jury" and sharing Judge Sleet's confidence in the jurors of this district, respectfully suggests that separate trials are unnecessary and would be wasteful.

In addition, Rexam maintains that Crown is overstating the case when it repeatedly describes the absence of any evidentiary overlap between the claims at issue. Numerous specific

---

[1] All exhibits cited herein are attached to the Declaration of Anne Shea Gaza, dated February 8, 2007, which is filed contemporaneously herewith

- 4 -

examples exist. For example, the Crown LOE can end, which Rexam is accusing of infringing its 230 and 728 "score line" patents, is an example of the industry's "standard end" which is relevant to the invalidity arguments against the Crown 826 and 875 can end patents. Moreover, a broader interpretation of evidentiary overlap would include the relevant background on can manufacturing that must be provided to the jury before exploring any one particular aspect. *See id.* at *12 ("In addition, bifurcation would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology."). Finally, it is important to note that "[a]lthough a minor overlap of evidence does not militate strongly against bifurcation, it certainly does not weigh in favor of bifurcation." *Joy Techs., Inc v Flakt, Inc.*, 772 F. Supp. 842, 848 (D. Del. 1991) (denying defendant's motion to bifurcate the liability and damages phases into two separate trials).

A closer look at Crown's argument reveals that the Rexam counterclaims should not be bifurcated into a separate trial. The four groups of technologies at issue in this litigation all deal with aspects of can design and manufacture. While they are different enough to prevent jury confusion, they are not so significantly different as to presuppose jury incompetence and incur the waste of resources associated with multiple trials.

### 3.    Granting Crown's Motion Will Not Reduce The Number Of Legal Principles To Be Considered By The Jury

Crown cites *Ciena Corp v. Corvis Corp.*, 210 F.R.D. 519 (D. Del. 2002), where the Court granted the defendant's motion to bifurcate the issues of liability and damages, to support its motion to bifurcate the trial of Rexam's counterclaims. However, *Ciena Corp.* involved very different circumstances from the case at bar. There, the plaintiff had asserted five patents

- 5 -

relating to "wavelength division multiplexing optical communications equipment." *Id.* at 520. The technologies at issue in this litigation are not nearly that complicated. They all relate to particular design aspects of beverage cans. Furthermore, they can be viewed and easily appreciated through demonstrative exhibits.

The Court in *Ciena Corp.* explained that it bifurcated the liability and damages issues in order to reduce "the number of legal principles the jury must consider and apply." *Id.* at 521; *see also Enzo Life Sciences, Inc. v. Digene Corp.*, No. 02-212, 2003 U.S. Dist. LEXIS 10202, at *16-17 (D. Del. June 10, 2003) (applying this rationale to "cases involving both patent and non-patent claims" and bifurcating the business tort counterclaims from the patent claims) (Ex. 2). This rationale does not support Crown's motion to bifurcate in this case. Here, all of Crown's and Rexam's claims are charges of patent infringement under 35 U.S.C. § 271. Therefore, the jury will not have to master any additional legal principles due to the inclusion of Rexam's counterclaims at trial. It is telling that Crown has not moved to bifurcate the liability and damages issues into separate phases, which could indeed lessen the number of legal principles the jury would have to master. Instead, Crown is simply seeking the tactical advantage of not confronting Rexam's counterclaims at all while putting on its case.

### 4.    Crown Will Not Be Prejudiced By Rexam's Rule 13(b) Counterclaims

Crown's arguments for claiming that it will be prejudiced by the inclusion of Rexam's counterclaims at trial are nonsensical and reek of ulterior motive.

First, Crown's repeated and unsupported characterization of Rexam's technologies as "inconsequential" is not only uninformative, but inaccurate. The fact that Crown is still using

- 6 -

Rexam's technologies is made abundantly clear by (1) Crown's motion for partial summary judgment on laches with respect to Rexam's Counterclaims I, II, and III, and (2) the fact that Crown did not offer an expert opinion of non-infringement as to two of Rexam's patents, namely the 839 patent on smooth die necking (Counterclaim I) and the 242 patent on internal bottom reforming (Counterclaim III). (Ex. 3, Aschberger Rebuttal Report.)

