EXHIBIT 1

1 of 11 DOCUMENTS



Cited
As of: Feb 05, 2007

SYNOPSYS, INC., Plaintiff, v. MAGMA DESIGN AUTOMATION, Defendant.
MAGMA DESIGN AUTOMATION, Counter Claimant, v. SYNOPSYS, INC.,
Counter Defendant.

C.A. No. 05-701 (GMS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2006 U.S. Dist. LEXIS 33751; 64 Fed. R. Serv. 3d (Callaghan) 847; 2006-1 Trade
Cas. (CCH) P75,320*

**May 25, 2006, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a suit against defendant alleging three counts of patent infringement in violation of *35 U S C S § 271* Defendant answered and asserted seven counterclaims against plaintiff Plaintiff moved to dismiss all but defendant's patent infringement counterclaim, moved to bifurcate defendant's antitrust counterclaims, and moved for a stay De-fendant sought leave to file an amended answer to add four additional infringement counterclaims

**OVERVIEW:** In addition to its patent infringement counterclaim, defendant asserted monopolization and attempt to monopolize counterclaims under § 2 of the Sherman Act, *15 U S C S § 2*, product disparagement and trade libel, in violation of § 43(a) of the Lanham Act, *15 U S C S § 1125*(a); unfair competition under the Delaware Deceptive Trade Practices Act, Del Code. Ann tit 6, § 2531 et seq. (1999) and common law; and a tortious interference with business relations counter-claim. The court found that defendant asserted actionable counterclaims Its allegations, that plaintiff owned a 91 % share in two relevant markets and was acting anti-competitively by using the patent system and exclusive-dealing contracts to drive it out of business, were suffi-cient to state a claim under *15 U S C S § 2* Fed R. Civ. P 9(b) heightened pleading requirements did not apply to the Lanham Act counterclaims; defendant sufficiently met Fed R Civ P 8 requirements as to those counter-claims The court declined to exercise its discretion un-der Fed R Civ P 42(b) to bifurcate the trial; bifurcating the antitrust claims was not necessary to prevent jury confusion and would not promote efficiency

**OUTCOME:** The court denied plaintiff's motions It granted defendant's motion for leave to amend its an-swer The court ordered the parties to meet and confer regarding an amendment to the court's scheduling order

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] When considering a Fed R Civ P 12(b)(6) mo-tion, a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom and view them in the light most favor-able to the plaintiff A Rule 12(b)(6) motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved. However, the court need not credit either bald assertions or legal conclusions in a complaint when deciding a mo-tion to dismiss

*Antitrust & Trade Law > Clayton Act > Defenses*
*Antitrust & Trade Law > Sherman Act > Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*

2006 U.S. Dist. LEXIS 33751, *; 64 Fed. R. Serv. 3d (Callaghan) 847;
2006-1 Trade Cas. (CCH) P75,320

[HN2] In antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals for failure to state a claim, prior to giving the plaintiff ample opportunity for discovery, should be granted very sparingly.

*Antitrust & Trade Law > Sherman Act > Claims*
[HN3] The anti-trust injury requirement of *15 U.S.C.S. § 2* is sufficiently pleaded where a plaintiff alleges that he was excluded from participation in a particular market and the result was a decrease in competition in that market.

*Antitrust & Trade Law > Consumer Protection > False Advertising > Lanham Act*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview*
[HN4] The state of the law is unsettled as to whether Fed. R. Civ. P. 9(b) is intended to incorporate claims brought under the Lanham Act. If such a claim is not subject to the heightened pleading requirements of Rule 9(b), then a party's allegations need only satisfy the notice pleading requirements of Fed. R. Civ P. 8(a).

*Antitrust & Trade Law > Consumer Protection > False Advertising > Lanham Act*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview*
[HN5] The purpose of Fed. R. Civ. P. 9(b) is to give defendants notice of the claims against them, provide an increased measure of protection for their reputations, and reduce the number of frivolous suits brought solely to extract settlements. The United States District Court for the District of Delaware holds that the heightened pleading requirements of Rule 9(b) are not applicable in the context where a defendant's Lanham Act claim is brought in response to a suit originally filed by a plaintiff, and, as such, is not a case in which the court must protect the plaintiff against a frivolous suit brought solely to extract a settlement; the need to provide increased protection for the plaintiff's reputation is not as crucial because the counterclaim was brought as a means of protecting the defendant's reputation; and, even if the defendant's pleadings do not specify the "who, when, and where" of the plaintiff's allegedly damaging statements, that problem is easily cured in discovery.

*Antitrust & Trade Law > Consumer Protection > False Advertising > Lanham Act*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Trademark Law > Federal Unfair Competition Law > Lanham Act > General Overview*
[HN6] Under the Lanham Act, a plaintiff must allege that: (1) the defendant made false or misleading statements as to its product or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. The required level of specificity with which each element must be pleaded is not high because Fed. R. Civ. P. 8(a)(2) only requires a short and plain statement of the claim showing that the pleader is entitled to relief.

*Civil Procedure > Pretrial Matters > Separate Trials*
[HN7] See Fed. R. Civ. P. 42(b).

*Civil Procedure > Pretrial Matters > Separate Trials*
[HN8] The decision to bifurcate vel non is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
*Civil Procedure > Pretrial Matters > Separate Trials*
*Patent Law > Infringement Actions > General Overview*
[HN9] The United States Court of Appeals for the Third Circuit has held that a district court's customary practice of separating the liability and damages phases in negligence cases without considering the unique circumstances of the negligence case at bar runs afoul of Fed. R. Civ. P. 42(b). A general policy of a bifurcating all negligence cases offends the philosophy that the decision must be made by a trial judge only as a result of an informed exercise of discretion on the merits of each case. Therefore, although the routine practice of other courts may indicate the worth of bifurcation where antitrust and infringement claims are asserted in a patent infringement suit, Fed. R. Civ. P. 42, advisory committee's notes, the United States District Court for the District of Delaware's

2006 U.S. Dist. LEXIS 33751, *; 64 Fed. R. Serv. 3d (Callaghan) 847;
2006-1 Trade Cas. (CCH) P75,320

bifurcation decision will be guided first and foremost by the merits of the case.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN10] See Fed. R. Civ. P. 15(a).

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN11] In the absence of any apparent or declared reason--such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc --the leave sought should, as Fed. R. Civ. P. 15(a) requires, be freely given.

