IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CROWN PACKAGING TECHNOLOGY, INC. and CROWN CORK & SEAL USA, INC., | ) ) ) | Civil Action No. 05-608 (MPT) |
| Plaintiffs/Counter Defendants, | ) ) | |
| v | ) ) ) | **REDACTED PUBLIC VERSION** |
| REXAM BEVERAGE CAN COMPANY, | ) ) | |
| Defendant/Counterclaimant, | ) ) | |

CORRECTED DEFENDANT'S MEMORANDUM IN OPPOSITION TO CROWN'S MOTION
FOR PARTIAL SUMMARY JUDGMENT DISMISSING REXAM'S COUNTERCLAIM I AND
LIMITING DAMAGES ON COUNTERCLAIMS II-III BASED ON LACHES AND FAILURE TO
COMPLY WITH 35 U.S.C. § 287(a)

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: February 23, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant/Counterclaimant
Rexam Beverage Can Co*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.     INTRODUCTION AND NATURE OF PROCEEDINGS ................................ 1

II     SUMMARY OF THE ARGUMENT ............................................................ 2

III.   REXAM'S RESPONSE TO CROWN'S STATEMENT OF FACTS ............... 2

IV     ADDITIONAL UNDISPUTED FACTS ....................................................... 8

V.     ARGUMENT ........................................................................................... 10

       A.     Crown Is Not Entitled To Equitable Relief As It Has Willfully Infringed
              The '839 Patent ........................................................................... 12

       B      Rexam's Delay In Bringing Suit Is Excusable ................................ 14

       C      Contrary to Crown's Assertion, It Has Not Been Prejudiced By Any
              Delay ......................................................................................... 15

       D      Crown's Motion For A Finding Of Laches As To Rexam's '385 And
              '242 Patents Should Be Denied .................................................... 17

              1     Crown Has Not Suffered Material Economic Prejudice Because
                    Of Rexam's Delay In Bringing Suit ...................................... 18

              2.    Crown Has Not Suffered Any Evidentiary Prejudice............. 19

       E      Rexam Was Not Required To Mark Under 35 U.S.C § 287 .......... 20

       F.     Crown Did Receive Actual Notice ................................................ 27

VI     CONCLUSION ....................................................................................... 31

RLFI-3117745-1

TABLE OF AUTHORITIES

CASES

*A C Aukerman Co v R L Chaides Const Co*,
  960 F 2d 1020 (Fed Cir 1992) ............................................................................*passim*

*A C Aukerman Co v R L Chaides Const Co*,
  29 U S P Q 2d 1054, 1058 (N D. Cal. 1993) ................................................................11

*American Medical Systems, Inc. v Medical Engineering Corp*,
  6 F 3d 1523 (Fed Cir 1993) ............................................................................*passim*

*Anderson v Liberty Lobby, Inc*,
  477 U S 242 (1986) ..........................................................................................10

*Atari Games Corp v Nintendo Of America, Inc*,
  975 F 2d 832 (Fed Cir 1992) ...............................................................................11

*Bandag, Inc v Gerrard Tire Co*,
  704 F 2d 1578, 217 USPQ 977 (Fed. Cir 1983) ..............................................20, 22, 24

*Devices for Medicine, Inc v Boehl*,
  822 F 2d 1062 (Fed Cir 1987) ........................................................................*passim*

*Gasser Chair Co v Infanti Chair Mfg Corp*,
  60 F 3d 770, 774 (Fed Cir 1995) ...........................................................................19

*Hanson v Alpine Valley Ski Resorts*,
  718 F 2d 1075 (Fed Cir 1983) ........................................................................*passim*

*Hemstreet v Computer Entry Sys Corp*,
  972 F 2d 1290 (Fed. Cir 1992) ..............................................................................19

*Intirtool, Ltd v Texar Corp*,
  369 F 3d 1289 (Fed. Cir. 2004) .............................................................................15

*James River Corp. of Virginia v Hallmark Cards*,
  915 F. Supp 968 (E.D. Wis. 1996) .........................................................................19

*Lans v Digital Equip Corp*,
  252 F 3d 1320 (Fed Cir 2003) ..........................................................................27, 28

*Meyers v Asics Corp*,
  974 F 2d 1304 (Fed Cir 1992) ..............................................................................19

*Newell Cos v Kenney Mfg Co*,
  864 F 2d 757 (Fed. Cir 1988) ..........................................................................21, 24

*Odetics, Inc v Storage Tech Corp*,
  919 F Supp 911 (E.D. Va 1996) ............................................................................11

*Phillips Electronics v. Contec Corp*,
  312 F Supp 2d 649 (D. Del. 2004) ....................................................................20, 27

RLF1-3117745-1

*Precision Instrument Mfg Co v Automotive Maintenance Machine Co*,
   324 U S. 806, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) ............................... 2, 10

*Rite-Hite Corp v. Kelley Co , Inc*,
   56 F 3d 1538 (Fed. Cir. 1995) ............................................................... 22

*State Contracting & Engineering Corp. v Condotte America, Inc*,
   346 F 3d 1057 (Fed Cir 2003) ................................................ 21, 24, 27

STATUTES

35 U.S.C. § 284 ...................................................................................... 21

35 U S.C. § 287(a) .......................................................................... *passim*

RULES

Fed R. Civ P 56(c) ................................................................................ 10

RLF1-3117745-1

I.    INTRODUCTION AND NATURE OF PROCEEDINGS

Crown Packaging Technology, Inc and Crown Cork & Seal USA, Inc (collectively "Crown") correctly state that this case is a patent infringement action  Crown has accused Rexam of infringing U.S. Patent Nos. 6,935,826 ("the '826 Patent") and 6,848,875 ("the '875 Patent") relating to beverage can ends and methods of seaming those can ends onto can bodies

Rexam filed its answer and counterclaims to Crown's second amended complaint, alleging that Crown has infringed and/or is infringing Rexam's U S Patent Nos. 4,774,839 ("the '839 Patent") (relating to smooth die necking methods for beverage containers), 5,222,385 (the '385 Patent) and 5,697,242 ("the '242 Patent") (relating to methods for reforming the bottom of beverage cans) and 6,129,230 ("the '230 Patent") and 6,260,728 ("the '728 Patent") (relating to the score profile on the can end)

