**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **CROWN PACKAGING TECHNOLOGY, INC. AND CROWN CORK & SEAL USA, INC.,** | ) ) ) ) |
| **PLAINTIFFS,** | ) ) |
| **V.** | ) ) |
| **REXAM BEVERAGE CAN CO.,** | ) ) |
| **DEFENDANT.** | ) ) ) |

**CIVIL ACTION NO. 05-608 (MPT)**

<div style="border:1px solid black">

**REDACTED PUBLIC VERSION**

</div>

**CROWN'S MEMORANDUM IN OPPOSITION**
**TO REXAM'S MOTION FOR SUMMARY JUDGMENT THAT**
**THE REXAM END DOES NOT INFRINGE CROWN'S 826 AND 875 PATENTS**

Barry Klayman (ID # 3676)
WOLF, BLOCK, SCHORR and
SOLIS-COHEN LLP
Wilmington Trust Center
1100 N. Market Street
Wilmington, DE 19801
(302) 777-0313

Dale M. Heist
Lynn Malinoski
Chad E. Ziegler
WOODCOCK WASHBURN, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

*Attorneys for Plaintiffs*
*Crown Packaging Technology, Inc. and*
*Crown Cork & Seal USA, Inc*

February 26, 2007

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

III.  SUMMARY OF ARGUMENT ......................................................................... 2

IV.  COUNTER-STATEMENT OF FACTS ........................................................... 4

V.  CONTROLLING LAW ...................................................................................... 6

    A.  Summary Judgment ................................................................................ 6

    B.  Law of Infringement ............................................................................... 7

VI.  REXAM HAS FAILED TO DEMONSTRATE THAT CROWN HAS NO
    EVIDENCE UPON WHICH A REASONABLE JURY COULD FIND
    INFRINGEMENT ................................................................................................ 9

    A.  Summary Judgment Must Be Denied If *Crown's* Construction Is Adopted ........ 11

        1.  Crown Has Evidence That Every Element Of The Asserted Claims
            Is Satisfied Under Its Proposed Construction ........................................... 11

        2.  Rexam's Assertion That It Avoids Infringement Because Its Can
            End Supposedly Has No "Bead" Is Irrelevant As To The Non-Bead
            Claims And Wrong As To The Bead Claims ............................................ 11

            a)  Rexam's Assertion That It Avoids Infringement Of The
                Non-Bead Claims (13 And 30-32) Because It Supposedly
                Has No Bead Is Legally Irrelevant ................................................ 12

            b)  Rexam's Suggestion That It Avoids Infringement Of The
                Bead Claims (14 and 50-52) Because It Supposedly Has No
                Bead Is Wrong ................................................................................ 13

    B.  Summary Judgment Must Be Denied Even If *Rexam's* Claim Construction
        Is Adopted ................................................................................................ 14

        1.  Crown Has Evidence That The Non-Bead Claims Are Literally
            Infringed Even If Rexam's Restrictive "Bead" Definition And
            Other Broad Claim Construction Proposals Are Adopted ....................... 14

            a)  A Reasonable Jury Could Find That The Rexam's Chuck
                Includes Walls Meeting At A Juncture ........................................ 15

b)    A Reasonable Jury Could Find That The Rexam End Has A
Wall Inclined At An Angle Between 30° and 60° ........................17

c)    A Reasonable Jury Could Find That The Rexam End Has A
Wall That Is Deformed So As To Be Bent Upwardly ..................20

d)    A Reasonable Jury Could Find That The Rexam End Is
Bent Upwardly Through An Angle Of At Least About 16° .........25

2.    Crown Has Evidence That The Bead Claims Are Infringed Under
The Doctrine of Equivalents Even If Rexam's Restrictive "Bead"
Definition And Other Broad Claim Construction Proposals Are
Adopted ................................................................................................ 26

a)    Fact Issues Regarding Equivalence Of The Bead Limitation
Preclude Summary Judgment ......................................................26

b)    Fact Issues Regarding Literal Infringement Of The
Remaining Limitation Preclude Summary Judgment ...................27

VII.    CONCLUSION............................................................................................. 28

# TABLE OF AUTHORITIES
## FEDERAL CASES

*AFG Indus. v. Cardinal IG Co.*,
  375 F.3d 1367 (Fed. Cir. 2004).................................................................... *passim*

*Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*,
  40 F.3d 1298 (Fed. Cir. 2003)...............................................................10, 27

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)............................................................................7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................6

*Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*,
  429 F.3d 1043 (Fed. Cir. 2005).................................................... *passim*

*Glaxo Wellcome Inc. v. Andrx Pharms., Inc.*,
  344 F.3d 1226 (Fed. Cir. 2003).................................................... *passim*

*Hilgraeve Corp. v. McAfee Assocs., Inc.*,
  224 F.3d 1349 (Fed. Cir. 2000).................................................... *passim*

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
  453 F.3d 1364 (Fed. Cir. 2006).................................................... *passim*

*Lifescan, Inc. v. Home Diagnostics, Inc.*,
  76 F.3d 358 (Fed. Cir. 1996)...............................................................10, 27

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)...........................................................12, 15

*Primos, Inc. v. Hunter's Specialties, Inc.*,
  451 F.3d 841 (Fed. Cir. 2006)............................................................7

*Resonate Inc. v. Alteon Websystems, Inc.*,
  338 F.3d 1360 (Fed. Cir. 2003).........................................................13

*RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003).........................................................9

*Riles v. Shell Exploration & Prod. Co.*,

298 F.3d 1302 (Fed. Cir. 2002)....................................................................................9

*Sandisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005).............................................................................16

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
    172 F.3d 836 (Fed. Cir. 1999)............................................................................6, 7

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    425 F.3d 1366 (Fed. Cir. 2005)...............................................................................9

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004).............................................................................12

*Voice Techs. Group, Inc. v. VMC Sys., Inc.*,
    164 F.3d 605 (Fed. Cir. 1999)......................................................................... *passim*

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006).............................................................................17

*Wright Medical Tech., Inc. v. Osteonics Corp.*,
    122 F.3d 1440 (Fed. Cir. 1997).......................................................................10, 27

I.    **INTRODUCTION**

Rexam requests summary judgment that Rexam's accused can end and method do not infringe the asserted claims of Crown's 826 and 875 patents under either parties' proposed construction of disputed claim terms (Br. at 1). But Rexam's motion is without merit and should be denied.