Second, Crown labels Rexam's Rule 13(b) permissive counterclaims as "litigation-inspired tactical measure[s]" since they were filed "only after Crown filed suit against Rexam." (D.I. 202 at 3, 20). After elucidating this tautology, Crown then inexplicably contends that it would be prejudiced by the fact that Rexam's damages expert has proposed a royalty rate for Rexam's technologies that is too low vis à vis Crown's own distinct technology. Whether Rexam's expert's proposed rate is too low or simply realistic is not for Crown to decide. Crown's real basis for claiming prejudice is its fear "that [the jury] would be tempted to conclude that $0.03 per thousand was some type of across-the-board industry standard that should be applied to Crown's can end patents." (D.I. 202 at 20). Once again, a key element of Crown's motion to bifurcate, *i.e.*, that it would be prejudiced, springs from a presumption of jury incompetence. The competence of juries to render verdicts on Rule 13(b) counterclaims in addition to the originally filed claims in a lawsuit is not up for debate. It simply cannot be the case that Crown will be prejudiced by Rexam's testimony regarding its own technologies.

Crown's labeling of Rexam's assertion of its patents as a "litigation-inspired tactical measure" is the pot calling the kettle black. Crown's motion is a thinly veiled attempt to prevent the jury from learning of its long-standing and continued infringement of Rexam's patents in suit. As Rexam has submitted summary judgment briefs on both the invalidity of the Crown

- 7 -

patents and non-infringement by the Rexam End, it may eventually be the case that the Rexam

counterclaims will be tried divorced from the Crown patents in suit. However, until then, for all

of the reasons articulated above, the Court should deny Crown's motion to bifurcate the trial of

Rexam's counterclaims.

**B.    Crown Should Not Be Permitted To Present Laches-Related Evidence To The Jury**

    **1.    Crown's Procedural Motion Regarding The Presentation Of Laches-Related Evidence Is Not Appropriately Before The Court**

Crown's motion to separate the trial of Rexam's counterclaims surprisingly also contains

argument regarding the propriety of presenting laches-related evidence to the jury at trial.

Considering the outstanding summary judgment motions regarding Rexam Counterclaims I, II,

and III, Rexam submits that this issue would more appropriately be argued as a pretrial motion.

Crown admits that this issue is premature when it notes that its motion "is directed to a

procedural aspect of whatever trial is held on Rexam's five counterclaims" and asks that this

motion not be considered until after a decision on its two motions for summary judgment. (D.I.

202 at 21). Furthermore, the memorandum order by Judge Robinson that Crown relies on was

issued "after having heard oral argument at the pretrial conference and having reviewed the

papers submitted in connection with the issues." *McKesson Info. Solutions LLC v Trizetto*

*Group, Inc.*, Civ. No. 04-1258, 2006 U.S. Dist. LEXIS 18655, at *1 (D. Del. Apr. 11, 2006) (Ex.

4).

- 8 -

### 2.    Crown Should Not Be Able To Present Any Laches Defense With Regard To Rexam's Counterclaims IV and V

Should the Court decide to address the issue at this time, Crown should not be permitted to present a laches defense with regard to Rexam's Counterclaims IV and V (the "score line" patents).   Although this seems obvious in light of the fact that Crown has only raised the affirmative defense of laches in response to Rexam's Counterclaims I, II, and III, Crown's motion is ambiguous in the relief it seeks:  "Specifically, Crown seeks a ruling that in <u>any trial</u> of Rexam's counterclaims, it be permitted to present evidence, witnesses, and argument to the jury relevant to the laches defense that Crown has raised to the necking and bottom reforming patents."  (D.I. 202 at 21) (emphasis added).   Since Crown has not pled the affirmative defense of laches with regard to Rexam's Counterclaims IV and V (the "score line" patents), it should not be able to present any laches-related evidence on these counterclaims.