COUNSEL: [*1] For Synopsys Inc., a Delaware corporation, Plaintiff: Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.; Leslie A. Polizoti, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

For Magma Design Automation, a Delaware corporation, Defendant: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For Magma Design Automation, a Delaware corporation, Counter Claimant: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINION BY: Gregory M. Sleet

OPINION:

MEMORANDUM

I. INTRODUCTION

In the above-captioned action, Plaintiff and Counter Defendant Synopsys, Inc. ("Synopsys") alleges three counts of patent infringement in violation of *35 U.S.C.A. § 271 (2001 & Supp. 2005)* against Defendant and Counter Claimant Magma Design Automation ("Magma"). In its first amended answer, Magma alleges against Synopsys one count of monopolization (Count I) and one count of attempted monopolization (Count II), both in violation of Section 2 of the Sherman Act, *15 U.S.C.A. § 2 (Supp. 2005)*, one count of product disparagement and trade libel (Count [*2] III) in violation of Section 43(a) of the Lanham Act, *15 U.S.C.A. § 1125(a)*

*(1998 & Supp. 2005)*, one count of statutory unfair competition (Count IV) in violation of the Delaware Deceptive Trade Practices Act, *Del. Code Ann. tit. 6, § § 2531, et seq.* (1999), one count of unfair competition (Count V) and one count of tortious interference with business relations (Count VI), both in violation of Delaware common law, and one count of patent infringement (Count VII). Presently before the court are Synopsys' motion to dismiss Counts I-VI of Magma's first amended answer (D.I. 9), Synopsys' motion to bifurcate and stay (D.I. 31), and Magma's motion for leave to file a second amended answer to include four additional patent infringement counterclaims (D.I. 50).

II. JURISDICTION

The court has subject matter jurisdiction pursuant to *28 U.S.C.A. § § 1331, 1367 (1993)*.

III. BACKGROUND

According to the first amended answer, the patents at issue in this case relate to improvements in computer software used to design extremely complex integrated circuits. In general, such software translates a user's [*3] high-level description of the circuit he or she has designed and wishes to implement into a low-level description of the necessary components. This translation process is known as logic synthesis. The software then engages in a process known as physical design, in which the actual circuit layout and interconnections are determined. Eventually (after several steps irrelevant to this discussion) the newly-designed circuit is manufactured and ready for testing. The testing process typically requires the insertion of "scan chains" into the low-level description produced during logic synthesis. These scan chains consist of interconnected storage elements capable of being read from and written to during testing.

Magma alleges that Synopsys has a 91% share in both the logic-synthesis market and the scan-chain insertion market, which are monopolies Synopsys procured and maintains through anti-competitive conduct. More specifically, Magma contends that two of the patents asserted by Synopsys in this case were obtained by fraudulent means, and that Synopsys has attempted to create exclusive-dealing contracts with Magma's customers. Magma further alleges that Synopsys has engaged in a public [*4] campaign of disparagement by falsely claiming that Magma sells infringing products, and that Magma cannot afford to both defend itself in court and remain solvent.

IV. DISCUSSION

A. Motion to Dismiss

2006 U.S. Dist. LEXIS 33751, *; 64 Fed. R. Serv. 3d (Callaghan) 847;
2006-1 Trade Cas. (CCH) P75,320

[HN1] "When considering a *Rule 12(b)(6)* motion, [the court is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).* "A *Rule 12(b)(6)* motion should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" *Id. at 351* (quoting *D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)).* "However, [the] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Evancho, 423 F.3d at 351.*

### 1. Sherman Act (Counts I & II)

Synopsys argues that Magma's monopolization and attempted monopolization claims under *Section 2* of the Sherman Act should be dismissed pursuant to *Fed. R. Civ. P. 12(b)(6)* [*5] because they are unsupported by adequate factual allegations. In particular, Synopsys contends that the first amended answer fails to allege "antitrust injury," which, according to Synopsys, requires "harm to competition in the marketplace," and a causal connection between that harm and the anti-competitive activities.

In *Hosp. Bldg. Co. v. Trs. of Rex Hosp.,* the Supreme Court explained:

> "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)* (footnote omitted). And [HN2] in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," *Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S. Ct. 486. 7 L. Ed. 2d 458 (1962),* dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.

*425 U.S. 738, 746, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976).* In this case, the clear import of Magma's allegations is that Synopsys, with a 91% share in both relevant markets, is acting anti-competitively by using the patent system and exclusive-dealing [*6] contracts to run a competitor, *i.e.,* Magma, out of business. If Synopsys is successful, Magma contends that there will be a decrease in competition because significant barriers to entry prevent would-be competitors from replacing the void left by Magma. These allegations are sufficient to state a claim under *Section 2* of the Sherman Act. *Gill v. Del Park, L.L.C., 294 F. Supp. 2d 638, 644 (D. Del. Dec. 2, 2003)* (explaining that [HN3] "the anti-trust injury requirement is sufficiently pled where plaintiff alleges that he was excluded from participation in a particular market, and the result was a decrease in competition in that market")

### 2. Lanham Act (Count III)

Synopsys argues that Magma's Lanham Act claim is subject to the heightened pleading requirements of *Rule 9(b),* which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b).* However, [HN4] the "state of the law [is unsettled] as to whether *Rule 9(b)* was intended to incorporate claims brought under the Lanham Act." *H.H. Fluorescent Parts, Inc. v. DM Tech. & Energy, Inc., No. 04-1997, 2005 U.S. Dist. LEXIS 26699, [*7] at *13 (E.D. Pa. Nov. 3, 2005).* If Count III is not subject to the heightened pleading requirements of *Rule 9(b),* then Magma's allegations need only satisfy the notice pleading requirements of *Rule 8(a).*

[HN5] The purpose of *"Rule 9(b)* [is] to give defendants 'notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements'" *In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006)* (quoting *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)).* Here, none of these purposes would be served by requiring Magma to satisfy the pleading requirements of *Rule 9(b).* The Lanham Act claim in this case is one of seven claims Magma brought in response to a suit originally filed by Synopsys. Thus, this is not a case in which the court must protect Synopsys against a "frivolous suit brought *solely* to extract a settlement." Moreover, the need to provide increased protection for Synopsys' reputation is not as crucial in this case because Count III was brought [*8] as a means of protecting Magma's reputation. Finally, even if Magma's pleadings do not specify the "who, when, and where" of Synopsys' allegedly damaging statements, that problem is easily cured in discovery. Therefore, the court holds that the heightened pleading requirements of *Rule 9(b)* are not applicable in this context.

[HN6] "Under the Lanham Act a plaintiff must allege that: (1) defendant made false or misleading statements as to its product, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence pur-

2006 U.S. Dist. LEXIS 33751, *; 64 Fed. R. Serv. 3d (Callaghan) 847;
2006-1 Trade Cas. (CCH) P75,320

chasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Enzo Life Scis., Inc. v. Digene Corp., 295 F. Supp. 2d 424, 427 (D. Del. Mar. 31, 2003).* However, the required level of specificity with which each element must be pleaded is not high because *Rule 8* only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2).* The first two elements [*9] are adequately pleaded by the allegation that Synopsys, knowing its patents were obtained by fraudulent means, engaged in a public campaign of disparagement by falsely claiming that Magma sells infringing products, and that Magma cannot afford to both defend itself in court and remaining solvent. The third element (materiality) and the fifth element (injury) are adequately pleaded by the allegation that Synopsys' campaign of disparagement has damaged Magma. And the fourth element (interstate commerce) is explicitly pleaded in paragraph 156 of the first amended answer. Thus, Magma has met the requirements of *Rule 8* with regard to its Lanham Act claim.