The parties have concluded fact discovery and exchanged expert reports and rebuttal reports relating to the technical issues in this case, expert reports and rebuttals relating to damages in this case, and deposed each other's respective technical experts.  The parties have also filed and served a joint table of disputed claim terms and opening claim construction briefs.  Each party has moved for summary judgment on multiple issues

In this instance, Crown has moved for summary judgment seeking a dismissal of Rexam's Counterclaim I, in which Rexam is seeking damages for Crown's infringement of Rexam's '839 Patent relating to smooth die necking  Crown also seeks to bar Rexam's recovery of pre-suit damages on its Counterclaims II-III, in which Rexam is seeking an injunction and damages for Crown's infringement of Rexam's '385 and '242 Patents.  Crown's basis for its motion is its affirmative defense of laches  (D.I 197 )  However, the alleged facts and arguments in Crown's memorandum are skewed and ignore the true equities at issue in determining whether Rexam's claims are subject to the laches defense

For the reasons stated herein, Crown's motion for summary judgment on the issue of laches should be denied

1

II.    SUMMARY OF THE ARGUMENT

1.    Laches is an equitable defense and one who seeks equity must do equity and come forth with clean hands. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machine Co.*, 324 U.S. 806, 814 (1945)  The facts and circumstances of this case demonstrate that: (1) Crown chose to ignore Rexam's patent rights; (2), Crown chose to ignore repeated notices of Rexam's patent rights from the company it was purchasing equipment from; and (3) Crown never sought any opinions of counsel relating to potential infringement or validity of Rexam's patents.

2.    Crown is not entitled to an equitable defense in light of its complete disregard for Rexam's patent rights. *Id.*

3.    Crown has not suffered any material prejudice as a result of any undue delay by Rexam in seeking to enforce its patent rights with respect to the '839, '385 and '242 Patents  *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir 1992)

4.    The fact that Rexam didn't mark the machines that it manufactured is not relevant as Rexam has only asserted infringement of method claims. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082 (Fed. Cir. 1983)

III.    REXAM'S RESPONSE TO CROWN'S STATEMENT OF FACTS

1    Agree.

2    Agree

3.    Agree.

4    Agree

5    Agree.

6.    Agree.

7    Rexam agrees that it was and is possible to smooth out bumps, steps or ribs with a spin necking process and that some spin necking processes left marks on the can  However, there was also a method of necking called spin flow necking, which did not leave any marks on the neck of the can.

2

8    Rexam agrees with this paragraph, particularly with Crown's assertion that there are no bumps left on the neck of the can when the smooth die necking method of Rexam's '839 Patent are used Crown's asserted undisputed fact contradicts its claim construction argument which adds the qualifier "substantial" to modify "bumps, steps or ribs "

9    Agree

10.   Agree.

11.   Rexam agrees that the Belvac 595 necking machine was probably sold in the early 1990s, but that machine was not capable of performing "smooth die necking" until Rexam provided Belvac with tooling drawings under the 1993 license agreement between Belvac and Rexam

Redacted

12.   Agree

13    Agree

14.   Agree.

15    Agree

16.   Agree

17.   Agree.

18    Agree.

19    Agree.

20

Redacted

---

[1] Exhibits referenced herein are contained in the Appendix to Defendant's Memorandum in Opposition to Crown's Motion for Partial Summary Judgment Dismissing Rexam's Counterclaim I and Limiting Damages on Counterclaims II-III Based on Laches and Failure to Comply with 35 U S C § 287(a) filed contemporaneously herewith

RLF1-3117745-1

Redacted

21.    Agree

22.    Agree

23     Agree

24.

Redacted

25.

26     Agree

27.

28.

Redacted

29

30

31    Agree

32    Agree

4

33.     Agree

34.     Agree

35      Agree.

36      Agree.

37      Rexam agrees that its basis for filing the counterclaim was based upon an examination of Crown's cans, which did not show any striations, however, it is possible that Crown was using the "spin flow" method of necking, which uses a roller but does not leave striations  Rexam was uncertain about the method that Crown used to neck its cans, which is why Rexam pled that it believed that a reasonable opportunity for discovery would show that Crown was using the methods of the '839 Patent.

38.     Agree

39.     Agree

40      Agree

41      Agree

42      Rexam acknowledges that Mr. Hayden gave such testimony, but he also said he did not know what process competitors were using  (A172-173, Hayden Dep. at 182.)

43.     Agree.

44      Agree.

45.     Agree

46      Agree.

47.     Agree.

48.     Rexam agrees that it made necking equipment covered by the '839 Patent and used that equipment in its manufacturing facilities  However, none of those claims from the '839 Patent have been asserted against Crown in this litigation  Rexam has only accused Crown of infringing method claims from the '839 Patent, which do not cover the equipment, but rather the *methods* of necking.

49      Agree

5

50

Redacted

51

52.    Agree.

53    Agree.

54.    Agree.

55    Agree.

56    Agree.

57.    Rexam does not dispute this statement based upon Crown's witnesses' sworn testimony and Crown's interrogatory answers.

58.

59.

Redacted

bottom refoir

60

: 6

Redacted

61.    Rexam disputes that it learned of Belvac's potential infringement in 1994, and states that
it was about 1996 when Rexam contacted Belvac about its bottom reforming processes    (A267-268,
Humphries letter )

62.    Agree.

63.    Agree

64.

Redacted

65.    Rexam disputes this alleged fact as it is based entirely on impermissible hearsay and not
corroborated by any documents

66.    Rexam disputes this alleged fact as it is based entirely on impermissible hearsay

67    Rexam disputes this alleged fact as it is based entirely on impermissible hearsay

68.    Agree.

69    Agree

70.    Agee.

71.    Agree

72.    Agree

73

Redacted

74    Agree

75.    Agree

76.    Agree.

77    Agree

7

78

Redacted

80      Agree.

81.     Agree.

82.                                    Redacted

83.     Agree.

84.     Agree

IV.    **ADDITIONAL UNDISPUTED FACTS**

1.

2.                                     Redacted

3.