Rexam claims, halfheartedly, that it is entitled to judgment that the "Rexam End does not infringe Crown's patents *under Crown's constructions* of the disputed terms" (Br. at 1). But there is record evidence of literal infringement under Crown's proposed construction and genuine issues of material fact preclude summary judgment if the Court adopts that construction.

Not surprisingly, other than the hyperbole in its overly-optimistic introduction (Br. at 1), the body of Rexam's brief appears to assume that Rexam's unduly-narrow constructions have been adopted wholesale by the Court and that Crown's constructions have been rejected in their entirety. Thus, in reality, Rexam's claim is that it is entitled to judgment that the "Rexam End does not infringe Crown's patents based on *Rexam's proposed claim construction*" (Br. at 1). In fact, Rexam's principal argument is that its accused end lacks an "annular reinforcing bead" under its own interpretation (Br. at 14-15, 19-22). But not all of the claims require an "annular reinforcing bead." And there is record evidence that, even based upon Rexam's overly-narrow claim interpretations, Rexam *literally* infringes the "non-bead" claims (claim 13 of the 826 patent and claims 32-34 of the 875 patent) (Ex. 18, Higham Declaration, Tab A at ¶ 113).

Furthermore, even if the Court were to adopt Rexam's highly restrictive "reinforcing bead" definition and its other unduly narrow claim interpretations, there is record evidence that Rexam infringes the reinforcing bead claims (*i.e.,* claim 14 of the

826 patent and claims 50-52 of the 875 patent) under the doctrine of equivalents (Ex. 18, Higham Declaration, Tab A at ¶¶ 114-131). The underlying fact issues relating to equivalents mandate denial of Rexam's motion even if its restrictive reinforcing bead definition were to be adopted.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case. Crown filed this action alleging that Rexam is infringing Crown's 826 and 875 patents by making, using, and selling Rexam can ends in the United States. The 826 patent, issued August 30, 2005, is directed to a can end having a specific geometric profile. The 875 patent, issued February 1, 2005, is directed to methods of seaming can ends onto a can after the can is filled.

Contrary to the assertion in Rexam's motion (Br. at 1), the only patent claims asserted are claims 13 and 14 of the 826 patent and claims 32-34 and 50-52 of the 875 patent. Claim 53 of the 875 patent **is not asserted in this case** and is not at issue between the parties**.**

After Crown filed suit, Rexam answered and asserted counterclaims alleging that Crown infringed five of Rexam's patents directed to aspects of can body manufacturing and can end design (D.I. 17, counterclaims I-V). Crown has moved for summary judgment dismissing all of these counterclaims.

## III.    SUMMARY OF ARGUMENT

Rexam has failed to show that Crown lacks evidence upon which a reasonable jury could find infringement.

Rexam claims entitlement to judgment based on Crown's proposed construction of disputed terms. But Crown has shown literal infringement under Crown's proposed

construction. Therefore, there are genuine issues of material fact that preclude summary judgment if the Court adopts Crown's construction.

Rexam also claims entitlement to judgment assuming that its own proposed construction is adopted entirely and Crown's alternative construction is completely rejected. But if Rexam's proposed broad constructions are adopted, there is record evidence that some claims are infringed literally and others under the doctrine of equivalence. Therefore, there are genuine issues of material fact precluding summary judgment if the Court adopts Rexam's construction.

Rexam principal contention is that it avoids infringement because its product supposedly does not have an "annular reinforcing bead" (Br. at 14-15, 19-22) But not all claims require a bead. Undeterred, Rexam asserts, however, that *all* claims must be construed to require an annular reinforcing bead because the specification of Crown's patents supposedly "say[s] that the invention to which they are directed" requires a bead and that the bead is "essential" to the inventions (Br. at 3). But in a separate brief now pending before the Court, Rexam is asserting that all claims do *not* require a reinforcing bead. In fact, the *claims,* and not the specification, define the invention and Rexam admits that, of the asserted claims, only claim 14 of the 875 patent and claims 50-52 of the 875 patent "explicitly" require a bead (Br. at 3).

Crown has presented evidence of literal infringement of the *non*-bead claims even if Rexam's overly-restrictive bead definition were to be adopted. For example, even if Rexam's proposed broad claim interpretations are adopted, there is record evidence that Rexam's seaming chuck walls nevertheless meet at a "juncture," and that its can end wall is inclined at an angle "between about 20° and about 60°," and is not only "bent

upwardly" during seaming, but also bent through an angle of "more than 16°" (*See generally* Ex. 18, Higham Declaration, Tab A and Attachments).

Moreover, as to the asserted claims reciting a "reinforcing bead," there is record evidence that, while Rexam's can end and seaming method would not satisfy the bead claims literally under Rexam's overly-restrictive bead definition, they would nevertheless infringe these claims under the doctrine of equivalents (*id.* at ¶¶ 114-131).  Because equivalence is a question of fact, summary judgment is inappropriate regardless of whether the Court adopts Crown's broad bead definition or Rexam's highly-restrictive bead definition.

## IV.    COUNTER-STATEMENT OF FACTS

1.    Rexam asserts that it is entitled to judgment that the "Rexam end does not infringe Crown's patents *under Crown's construction*" (Br. at 1).  But the record shows that "based upon Crown's proposed claim construction, Rexam ends 'literally' infringe every asserted claim because each of the elements of these claims is found in the Rexam can ends or the method of seaming Rexam can ends to can bodies" (*id.* at ¶¶ 43-111).

2.    Rexam asserts that "every claim of Crown's patents should be construed to require an 'annular reinforcing bead'" (Br. at 19), but the only asserted claims that explicitly require a reinforcing bead are claims 14 and 50-52 ("the reinforcing bead claims") (Br. at 3).