### 3.    Evidence Related To Laches, An Equitable Defense, Should Only Be Presented To The Court

As an equitable defense, the issue of laches should be tried only to the Court.  *See A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en banc*) ("The application of the defense of laches is committed to the sound discretion of the district court."); *eSpeed, Inc. v. Brokertec USA, LLC*, 417 F. Supp. 2d 580, 584 (D. Del. 2006) (Jordan, J.) ("Concurrently with the jury trial, the parties tried the issues of inequitable conduct and laches to the court.").

While acknowledging that laches is to be decided by the Court, Crown argues that "presenting the same facts and same witnesses at two separate proceedings (one for the jury on Rexam's counterclaims, and one for the judge specifically on laches) would work against the

- 9 -

interests of judicial economy." (D.I. 202 at 21). However, Crown does not provide any justification for presenting the facts regarding Crown's laches defense to the jury. This evidence simply has no relevance to the issues, e.g., infringement and validity, that the jury will decide. Instead, the presentation of laches-related evidence to the jury will only serve to confuse the issues. Additionally, Rexam could be prejudiced should Crown convince the jury into believing that Rexam's alleged unreasonable delay in bringing suit should factor into the jury's resolution of the questions of fact that it is tasked to answer.

Regarding Crown's contention that the same witnesses will need to be present at two separate proceedings, this problem is easily solved by the Court scheduling time to hear the evidence outside the presence of the jury. This district has approved such a strategy regarding the issue of inequitable conduct:

> As is the court's practice, evidence of inequitable conduct is presented to the court outside the presence of the jury. Had Shell informed the court of its intention to pursue the issue of inequitable conduct, as it was instructed to do, the court would have scheduled time to hear the evidence before or after the jury left for the day or some other time.

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 163 F. Supp. 2d 426, 457 (D. Del. 2001) (Robinson, C.J.), *rev'd in part on other grounds*, 308 F.3d 1167 (Fed. Cir. 2002). Like evidence relating to inequitable conduct, evidence relating to laches can be presented to the Court without requiring the witnesses to attend two separate proceedings.

Finally, in the event the Court disagrees with Rexam on this issue or is not able to schedule time to hear the evidence related to laches outside of the presence of the jury, Rexam requests that the Court address the laches issue itself without an advisory verdict from the jury. In *Lifescan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 381 (D. Del. 2000) (Farnan,

- 10 -

C.J.), evidence regarding inequitable conduct was presented at trial, and the defendants requested that the issue be submitted to the jury for an advisory verdict. "Resolving the matter, the Court concluded that it would address the inequitable conduct issue separately as a bench matter without an advisory verdict from the jury." *Id*. In this case, asking the jury to consider the additional evidence and legal principles required to render an advisory verdict on Crown's laches defense would unnecessarily complicate the questions of fact that are properly the jury's focus.

## III.    CONCLUSION

For the reasons stated above, Crown's motion to separate the trial of Rexam's counterclaims should be denied. In addition, Crown should not be permitted to present evidence of laches relating to Rexam Counterclaims I, II, and III to the jury.

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL  60601
312-775-8000

Dated: February 8, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
Attorneys for Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2007, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

> Barry M. Klayman
> Wolf, Block, Schorr and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market Street, Suite 1001
> Wilmington, Delaware  19801

I hereby certify that on February 8, 2007, I sent the foregoing document to the following

non-registered participants in the manner indicated below:

| VIA FACSIMILE | VIA ELECTRONIC MAIL |
|---|---|
| Dale M. Heist | Chad E. Ziegler |
| Woodcock Washburn LLP | ziegler@woodcock.com |
| Cira Centre | Woodcock Washburn LLP |
| 2929 Arch Street, 12th Floor | Cira Centre |
| Philadelphia, PA 19104-2891 | 2929 Arch Street, 12th Floor |
| | Philadelphia, PA 19104-2891 |

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700