### 3. State Law Claims (Counts IV, V & VI)

Synopsys argues that the court has no subject matter jurisdiction pursuant to *28 U.S.C.A. § 1367* over Magma's state law claims if Counts I-III are dismissed. However, because those counts will not be dismissed at this time, the court retains jurisdiction over Counts IV-VI.

### B. Motion to Bifurcate and Stay

[HN7] "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate [*10] trial of any claim, cross-claim, counterclaim, or third-party claim . . . ." *Fed. R. Civ. P. 42(b)* [HN8] "[T]he decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978)*

Synopsys argues that the court should bifurcate the antitrust claims from the infringement claims because other courts routinely do so. This argument runs contrary to the guiding principle enunciated in *Lis.* There, the district court had simply followed its customary practice of separating the liability and damages phases in negligence cases without considering the unique circumstances of the negligence case at bar. On appeal, [HN9] the Third Circuit held that this methodology ran afoul of *Rule 42(b):* "A general policy of a district judge bifurcating all negligence cases offends the philosophy that the decision must be made by a trial judge only as a result of an informed exercise of discretion *on the merits of each*

*case." Lis, 579 F.2d at 824* (emphasis added). Therefore, although [*11] the routine practice of other courts may indicate that "experience has demonstrated [the] worth" of bifurcation in these circumstances, *Fed. R. Civ. P. 42* advisory committee's note, the court's decision in this case will be guided first and foremost by the merits of this case.

With that principle in mind, the court is not convinced that bifurcation of the antitrust claims from the infringement claims is necessary to prevent jury confusion. In this court's experience, jurors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case. Moreover, the court is confident that the experienced attorneys handling this case will craft cogent presentations to aid the jury in this process. The court is further unpersuaded by Synopsys' contention that bifurcation would serve the interest efficiency. Magma's antitrust claims are based in part on the allegation that Synopsys fraudulently-obtained two of its patents and asserted them against Magma in [*12] violation of *Section 2* of the Sherman Act. Synopsys' alleged fraud is also a centerpiece of Magma's invalidity claims. Thus, were the court to bifurcate, the evidentiary presentation in one case would likely be substantially duplicative of the evidentiary presentation in the other. In addition, bifurcation would likely create further duplication of evidence because both juries would need to be educated in the same relevant technology. Accordingly, the court concludes that neither jury confusion nor efficiency weigh in favor of bifurcating the antitrust claims from the infringement claims.

Synopsys also argues that the antitrust claims should be stayed until the infringement claims are resolved mainly because resolution of the infringement claims could streamline subsequent adjudication of the antitrust claims. Assuming *arguendo* that the litigation could be streamlined in this way, it is telling that Synopsys does not propose to shorten the number of days allocated for trial in the event that a stay is granted. Thus, even if the court stays the antitrust claims, the minimum amount of time allocated to try this case does not decrease. Consequently, it appears that a stay only has [*13] the potential to consume *more* of this court's valuable time. Therefore, the court will not stay the antitrust portion of this action.

For similar reasons, the court also declines to stay Synopsys' infringement claims pending re-examination by the PTO. The validity of the asserted patents will be litigated regardless of whether a stay is granted because that issue is relevant to Magma's Sherman Act claims. The most efficient course of action, then, is to also liti-

2006 U.S. Dist. LEXIS 33751, *; 64 Fed. R. Serv. 3d (Callaghan) 847;
2006-1 Trade Cas. (CCH) P75,320

gate infringement in order to capitalize on the jury's understanding of the relevant technology. Thus, the court will deny Synopsys' motion in its entirety.

### C. Motion to Amend

Pursuant to the court's scheduling order of December 28, 2005, the deadline for amended pleadings is March 24, 2006. On that date -- March 24 -- Magma timely filed a motion for leave to amend its first amended answer to include four additional counterclaims for patent infringement. [HN10] "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a)* [HN11] "In the absence of any apparent [*14] or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given'" *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).*

Synopsys' primary basis for opposing Magma's motion is that fact discovery is scheduled to close on September 26, 2006, thus giving the parties less than six months to both conclude discovery on the claims already in the case, and to conduct full discovery on the four additional patent infringement claims. However, trial in this case is not scheduled to begin until June 11,2007, which should give the parties ample time to conduct additional discovery beyond September 26 without disturbing the trial date. Thus, the court will grant the motion and order the parties to meet and confer regarding an amendment to the court's scheduling order. n1

n1 Synopsys claims that Magma's four additional patents are not sufficiently similar to the technology at issue in this case to justify their in-

clusion. However, Synopsys merely proposes that "a review of the patents quickly reveals that there is little similarity" among the patents. (D.I. 63 at 8.) In this lay court's opinion, a review of the patents quickly reveals enough similarity among the patents to justify including them in this lawsuit.

[*15]

## V. CONCLUSION

For the reasons stated, the court will deny the motion to dismiss, deny the motion to bifurcate and stay, and grant the motion to amend. The court will further order the parties to meet and confer to regarding an amendment to the court's scheduling order.

Dated: May 25, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

### ORDER

IT IS HEREBY ORDERED THAT:

1. The motion to dismiss (D.I. 9) be DENIED;

2. The motion to bifurcate and stay (D.I. 31) be DENIED;

3. The motion to amend (D.I. 50) be GRANTED; and

4. The parties MEET and CONFER regarding the scheduling order.

Dated: May 25, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

EXHIBIT 2



Positive
As of: Feb 05, 2007

**ENZO LIFE SCIENCES, INC., Plaintiff/Counterclaim Defendant, v. DIGENE CORPORATION, Defendant/Counterclaim Plaintiff v. ENZO BIOCHEM, INC., Additional Counterclaim Defendant.**

**Civil Action No. 02-212-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 10202*

**June 10, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion granted by *Enzo Life Scis., Inc. v. Digene Corp., 270 F. Supp. 2d 484, 2003 U.S. Dist. LEXIS 11657 (D. Del., 2003)*

**PRIOR HISTORY:** *Enzo Life Scis., Inc. v. Digene Corp., 295 F. Supp. 2d 424, 2003 U.S. Dist. LEXIS 23839 (D. Del., Mar. 31, 2003)*

**DISPOSITION:** [*1] Enzo Biochem's motion to strike expert report denied. Joint motion to bifurcate and stay discovery granted in part and denied in part. Motions for protective orders denied. Motion to compel denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant competitor for patent infringement. The competitor brought counterclaims against the patent holder and a related corporation. The corporation moved to strike an expert's report and moved jointly with the patent holder to bifurcate trial and stay discovery.

**OVERVIEW:** The patent holder and the competitor were involved in development of RNA and DNA testing systems. The patent involved technology used in diagnostic medical applications. The competitor counterclaimed under *15 U.S.C.S. § 1125*(a) and for unfair competition and tortious interference with prospective business relations under Delaware law. The corporation claimed that the competitor's expert report was based on factual allegations not asserted in the counterclaims, but the court found that the competitor provided the relevant

discovery as to the facts relied on by the expert. The expert's report raised no new causes of action. The court found that bifurcation of the patent issues and counterclaims was appropriate in order to avoid jury confusion on complex legal issues. Separating the issues into sequential phases for trial on infringement, validity, and the counterclaims would allow the jury to focus on one body of law at a time. However, the court declined to stay discovery on the counterclaims, in the interest of efficiently moving on with their resolution.