8

Redacted

4

5.    Crown knew about Rexam's patented rights under the '839 Patent and did not use reasonable discretion to determine whether practicing those patented methods would infringe Rexam's patent rights                    Redacted

Despite Crown's knowledge of the '839 Patent, it completely disregarded all reasonable business prudence, and completely disregarded all respect for the patent system by willfully infringing the '839 Patent

6.    Crown was well aware of Rexam's '839 Patent and even cited the '839 Patent in numerous of its own patent applications, but decided that it was above the provisions of Article I of the Constitution, by ignoring Rexam's right to exclusivity of its patented invention  (A45-54, A74-148, list of patents citing the '839 Application )

7.

Redacted

8.    The figures and testimony provided by Crown and Belvac indicate that

Redacted

9    There was no way for Rexam to know that Crown and/or Belvac had changed the configuration of the bottom reforming equipment relating to the key aspect in Belvac's contention of non-infringement

9

10.

Redacted

11      There is no way that Rexam could have known about the changes Crown and/or Belvac

made to the dome receptacle tool after 1996

## V.    ARGUMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)  In determining whether summary

judgment is appropriate, "the evidence of the nonmovant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In this case, Crown argues that Rexam is guilty of laches for failing to enforce its patent rights of

the '839, '385 and '242 Patents. Indeed, Crown has been infringing these patents for many years and the

presumption of laches is applicable.  However, as will be discussed herein, laches is an equitable defense,

and he who seeks equity, must do equity, and as the Supreme Court has held, must come forth with clean

hands  *Precision Instrument Mfg. Co.*, 324 U.S. at 814  Similarly, the Federal Circuit has held:

> *A patentee may also defeat a laches defense if the infringer "has engaged in egregious
> conduct which would change the equities significantly in plaintiff's favor." Bott v.
> Four Star Corp*, 807 F.2d 1567, 1576 (Fed. Cir. 1986)  ... Conscious copying may be
> such a factor weighing against the defendant, whereas ignorance or a good faith belief in
> the merits of a defense may tilt matters in its favor

*A.C. Aukerman Co.*, 960 F.2d at 1033 (emphasis added).  On remand, following the Federal Circuit's

holding, the trial court held:

> The evidence also demonstrates that Chaides engaged in particularly egregious conduct,
> which shifts the equities significantly in Aukerman's favor  In particular, Chaides built
> its own mold in 1983 after receiving notice in 1979 that only Gomaco was licensed to do
> so. In addition, after this litigation began, Chaides built another mold. *Furthermore,
> Chaides constructed the infringing molds without conducting a reasonable inquiry into
> the validity of Aukerman's patent.*

10

> An age-old maxim of equity applies here: "He who seeks equity must do equity." In this case, Chaides did not engage in its infringing activities in good faith. Because Chaides has come to this court with unclean hands, it is precluded from raising the laches defense.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 29 U.S.P.Q.2d 1054, 1058 (N.D. Cal. 1993) (emphasis added); *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 924-25 (E.D. Va. 1996) ("Proper exercise of this discretion *requires denial of laches relief* where the party urging application of the doctrine is also guilty of inequitable conduct. *See Aukerman*, 960 F.2d at 1033. *Willful infringement, if shown, constitutes such inequitable conduct.*") (emphasis added); *Cf. Atari Games Corp. v. Nintendo Of America, Inc.*, 975 F.2d 832, 846 (Fed. Cir. 1992) ("Any party seeking equitable relief must come to the court with 'clean hands.'  The district court states, 'Atari lied to the Copyright Office in order to obtain the copyrighted 10NES program.'  This record supports the district court's conclusion and suggests that Atari's unclean hands prevent it from invoking equity.")

In this case, Crown has not come forth with clean hands, Crown knew about Rexam's patent rights, but chose to infringe the patent anyway.

Redacted

Crown chose to ignore Rexam's patent rights and went right ahead infringing the method claims of the '839 Patent.

The fact that Rexam waited more than six years to enforce its patents against Crown does not mandate a finding of laches.

> It must be emphasized that the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, **does not** *mandate* **recognition of a laches defense in every case.** Laches remains an equitable judgment of the trial court in light of all the circumstances. Laches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied.

*Aukerman*, 960 F.2d at 1036.

11

Additionally, the fact that more than six years has passed before Rexam enforced its patents against Crown does not shift the burden to Rexam. In *Aukerman*, the Federal Circuit held:

> Numerous decisions indicate or suggest that the defendant's establishing a six year delay shifts the burden of proof, that is, the ultimate burden of persuasion, from the defendant to the patentee. For example, the *Leinoff* decision could be read to take that position This view is legally unsound.

*    *    *

> ... a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but **does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.**

*Id* at 1037 (emphasis added)

A.    **Crown Is Not Entitled To Equitable Relief As It Has Willfully Infringed The '839 Patent**

Crown claims that Rexam has not dealt fairly with Crown. To the contrary, it is Crown who has been unfair and deceitful throughout the years. In 1995, Rexam entered into a license agreement with Belvac, allowing Belvac to manufacture and sell necking machines that included the tooling and technology for performing the smooth die necking process that Rexam had patented. (A223-240, 1994 License Agreement.) Rexam and Belvac had previously entered into a license agreement relating to Rexam's smooth die necking technology, which Rexam terminated          Redacted

A176-222, 1993 License Agreement.)