3.    Rexam asserts that there is no evidence of literal infringement because its can end supposedly has no "annular reinforcing bead" (Br. at 3, 19-22).  But the record shows that: (1) claims 13 and 30-32 do not require a reinforcing bead; and (2) under Crown's proposed bead definition, Rexam's end has an annular reinforcing bead as

required by the remaining claims (14 and 50-52) because it includes "a ring-like stiffening channel" (Ex. 18, Higham Declaration, Tab A at ¶ 65 and at Attachment 13).

4.    Rexam asserts that it is entitled to judgment that the "Rexam End does not infringe Crown's patents based *on Rexam's proposed claim construction*" (Br. at 1).  But the record shows that even based upon Rexam's proposed claim construction, Rexam's can ends and seaming methods "literally" infringe the non-reinforcing bead claims (13 and 32-34) (Ex. 18, Higham Declaration, Tab A at ¶ 113).

5.    With regard to claim 13 of the 826 patent, Rexam claims that there is no evidence of literal infringement because its seaming "chuck does not have two walls that meet at a juncture" (Br. at 4, 7, 22-25).  But the record shows that Rexam's seaming chuck includes two walls and that they form "a juncture therebetween" (Ex. 18, Higham Declaration, Tab A at ¶ 45 and Attachment 12).

6.    Rexam asserts that there is no literal infringement of the non-bead claims because the "Rexam End does not have a wall with a lowermost point that creates a line at an angle between 30° and 60°" (as required by claim 13), or between about 20° and about 60° (as required by claims 32-34) (Br. at 5-6, 25-26).  But the record shows that the Rexam end includes a wall with a lowermost point that creates line inclined "at an angle of between 30º and 60º" and, in particular, at an "angle of about 33°" (Ex. 18, Higham Declaration, Tab A at ¶¶ 61, 63 and Attachments 13 and 17).

7.    Rexam asserts that there is no literal infringement of claim 13 of the 826 patent because the Rexam End does not have a first wall portion that is adapted to be bent upwardly during seaming (Br. at 7, 27-30).  But the record shows that the Rexam End includes a wall portion adapted to be deformed so as to be bent upwardly around the

juncture of the chuck walls at a first point on the wall (Ex. 18, Higham Declaration, Tab A at ¶ 54 and Attachments 8, 10 (at 25:13-22) and 15 (at 8)).

8.        Rexam asserts that there is no evidence of literal infringement of claims 32-34, of the 875 patent because the wall of Rexam's end is not bent upwardly though an angle of at least about 16° during seaming (Br. at 7, 30-32).  But the record shows that a first portion of the Rexam end wall is bent upwardly through an angle of about 29º in Rexam's seaming method (Ex. 18, Higham Declaration, Tab A at ¶ 85).

9.        Rexam asserts that there is no evidence of infringement of the bead claims (14 and 50-52) under its proposed construction.  But the record shows that even under Rexam's proposed construction, "the Rexam ends and the method of seaming them infringe [those] claims under the 'doctrine of equivalents'" (*id.* at ¶¶ 113-114).

10.       The differences between the asserted bead claims and the Rexam end and seaming method are insubstantial (*id*. at ¶ 118).  The Rexam ends and seaming methods perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed invention (*id*. at ¶¶ 114-131)

## V.    CONTROLLING LAW

### A.    Summary Judgment

Crown bears the burden of proving infringement of its patents and must demonstrate infringement by only a mere preponderance of the evidence.  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

As summary judgment movant, however, Rexam bears the burden of demonstrating that there is an absence of evidence to support Crown's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When a properly supported summary judgment motion is made, all that a nonmoving party, such as Crown, must do is come forward with evidence on which the jury could reasonably find for it. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986); *see also Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). All reasonable factual inferences must be drawn in favor of the nonmovant. *Matsushita Elec.*, 475 U.S. at 587-88; *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1352 (Fed. Cir. 2000).

### B.    Law of Infringement

Proof of infringement requires two steps, claim construction and claim application. *Seal-Flex*, 172 F.3d at 842. Claim construction is a purely legal issue. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006). Application of the claims to the accused product or method to determine infringement, however, is a question of fact reserved for the jury. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("The second step, application of the claim to the accused product to determine infringement, is a question of fact.").

Where, as here, the record shows a genuine and material conflict arising from the claim application step under the correct claim construction, summary judgment is inappropriate. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1376 (Fed. Cir. 2006) (vacating grant of summary judgment of non-infringement where patentee "presented sufficient expert testimony on this issue to avoid summary judgment"); *Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043, 1047 (Fed. Cir. 2005) (vacating grant of summary judgment of noninfringement because district court "invaded the province of the finder of fact, here a jury requested by [the patentee], in

-7-

deciding the infringement question"); *AFG Indus. v. Cardinal IG Co.*, 375 F.3d 1367, 1372, 1374 (Fed. Cir. 2004) (vacating grant of summary judgment "[b]ecause genuine issues of material fact preclude[d] summary judgment of noninfringement"); *Glaxo Wellcome Inc. v. Andrx Pharms., Inc.*, 344 F.3d 1226, 1234 (Fed. Cir. 2003) (the issue of whether accused product's "release rate and plasma profile are different from those [claimed because] . . . this aspect can not be resolved adversely to [the patentee] on the summary judgment record, for these material facts were placed in dispute, and were not resolved."); *Hilgraeve*, 224 F.3d at 1355 ("Because neither . . . expert's analysis of the [accused device] definitively answers the fundamental factual question of whether "storage," as defined by the district court, occurs before or after scanning in [the accused device], this court vacates the district court's grant of summary judgment of non-infringement"); *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 616 (Fed. Cir. 1999) ("[F]actual issues of infringement require further development, on the correct claim construction.  The grant of summary judgment of non-infringement was in error, and is reversed").

A patentee is entitled to show infringement in one of two ways.  Literal infringement is shown where every element of the patent claim is found in the accused device or method.  *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002).  But even where literal infringement cannot be shown, infringement may nevertheless be found under the so-called doctrine of equivalents.  *Id.* at 1309.  Proof of infringement under the doctrine of equivalents requires a showing that the differences between the claimed invention and the accused device or method are insubstantial.  *Id.* ("A claim element is equivalently present in an accused device if only 'insubstantial

differences' distinguish the missing claim element from the corresponding aspects of the accused device").  One way to demonstrate that differences between the claim and accused product are insubstantial is to show that the accused product "performs substantially the same function as the claimed limitation in substantially the same way to obtain substantially the same result."  *Id.* (citation omitted).  Infringement under the doctrine of equivalents is entirely fact dependent.  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1372 (Fed. Cir. 2005) ("[I]nfringement, whether literal or under the doctrine of equivalents, is a question of fact . . . ."); *RF Delaware, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003).