**OUTCOME:** The corporation's motion to strike the expert's report was denied. The motion to bifurcate was granted, but a stay of discovery was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Torts > Business Torts > Commercial Interference > Prospective Advantage > General Overview*
[HN1] All that a plaintiff is required to do in its complaint, under notice pleading, is to provide a short and plain statement showing that it is entitled to relief. Fed. R. Civ. P. 8(a)(2).

*Civil Procedure > Pretrial Matters > Separate Trials*

2003 U.S. Dist. LEXIS 10202, *

*Civil Procedure > Trials > Jury Trials > Right to Jury Trial*
[HN2] See Fed. R. Civ. P. 42(b)

*Civil Procedure > Pretrial Matters > Separate Trials*
[HN3] Under Fed. R. Civ. P. 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case. In deciding whether one trial or separate trials will best serve the above factors, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation.

*Civil Procedure > Judicial Officers > Judges > General Overview*
*Civil Procedure > Pretrial Matters > Separate Trials*
[HN4] In the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury. In fact, bifurcation of complex patent trials has become common.

*Civil Procedure > Pretrial Matters > Separate Trials*
[HN5] Typically, courts bifurcate patent cases into liability and damage trials. Courts also bifurcate complex patent cases in such a way to prevent jury confusion. This reasoning is also applicable to cases involving both patent and non-patent claims.

*Civil Procedure > Pretrial Matters > Separate Trials*
*Civil Procedure > Trials > Jury Trials > Jurors > General Overview*
[HN6] Bifurcation is an important discretionary tool that district courts can use to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them. Many scholars have endorsed bifurcation in complex cases as a method of improving juror comprehension. Specifically, bifurcation might enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time.

**COUNSEL:** Josy W. Ingersoll, and Sara Beth Reyburn Esquires of YOUNG, CONAWAY, STARGATT & TAYLOR, L.L.P., Wilmington, Delaware.

Of Counsel: Richard L. DeLucia, Jeffrey M. Butler, and Paul M. Richter, Jr., Esquires of KENYON & KENYON, New York, New York Attorneys for Plaintiff, Enzo Life Sciences, Inc. and Additional Counterclaim Defendant, Enzo Biochem, Inc.

Richard D. Kirk, Esquire of MORRIS, JAMES, HITCHENS & WILLIAMS L.L.P., Wilmington, Delaware.

Of Counsel: Mark R. Labgold, Ph.D., Kevin M. Bell, Laura A. Donnelly, Esquires of PATTON BOGGS L.L.P., McLean, Virginia. Richard J. Oparil, Esquire of PATTON BOGGS L.L.P., Washington, DC. Attorneys for Defendant, Digene Corporation.

**JUDGES:** JOSEPH J. [*2] FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION: FARNAN, District Judge**

A teleconference was held in this case on Wednesday, June 4, 2003, to discuss the pending motions. During the teleconference, the Court ruled on several motions. Specifically, for the reasons discussed below, the Court: 1) denied Enzo Biochem, Inc.'s ("Enzo Biochem") Motion to Strike the Expert Report of Stephen Jizmagian (D.I. 144); (2) granted in part and denied in part Enzo Biochem's and Enzo Life Sciences Inc.'s ("Enzo Life Sciences") Joint Motion to Bifurcate Trial on Digene's Business Tort Claims (Counterclaims III-V) and Stay Discovery on Them (D.I. 145); 3) denied Digene Corporation's ("Digene") Motions for Protective Orders (D.I. 104, 113); and 5) denied Enzo Life Sciences' Motion to Compel (D.I. 94).

**I. Factual Background**

This is a patent infringement action brought by Plaintiff Enzo Life Sciences against defendant Digene involving *U.S. Patent No. 6,221,581*B1 (the "'581 Patent"), issued on April 24, 2001. Both Enzo Life Sciences and Digene are companies involved in the development, manufacture and distribution of proprietary RNA and DNA testing systems. [*3] The *'581 Patent* concerns hybrid capture technology used in diagnostic medical applications.

Plaintiff, Enzo Life Sciences has alleged that Digene is infringing claims 16-26, 30-40, 44-53, 73-87, 91-100 and 104-107 of the *'581 Patent* by making, selling and offering for sale its "Hybrid Capture" diagnostic products. This action began on March 15, 2002 when Digene filed a Summons and Complaint for Declaratory Judg-

2003 U.S. Dist. LEXIS 10202, *

ment. Enzo Life Sciences filed a separate lawsuit for patent infringement on March 20, 2002. During a May 2, 2002 status conference, the Court suggested that the parties stipulate to a dismissal of Digene's declaratory judgment Complaint, without prejudice and proceed with Enzo Life Sciences' patent infringement complaint. The Court further explained that Digene would be permitted to bring other claims against any Enzo entity, including Enzo Biochem, as permissive counterclaims. Thereafter, the parties filed a Stipulated Proposed Scheduling Order dismissing Digene's declaratory judgment action without prejudice, and the parties agreed to proceed with all pending and all related claims in Enzo Life Sciences' patent infringement action. Additionally, Digene filed Counterclaims [*4] against Enzo Life Sciences and Enzo Biochem.

On June 28, 2002, Enzo Life Sciences, Inc. and Enzo Biochem, Inc. moved to dismiss Digene's Counterclaims. On March 31, 2003, the Court denied the motion to dismiss Digene's Counterclaims. (D.I. 124). Fact discovery closed on February 24, 2003 and the parties are currently conducting expert discovery which is scheduled to close on June 20, 2003.

## II. Enzo Biochem's Motion to Strike the Expert Report of Stephen Jizmagian (D.I. 144)

### A. Parties' Contentions

Enzo Biochem contends that the expert report of Dr. Stephen Jizmagian should be stricken in its entirety. Specifically, it contends that Digene's counterclaims III-V should be limited to those that were actually pled in the case, namely those that are based upon the two, 2001 press releases by Enzo Biochem regarding the *'581 Patent*. Enzo Biochem points out that Digene, in its counterclaims, alleging causes of action under: 1) § 43(a) of the Lanham Act, *15 U.S.C. § 1125 (a)* (Count III); 2) Unfair Competition under the Delaware Deceptive Trade Practices Act, *6 Del. C. § § 2531 et seq* (Count IV); and 3) Tortious Interference With Prospective [*5] Business Relations (Count V), listed two press releases as the factual basis for such claims. However, at this juncture, Enzo Biochem argues that Dr. Jizmagian's expert report concerning damages as to these claims does not mention the press releases, but rather details alleged instances that are not asserted in Digene's counterclaims. For instance, Enzo, points out that the report states that Dr. Jizmagian was told by Digene that Enzo Biochem somehow prevented Digene from obtaining one million dollars in capital through Goldman Sachs in 2000. As a result, Enzo argues that Digene's new claim, as suggested by the expert report, is not that Enzo Biochem interfered with customers seeking to purchase the Hybrid Capture product, but that Enzo Biochem somehow interfered with Digene's ability to raise capital through Goldman Sachs,

which allegedly led to lost sales. Based on these facts, Enzo Biochem claims that it is improper for Digene to amend its counterclaims through Dr. Jizmagian's expert report, and therefore, the report should be stricken in its entirety.