According to the conditions for executing the second license agreement,

Redacted

Also, the license agreement expressly required

Redacted

Belvac also complied with the express provisions of the license

12

agreement by

Redacted

Crown chose to ignore the

The undisputed facts actually establish that Crown is not entitled to seek equity at all. Crown knowingly and willfully infringed Rexam's '839 Patent. Only Crown knew what method of necking it was using behind its closed factory doors. Crown knew about Rexam's patent and knew that it did not have the right to use the methods claimed in the '839 Patent Crown did not bother to contact Rexam as it was                        Redacted                        Crown did not seek an opinion of counsel to determine whether it needed a license to use the methods claimed in the '839 Patent Crown recklessly, maliciously, secretly and willfully decided to use the smooth die necking method of the '839 Patent Indeed, Crown has not offered any                        Redacted

Crown has not offered such a position because it knows, and has always known, that it is infringing the '839 Patent

Crown argues that Rexam knew or should have known that Crown was infringing the method claims of the '839 Patent. Crown cites testimony of the inventors of the '839 Patent to show that one of ordinary skill in the art can tell when a can has been smooth die necked versus spin necked (D I 198, Crown Mem. at 12-13 )                        Redacted

Spin flow necking does not leave any striations and has a profile that looks just like smooth die necking. (A339, Spin Flow can; A305-326, Spin Flow Patents ) Thus, contrary to Crown's assertions, there are non-infringing methods of making a can with a smooth neck

Also, Crown argues that Rexam did not contact Belvac about marking its necking equipment with the patent number of the '839 Patent. This is simply not true  Rexam and Belvac had detailed

13

communications about marking the necking equipment that Belvac was selling

Redacted

Additionally, although Rexam made smooth die necking equipment and tooling, it was not in the business of selling such equipment  The only "sales" it made were to its own affiliates and manufacturing facilities  Thus, marking its equipment would have been futile for providing constructive notice of its patent rights to third parties

B.    Rexam's Delay In Bringing Suit Is Excusable

Crown claims that Rexam has no competent excuse for its delay  However, the only way Rexam could have or should have known about Crown's infringement was to have access to Crown's tooling drawings or an opportunity to see the tools themselves, which is why Rexam pled that it *believed discovery would show* that Crown was using methods that infringed the claims of the '839 Patent. Needless to say, Rexam did not have access to Crown's tooling drawings or tools and thus had no way to know what method Crown was actually using  The asserted claims are method claims and those methods are carried out behind closed doors  Discovery could have shown that Crown

Redacted                              The fact that the inventors of

the '839 Patent, who are engineers and not corporate officers, may have had "suspicions" that Crown was using smooth die necking, and testified that they could tell a smooth die necked can from a spin necked can is unavailing  Therefore, it cannot be said that Rexam knew or should have known about Crown's infringing activities  The Federal Circuit has held that the patentee must have constructive knowledge of an infringer's act of infringement:

> Although our precedent is clear that the patentee's constructive knowledge of an infringer's behavior can suffice to start the laches clock, it is equally clear that the patentee must have actual or constructive knowledge of an act of infringement that gives rise to a legal claim before that clock begins to run against the patentee.

14

*Intirtool, Ltd v Texar Corp*, 369 F 3d 1289, 1294 (Fed. Cir 2004) (citing *A C Aukerman*, 960 F 2d at 1034) In this case, there is no evidence demonstrating that Rexam had constructive knowledge of Crown's infringing acts  Although it is true that Rexam received quarterly royalty reports from Belvac,

> Redacted               ;
>                         :
>                         : Thus, there was no way for Rexam to know that

Crown had purchased necking equipment from Belvac.

C.   Contrary to Crown's Assertion, It Has Not Been Prejudiced By Any Delay

Even assuming, *arguendo*, that Rexam's delay in bringing suit was not excusable, Crown's laches defense can be denied  *A C Aukerman Co*, 960 F 2d at 1038-39

> Once a presumption of laches arises, the patentee may offer proof directed to rebutting the laches factors  Such evidence may be directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice. At all times, however, the ultimate burden of persuasion with respect to the laches defense remains with the defendant.

*Id* (emphasis added)

In order for Crown to succeed on its laches claim, it must show that it has been materially prejudiced by the delay in bringing suit  *A C Aukerman*, 960 F 2d at 1033   Material prejudice for purposes of laches may be economic or evidentiary  *Id*  In *Auckerman*, the Federal Circuit held:

> Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary. *Cornetta*, 851 F 2d at 1378  Evidentiary prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts.
>
> *** 
>
> Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit  Such damages or monetary losses are not merely those attributable to a finding of liability for infringement  Economic prejudice would arise in every suit [if that were the case]. The court's must look for a change in the economic position of the alleged infringer during the period of delay. On the other hand, this does not mean that a patentee may intentionally lie silently in wait watching damages escalate, *Dwight & Lloyd Sintering*, 27 F 2d at 837, particularly where an infringer, if he had had notice,

15

could have switched to a noninfringing product. Indeed, economic prejudice is not a simple concept but rather is likely to be a slippery issue to resolve

*A.C. Aukerman*, 960 F.2d at 1033. In this case, Crown claims that it has been economically prejudiced because it invested in numerous smooth die necking machines over the years. (D.I. 198, Crown Mem. at 26.) However, Crown ignores the fact that it knew about Rexam's '839 Patent

Redacted

Crown chose to ignore those notices and despite its knowledge of Rexam's patent rights, continued purchasing smooth die necking equipment and continued using the patented methods of the '839 Patent with full knowledge of Rexam's patent rights.

Similarly, Crown has not suffered material evidentiary prejudice. Evidentiary prejudice may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. *A.C. Auckerman*, 960 F.2d at 1033. Here, Crown has alleged that two of the inventors of the '839 Patent are deceased and the surviving inventors no longer have their files relating to the development of the smooth die necking method. However, Crown offers no explanation as to how or why the fact that those two inventors are deceased has impacted Crown's ability to present a full and fair defense. Furthermore, two of the inventors are alive and well and Crown had a full opportunity to depose both of the remaining inventors. Mr. Naggert, one of the living inventors, was able to explain the development of the process that was ultimately patented.

Similarly, the fact that there may be documents that have been lost or no longer exist has not prejudiced Crown's ability to present a full and fair defense. Indeed, Crown has not even claimed that its ability to present a full and fair defense has been affected at all. Crown has access to the full and complete file history of the '839 Patent, had access to the two living inventors and has even asked other

16

Rexam witnesses about smooth die necking  The prejudice must be material prejudice such that the defendant is unable to present a full and fair defense, thereby undermining the court's ability to judge the facts  *A C Auckerman*, 960 F.2d at 1033.  Crown has failed to show such material prejudice because it simply has not been prejudiced at all.