## VI.    REXAM HAS FAILED TO DEMONSTRATE THAT CROWN HAS NO EVIDENCE UPON WHICH A REASONABLE JURY COULD FIND INFRINGEMENT

Rexam claims entitlement to judgment that its can end and seaming method do "not infringe Crown's patents *under Crown's constructions* of the disputed terms" (Br. at 1) (emphasis added).  But if the Court adopts Crown's proposed construction, Rexam's motion must be denied because genuine issues of material fact preclude summary judgment of non-infringement.  The record shows that, under Crown's proposed construction, Rexam "literally" infringes each and every one of the asserted claims because each claim element is found in Rexam's can ends and seaming method (Ex. 18, Higham Declaration, Tab A at ¶¶ 43-111).  All reasonable inferences that can be drawn from the record must be drawn in Crown's favor.  *Hilgraeve,* 224 F.3d at 1352.  Because a reasonable jury could find infringement under Crown's construction, Rexam's motion must be denied if Crown's construction is adopted.  *Id.* at 1355.

Rexam also claims that it is entitled to judgment that its can end and seaming method do "not infringe Crown's patents based on *Rexam's proposed claim*

*construction*" (Br. at 1) (emphasis added). But if Rexam's construction is adopted, there are disputed fact issues regarding literal infringement of the *non-bead* claims. Consequently, grant of summary judgment as to those claims is inappropriate even if Rexam's proposed construction is adopted. *Id.* Further, there are disputed fact issues regarding infringement of the *bead* claims under the doctrine of equivalents (Ex. 18, Higham Declaration, Tab A at ¶¶ 114-131). Grant of summary judgment as to the bead claims, therefore, would also be inappropriate if Rexam's construction is adopted. *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1313 (Fed. Cir. 2003) ("To the extent that the district court's judgment constituted a grant of partial summary judgment of noninfringement . . . under the doctrine of equivalents, we vacate that portion of the judgment and remand to the district court to articulate whether any triable issues of fact with respect to infringement of this claim by equivalents exists"); *Wright Medical Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) (district court "erred in granting summary judgment that there was no infringement under the doctrine of equivalents [when the patentee] offer[ed] evidence and argument relevant to the doctrine of equivalents"); *Lifescan, Inc. v. Home Diagnostics, Inc.*, 76 F.3d 358, 362 (Fed. Cir. 1996) (reversing summary judgment of noninfringement under the doctrine of equivalents because "[t]his aspect can not be decided as a matter of law, but must be weighed by the trier of fact, along with the other evidence of similarities and differences, in the course of determining whether the patented and the accused methods are substantially the same").

Rexam's motion, therefore, must be denied because a reasonable jury could conclude that Rexam's end and seaming method infringe the bead and non-bead claims regardless of which party's claim construction is adopted by the Court.

**A.  Summary Judgment Must Be Denied If *Crown's* Construction Is Adopted**

Rexam claims entitlement to judgment that Rexam's can ends and seaming methods do "not infringe Crown's patents *under Crown's construction*" (Br. at 1). But the record precludes that claim.

**1.  Crown Has Evidence That Every Element Of The Asserted Claims Is Satisfied Under Its Proposed Construction**

There is record evidence that, based upon Crown's proposed claim construction, Rexam can ends and seaming methods "'literally' infringe every asserted claim because each of the elements of these claims is found in the Rexam can ends or the method of seaming Rexam can ends to can bodies" (Ex. 18, Higham Declaration, Tab A at ¶¶ 43-111). That evidence compels denial of Rexam's motion if the Court adopts Crown's proposed construction.

**2.  Rexam's Assertion That It Avoids Infringement Because Its Can End Supposedly Has No "Bead" Is Irrelevant As To The Non-Bead Claims And Wrong As To The Bead Claims**

The only issue raised by Rexam under Crown's proposed construction is whether or not the Rexam end includes a reinforcing bead. But some claims do not even require a bead, and there is evidence that the Rexam end includes a bead in any event.

a)    **Rexam's Assertion That It Avoids Infringement Of The Non-Bead Claims (13 And 30-32) Because It Supposedly Has No Bead Is Legally Irrelevant**

Rexam claims that its can end avoids infringement of Crown's patents because it supposedly does not include a reinforcing bead.  But only claim 14 of the 826 patent and claims 50-52 of the 875 patent expressly require an "annular reinforcing bead" (*id*. at ¶ 114).  Claims 13 and 32-34 have no such requirement (*id*.).

Nevertheless, Rexam claims that claims 13 and 32-34 must be construed narrowly *to require a bead* even though they contain no such express limitation (Br. at 19: "every claim . . . should be construed to require an 'annular reinforcing bead'").  But in another brief now pending before the Court, Rexam simultaneously argues that claims 13 and 32-34 must be construed broadly *so as not to require a bead* because the doctrine of claim differentiation supposedly *"demands"* that they be so construed (Defendant's Memorandum In Support Of Motion For Partial Summary Of Invalidity of U.S. Patent Nos. 6,935,826 and 6,848,875 at 37).  Rexam's diametrically opposed assertions, however, are untenable and irreconcilable.  There can be only one correct answer: claims 13 and 32-34 nowhere mention a "bead" and, therefore, they most assuredly do not require one.  Rexam is wrong here and correct in its other co-pending brief because the doctrine of claim differentiation demands this result.[1]

In any event, the Court would have no power to rewrite claims 13 and 32-34 to require a bead because the claims that the PTO examined and allowed did not contain

---

[1] In general, there is a "presumption that each claim in a patent has a different scope." *Versa Corp. v. Ag-Bag Int'l Ltd.,* 392 F.3d 1325, 1330 (Fed. Cir. 2004); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) ("Other claims of the patent in question, both asserted and unasserted, can be valuable sources of enlightenment as to the meaning of a claim term.").

such a requirement. *See Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1365 (Fed. Cir. 2003) ("Courts may not rewrite claim language based on what has been omitted from a claim, and the district court's attempt to do so here was legal error").