In response, Digene asserts that its responses to Enzo Biochem's interrogatories plainly set forth the factual basis for its damages [*6] claims, where Digene listed all parties that it had contracts and/or agreements with from as early as 1992 that were terminated. See Ex. 1 to Kirk Decl. Further, in regard to the time period of damages, Digene contends that it affirmatively stated that Biochem's actions before or at the time the case was filed resulted in direct harm to Digene, where in an interrogatory response they stated:

> As a direct result of Biochem's actions Digene was forced to respond to, participate in or otherwise conduct extensive due diligence, including requests from potential funding entities as well as requests from potential joint venturers. Such requests include but are not limited to requests made when Digene completed its IPO and subsequent follow-on private placement transaction and includes potential follow-on public offering and potential strategic partners such as requests from Cytyc, Affymetrix, Applera Corporation and Roche.

Ex. 1 to Kirk Decl. Further, Digene argues that all of the documents relied on by Dr. Jizmagian were produced during discovery, with the bulk of the disclosures, consisting of four hundred boxes of documents, produced as early as October 2002. Moreover, [*7] Digene argues that Enzo Biochem failed to pursue available discovery, because it did not take any depositions until the last week of extended fact discovery and points to the fact that during Ms. Seyfried's, Digene's Vice President of Business Development, deposition, she mentioned that the financing opportunities which were adversely affected by Enzo's actions included Goldman Sachs. See Ex. 6 to Kirk Decl. at 176-180. Digene contends that based on the fact that the Court determined that it properly pled the allegations in its Business Tort Counterclaims in its Memorandum Opinion regarding the motion to dismiss (D.I. 124), and the fact that Digene provided all necessary discovery, Enzo's motion to strike should be denied.

### B. Discussion

The Motion to Strike will be denied because the Court concludes that Digene pled the necessary elements and provided the relevant discovery.

First, in its Memorandum Opinion denying Enzo's Motion to Dismiss, the Court stated that: 1) the alleged factual basis for the counterclaims were the press releases, and 2) that in the context of interference with business relationships Biochem's alleged actions constitute attempts to induce third parties, [*8] namely customers buying Digene's Hybrid Capture(R) products, not to enter into or continue their business relations with Digene. (D.I. 124 at 2-3, 12). However, after finding that Digene had properly pled these counterclaims for purposes of a motion to dismiss, the Court qualified its conclusions and noted that "there are discovery mechanisms, such as interrogatories, for ascertaining more details regarding the allegations of the complaint." (D.I. 124 at 14).

Here, Digene's Counterclaims involve claims under: 1) § 43(a) of the Lanham Act, *15 U.S.C. § 1125(a)* (Count III); 2) Unfair Competition under the Delaware Deceptive Trade Practices Act, *6 Del. C. § § 2531 et seq.* (Count IV); and 3) Tortious Interference With Prospective Business Relations (Count V). Although Digene listed two press releases as the factual basis for such counterclaims in its Complaint, [HN1] all that it was required to do in its Complaint, under notice pleading, was to provide a short and plain statement showing that they are entitled to relief. *Fed. R. Civ. P. 8(a)(2)*. The Court, in its Opinion regarding Enzo's Motion to Dismiss Digene's Counterclaims determined that Digene had fulfilled [*9] this requirement. (D.I. 124). After this, and in line with the Court's suggestion, the parties conducted fact discovery to ascertain more details regarding the factual allegations of the Complaint. Although Digene did not give Enzo a factual roadmap for all of its allegations, it disclosed all the documents relied upon by Dr. Jizmagian in his report, disclosed potential contractual relationships and financial opportunities affected, including Goldman Sachs, and the relevant time periods, through discovery mechanisms such as interrogatories and depositions. In this case, Digene pled all relevant causes of action, and the parties were supposed to parse out the facts underlying those allegations through discovery. The Court concludes that the facts outlined by Enzo as not disclosed, were in fact disclosed through discovery, and were facts; not new causes of action as Enzo contends. Further, because Dr. Jazmagian's report does not discuss any new causes of action, and the dispute is not raised in the context of a Pretrial Order, the cases relied on by Enzo are inapposite. See, e.g., *Wilson v. Muckala, 303 F.3d 1207, 1216* (10th Cir. 2003) (finding insufficient support [*10] in the amended complaint and ambiguous pretrial order to support a claim for negligent infliction of emotional distress); *Sound Video Unlimited, Inc. v. Video Shack, Inc., 700 F. Supp. 127, 148-149 (S.D.N.Y. 1998)* (dealing with time period for calculation of damages in the context of a dispute over a proposed pretrial order). Based on the following: 1) the Court has already determined that Digene has properly pled all the causes of action alleged in their Business Tort Counterclaims; 2) no new causes of action are raised by Dr. Jizmagian's report; and 3) all documents relied upon by Dr. Jizmagian have been provided to Enzo through discovery mechanisms such as interrogatories, depositions and document production, the Motion to Strike will be denied.

### III. Enzo Biochem and Enzo Life Science's Joint Motion to Bifurcate and Stay Discovery (D.I. 145)

#### A. Parties' Contentions

Enzo Biochem and Enzo Life Sciences (collectively "Enzo") contend that whether or not Dr. Jizmagian's report is stricken, further discovery on Digene's Counterclaims should be stayed and any trial on them should be bifurcated from the patent infringement claims. First, Enzo [*11] contends that trial of these Counterclaims and any further discovery would be simplified if not mooted upon a finding of invalidity or infringement of the *'581 Patent.* Further, Enzo claims that the issues raise by Counts III-V of Digene's Counterclaims are prime for bifurcation because many of the issues to be tried on the Counterclaims have little or no evidentiary overlap with the issues to be tried in the patent infringement action. For instance, Enzo points out that in the patent infringement trial, evidence regarding the amount of Digene's sales will be at issue, whereas these topics will not be raised in the context of the Counterclaims. Instead, Enzo argues, the Counterclaim trial will deal with issues related to Digene's relationship with third parties and how Digene contends that Enzo harmed these relationships. Enzo also contends that bifurcation is called for because of the complexities involved with having a trial involving not only the issues of infringement and validity but also the issues involved in the Counterclaims. Finally, Enzo argues that if Dr. Jizmagian's expert report is not stricken, bifurcating the Business Tort Counterclaims and staying discovery on them [*12] is even more appropriate and urgent. Specifically, it argues that it should not be denied a speedy trial on the issue of patent infringement, while additional discovery is taken regarding Dr. Jizmagian's expert report. For example, Enzo points out that it would need to seek discovery regarding the financing of Goldman Sachs and would have to serve subpoenas on Goldman Sachs and its intellectual property counsel to determine why the funds were unavailable to Digene.