Also, contrary to Crown's claim that equity weighs in its favor, equity is clearly in Rexam's favor.  Crown knew about Rexam's patent rights and chose to ignore them.  Crown made a conscious decision to practice the smooth die necking methods claimed in the '839 Patent despite expressly being told, on numerous occasions and in numerous ways, that it did not have the right to practice those inventions  Therefore, it would be inequitable to recognize Crown's laches defense and its motion should be denied.  Additionally, Crown has failed to show that it has been materially prejudiced  Therefore, Crown's laches defense and motion should be denied.

### D.    Crown's Motion For A Finding Of Laches As To Rexam's '385 And '242 Patents Should Be Denied

As with the smooth die necking patent, Rexam is asserting that Crown has infringed certain method claims of the '385 and '242 Patents  Crown cites a series of events to support its laches defense. (D.I. 198, Crown Mem  at 37.)  It is true that

Redacted

In fact, Rexam was recently provided

Redacted

Rexam obviously had no knowledge of which companies were purchasing bottom reforming equipment from Belvac. Rexam had no knowledge that Belvac changed the configuration of its bottom reforming equipment after 1996. Rexam had no knowledge that Belvac's customers changed the configuration of the dome receptacle over the years. Again, laches remains an equitable judgment of the trial court in light of all the circumstances. *A.C. Aukerman*, 960 F.2d at 1036. Under these circumstances, Rexam could not have known that Crown and/or Belvac changed the configuration of the dome receptacle.

Additionally, although one in the art may be able to tell when the base of a can has been reformed, it is impossible to tell how the reforming was done.    Redacted

1.    **Crown Has Not Suffered Material Economic Prejudice Because Of Rexam's Delay In Bringing Suit**

Assuming, *arguendo*, that Rexam's delay in bringing suit was not excusable, Crown's laches defense can still be denied. *A.C. Aukerman*, 960 F.2d at 1038-39. The patentee may offer proof directed to rebutting the laches factors and such evidence may be directed to showing "**either that the patentee's delay was reasonable or that the defendant suffered no prejudice. At all times, however, the ultimate burden of persuasion with respect to the laches defense remains with the defendant**." *Id* (emphasis added)

Crown implies that it has suffered economic prejudice as a result of Rexam's delay in bringing suit because it began commercial use of three Belvac 595 base reformers while Rexam chose to remain silent. (D.I. 198. Crown Mem. at 39.) However, Mr. Golding testified

Redacted

18

Redacted                            In order to determine whether material economic

prejudice exists, courts are directed to "look for a change in the economic position of the alleged infringer

during the period of delay." *A C Aukerman*, 960 F.2d at 1033. Thus, at the time Rexam became aware

of Belvac's bottom reforming equipment                 Redacted

The

fact that Crown made and sold cans (presumably at a profit for Crown) using the patented method is not

economic prejudice. Crown did not make any further capital investments in bottom reforming equipment,

Crown simply operated the machines, sold cans and made money

    Crown's conclusory assertions fail to establish that it has suffered material economic prejudice

and are insufficient as a matter of law to establish laches *Meyers v Asics Corp*, 974 F.2d 1304, 1308

(Fed. Cir. 1992) "For a defendant to show [economic] prejudice, its expenditures must have an explicitly

proven nexus to the patentee's delay in filing suit." *James River Corp of Virginia v Hallmark Cards*,

915 F Supp. 968, 978 (E.D. Wis. 1996); *see also Hemstreet v Computer Entry Sys Corp*, 972 F.2d

1290, 1294 (Fed Cir. 1992) ("It is not enough that the alleged infringer changed his position- i e,

invested in production of the allegedly infringing device. The change must be because of and as a result

of the delay, not simply a business decision to capitalize on a market opportunity.") [2] Here, Crown has

presented no evidence of its alleged change in economic position and, even assuming, *arguendo*, that it

had, there is no evidence of any nexus between that alleged change in economic position and Rexam's

delay in bringing suit

### 2.    Crown Has Not Suffered Any Evidentiary Prejudice

    Similarly, Crown has presented no evidence of material evidentiary prejudice. The reason Crown

has presented no evidence of material evidentiary prejudice is because there is none. Despite a

---

[2] In *Hemstreet*, the defendant spent over $23 million on research and development, $6 5 million on direct marketing costs and $20 million to expand or consolidate manufacturing facilities  Nevertheless, the Federal Circuit held that the defendant had not established the prejudice necessary to support a finding of laches because the expenditures had "no explicitly proven nexus to the patentee's delay in filing suit, as *Aukerman* requires for a finding of prejudice"  *Gasser Chair Co . v Infanti Chair Mfg Corp*, 60 F 3d 770, 774 (Fed Cir. 1995)

19

presumption of laches, the burden of persuasion remains with Crown at all times  *A C Aukerman*, 960 F.2d at 1038 ("[W]e reiterate that, at all times, the defendant bears the ultimate burden of persuasion of the affirmative defense of laches ")  "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense." *Id* at 1033  Therefore, Crown is not entitled to a finding of summary judgment of laches because of the lack of any material prejudice

E.    **Rexam Was Not Required To Mark Under 35 U.S.C. § 287**

Crown's arguments related to precluding Rexam from recovering damages are based on an incorrect interpretation of clear precedent set by the United States Court of Appeals for the Federal Circuit  Crown's focus on whether physical marking took place conveniently takes the focus off of the fact that Rexam was not required to physically mark its bottom reforming and smooth die-necking equipment  Rexam has asserted only method claims from its '839, '385 and '242 Patents, so whether Rexam's equipment was marked is irrelevant to any damages inquiry related to those patent claims  The duty to physically mark the cans or apparatus would have only arisen had Rexam asserted apparatus claims along with its method claims (despite misapplication of the precedent by some district courts including, with all due respect, the District of Delaware)  *Hanson*, 718 F 2d 1075; *but see Phillips Electronics v Contec Corp*, 312 F Supp 2d 649 (D Del. 2004).