<div align="center">

**b)    Rexam's Suggestion That It Avoids Infringement Of The Bead Claims (14 and 50-52) Because It Supposedly Has No Bead Is Wrong**

</div>

The record shows that Rexam's can end literally includes an annular reinforcing bead as required by the bead claims (13 and 50-52) under Crown's proposed "bead" definition. Crown proposes that the term "bead" be construed to refer to a "ring-like stiffening channel." The record shows that the Rexam's can end has an annular reinforcing bead under that definition (Ex. 18, Higham Declaration, Tab A at ¶ 65 and Attachment 13). According to Higham, Rexam's reinforcing bead is "disposed along a horizontal plane, as opposed to the reinforcing bead shown in the schematic drawing of Figure 4 of the 826 patent, which is disposed along a vertical plane:" (*id.*).

<div align="center">

Rexam End Reinforcing Bead



</div>

"But [the orientation] is of no moment because the term 'annular reinforcing bead' requires no particular orientation" (*id.*). Thus, a reasonable jury could find literal

infringement of the bead claims (14 and 50-52) if the Court adopts Crown's proposed bead definition.[2]

And even if the Court were to accept Rexam's strained contention that *all* claims, including those that nowhere expressly mention a "bead," must be rewritten to require one, a reasonable jury could find that *all* asserted claims are literally satisfied because the record shows that Rexam's can end has an annular reinforcing bead under Crown's definition of the phrase (*id.*).  Thus, Rexam's motion must be denied if Crown's proposed "ring-like stiffening channel" definition of the *annular reinforcing bead* phrase is adopted.  *See LG Elecs.,* 453 F.3d at1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome,* 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

**B.    Summary Judgment Must Be Denied Even If *Rexam's* Claim Construction Is Adopted**

Rexam claims that it is entitled to judgment that the Rexam can end and seaming method do "not infringe Crown's patents based on *Rexam's proposed claim construction*" (Br. at 1) (emphasis added).  But again, the record shows otherwise.

**1.    Crown Has Evidence That The Non-Bead Claims Are Literally Infringed Even If Rexam's Restrictive "Bead" Definition And Other Broad Claim Construction Proposals Are Adopted**

Even if all of Rexam's proposed broad claim construction proposals were adopted, including its absurdly restrictive "reinforcing bead" definition (*i.e.,* a bead must be "U-shaped," "outwardly concave," "upwardly opening," "extending inwardly," and formed by "stamping or pressing"), its motion for judgment of non-infringement of the

---

[2] Rexam's cartoons of its own end are not accurate depictions of the commercial ends accused of infringement (Compare photo of actual end above with Br. at 26).  Higham found that Rexam's *commercial ends* meet each of the limitations of the asserted claims.

*non*-bead claims should nevertheless be denied. The record shows that the non-bead claims are literally infringed under Rexam's proposed broad claim interpretations (*id*. at ¶ 113).

### a)   A Reasonable Jury Could Find That The Rexam's Chuck Includes Walls Meeting At A Juncture

Under its proposed claim construction, Rexam contends that there is no "point" on the surface of its seaming chuck, and therefore, that there can be no literal infringement of claim 13 of the 826 patent because the claim supposedly requires a chuck having "two walls" that form a juncture between them that is a "point" in cross section (Br. at 19).

Crown proposes that the phrase "*juncture therebetween*" be construed to encompass "a *place* between two things at which they meet." The plain meaning of "*juncture*" is "a place *or* point of . . . meeting" (Ex. 19, Webster's Dictionary at 1226) (emphasis added). Rexam, however, argues that a juncture cannot be a "place," but rather must be limited to a "point" (Br. at 19). The patent specification, however, does not define the term "juncture" as a point nor indicate that it has a specialized meaning that is somehow limited to a "point." Nevertheless, Rexam claims that a juncture must be a "point" because that "is exactly what is depicted" in the patent drawing (Br. at 18-19). But that is wrong as matter of law. Although the patent specification often describes very specific embodiments of the invention, district courts have been "repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323.

Further, Rexam admits that Crown's patent drawings show two chucks types, one in which the chuck walls meet with a "sharp transition" and another, shown in Figure 8, in which the walls meet with a "blend radius" (Br. at 19 and 23-24). Rexam initially

proposed (in the parties' joint claim construction chart) that the patent claims be restricted to those in which the chuck walls meet at a "point (juncture)," thereby presumably excluding those in which the walls meet at a blend "radius." That proposal, however, would have erroneously excluded the "radius" embodiment of Figure 8.[3] Now, in its summary judgment memorandum, however, Rexam appears to backtrack from its initial proposal and suggests that chuck walls may be considered to meet at a "point (juncture)" even when they meet at a blend radius provided the radius is small enough (Br. at 23-24). Crown has offered evidence that Rexam's chuck walls meet at a radius, *i.e.* at a place (Ex. 18, Higham Declaration, Tab A at ¶105 and Attachment 12). Given Rexam's admission that chuck walls may be considered to meet at a point even when they meet at a radius, the issue is now purely one of claim application.

There is record evidence that Rexam chuck walls meet at a small radius and that, alone, is sufficient for a reasonable jury to conclude that the juncture limitation is satisfied under Rexam's proposed construction. Rexam, however, now says that the radius at which its chuck walls meet is not small enough to be considered a "point" because the radius is 0.030 inches whereas the radius shown in Figure 8 of Crown's patent specification is "less than .5 millimeters" (*i.e.,* less than 0.020 inches) (Br. at 23-24). To put the absurdity of Rexam's position in context, consider that the period at the end of this sentence (which has been enlarged to 24 point font) has a radius of approximately 0.025 inches, and therefore is not a "point" according to Rexam .

But whether or not Rexam's chuck walls meet at a radius small enough to be considered a point is clearly a question of claim application – not claim construction.

---

[3] It is well settled that a claim construction which excludes such a preferred embodiment is "rarely, if ever, correct." *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (citation omitted).