In response, Digene contends that Enzo's request for bifurcation is neither warranted nor proper given the facts of the case. First, Digene contends that there is significant evidentiary overlap between the Counterclaims and the patent claims. For example, Digene's validity defenses which contend that Enzo's amended claims (1) are not supported by the specifications; (2) claim subject matter that Enzo did not invent; and (3) encompass prior art known to both Enzo an Digene, are the facts that Enzo intends to rely on for its willful infringement, are the same facts which Digene will rely on in support of its validity arguments and in turn are the same facts which Digene relies on in its Counterclaims. Therefore, Digene argues, [*13] bifurcation is not warranted because it would require the Court and the jury to hear the same facts as many as three times. Further, Digene argues that recent discovery has shown the interrelated nature of the Counterclaims, where documents received in the past two weeks from Johnson & Johnson demonstrate that the claims of the *581 Patent* are not supported by the patent specification and that those limited embodiments which were disclosed in the patent specification were derived from another party. Digene argues that these documents further demonstrate the bad faith and anti-competitive nature of Enzo's acts which preceded the filing of this action and form a basis for Digene's Counterclaims. Finally, Digene argues that Enzo's request to stay further discovery on the Business Tort Counterclaims is untimely, where Enzo has been given unfettered access to Counterclaim discovery and has failed to pursue such discovery as evidenced by its failure to take any depositions until the last week of an already extended fact discovery

B. Discussion

The Court concludes that the Counterclaim and patent issues will be bifurcated in order to avoid jury confusion on complex legal issues. *Federal* [*14] *Rule of Civil Procedure 42(b)* ("*Rule 42(b)*") governs the bifurcation of trials and, in relevant part, provides:

> [HN2] The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or ... issues, always preserving inviolate the right of trial by jury as declared by the *Seventh Amendment to the Constitution* or as given by a statute of the United States

*Fed. R. Civ. P. 42(b)*

[HN3] Under *Rule 42(b)*, "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987)*; see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2388 (2d ed. 2002) ("Ultimately the question of separate trials under *Rule 42(b)* should be, and is, a matter left to the discretion of the trial court ..."). Courts, when exercising their broad discretion to bifurcate issues for trial under *Rule 42(b)*, should consider whether bifurcation will avoid prejudice, conserve judicial resources, [*15] and enhance juror comprehension of the issues presented in the case. *Union Carbide Corp. v. Montell N.V., 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998)*. "In deciding whether one trial or separate trials will best serve [the above factors] ... the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotion Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986)*; see also Wright & Miller, supra, § 2388

[HN4] In the context of patent cases, "experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury." Thomas L. Creel & Robert P. Taylor, Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice, 424 PLI/Pat 823, 826 (1995); see also Manual for Complex Litigation (Third) § 33.62 (1995) (advising trial judges to bifurcate or trifurcate overly complex patent trials). In fact, bifurcation of complex patent trials has become common. Steven S. Gensler, Bifurcation Unbound, 75 Wash. L. Rev. 705, 725 (2000)("Bifurcation is [*16] also common in patent litigation ..."); Creel & Taylor, supra, at 825 ("Bifurcation or even trifurcation is common in patent cases.")

[HN5] Typically, courts bifurcate patent cases into liability and damage trials. *Swofford v. B&W, Inc., 336 F.2d 406 (5th Cir. 1964)*, cert. denied, *379 U.S. 962, 13 L. Ed. 2d 557, 85 S. Ct. 653 (1965)* (bifurcating patent case into liability and damage trials). Courts also bifurcate complex patent cases in such a way to prevent jury confusion. *Smith v. Alyeska Pipeline Service Co., 538 F. Supp. 977, 984 (D. Del. 1982)* (finding "that one trial of both issues [i.e., liability and damages] would tend to clutter the record and to confuse the jury."). This reasoning is also applicable to cases involving both patent and non-patent claims

[HN6] Bifurcation is an important discretionary tool that district courts can use to ensure that the cases are resolved in a just manner by juries that understand the complex issues before them

Many scholars have endorsed bifurcation in complex cases as a method of improving juror comprehension. Specifically, bifurcation might enhance jury decision making in two ways: [*17] (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time.

Gensler, *supra*, at 751.

In this case, the bifurcation of issues would prevent jury confusion, in that it would enable a jury to concentrate on one complex body of law at a time. Also, in order to enhance jury comprehension and avoid prejudice, the Court will separate the issues into three sequential phases for trial in the following manner: 1) infringement; 2) validity; and 3) Business Tort Counterclaims. Although the Court recognizes that there is some evidentiary overlap, the parties will not be prejudiced by separate trials and the procedure will produce an efficient and fair disposition of the parties' claims.

The issue of staying discovery on the Counterclaims, however, is a more difficult question. The discovery phase in this case has already been extended and the Court is concerned that a stay of discovery on the Business Tort Counterclaims will prevent a fair and efficient resolution to the Counterclaims. Although the Court recognizes that the Counterclaims may be mooted or simplified [*18] depending on the outcome of the patent issues, this must be weighed against the importance of judicial efficiency and fairness. After weighing the relevant factors, the Court will deny the motion to stay because the Court finds that the interest in efficiently moving on with the resolution of the Counterclaims outweighs Enzo's concerns. Additionally, the Court concludes that the interest of fairness is served by a further extension of fact discovery as to those claims. Thus, the Motion to Bifurcate and Stay discovery will be granted in part and denied in part.

### IV. Digene's Protective Orders (D.I. 104, 113)

Digene has filed two Protective Orders in the instant case. The first, D.I. 104, asks the Court for a Protective Order to preclude Enzo from disclosing Digene's confidential or outside counsel only information to Enzo's proposed expert Dr. James Wetmur. The Court concludes that Digene has not met its burden of proof with regard to this issue and also concludes that the Stipulated Protective Order is sufficient at this time. Therefore, Digene's Motion for a Protective Order (D.I. 104), will be denied.

The second motion requests a Protective Order precluding Enzo Life [*19] Sciences from taking Digene's Deposition pursuant to *Rule 30(b)(6)* because it is unnecessarily duplicative and unduly burdensome. After reviewing the parties' arguments, the Court finds that the deposition notice was not unreasonably duplicative or unduly burdensome, and therefore, Digene's Motion for a Protective Order (D.I. 113) will be denied.

An appropriate Order will be entered.