Federal Circuit precedent mandates that the marking provision of § 287(a) only applies to the method claims of a patent containing both method and apparatus claims when there is an assertion and a finding of infringement on both method and apparatus claims from the patent-in-suit. *Hanson*, 718 F 2d 1075 (unanimous five judge panel of the Federal Circuit)

> Alpine states that the Hanson patent also includes apparatus claims  The only claims that were found infringed in this case, however, were claims 1, 2, and 6 of the Hanson patent, which are drawn to "the method of forming, distributing and depositing snow upon a surface . . . ." See *Hanson v. Alpine Valley Ski Area*, 611 F 2d at 158, 204 USPQ at 805  In affirming the district court's finding of infringement in this case, the court of appeals stated in the first sentence of its opinion that "the patent alleged to be infringed is [for] a process for making snow for winter sports " 611 F 2d at 157, 204 USPQ at 803-04. It is "settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method." *Bandag, Inc v Gerrard Tire Co*, 704 F 2d 1578, 1581, 217 USPQ 977, 979 (Fed Cir. 1983).

20

*Id.* at p. 1082. This precedent can only be overruled by an *en banc* ruling by the Federal Circuit or by the Supreme Court of the United States. *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*.").

In Federal Circuit cases since *Hanson* (none ever questioning the authority of the *Hanson* decision), the Federal Circuit has made statements that, when taken out of context, appear to expand the coverage of § 287(a). However, when analyzed closely, those cases maintain the clear precedent that the issue of marking when asserting method claims turns on whether apparatus claims have been asserted as well. In fact, the subsequent Federal Circuit cases that cite the *Hanson* decision correctly cite it for the proposition that the applicability of §287(a) turns on whether the patentee asserted the apparatus claims. *See American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062 (Fed. Cir. 1987); *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1074 (Fed. Cir. 2003).

As Crown correctly stated, one of the counterclaims asserted by Rexam is based on Crown's infringement of certain *method* claims from the '839 Patent. The patent issued on October 4, 1988 and is presumed to have been valid throughout its term. Rexam is seeking past damages for infringement of the asserted method claims of the '839 Patent. The '839 Patent also included apparatus claims, none of which are being asserted by Rexam. Rexam also asserted method claims from its '385 and '242 Patents, which each contain both method and apparatus claims. These patents have remaining life (*i.e.*, have not expired), so future damages would not be affected by this ruling. Nevertheless, Crown argues that Rexam is precluded from recovering past damages based on its infringement of patent claims from the '385 and '242 Patents because of the same "failure to mark" argument Crown offered related to Rexam's '839 Patent.

Patent holders are entitled to damages for infringement of their patents. "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for infringement, but in no

21

event less than a reasonable royalty for the use of the invention by the infringer, together with interest and costs as fixed by the court." 35 U S C § 284

In some cases in which a defendant is found to have infringed, the amount or time period for damages may be limited. The marking requirement is one such limitation on damages. 35 U S C. § 287(a). Marking is affixing the word "'patent' or the abbreviation 'pat ', together with the number of the patent . " to a patented item or its packaging. *Id* Generally, "[t]he marking statute provides that if a product is not marked, no damages shall be recovered by the patentee except on proof that the infringer was notified of the infringement." *Rite-Hite Corp v Kelley Co , Inc* , 56 F 3d 1538, 1549 n 8 (Fed Cir 1995). The obligation to mark <u>does not</u>, however, arise when the patent claims are directed to a method it is "settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method." *Bandag, Inc* , 704 F 2d at 1581.

The issue presented by Crown's motion and this response is whether an obligation to mark arises when only the method claims of a patent containing both method and apparatus claims are asserted. A unanimous five judge panel of the United States Court of Appeals for the Federal Circuit rejected the argument that the marking requirement attaches to the method claims of a patent containing both method and apparatus claims. *Hanson*, 718 F 2d 1075 (Fed Cir. 1983) The defendant, Alpine Valley, suggested that the marking obligation applied to the method claims of the patent because "the [plaintiff's] patent also include[d] apparatus claims." *Id* at 1083 Despite the fact that the plaintiff's patent indeed included apparatus claims, and the fact that the plaintiff's apparatus was not marked with the patent number, the court awarded damages based on infringement of the method claims. *Id*

More recently, in *Devices for Medicine, Inc* , the Federal Circuit recognized that the cases mentioned above stand for the proposition that method claims do not trigger a duty to mark when apparatus claims are not asserted *Devices for Medicine, Inc* , 822 F 2d 1062 "In *Bandag* and *Hanson*, this court specifically noted <u>a distinction between cases in which only method claims are asserted to have been infringed and cases like the present case, where [the patentee] alleged infringement of all its apparatus and method claims.</u>" *Id* at 1066 (emphasis added) The court ruled against the patentee on the

22

issue of marking only in light of the distinction (the patentee asserted both method <u>and</u> apparatus claims)

*Id.* Another three judge Federal Circuit panel correctly cited *Devices for Medicine* for the proposition that

there is a distinction between cases "'in which only method claims are asserted to have been infringed'

and cases where a patentee alleges infringement of both the apparatus and method claims of the same

patent." *American Medical Systems*, 6 F.3d at 1538 (Fed. Cir. 1993) (quoting *Devices for Medicine*, 822

F.2d at 1066). In dicta, however, the Federal Circuit panel then made a statement that has been a source

of confusion for attorneys and district courts alike. The court stated that "[w]here the patent contains both

apparatus and method claims ..., to the extent that there is a tangible item to mark by which notice of the

asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the

constructive notice provisions of section 287(a)." *American Medical Systems*, 6 F.3d at 1538-39 (Fed.

Cir. 1993). When read in the context of <u>the holding</u> in *American Medical Systems* (a case in which <u>both</u>

<u>method and apparatus claims were asserted</u>), the dicta does not cause problems. When taken in a vacuum

and relied upon by attorneys and other courts for the proposition that any time there is a patent containing

both method and apparatus claims, the obligation to mark attaches to the method claims (regardless of

whether the apparatus claims are asserted), the dicta is a source of confusion. This dicta stands for a

proposition that is directly contradicted by the holding and by the facts of the *Hanson* case. In *Hanson*,

the patent contained method and apparatus claims. The method claims covered methods of making snow.

The apparatus claims covered apparatuses that made snow. The patentee's licensee manufactured snow-

making machines and did not mark the machines. The accused infringer thought the "failure to mark"

was fatal to the patentee's claim for past damages. The defendant argued that the patentee's failure to

prove that "Hanson's licensee SMI had marked the machines it sold" precluded Hanson from recovering

past damages. *Hanson*, 718 F.2d at 1082. Crown believes that Rexam's licensee's failure to mark should

similarly be fatal to Rexam's claims. The Federal Circuit rejected this argument in *Hanson*.