Crown's expert has identified a juncture between Rexam's chuck walls. Rexam's expert denies that such a juncture exists. That claim application issue is a genuine issue of material fact precluding summary judgment of no literal infringement of claim 13 under Rexam's proposed construction of the juncture limitation. *See LG Elecs.,* 453 F.3d at1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

> **b)** **A Reasonable Jury Could Find That The Rexam End Has A Wall Inclined At An Angle Between 30° and 60°**

Rexam claims that its can end is not inclined at an angle between 30° and 60° given its proposed construction that the "lowermost end" must be limited to "the specific place on the wall nearest the central panel" (Br. at 25-26). But there is record evidence from Crown's expert, Mr. Higham that when claims 13 and 32-34 are applied to the Rexam can end and seaming method, the lowermost point of the can end wall creates a line inclined at an "angle of about 33°" which satisfies all asserted claims (Ex. 18, Higham Declaration, Tab A at ¶¶ 61-63 and Attachments 13 and 17). And the record shows that the Rexam end meets this limitation even under Rexam's proposed construction (*id.* at ¶ 113). Thus, a reasonable jury could find literal infringement of the non-bead claims (13 and 32-34) if the Court adopts Rexam's proposed definition.

Here, however, for the first time, Rexam attempts to incorporate the additional requirement of *claim application* into the "lowermost end" element to neutralize Crown's evidence, arguing that the "lowermost end" means the point that "meets" the central panel (Br. at 25). But claim construction and claim application are distinct inquiries and this new gloss on its original claim construction must be rejected. *Wilson*, 442 F.3d at

1331 (claim construction should never be tailored "to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement").

Crown's expert has found that Rexam's accused end meets angle of inclination claim elements. Rexam's expert, Mr. Gillest, applied the same claims, construed in the same way, to the very same drawing of the Rexam can end that formed the basis of Mr. Higham's opinion. Gillest, however, determined that the wall angle was inclined at an angle of only 18°-19° degrees and not 33° as Higham had determined (Ex. 20, Gillest Tr. at 161:6 – 164:18). The difference between Higham's claim application approach and that used by Gillest was that Higham did not consider Rexam's so-called "fold" to be part of the can end wall, but rather to be a part of the annular reinforcing bead (Ex. 18, Higham Declaration, Tab A at ¶ 57 and Attachment 13). Thus, Higham considered the lowermost point of the can end wall to be the place at which the can end wall ended and the reinforcing bead or "fold" began (*id.*)

In contrast, Gillest not only denied that the Rexam end had a reinforcing bead, but also claimed that the "fold" in the Rexam end was not a separate element at all, but rather was merely a part of the can end wall (Ex. 20; Gillest Tr. at 154:24-156:4).[4] Thus, according to Gillest, the lowermost point of the wall was not the place at which the wall ended and the fold began, but rather the place at which the fold ended and the central

---

[4] Gillest's assertion is belied by admissions in Rexam's U.S. Patent No. 6,772,900 ("900 patent"), which is directed to the Rexam end (Ex. 21). The 900 patent describes the fold as separate from the can end wall and not as a part of it. The patent describes an end having a seaming curl 12, a chuckwall 14, a transition wall 16 (*i.e.*, a fold 54), and a central panel 18 (*id.* at 4: ll. 10-12; 5: l. 21). The 900 patent admits that the "chuckwall extends downwardly from the curl to the transition wall [*i.e.*, the fold]" (*id.* at 5: ll. 11-13; Abstract). Thus, Rexam's current assertion that the chuckwall of the Rexam end includes the fold is contradicted by admissions in its 900 patent.

panel began (*id.* at 155:24-156:4).  Using that claim application approach, Gillest found

the wall angle to be 18°-19° rather than 33° as Higham had determined.  Compare the

differences in claim application:



But all reasonable factual inferences must be drawn in Crown's favor regarding

the application of the angle of inclination limitation to Rexam's can end.  *See Hilgraeve*,

224 F.3d at 1352.  Thus, there is evidence that the wall angle claim limitations are

satisfied.  And in any event, this type of claim application dispute is a pure question of

fact that can only be resolved by a jury and that precludes the grant of summary

judgment.[5]  *Id.* at 1355; *LG Elecs.*, 453 F.3d at 1376; *Dorel Juvenile Group*, 429 F.3d at

_____

[5] In fact, Gillest also applied the claim yet another way, that he could not explain on
deposition, in which he determined that the wall was inclined at 27°-28° (Ex. 20, Gillest Tr. at
163:14 – 165:25).  While on deposition, Gillest claimed that the at 18°-19° was correct and that

1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Voice Techs. Group.*, 164 F.3d at 616.

> **c)**    **A Reasonable Jury Could Find That The Rexam End Has A Wall That Is Deformed So As To Be Bent Upwardly**

Rexam claims that only the *cover hook* of the Rexam can end is bent during seaming and not the *wall portion* and thus the can end does not infringe claim 13 of the 826 patent.  But there is record evidence from Crown's expert, Mr. Higham that when claim 13 is applied to the Rexam can end and seaming method, the *wall portion*  of the Rexam can end is "deformed so as to be bent upwardly" (Ex. 18, Higham Declaration, Tab A at ¶¶ 52-55 and Attachments 13, 14, and 15 (at p.8)).  And the record shows that the Rexam can end and seaming method meet this limitation even under Rexam's proposed construction (*id*. at ¶ 113).   Thus, a reasonable jury could find literal infringement of claim 13 if the Court adopts Rexam's proposed definition.

Now, for the first time, Rexam attempts to graft a *claim application* step into the construction of the term "wall" to neutralize Crown's evidence, arguing that while "the cover hook [of the claim] is curved," the can end wall "is not curved," *i.e.*, flat (Rexam's Opening Claim Construction Brief at 12).  But Rexam cannot and does not dispute that its can end has a *portion* that is bent upwardly during seaming.  The only issue is whether the *curved* portion that is bent upwardly may be characterized as a "*wall*" portion of the can end, or a portion of the can end's adjoining "*cover hook.*"

---

27°-28° was incorrect, a reasonable jury could conclude, from Gillest's deposition alone, that claims 32-34 of the 875 patent, which merely require an angle between about 20° and about 60°, were satisfied.