### ORDER

NOW THEREFORE, For The Reasons discussed in the Opinion issued this date, IT IS HEREBY ORDERED this 10th day of June 2003, that:

1) Enzo Biochem's Motion to Strike the Expert Report of Stephen Jizmagian (D.I. 144) is **DENIED;**

2) Enzo Biochem's and Enzo Life Sciences' Joint Motion to Bifurcate and Stay Discovery (D.I. 145) is **GRANTED** as to Bifurcation of issues but **DENIED** as to the Stay of Discovery on the Business Tort Counterclaims;

3) Fact Discovery as to the Business Tort Counterclaims shall be extended so as to be completed by August 15, 2003;

4) Digene's Motion for Protective Order (D.I. 104) is **DENIED;**

5) Digene's Motion for Protective Order (D.I. 113) is **DENIED;**

6) Plaintiff's Motion to Compel Digene to Produce a 30(b)(6) Deponent [*20] is **DENIED** as moot because the Parties have resolved the issue;

7) As discussed at the teleconference on Wednesday, June 4, 2003, Enzo counsel is permitted to show their clients an unredacted version of Dr. Jizmagian's expert report;

8) The parties shall submit a letter with a Proposed Agreed Upon Trial Date for February or March, 2004;

9) A Pretrial Conference will be held on **Thursday, November 6, 2003** at 2:30 p.m., in Courtroom No. 4B on the 4th Floor, Boggs Federal Building, Wilmington, Delaware.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2007, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Barry M. Klayman
Wolf, Block, Schorr and Solis-Cohen LLP
Wilmington Trust Center
1100 North Market Street, Suite 1001
Wilmington, Delaware 19801

I hereby certify that on February 8, 2007, I sent by facsimile the foregoing document to the following non-registered participants:

Dale M. Heist
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

_____
Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(WILMINGTON)

| | |
|---|---|
| CROWN PACKAGING TECHNOLOGY, INC. AND CROWN CORK & SEAL USA, INC., <br><br> PLAINTIFFS, <br><br> V. <br><br> REXAM BEVERAGE CAN CO., <br><br> DEFENDANT. | CIVIL ACTION NO. 05-608 (MPT) |

## REBUTTAL REPORT OF ANTON A. ASCHBERGER

I, Anton A. Aschberger, provide this rebuttal report in *Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. v. Rexam Beverage Can Co.*, Civil Action No. 05-608 (MPT), to comment upon the Expert Report of Edmund Gillest dated December 19, 2006.

    1.    My qualifications are set forth in my report of December 14, 2006.

### SUMMARY OF COMMENTS

    2.    In his report, Mr. Gillest expressed his opinion that Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. ("Crown") infringe claim 17 of U.S. Patent No. 5,222,385 ("the 385 patent") by the use of a bottom reforming process performed at Crown's Fort Bend, Texas can-manufacturing plant using a Belvac Production Machinery, Inc. bottom reforming machine.

3.    In view of the materials I have considered, mentioned below, I must respectfully disagree with Mr. Gillest's opinion that Crown's use of a bottom reforming process at its Fort Bend, Texas plant infringes claim 17 of the 385 patent.

### I DISAGREE WITH MR. GILLEST'S OPINION THAT THE BOTTOM REFORMING PROCESS USED BY CROWN INFRINGES CLAIM 17 OF THE 385 PATENT

4.    I disagree with Mr. Gillest's opinion that the bottom reforming process used by Crown at its Fort Bend plant infringes claim 17 of the 385 patent.

5.    Claim 17 recites ". . . said reforming roller rotating along said longitudinal wall and about an arcuate path in substantial radial alignment with said radial inward support . . . ."

6.    I have been provided with the following constructions for the above-noted terms of claim 17. I am assuming that these constructions are correct. I realize that the final constructions will be issued by the Court at a later time.

7.    "Reforming roller rotating along said longitudinal wall and about an arcuate path" means reforming roller revolving around its own axis and rolling along the longitudinal wall on a curved path adjacent to the wall.

8.    "In substantial radial alignment with said radial inward support" means the roller path having a height in the direction of the longitudinal axis, more than half of which overlaps with the height of the radial inward support.

9.    I have inspected a base receptacle for a Belvac bottom reforming machine. I have been told that the configuration of this base receptacle matches the configuration of the base receptacles in use at Crown's Fort Bend plant. The as-measured value of the

groove depth for this base receptacle, i.e., the distance from the bottom of the groove to the front face of the base receptacle, is 0.070 - 0.071 inch.

10.    Copies of document nos. CCS-0055251; CCS-0055263-65; CCS-0055338-40; CCS-0055480-89; CCS-0055600-03; CCS-0055609; CCS-0056047-50; CCS-0056132-35; CCS-0074245, 46; and CCS-0074251, 52 are attached as Exhibit A hereto. I have been told that the can body configurations described in these documents represent the configurations of the can bodies that Crown has been making at its Fort Bend plant.

11.    Based on the measured value of the groove depth of the base receptacle, and the dimensions of the can bodies depicted in Exhibit A, it is my opinion that less than half of the height of the roller path overlaps with the height of the base receptacle in the bottom reforming machines in use at Crown's Fort Bend plant.

12.    I have been told that a method claim of a patent is infringed only if the accused method includes every method step recited in the claim. If the accused method does not include one or more of the steps recited in the claim, the claim is not literally infringed.

13.    Therefore, it is my opinion that Crown does not infringe claim 17 of the 385 patent because the bottom reforming method practiced by Crown does not include a reforming roller rotating along a longitudinal wall of a can body and about an arcuate path in substantial radial alignment with a radial inward support.

14.    Furthermore, I have reviewed the deposition testimony of Richard Golding and Terry Babbitt, and various exhibits referred to by Mr. Golding and Mr. Babbitt.

15.    A copy of Defendant's Exhibit 29A is attached as Exhibit B hereto. Based on Mr. Golding's testimony, I understand that Exhibit 29A depicts a bottom reforming tooling assembly of a bottom reforming machine manufactured by Belvac Production Machinery, Inc. I further understand, based on Mr. Golding's testimony, that the configuration of the dome receptacle and the reforming roller depicted in Exhibit 29A is diagrammatically representative of the configuration that Crown has been using at its Fort Bend plant since 1996, and looks substantially like the dome receptacle configuration that Crown is using at the Fort Bend plant. Golding dep. of Oct. 31, 2006 at 17:23-20:2; 55:11-22.

16.    As can be seen from Exhibit 29A, the reforming roller of the bottom reforming tooling assembly revolves around its own axis and rolls along the longitudinal wall on a curved path adjacent to the wall. Exhibit 29A also shows that less than half of the path's height overlaps with the height of the dome receptacle, and thereby supports my opinion that Crown does not infringe claim 17 of the 385 patent.

17.    A copy of Defendant's Exhibit 175 is attached as Exhibit C hereto. Based on Mr. Golding's testimony, I understand that Exhibit 175 depicts a base or dome receptacle for a bottom reforming machine. I further understand, based on Mr. Golding's testimony, that the base receptacle depicted in Exhibit 175 looks substantially like the base receptacle that Crown is using at its Fort Bend plant. Golding 30(b)(6) dep. of Oct. 31, 2006 at 55:11-22.

18.    The reforming roller in use at Crown's Fort Bend plant is not shown in Exhibit C. Based on the dimensions of the can bodies and the base receptacle listed in Exhibits A and C, however, I have calculated the overlap between the height of the

roller's path and the height of the base receptacle. That calculation shows that less than half of the height of the roller's path overlaps with the height of the dome receptacle in the bottom reforming machines in use at Crown's Fort Bend plant, further supporting my opinion that Crown does not infringe claim 17 of the 385 patent.