> <u>The magistrate rejected the contention</u> on two grounds: (1) it was untimely
> raised, since Alpine had not presented it in any pretrial pleadings, and (2) <u>the patent is a</u>
> <u>process patent, to which section 287 does not apply</u>. <u>We agree with the latter ground of</u>
> <u>decision</u>, and therefore do not reach the former ruling.

23

*Id* The Federal Circuit's most recent discussion of the issue again dealt with the precise issue only in dicta In *State Contracting & Engineering Corp v Condotte America, Inc*, 346 F 3d 1057, 1074 (Fed Cir 2003), the Federal Circuit mentioned the *American Medical Systems* case only for the purpose of stating that the case was inapposite to the facts of the case before the court In *State Contracting*, the patent in suit contained only method claims and therefore the Federal Circuit ruled that the marking provision of §287(a) did not apply *State Contracting*, 346 F 3d at 1074 (Fed Cir 2003). After discussing the difference between the *American Medical Systems* and the *State Contracting* cases (method and apparatus claims were asserted in *American Medical Systems* while only method claims were asserted in *State Contracting*), the court cited *Hanson* as lending support to the proposition that method claims asserted on their own do not trigger the marking provision *Id* The court reiterated the holding and authority of the *Hanson* case, stating that *Hanson* "uph[eld] [the] decision that *section* 287 did not apply when only process claims were found infringed and the patent contained apparatus claims " *Id*

No Federal Circuit case has had a contrary holding from *Hanson* and, even if one did, the precedent set by the five judge panel in *Hanson* could not be overturned by another panel, but rather would require an *en banc* decision by the court to overturn the clear precedent of the *Hanson* case. *Newell Cos*, 864 F.2d 757. To illustrate the authority on this issue, the following table breaks down the cases by the type of patent, the type of claims asserted, the type of claims found to have been infringed, the dicta, and the holding of the case:

| Case | Type of Patent | Claims Asserted | Claims Infringed | Dicta | Holding |
|------|----------------|-----------------|------------------|-------|---------|
| *Bandag v. Gerrard Tire* (Fed. Cir. 1983). | Method Claims only | Method Claims | Method Claims | Marking provision does not apply to method claims | Marking provision does not apply to method claims |
| *Hanson v Alpine Valley Ski Area* (Fed. Cir. 1983). | Method and Apparatus Claims | Method Claims | Method Claims | Marking provision does not apply to method claims | Marking provision does not apply to method claims |

24

| Case | Type of Patent | Claims Asserted | Claims Infringed | Dicta | Holding |
|------|---------------|----------------|-----------------|-------|---------|
| *Device for Medicine v Boehl* (Fed Cir 1987) | Method and Apparatus Claims | Method <u>and</u> Apparatus claims | Method <u>and</u> Apparatus claims | "distinction between cases in which method and apparatus claims are asserted . . and cases like the present case, where [the plaintiff] alleged infringement of all its apparatus and method claims." p. 1066. | Marking provision applies when both method and apparatus claims are asserted |
| *American Medical Systems v Medical Engineering* (Fed. Cir. 1993) | Method and Apparatus Claims | Method <u>and</u> Apparatus Claims | Method <u>and</u> Apparatus Claims | "where the patent contains both apparatus and method claims, . . to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a) p. 1538-39. | Marking provision applies when both method and apparatus claims are asserted |

25

| Case | Type of Patent | Claims Asserted | Claims Infringed | Dicta | Holding |
|------|----------------|-----------------|------------------|-------|---------|
| *State Contracting v Condotte America* (Fed. Cir 2003) | Method Claims | Method Claims | Method Claims | To the extent that *American Medical Systems* stands for the proposition that where a patent contains both method and apparatus claims, the duty to mark a tangible item arises – it does not stand for that proposition – *American Medical Systems* is inapposite to the facts of this case. Also cites *Hanson* for the proposition that when both types of claim are present, but only method claims are "found infringed," §287(a) does not apply. | When a method patent is asserted and found to be infringed, the marking provision of §287(a) is not triggered. |
| *Philips Electronics v. Contec Corporation* (D. Del. 2004) | Method and Apparatus Claims | Method Claims | Method Claims | | Patentee made something capable of being marked so, despite the fact that only method claims were asserted (from the patent containing both types of claims), the patentee is precluded from recovering damages for the period before it provided actual notice of infringement. |

As illustrated in the table, the only Federal Circuit case dealing with a similar set of facts as Rexam's assertion of method claims from the '839, '385 and '242 Patents (where only the method claims of a patent containing both method and apparatus claims were asserted) is the *Hanson* case None of the

26

cases even disagree with the holding of *Hanson* and, in fact, have reiterated its authority *See State Engineering*, 346 F 3d at 1074; *Devices for Medicine*, 822 F 2d at 1066.

With all due respect, in the past this Court appears to have incorrectly applied the aforementioned Federal Circuit precedent in reliance on the misleading dicta from the *American Medical Systems* case *Philips Electronics North America Corp v Contec Corp*, 312 F Supp 2d 649 (D Del 2004) Because the precedent is clear, Rexam asks that this Court deny Crown's motion to limit damages based on Crown's infringement of the '839, '385 and '242 Patents due to a "failure to mark."