Crown's expert found infringement of the Rexam end because he recognized that the wall portion of claim 13 need not be flat (Ex. 18, Higham Declaration, Tab A at ¶¶ 54-55 and Attachments 8, 11, and 15 at 8). Rexam's argued, and its expert agreed, that because "the entire region of the Rexam End that is deformed to become part of the double seam" is "curved" that region must be part of the peripheral cover hook and not the can end wall, which Rexam *now* claims must be flat (Br. at 30). This type of claim application dispute is a pure question of fact that can only be resolved by a jury and that precludes the grant of summary judgment.[6] *LG Elecs.,* 453 F.3d at 1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

Rexam raises a number of claim construction arguments to add new gloss to the terms "wall" and "peripheral cover hook." But nothing in the claim language itself requires that the cover hook "end[] where the curved or radiused portion(s) stops" and the "not curved" wall portion begins. To the contrary, claim 32 (which also recites a "bent upwardly" element) expressly recites that the wall portion has a "radiused portion" extending from the seaming panel.

Nor does the specification require that the terms be so limited. In fact, the specification expressly discloses that the "cover hook" ends in the middle of a "curved or radiused portion" and not at the end of it. Figure 4 shows the cover hook (23) as well as

---

[6] In fact, Gillest also applied the claim yet another way, that he could not explain on deposition, in which he determined that the wall was inclined at 27°-28° (Ex. 20, Gillest Tr. at 163:14 – 165:25). While on deposition, Gillest claimed that the at 18°-19° was correct and that 27°-28° was incorrect, a reasonable jury could conclude, from Gillest's deposition alone, that claims 32-34 of the 875 patent, which merely require an angle between about 20° and about 60°, were satisfied.

the seaming panel, which is part of the cover hook. The patent specification defines the

seaming panel portion of the cover hook (23) by the radius $r_2$:



The cover hook (23), therefore, begins at the outermost perimeter of the can end and ends

where the seaming panel portion of the cover hook transitions to the chuck wall (24).

The specification confirms that the seaming panel portion of the cover hook transitions to

the chuck wall (24) at the arc defined by radius "$r_1$" which the specification expressly

refers to as the "seaming panel/chuck wall radius" as Rexam acknowledges (Br. at 28;

Ex. 1, 826 Patent at 4:17). Rexam admits that the seaming panel/chuck wall radius $r_1$ is a

part "of the cover hook" (Br. at 28). Rexam, however, claims that the *entirety* of the arc,

*i.e.*, the entirety of the "curved section[] that conform[s] to $r_1$" is "part of the cover hook"

and that only the flat section adjacent to that curved section is a part of the "chuck wall"

(24) (Br. at 28). In other words, Rexam claims that the chuck wall (24) must not only be

entirely "flat," but also that it include no part of the arc defined by the common radius $r_1$

which the specification *expressly* refers to as the shared "seaming panel/chuck wall

radius." But the specification confirms that the seaming panel, and therefore, the cover

hook of which it is a part, *share* a common radius ($r_1$) with the chuck wall (23).



Thus, in the preferred embodiment, the cover hook does not "end where the curved or radiused portion(s) [$r_1$] stops" as urged by Rexam, but rather ends in the middle of the arc defined by the shared radius $r_1$ which the specification expressly refers to as the "seaming panel/chuck wall radius." Consequently, the court should reject Rexam's proposed construction and adopt Crown's contrary construction.

Rexam claims that "the table at column 4 of the '826 patent" confirms that "the seaming panel/chuck wall radius" is "part of the peripheral curl" (Br. at 28). But the table says no such thing. The table merely states that d5 is the "overall diameter" of the peripheral curl; that d4 is the "PC diameter of the seaming panel radius [$r_2$]," *i.e.,* the diameter of that part of the peripheral curl at which the seaming panel radius $r_2$ originates; and that d3 is the "PC diameter of the seaming panel/chuck wall radius [$r_1$]," *i.e.,* the diameter at which the seaming panel/chuck wall radius $r_1$ originates. This is confirmed by reference to Figure 4:



Table 4 nowhere suggests that the entire arc defined by the shared *seaming panel/chuck wall radius* $r_1$ is part of the seaming panel or part of the chuck wall. Rather, the language "seaming panel/chuck wall radius" implies that the arc is shared between the two.

Rexam also claims that "Crown specifically told the patent examiner that the seaming panel disclosed in Crown's patent *was limited to* the region that conforms to radius $r_1$ (Br. at 29-30 (citing 2/09/2004 amendment at 20, A98)) (emphasis added). But the prosecution history says no such thing and nowhere states that the seaming panel must be "*limited to*" the entirety of the region that conforms to radius $r_1$. Rather, the prosecution history states that "the seaming operation begins by providing a can end that has a wall extending from the seaming panel portion of the cover hook 23 (the radius of the seaming panel is designated as $r_2$ in Figure 4)" (Rexam appendix at A98). Crown

never stated that the wall extends from the point at which the curve defined by radius $r_1$ ends as urged by Rexam.

There is more than sufficient evidence for a jury to find that a wall portion of Rexam's can end, and not merely its seaming panel, is bent upwardly during seaming and that claim 13 is literally infringed (Ex. 18, Higham Declaration, Tab A at ¶ 54 and Attachments 8, 10 at 25:13-22 and 15 at 8).  *See LG Elecs.,* 453 F.3d at 1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

### d)    A Reasonable Jury Could Find That The Rexam End Is Bent Upwardly Through An Angle Of At Least About 16°

Rexam claims that is entitled to judgment that its seaming method does not literally infringe claims 32-34 of the 875 patent because a first portion of its can end wall is supposedly not bent upward "around [the] juncture of [the] chuck walls" through "an angle of at least about 16°" during seaming given that its chuck supposedly has no juncture (Br. at 30-32).  But in fact, as set forth above, Rexam's chuck does have a juncture (Ex. 18, Higham Declaration, Tab A at ¶ 45 and Attachment 12).