19.    Copies of document nos. BEL 0022892, 0022893, and 0022923 are attached as Exhibit D hereto. I have been told that the reformer roller and the dome receptacle depicted in these documents were used in Belvac bottom reforming machines at Crown's Fort Bend plant to produce 16-ounce can bodies in the late 2005 through mid-2006 time frame.

20.    Based on the dimensions of the can bodies and the dome receptacle listed in Exhibits A and D, I have calculated the overlap between the height of the roller's path and the height of the dome receptacle. This calculation shows that less than half of the height of the path overlaps with the height of the dome receptacle. It is therefore my opinion that Crown's use of Belvac bottom reforming machines at its Fort Bend plant to reform the bottoms of 16-ounce can bodies in the late 2005 through mid-2006 time frame did not infringe claim 17 of the 385 patent.

*January 5, 2007*
Dated

*Anton A. Aschberger*
Anton A. Aschberger

EXHIBIT 4

2 of 5 DOCUMENTS



Analysis
As of: Feb 05, 2007

**MCKESSON INFORMATION SOLUTIONS LLC, Plaintiff, v. THE TRIZETTO GROUP, INC., Defendant.**

**Civ. No. 04-1258-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 18655*

**April 11, 2006, Decided**

**SUBSEQUENT HISTORY:** Later proceeding at *McKesson Info Solutions LLC v. Trizetto Group, Inc., 2006 U.S. Dist. LEXIS 20078 (D. Del., Apr. 17, 2006)*

**PRIOR HISTORY:** *McKesson Info Solutions LLC v. TriZetto Group, Inc., 2006 U.S. Dist. LEXIS 16097 (D. Del., Apr. 5, 2006)*

**COUNSEL:** [*1] For McKesson Information Solutions LLC, Plaintiff: Thomas J. Allingham, II, Michael A. Barlow, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For Trizetto Group Inc., Defendant: Jack B. Blumenfeld, Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For Blue Cross Blue Shield of Michigan, Movant: Thomas P. Preston, Blank Rome LLP, Wilmington, DE

For Trizetto Group Inc., Counter Claimant: Jack B. Blumenfeld, Rodger Dallery Smith, II, Morris, Nichols, Arsht & Tunnell, Wilmington, DE

For McKesson Information Solutions LLC, Counter Defendant: Thomas J. Allingham, II, Michael A. Barlow, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington this 11th day of April, 2006, having heard oral argument at the pretrial conference and having reviewed the papers submitted in connection with the issues;

**IT IS ORDERED** that:

1. Defendant's claim of inequitable conduct will be separated and heard with the validity portion of the case, as yet unscheduled for trial. The current trial will be conducted in two phases. First, the parties [*2] will try to the jury the issue of infringement. The jury will deliberate and return a verdict on infringement. If necessary, the parties will next try willfulness and damages to the jury. The preliminary jury instructions have been amended to reflect this arrangement.

2. The entire history of the relationship between the parties will be admissible. See *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir. 2004)* ("Determination of willfulness is made on consideration of the totality of the circumstances.") Such evidence, including evidence of laches, n1 prior art known to the defendant and the parties' prior negotiations, is relevant to a willfulness defense, as well as for impeachment purposes. *Fed. R. Evid. 408.*

3. Roger Blakely must be made available for a three hour deposition prior to testifying at trial.

4. Jeff Margolis need not appear in the plaintiff's case in chief.

2006 U.S. Dist. LEXIS 18655, *

5. Defendant must make all three 30(b)(6) witnesses on the accused products available.

6. Evidence of the license agreement in the GMIS litigation is admissible, but nothing else.

7. The court will not visit, at this [*3] stage of the proceedings, the issue of whether plaintiff complied with the special master's request of turning over privileged documents.

8. TriZetto's fact witnesses may testify as to their knowledge of whether the accused products perform a stated function. This testimony may not be referred to as an "admission of infringement."

9. The hypothetical negotiations presented by McKesson's expert are admissible.

10. The court re-affirms its position that plaintiff's experts, specifically Dr. Johnson, did not perform the requisite infringement determination for a means plus function claim. Dr. Johnson extracted the functionality described in the claims and specification and constructed her own algorithm incorporating these functions. Dr. Johnson then searched for her own algorithm in the accused products; i.e., Dr. Johnson did not go through and take each "means for" limitation from the claims and find corresponding structure in both the patent and product. To the extent that "software" is the court's defined structure in the means plus function limitations, Dr. Johnson's analysis may be adequate. To the extent that the court required the means plus function limitations be limited to [*4] a specific algorithm from the patent (i.e., the "means for determining" limitations), Dr. Johnson's analysis is inadequate. Summary judgment on these limitations remains granted.

11. It is not clear to the court how the claim limitation **"predetermined** database" relates to the portions of the specification that would appear to contemplate updates and modifications to the expert database to reflect a user's particular experience. As noted by McKesson, the specification describes "HISTORY database 40" "as a means to study" "'case histories' and refine, update and **change the rules** and the knowledge base interpreter 5" which, along with the "knowledge base 6", constitute the predetermined database of the claims. ('164 patent, col. 10, 11.4-7) Nevertheless, mindful of the admonition that the court's claim construction be consistent with the specification rather than necessarily consistent with the dictionary meaning of the language used in the claims by the patentee, "predetermined database" is construed to

mean: "A set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment."

12. The court has reviewed in camera [*5] the documents submitted by McKesson as being at issue in connection with McKesson's appeal from Special Master Order No. 9.

a. With respect to exhibit A (identified as "H" in Special Master Order No. 4), plaintiff's appeal is denied, as the Special Master did not commit error in ordering the production of the document as redacted per Special Master Order No. 9.

b. With respect to exhibit B (identified as "J" in Special Master Order No. 4), plaintiff's appeal is denied, as the Special Master did not commit error in ordering the production of the document as redacted per Special Master Order No. 9.

c. With respect to exhibit C (addressed in Special Master Order No. 8, McK 030145-46), plaintiff's appeal is denied, as the Special Master did not commit error in ordering the production of the document as redacted per Special Master Order No. 8.

d. With respect to exhibit D (addressed in Special Master Order No. 8), the court sees no reference to this document in Special Master Order No. 9; therefore, the appeal is untimely and denied.

e. These documents, consistent with Special Master Orders 8 and 9, shall be produced on or before Friday, April 14, 2006.

n1 See *Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1555 (Fed. Cir. 1996).* Because evidence of laches and, to some extent, estoppel will be presented to the jury as relevant, inter alia, to TriZetto's willfulness defense, the parties need not repeat this evidence for the court's substantive decisions on TriZetto's equitable defenses. To the extent that there is additional evidence, the parties will need to allocate some portion of their trial hours to make their record for the court.

[*6]

Sue L. Robinson

United States District Judge