### F.    Crown Did Receive Actual Notice

Crown argued that Rexam is not entitled to past damages because (1) it did not mark its necking or bottom reforming equipment and (2) it did not provide actual notice of infringement. In fact, Crown was provided with actual notice of Rexam's '839 Patent and the need for a license to practice the patented methods by        Redacted        Crown relies on non-binding district court authority for the proposition that only the patentee or exclusive licensees may provide actual notice for compliance with the statute. In Crown's Motion for Summary Judgment, Crown provided no Federal Circuit authority that states that non-exclusive licensees are unable to provide actual notice of infringement This is because the Federal Circuit never stated such a rule. Rexam believes that this is a case of first impression because of the fact that Rexam's licensee, Belvac, was contractually obliged to provide notice of Rexam's patent as well as the fact that sufficient information was given to Crown so that it could contact Rexam for a license under the patent for performing the patented methods

The Federal Circuit, in *Lans v Digital Equip Corp*, opined that "notice from someone closely associated with the patentee does not satisfy § 287(a)," but explained that the reason is related to the accused infringer's non-ability to contact the patentee for licensing talks In other words, the opinion pre-supposed that the identity of the patentee would not be disclosed

> Admittedly, this court has not previously encountered a situation, such as this case, where a party associated with the patentee notified alleged infringers In other cases, this court addressed situations where notification came from someone associated with the alleged infringer and concluded that "notice of infringement must    come from the

27

patentee, not the infringer." E.g., *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 n.18, 28 U.S.P.Q.2D (BNA) 1321, 1331 n.18 (Fed. Cir. 1993) (notice to the alleged infringer by its own counsel "is clearly not what was intended by the marking statute"). While the present case presents a more difficult question, HN5the actual notice requirement of § 287(a) demands notice of the patentee's identity as well as notice of infringement.

The purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470, 44 U.S.P.Q.2D (BNA) 1422, 1428 (Fed. Cir. 1997) (emphasis added). Besides alerting the alleged infringer to avoid further infringement, the notice requirement also permits the alleged infringer to contact the patentee about an amicable and early resolution of the potential dispute. Thus, without knowledge of the patentee's identity, an alleged infringer may lose the benefit of this primary purpose of the notice requirement. An alleged infringer may lose the opportunity to consult with the patentee about design changes to avoid infringement. Similarly, without knowledge of the patentee, an alleged infringer may lose the chance to negotiate a valid license. In sum, knowledge of the patentee's identity facilitates avoidance of infringement with design changes, negotiations for licenses, and even early resolution of rights in a declaratory judgment proceeding.

Contrary to Mr. Lans's contentions, notice from someone closely associated with the patentee does not satisfy § 287(a). After all, only the patentee has authority to grant licenses or accept design changes to facilitate the purposes of the notification requirement. Moreover, a looser notification rule would present notable enforcement problems. Courts would have to decide the degree of association sufficient to satisfy the rule. Must the notifying party control the patentee, or simply have an interest in the patentee? Indeed, how much control or interest would suffice? Agency principles would not likely ease this problem because the notifying party would not likely even purport to act on behalf of the patentee. Accordingly, a looser rule would both frustrate the purpose of notification and present difficult, if not unworkable, enforcement problems.

This court thus reiterates that actual notice under § 287(a) "must be an affirmative act on the part of the patentee which [*1328] informs the defendant of infringement." *Amsted Indus.*, 24 F.3d at 187. This rule follows prior decisions of this court and the Supreme Court, fulfills the purposes of § 287(a) by facilitating the alleged infringer's efforts to avoid continued infringement, and avoids troublesome determinations about the sufficiency of relationships between the notifier and the patentee.

Because Uniboard's licensees did not mark their products and because Uniboard did not inform the Computer Companies of infringement before expiration of the '986 patent, § 287(a) prevents Uniboard from collecting damages from the Computer Companies. Moreover, the district court cannot enjoin the Computer Companies from infringing an expired patent. Thus, the district court correctly ruled that Uniboard has not stated a claim on which relief may be granted.

*Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2003)

28

Crown does not suggest that it only learned of the '839 Patent through its own research or that Rexam's filing of the counterclaims was Crown's first notice of the patent  Crown learned that it required a license from American National Can Company ("ANCC," Rexam's predecessor) in order to perform the patented methods of smooth die-necking in a '          Redacted

In other words, Rexam affirmatively took steps to notify Crown (and other potential infringers) of their infringement. Representatives from Belvac have testified that Crown:

Redacted

Redacted

29

Redacted

When Crown's Vice President of Machinery and Tooling, Joseph Bauder,

Redacted

Crown also had actual knowledge of the '839 Patent in addition to the affirmative actions of Rexam's predecessor (ANCC)    Redacted    Crown's independent knowledge of the '839 Patent is demonstrated by the fact that Crown cited the '839 Patent on the face of many of its own patent applications  Dating back to U S. Patent 5,355,709, issued in 1994, Crown has cited Rexam's '839 Patent on the face of at least seven United States Patents, further illustrating Crown's knowledge of Rexam's patent.[3]

Even if the Court finds that Rexam was required to mark its products or alternatively provide actual notice to Crown, Rexam asks that the Court deny Crown's Motion for Summary Judgment on the issue: Rexam took affirmative steps to notify potential infringers (including Crown) of infringement and of how they could obtain a license under the '839 Patent in order to operate the smooth die-necking machinery.  Crown had actual knowledge of Rexam's position according to the documentary evidence

Redacted                                 and testimony of Belvac and

---

[3] U.S Patents assigned to Crown that reference the '839 patent include the 6,698,265, 6,240,760, 6,094,961, 6,085,563, 5,813,267, 5,724,848, and 5,355,709 patents  (A45-54; A74-148 )

30

Crown witnesses. Because Rexam only asserted method claims and, alternatively, because Rexam obliged its licensee to provide actual notice to Crown (and the licensee complied), this Court should deny Crown's motion to preclude Rexam from recovering pre-suit damages on the '839, '242 and '385 Patents.

## VI.    CONCLUSION

For all of the reasons stated herein, Crown's Motion For Partial Summary Judgment Dismissing Rexam's Counterclaim I And Limiting Damages On Counterclaims II-III Based On Laches And Failure To Comply With 35 U.S.C. § 287(a) should be denied.

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: February 20, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant/Counterclaimant*
*Rexam Beverage Can Co.*

31

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2007, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>  and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE   19801

I hereby certify that on February 23, 2007, I caused the foregoing document to be served via Federal Express on the following non-registered participants:

> Dale M. Heist, Esq.
> heist@woodcock.com
> Chad E. Ziegler, Esq.
> ziegler@woodcock.com
> Woodcock Washburn LLP
> Cira Centre
> 2929 Arch Street, 12th Floor
> Philadelphia, PA 19104-2891

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

RLF1-3000496-1