Further, the record shows that in Rexam's seaming method, the can end is bent upwardly through an angle of about 29° during seaming which literally satisfies the "at least about 16°" claim requirement (*id.* at ¶ 85).  When it finds it convenient to do so, Rexam claims that its can end wall is not bent upwardly *at all,* but rather that its cover hook, and only its cover hook, is bent upwardly (Br. at 30).  But elsewhere, Rexam claims that *if* its wall is bent upwardly, the amount of bending  is not "more than 12°" (Br. at 30-32).  But that contention creates precisely the type of factual claim application disagreement that precludes the grant of summary judgment.  *See LG Elecs.,* 453 F.3d at

1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

> **2.    Crown Has Evidence That The Bead Claims Are Infringed Under The Doctrine of Equivalents Even If Rexam's Restrictive "Bead" Definition And Other Broad Claim Construction Proposals Are Adopted**

Even if Rexam's highly restrictive reinforcing bead definition were to be adopted (*i.e.,* a bead must be "U-shaped," "outwardly concave," "upwardly opening," "extending inwardly," and formed by "stamping or pressing"), the record shows that there are genuine issues of material fact regarding infringement of the bead claims 14 and 50-52 under the doctrine of equivalents.

> **a)    Fact Issues Regarding Equivalence Of The Bead Limitation Preclude Summary Judgment**

While Rexam boldly asserts, with no record support whatever, that the Rexam end "is not an equivalent to the annular reinforcing bead of Crown's patents" (Br. at 22), the declaration of Crown's expert, Mr. Higham, confirms that there is a genuine issue of material fact as to infringement by equivalents that precludes summary judgment:

> Assuming Rexam's claim construction with regard to the annular reinforcing bead is adopted by the Court . . . [and applying] the function-way-result test to this claim element, this aspect of the Rexam end is not substantially different from its corresponding elements in the 826 and 875 patents, and, thus, the Rexam end and seaming method infringe claim 14 of the 826 patent and claims 50-52 of the 875 patent under the doctrine of equivalents (Ex. 18, Higham Declaration, Tab A at ¶¶ 117-118).

All reasonable factual inferences must be drawn in Crown's favor on the equivalence issue.  *See Hilgraeve*, 224 F.3d at 1352 (Fed. Cir. 2000).  Accordingly, Higham's evidence of equivalence precludes summary judgment of non-infringement of

the bead claims 14 and 50-52. *See Anchor Wall,* 340 F.3d at 1313; *Wright Medical*, 122 F.3d at 1445; *Lifescan*, 76 F.3d at 362.

> **b)    Fact Issues Regarding Literal Infringement Of The Remaining Limitation Preclude Summary Judgment**

Rexam claims that there is no evidence that other elements of the bead claims are satisfied under its proposed construction. It urges, for example, that there is no evidence that there is "point" on the surface of its seaming chuck, and therefore, that there can be no literal infringement of claims 14 or claims 50-52 because the claims supposedly require a chuck having "two walls" that form a juncture between them that is a "point" in cross section (Br. at 19). But the record contains evidence that Rexam's chuck has a point juncture if a point refers includes a small radius (Ex. 18, Higham Declaration, Tab A at ¶¶ 50-53).

Rexam also claims that its can end does not have a wall inclined "between 30° and 60°" as required by claim 14 or between "about 20° and about 60°" as required by claims 32-34 (Br. at 6 and 25-26). But the record shows otherwise (Ex. 18, Higham Declaration, Tab A at ¶¶ 61, 63, 78 and Attachments 13 and 17).

Rexam claims that its can end does not include first wall portion bent upwardly during seaming as required by claim 14 (Br. at 27) or a portion that is bent upward "around [the] juncture of [the] chuck walls" as required by claim 51 (Br. at 30-32). But again, record shows otherwise (Ex. 18, Higham Declaration, Tab A at ¶¶ 50-53, 84-89).

The factual disputes regarding the application of the claims to Rexam's can and seaming method preclude grant of summary judgment. *See LG Elecs.,* 453 F.3d at 1376; *Dorel Juvenile Group,* 429 F.3d at 1047; *AFG Indus.* 375 F.3d at 1374; *Glaxo Wellcome*, 344 F.3d at 1234; *Hilgraeve*, 224 F.3d at 1355; *Voice Techs. Group.*, 164 F.3d at 616.

# VII.    CONCLUSION

For all of the above reasons, Crown respectfully requests that the Court enter an order denying Rexam's motion for partial summary judgment of non-infringement.


Dated: February 26, 2007                                    Respectfully submitted,


                                                             _/s/ Barry Klayman_____
                                                             Barry Klayman (ID # 3676)
                                                             Wolf, Block, Schorr
                                                               and Solis-Cohen LLP
                                                             Wilmington Trust Center
                                                             1100 N. Market Street, Suite 1001
                                                             Wilmington, DE 19801
                                                             (302) 777-0313

                                                             *Attorney for Plaintiffs*
                                                             *Crown Packaging Technology, Inc.*
                                                             *and*
                                                             *Crown Cork & Seal USA, Inc.*

*Of Counsel:*

Dale M. Heist
Lynn A. Malinoski
Chad E. Ziegler
WOODCOCK WASHBURN, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

Michael Korniczky
Crown Cork & Seal USA, Inc.
One Crown Way
Philadelphia, Pennsylvania  19154

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **Redacted Public Version of Crown's Memorandum in Opposition to Rexam's Motion for Summary Judgment that the Rexam End does not Infringe Crown's 826 and 875 patents** has been served on this the 26th day of February, 2007, in accordance with the Federal Rules of Civil Procedure, on the following in the manner indicated below:

<u>**VIA E-MAIL AND FEDERAL EXPRESS:**</u>

Gerald C. Willis, Esq.
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL  60601

Anne Shea Gaza, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Attorneys for Defendant Rexam
Beverage Can Co.*

Date: February 26, 2007

        _/s/ Barry Klayman_____
        Barry M. Klayman, Esquire (ID # 3676)
        Wolf, Block, Schorr and Solis-Cohen LLP
        Wilmington Trust Center
        1100 N. Market Street, Suite 1001
        Wilmington, DE 19801
        (302) 777-0313

        *Attorney for Plaintiffs*
        *Crown Packaging Technology, Inc. and*
        *Crown Cork & Seal USA, Inc.*