IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CROWN PACKAGING TECHNOLOGY, INC. and CROWN CORK & SEAL USA, INC., | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | C.A. No. 05-608 (MPT) |
| v. | ) ) ) | **REDACTED PUBLIC VERSION** |
| REXAM BEVERAGE CAN COMPANY, | ) ) | |
| Defendant/Counterclaimant | ) ) ) | |

**DEFENDANT REXAM BEVERAGE CAN COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT THE "REXAM END" CAN END DOES NOT INFRINGE CROWN'S UNITED STATES PATENTS NOS. 6,848,875 AND 6,935,826**

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: March 2, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
  *Attorneys for Defendant/Counterclaimant*
  *Rexam Beverage Can Co.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.    INTRODUCTION ................................................................................................................ 1

II.   RESPONSE TO CROWN'S COUNTER-STATEMENT OF FACTS ................................ 2

III.  ARGUMENT ....................................................................................................................... 8

      A.    A Genuine Issue Of Material Fact Is Not Established By Unsupported And
            Conclusory Expert Statements ............................................................................... 8

      B.    Noninfringement Under The Doctrine Of Equivalents Is Amenable To Summary
            Judgment .................................................................................................................. 9

      C.    The Annular Reinforcing Bead That Crown's Patents Describe As Essential To
            Crown's Alleged Invention Should Be Required By Every Claim Of Crown's
            Patents – Whether Or Not An Annular Reinforcing Bead Is Explicitly Recited ...... 10

      D.    Rexam's Rexam End Does Not Have An Annular Reinforcing Bead As Rexam
            Proposes That Term Should Be Construed ............................................................. 11

      E.    Crown's Argument That The Rexam End Chuck Meets The Requirements Of
            Claim 13 Of The '826 Patent And Claim 50 Of The '875 Patent  Ignores Crown's
            Construction ............................................................................................................ 12

      F.    Crown's Argument That The Wall Of The Rexam End Is Inclined At An Angle
            Between 30° And 60° Ignores Part Of The Wall – A Question Of Claim
            Construction ............................................................................................................ 14

      G.    Crown's Argument That The Wall Of The Rexam End Has A First Wall Portion
            As Required By Claims 13 And 14 Of The '826 Patent Is Based Entirely On The
            Scope Of The Term "Peripheral Cover Hook" – A Question Of Claim
            Construction ............................................................................................................ 15

      H.    Crown Seeks To Create An Issue Of Fact Regarding Whether The Wall Of The
            Rexam End Is Bent Upwardly Through An Angle As Required By Claims 32
            Through 34, 51 And 53 Of The '875 Patent By Ignoring Claim Requirements
            And Relying On Unsupported And Conclusory Expert Opinion .............................. 17

      I.    Crown Raises No Additional Issues As To Noninfringement Of Claim 14 Of The
            '826 Patent  And Claims 50 – 52 Of The '875 Patent By The Rexam End ............. 18

IV.   CONCLUSION .................................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**

*Advo, Inc v. Philadelphia Newspapers, Inc.,*
  51 F.3d 1191 (3rd Cir. 1995) ............................................................................9

*Arthur A. Collins, Inc v. Northern Telecom Ltd.,*
  216 F.3d 1042 (Fed. Cir. 2000) ........................................................................9

*Calhoun v. Yamaha Motor Corp., U.S.A.,*
  350 F.3d 316 (3rd Cir. 2003) ............................................................................9

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
  363 F.3d 1263 (Fed. Cir. 2004) ................................................................4, 5, 8

*Honeywell Intern., Inc v. ITT Industries, Inc.,*
  452 F.3d 1312 (Fed. Cir. 2006) ......................................................................10

*Lava Trading, inc. v. Sonic Trading Mgmt.,*
  445 F.3d 1348 (Fed. Cir. 2006) ........................................................................3

*LizardTech, Inc v. Earth Resource Mapping, Inc.,*
  424 F.3d 1336 (Fed. Cir. 2005) ......................................................................10

*Markman v. Westview Instruments, Inc.,*
  517 U.S. 370 (1996) ..........................................................................................2

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
  415 F.3d 1335 (Fed. Cir. 2005) ......................................................................12

*Network Commerce, Inc. v. Microsoft Corp.,*
  422 F.3d 1353 (Fed. Cir. 2005) ..................................................................8, 10

*NovartisCorp. v. Ben Venue Laboratories, Inc.,*
  271 F.3d 1043 (Fed. Cir. 2001) ........................................................................9

*Penn Dental Ass'n v. Medical Serv. Ass'n,*
  745 F.2d 248 (3rd Cir. 1984) ............................................................................9

*Schoell v. Regal Marine Indus.,*
  247 F.3d 1202 (Fed. Cir. 2001) ......................................................................10

*Scimed Life Systems v. Advanced Cardiovascular,*
  242 F.3d 1337 (Fed. Cir. 2001) ......................................................................10

*TechSearch L.L.C. v. Intel Corp.,*
  286 F.3d 1360 (Fed. Cir. 2002) ........................................................................9

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.,*
  90 F.3d 1558 (Fed. Cir. 1996) ..........................................................................9

*Vectra Fitness, Inc. v. TNWK Corp.,*
  162 F.3d 1372 (Fed. Cir. 1998) ......................................................................13

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,*
  212 F.3d 1377 (Fed. Cir. 2000) ................................................................10, 12

*Wang Lab., Inc v. America Online, Inc.,*
  197 F.3d 1377 (Fed. Cir. 1999) ......................................................................10

**Statutes**

35 U.S.C. § 112......................................................................................................................11

iii

I.    **INTRODUCTION**

Plaintiffs, Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. (collectively "Crown"), assert that Rexam Beverage Can Company's ("Rexam") Rexam End infringes claims 13 and 14 of Crown's U.S. Patent No. 6,935,826 ("the '826 Patent", D.I. 216 at A 47-58). As Crown characterizes that patent, it "is directed to a can end having a specific geometric profile." (D.I. 263 at 2.) Crown also asserts that using a Rexam End chuck to seam a Rexam End to a can body infringes claims 32 through 34 and 50 through 53 of U.S. Patent No. 6,848,875 ("the '875 Patent", D.I. 216 at A 32-46). That patent, again as characterized by Crown, "is directed to methods of seaming a can end onto a can after the can is filled." (D.I. 263 at 2.)

The Rexam End is a beverage can end that is manufactured to close tolerances. Millions of Rexam Ends have been made, and for all purposes relevant to this action they all have the same "specific geometric profile." Seaming a can end to a can body is a process that requires precision. The Rexam End chuck is manufactured to close tolerances to precisely engage the Rexam End and to function reliably with seaming machinery during seaming of the Rexam End to a can body. For all purposes relevant to this action, Rexam End chucks are all the same. The process of seaming a Rexam End to a can body using a Rexam End chuck and other seaming machinery is closely controlled to reliably create a secure double seam that joins the Rexam End to a can body. For all purposes relevant to this action, seaming of the Rexam End to a can body using a Rexam End chuck is always the same.

Rexam's opening brief (D.I. 215) identified the manufacturing drawing that shows the "specific geometric profile" of the Rexam End, the manufacturing drawing that shows the configuration of the Rexam End chuck, a depiction for the process of seaming the Rexam End to a can body, and a depiction of a seamed Rexam End and a can body. (D.I. 215 at 8.) Crown does not dispute that those accurately disclose the Rexam End, the Rexam End chuck or the process of seaming the Rexam End to a can body. Crown does not argue that any fact about the Rexam End or its seaming that is relevant to this action is not shown by the materials that Rexam provided as demonstrating the Rexam End and the process of

1

seaming it to a can body. Nevertheless, Crown argues that genuine issues of fact preclude entry of summary judgment of no infringement.

Crown does not argue that any fact relevant to either the geometry of the Rexam End or to the process by which it is seamed to a can body is in dispute. Crown argues that "application" of the claims to these undisputed facts is yet another issue of fact that should be left to the jury. (D.I. 263 at 16, 19, 25, 27.) Crown is wrong.

To deny summary judgment on the basis that Crown argues would effectively overrule the Supreme Court's decision in *Markman v. Westview Instruments, Inc*, 517 U.S. 370 (1996). There, the Court recognized the importance of clearly setting out the limits of a patent's scope. *Markman*, 517 U.S. at 390. The Supreme Court held that claim construction is a matter that is exclusively for the court. *Id.* at 391. Here, the facts are not in dispute. Rather, what is in dispute is the scope of Crown's patents. Crown proposes claim constructions that do not make clear the meaning or scope of the construed claims. Rather, Crown asks the Court to adopt its vague constructions and leave the question of whether those vague constructions encompass the Rexam End to a jury that is informed as to claim scope by Crown's expert. That directly contravenes the Supreme Court's holding in *Markman*.

Clear constructions of Crown's patents' claims establish that the Rexam End does not infringe Crown's '826 patent and that seaming the Rexam End to a can body using the Rexam End chuck does not infringe Crown's '875 patent. There are no genuinely disputed issues of material fact. The Court should enter summary judgment that Crown's patents are not infringed.

## II.    RESPONSE TO CROWN'S COUNTER-STATEMENT OF FACTS

Rexam's responses to the numbered statements in Crown's Counterstatement of Facts (D.I. 263 at 4 – 6) are set out below in paragraphs that are numbered to correspond to the number of Crown's statement to which it responds.

1.    Crown asserts that the Rexam End infringes under Crown's proposed constructions because Crown's retained expert, Martin Higham, says so somewhere in 69 paragraphs of his expert report. Most of that report is irrelevant to Rexam's motion as Rexam moved for summary judgment of

2

noninfringement based on the absence of seven identified requirements of the asserted claims of Crown's patents. (D.I. 215 at 3 – 8.) To the extent that this asserted fact is directed to claim requirements that Rexam did not put at issue, this asserted fact is irrelevant. To the extent that this asserted fact is intended to identify evidence that is relevant to the issues here, that evidence is addressed by Rexam's responses to facts that are specifically directed to the issues raised by Rexam's motion.

2.    Crown's second asserted fact recites statements from Rexam's brief as to the appropriate construction of claims of Crown's patents and concerning the language of Crown's claims. Rexam does not understand how anything Crown put in this paragraph is a relevant fact. Claim construction is a matter of law, not fact. *Lava Trading, Inc. v Sonic Trading Mgmt*., 445 F.3d 1348, 1352 (Fed. Cir. 2006). Rexam does not dispute what it said about the claims of Crown's patents.

3.    Crown's third asserted fact states that claim 13 of the '826 patent and claims 30 -32 of the '875 patent do not require a reinforcing bead. As Rexam argued in its opening brief, the claims of Crown's patents that do not explicitly recite an annular reinforcing bead can only be valid if construed to nevertheless require an annular reinforcing bead. (D.I. 215 at 3, 19.) Claim construction is an issue of law. *Lava Trading*, 445 F.3d at 1352.

Crown's third asserted fact also asserts that there is evidence of literal infringement under Crown's asserted construction of the reinforcing bead requirement because Crown's expert says that the Rexam End meets that requirement. That asserted fact is irrelevant here. Crown acknowledged on the first page of its opposition (D.I. 263 at 1) that Rexam's motion for summary judgment is not based on Crown's unsupported, improper, vague, and essentially boundless construction of "annular reinforcing bead." (D.I. 215 at 3 – 4, 19- 22.) Crown nevertheless proposed this asserted fact after explicitly acknowledging that it is irrelevant to Rexam's motion.

4.    Crown's fourth asserted fact states that there is evidence of literal infringement of claim 13 of the '826 patent and claims 32 – 34 of the '875 patent under Rexam's claim construction. As support for that assertion, Crown cites only paragraph 113 of its retained expert's statement. That paragraph says:

3

> I expect to testify that based upon Rexam's proposed claim construction Rexam
> can ends literally infringe at least claim 13 of the 826 patent and claims 32-34 of
> the 875 patent.

That is an unsupported and conclusory statement that cannot preclude entry of summary
judgment on this issue. "It is well settled that an expert's unsupported conclusion on the ultimate issue
of infringement is insufficient to raise a genuine issue of material fact." *Dynacore Holdings Corp. v.
U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).

     5.     Crown's fifth asserted fact states that there is evidence that Rexam's seaming chuck has
two walls that form "a juncture therebetween." As support for this assertion, Crown cites only one
paragraph of its expert's report and a picture of a Rexam End chuck that is attached to that report. The
cited paragraph recites Crown's proposed claim construction and simply states that Crown's expert finds
the required walls and juncture in the Rexam End chuck. The cited picture includes arrows and labels
indicating what Crown's expert asserts to be two walls and a juncture that meet the requirements of
claim 13 of the '826 patent. Again, this is inadequate to avoid summary judgment as it is unsupported
and entirely conclusory.

     Rexam's motion pointed out that Crown's proposed construction required walls to meet at a
point. The motion further identified the shape that would meet that requirement based on Crown's
patents, and showed that the shape of the Rexam End chuck did not meet that requirement. (D.I. 215 at
4 – 5 and 22 – 25.) Rexam's motion also argued that Crown's construction provided no basis to
determine where the required walls ended or what would satisfy the requirements of a juncture, so it was
impossible to tell whether the Rexam End chuck had one wall or two, and if two, where they met to form
a juncture. (D.I. 215 at 24.) Crown's response addresses none of those issues. It is only the unexplained
and unsupported conclusion that the claim requirements are met. That is insufficient. "It is well settled
that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a
genuine issue of material fact, and that **a party may not avoid that rule simply by framing the
expert's conclusion as an assertion that a particular critical claim limitation is found in the**

**accused device**." *Dynacore Holdings Corp v U S Philips Corp* , 363 F 3d 1263, 1278 (Fed Cir 2004) (emphasis added).

6.     Crown's sixth asserted fact responds to Rexam's argument that there is no literal infringement of claim 13 of the '826 patent, or claims 32 – 34 of the '875 patent, because the wall of the Rexam End is not at an angle in the ranges recited by those claims. Crown asserts as a fact that the wall is at an angle of 33°. As support for this asserted fact, Crown cites two paragraphs of its expert's report and two attachments to that report. The first cited paragraph says that Crown's expert drew a line between two points on the Rexam End and measured the angle of the line to be 33°. The second paragraph says that he drew a line on a drawing of a Rexam End chuck and measured the angle of that line to be 33°.

Crown's patents require that two points be identified so that a line can be drawn through them and the angle of that line determined. Crown did not cite any explanation as to how Crown's expert identified on the Rexam End the two points that Crown's claims require be identified to draw the line determines whether these claim requirements are met. Since Crown does not cite to any explanation, the Court should ignore the purported explanation that is at paragraphs 51 – 52 and paragraphs 56 – 59, and reject this conclusion as unsupported. If the Court nonetheless examines that explanation, it will find that Crown's expert cites no basis in Crown's patents as supporting the process Crown's expert created to find infringement. The two attachments that Crown cites illustrate the lines that Crown's expert drew on a cross section of a Rexam End and on a drawing of a Rexam End chuck based on his unsupported constructions.

In addition to being unsupported by anything in Crown's patents, Crown's expert's conclusions as to the angle of the wall of a Rexam End are not supported by Crown's proposed claim construction. There is nothing in Crown's proposed claim construction that supports either the process that Crown's expert applied to find the points on which his conclusion is based or that can be used to otherwise identify those locations. Crown's expert had to create an unsupported process to find infringement because Crown's claim constructions can not be applied to the Rexam End to identify the points that

5

Crown's patents' claims require to be identified. This process is an admission that Crown's proposed claim construction does not provide any basis for understanding the scope of the claims of Crown's patents.

7.    Crown's seventh asserted fact responds to Rexam's argument that the Rexam End does not have a first wall portion that is adapted to be bent upwardly as required by claims 13 and 14 of the '826 patent because the only portion of the Rexam End that is deformed during seaming is the cover hook portion of the Rexam End—not the wall.

Crown asserts that the Rexam End has a wall portion that meets these requirements citing its expert's report at paragraph 54. In that paragraph, Crown's expert says that the Rexam End meets that requirement, but says nothing about how he determined that a wall was being reformed and not a cover hook. He says, pointing to attachment 13 to his report, that the Rexam End has a cover hook (D.I. 266, Ex. 18, Att. A at ¶46) and that the Rexam End has a first wall portion (D.I. 266, Ex. 18, Att. A at ¶50). Crown's expert does not explain how he determined that these were the peripheral cover hook and first wall portion required by claims 13 and 14 of Crown's '826 patent, and never identifies the location at which the peripheral cover hook ends and the first wall portion begins. The opinion that Crown relies on is an unsupported conclusion.

Crown also cites attachments to the report (D.I. 266, Ex. 18, Att. A at Attachment 8) that depict a cross section of what that report says is a Rexam End, testimony of a Rexam employee stating that the Rexam End is deformed against the chuck during seaming (D.I. 266, Ex. 18, Att. A at Attachment 10 pg. 25 ln. 13 – 22), and an interrogatory response by Rexam that depicts a Rexam End being deformed during seaming. None of these materials establishes whether the portion of the Rexam End that is being deformed is wall or cover hook.

8.    Crown's eighth asserted fact is that there is evidence that the wall of Rexam's Rexam End is bent upwardly, as required by claims 32 – 34 of the '875 patent through an angle of about 29°. As support for that asserted fact, Crown cites one paragraph of its expert's report, paragraph 85. Paragraph 85 says that the first portion of the Rexam End wall is inclined at an angle of 33.5°. That is

6

based on Crown's expert drawing a line which does not conform to any part of the Rexam End, between two points that were identified by drawing circles on a cross section depiction of a Rexam End. (D.I. 266, Ex. 18, Att. A at ¶¶ 74 and 87.) Like the method by which Crown's expert purported to determine the angle of the wall of a Rexam End, this method is not supported by anything in Crown's patents. Crown's expert does not suggest that this method can be found in Crown's patents. Crown's expert also fails to explain how Crown's proposed construction of the requirements for a wall being bent upwardly requires drawing circles to locate points on a can end. Crown's expert does not explain how a line that does not lie along a can end can represent the amount that a can end is bent upwardly.

Like the opinion relied on by Crown's asserted fact no. 6, this opinion is based on a method that finds no support in Crown's patents. Going further, this method is not even supported by Crown's proposed construction of this requirement. Again, Crown's expert created an unsupported procedure because neither Crown's patents nor Crown's proposed claim construction provide any basis for determining whether a can end meets this requirement.

9.    Crown's ninth asserted fact states that there is evidence that under Rexam's construction of "annular reinforcing bead," the Rexam End infringes the claims that require an annular reinforcing bead under the doctrine of equivalents. Crown cites paragraphs 113 and 114 of its expert's statement as supporting that asserted fact. Paragraph 113 is directed to claim 13 of the '826 patent and claims 32 through 34 of the '875 patent. Those claims do not require the annular reinforcing bead. Paragraph 113 is irrelevant to this asserted fact. In paragraph 114, Crown's expert says that he will testify that the Rexam End infringes under the doctrine of equivalents under Rexam's proposed construction of "annular reinforcing bead." This is a conclusory statement. Crown's purported support for that statement is set out by its asserted fact no. 10.

10.    Crown's asserted fact no. 10 asserts that the differences between the Rexam End and claim 14 of the '826 patent and the differences between the process of seaming the Rexam End and claims 50 through 52 of the '875 patent are insubstantial. That asserted fact also asserts that the Rexam End and the Rexam End seaming methods perform substantially the same function in substantially the

7

same way to achieve substantially the same result as the subject of those claims of Crown's patents. As support for this sweeping statement, Crown cites 18 paragraphs of its expert's report. Rexam pointed out that the Rexam End does not have any structure that performs two of the functions that Crown's patents say an annular reinforcing bead performs: (i) connecting the central panel to the can end wall by reducing its diameter and thereby strengthening the central panel; and (ii) permitting a seaming chuck to enter the bead to position the can end during seaming. (D.I. 215 at 20 - 22.) Crown's expert does not address these functions, and does not assert that the Rexam End has any structure that supports the central panel by reducing its diameter or allows a seaming chuck to enter the structure in order to position the Rexam End during seaming. (D.I. 266, Ex. 18, Att. A at ¶120.) Crown's expert's report does not establish that any part of the Rexam End performs substantially the same functions as the generally U-shaped annular reinforcing bead that is described and shown by Crown's patents.

## III.    ARGUMENT

### A.    A Genuine Issue Of Material Fact Is Not Established By Unsupported And Conclusory Expert Statements.

In a patent case, expert testimony must apply the claim construction and show that the claim requirements are met. *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005)("A court should discount any expert testimony that is clearly at odds with the claim construction mandated by . . . the written record of the patent"). Crown can not avoid summary judgment of non-infringement by offering a conclusory expert opinion stating that the accused device contains critical claim limitations. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004)("an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact"). Where a particular claim requirement is at issue, an expert opinion that the requirement is met must include supporting facts.

> When, as here, the construction of a critical claim limitation is in dispute, a party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device. Although such testimony of an expert witness may be proper during trial when the opposing party can not challenge the factual basis of the expert's opinion during cross-examination, the affidavit of an expert submitted in opposition to a motion for summary judgment must do more by

8

setting forth specific facts showing that there is a genuine issue for trial. Thus, the expert must set forth the factual foundation for his opinion -- such as a statement regarding the structure found in the accused product -- in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court.

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047-48 (Fed. Cir. 2000).

The Federal Circuit looks to regional circuit law for the standard for factual foundation required to support an expert's opinion. *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001). The Third Circuit has held that expert testimony must "fit" the issues in the case, meaning "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3rd Cir. 2003). Opinions without a supporting basis in fact will not defeat summary judgment. *Penn. Dental Ass'n v. Medical Serv. Ass'n*, 745 F.2d 248, 262 (3rd Cri. 1984); *Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1198 – 99 (3rd Cir. 1995).

**B.    Noninfringement Under The Doctrine Of Equivalents Is Amenable To Summary Judgment**

As Rexam pointed out in its opening brief, specific support is also required to establish infringement under the doctrine of equivalents.

> [A] patentee must provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Conclusory opinions and general facts are insufficient to avoid a finding of summary judgment under the doctrine of equivalents. *See TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371-1372 (Fed. Cir. 2002) (nonmovant could not overcome summary judgment of noninfringement based on doctrine of equivalents with "general assertions of facts, general denials, and conclusory statements"). Summary judgment of

9

noninfringement is appropriate where the accused device can not carry out all of the functions required by the patent. *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381-1383 (Fed. Cir. 2000).

The Federal Circuit regularly affirms the grant of summary judgment of noninfringement based on the doctrine of equivalents. *See Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005)(summary judgment of noninfringement based on doctrine of equivalents granted where evidence did not provide "particularized testimony and linking argument on a limitation-by-limitation basis"); *Schoell v. Regal Marine Indus.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001)(summary judgment of noninfringement where nonmovant did not set forth "specific facts" showing that there was a genuine issue regarding material differences); *Wang Lab., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1385-1386 (Fed. Cir. 1999) (summary judgment of noninfringement where differences between claims and accused device were so extensive "that no reasonable trier of fact could find only insubstantial differences, or substantially the same function, way, and result").

**C.    The Annular Reinforcing Bead That Crown's Patents Describe As Essential To Crown's Alleged Invention Should Be Required By Every Claim Of Crown's Patents – Whether Or Not An Annular Reinforcing Bead Is Explicitly Recited**

As Rexam asserted in its opening brief, Crown's patents make clear that the generally U-shaped annular reinforcing bead is an essential requirement of Crown's alleged invention. (D.I. 215 at 14 – 15.) Rexam made the same point in its memorandum supporting its motion for summary judgment that Crown's patents are invalid. (D.I. 210 at 35 – 38.) By describing an annular reinforcing bead as an essential element of the alleged invention, Crown's patents require one of two results for the claims of those patents. One possible result is that the claims are limited by that description to can ends that require an annular reinforcing bead, even if the claims dodo not explicitly recite an annular reinforcing bead. *Scimed Life Systems v. Advanced Cardiovascular*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *Honeywell Intern., Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006). The other possible result is that the claims are invalid for extending beyond the invention described by Crown's patents. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345-46 (Fed. Cir. 2005).

10

Crown accuses Rexam of taking inconsistent positions as to whether the claims that do not explicitly recite an annular reinforcing bead should be construed as nevertheless requiring a bead. Crown is wrong. Rexam's memorandum in support of its motion for summary judgment of invalidity of Crown's patents argues that the doctrine of claim differentiation requires that claim 13 of the '826 patent and claims 32 through 34 of the '875 patent be construed as not limited to can ends that have an annular reinforcing bead, and that under that construction those claims are invalid. (D.I. 210 at 35 – 38.) Rexam does not believe that the doctrine of claim differentiation can greatly influence construction of the claims of Crown's patents based on the pervasive inconsistency in terms in those patents. (D.I. 294 at 24 – 25.) Nevertheless, to the extent that it is applied to the construction of the annular reinforcing bead requirements of the claims of Crown's patents, it would result in a construction that did not require an annular reinforcing bead. That construction would necessarily invalidate those claims for failing to satisfy the written description requirement of 35 U.S.C. § 112. There would be no point in arguing whether an invalid claim covers an accused product, so the only construction that makes any sense to consider here is the construction that requires the annular reinforcing bead. That construction is not inconsistent with Rexam's position on the invalidity of Crown's claims.

Crown argues, inaptly, that under its construction of the term "annular reinforcing bead" there is evidence that the Rexam End has such a bead based on its expert's opinion that it does. (D.I. 263 at 13 – 14.) Rexam's motion did not raise the issue of whether the Rexam End had a portion that fell within the scope of Crown's unsupported and vague construction.

**D.    Rexam's Rexam End Does Not Have An Annular Reinforcing Bead As Rexam Proposes That Term Should Be Construed**

Crown also argues that there is evidence that the Rexam End has the equivalent of an annular reinforcing bead as Rexam proposes that term should be construed. (D.I. 263 at 26.) Crown relies on a conclusory opinion of its expert to avoid summary judgment. *Id.* As set out above in response to Crown's asserted fact no. 10, Crown's expert's opinion is based on ignoring at least two functions required of an annular reinforcing bead by Crown's patents. Rexam identified these functions in its

11

opening brief. (D.I. 215 at 20 – 22.) Crown does not argue those are not required functions. Crown simply ignores those functions. A structure that does not perform equivalent functions is not an equivalent. *Vehicular Techs Corp v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000).

### E.  Crown's Argument That The Rexam End Chuck Meets The Requirements Of Claim 13 Of The '826 Patent And Claim 50 Of The '875 Patent Ignores Crown's Construction

Rexam's opening brief pointed out that claim 13 of the '826 patent requires a "first wall portion [of a can end] adapted to be deformed during said seaming operation so as to be bent upwardly around said juncture of said chuck walls at said first point on said wall" and that Crown asserts that the "first point" should be construed to be "a first point on the can end wall." (D.I. 215 at 4 – 5.) Rexam argued that because the claim requires the wall be bent at a point, and Crown does not construe the requirement of a point, that under Crown's construction the juncture must also be a point – how else could the wall bend around the juncture at a point? *Id.* Rexam's opening brief also pointed to the requirements of claim 50 of the '875 patent for a chuck, and noted that Crown construes those requirements to be the same as the requirements of claim 13 of the '826 patent. (D.I. 215 at 24 – 25.) Rexam also acknowledged that Crown argues, inconsistently, that the required juncture is not a point. *Id.* at 22 – 23.

Crown's response ignores Crown's inconsistent positions and simply argues that Rexam's construction that the walls must meet at a juncture is wrong. (D.I. 263 at 15 – 16.) Crown argues that it would be error to construe the juncture to be a point because that would exclude one of the embodiments of its patents that is not a point. Crown is wrong. Claims are construed to exclude disclosed embodiments when the claim language and record of the patent requires that. *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005). The language here that requires bending to be at a point requires a construction that excludes what the specification clearly describes as not being a point.

Again hoping to create an issue where none exists, Crown accuses Rexam of changing its position as to the requirement of a "point". (D.I. 263 at 16.) Crown is wrong again. Because no construction of "point" was proposed by Crown or Rexam, Rexam compared its accused Rexam End to the two examples

in Crown's patents. If by "point" Crown literally means something that is infinitely small, then obviously nothing would meet that requirement. Instead of taking that obviously flawed position, Rexam looked to Crown's patents to determine what geometry is larger than a point. Crown's patents identify a "blend radius" as being larger than the sharpest meeting of two walls and therefore something that is clearly not a meeting of two walls at a point. (D.I. 215 at 23.) Crown's response to Rexam's reliance on the distinction made by Crown's patents as to the meeting of two walls on a precision manufactured tool, is to ridicule that distinction because a similar sized dot on a piece of paper appears to be small. (D.I. 263 at 16.) If Crown believes that its patents describe a meaningless distinction, then Crown should tell us what else in those patents is meaningless. If Crown is arguing that Rexam is not entitled to rely on what Crown's patents say about their alleged invention, Crown is wrong. "The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1372, 1384 (Fed. Cir. 1998).

Crown also argues that whether the radius of the Rexam End Chuck is a point is a question of claim application that is a question of fact. (D.I. 263 at 16.) Crown is wrong. Since Crown now admits that it needs the term "point" to be broad enough to encompass what its patents disclose as a "blend radius" to prevail on its charge of infringement, Crown should propose that construction. The plain meaning of "point" excludes such a construction. Relying on a retained expert to ask a jury for claim coverage that is outside the plain meaning of a claim term rather than asking the court for a claim construction encroaches on the Court's claim construction province.

Rexam's opening brief also pointed out that there is no basis under Crown's proposed construction of either "wall" or "juncture" to establish that the Rexam End chuck has two walls that meet at a juncture rather than one wall. (D.I. 215 at 24.) Crown does not dispute this. Rather, Crown apparently believes that this also is a question of claim application for the jury. Crown is wrong. This also is a question of claim construction.

If the Rexam End chuck has two walls, those walls do not meet at a location that can be a juncture around which a can end bends at a point.

**F. Crown's Argument That The Wall Of The Rexam End Is Inclined At An Angle Between 30° And 60° Ignores Part Of The Wall – A Question Of Claim Construction**

Rexam's opening brief pointed out that nothing in Crown's proposed construction of the term "wall" excludes any portion of the wall of the Rexam End. (D.I. 215 at 5 - 7.) Because that wall extends to the central panel, the lowermost point of that wall, as required by claims 13 and 14 of the '826 patent and claims 32 through 34 of the '875 patent, is therefore the location where the wall meets the panel. This point is the location through which the line required by claim 13 of the '826 patent and claim 32 of the '875 patent should be drawn to determine the required angle. (D.I. 215 at 5 – 7, 25 – 27.) This is the same location required under Rexam's construction of the lowermost point of the wall ("the specific place on the wall nearest the central panel").

Crown accuses Rexam of adopting an additional requirement for lowermost end by asserting that for the Rexam End, that point is the point at which it meets the central panel. (D.I. 263 at 17.) Crown is wrong. Rexam believes that the lowermost point of the Rexam End is the point at which the wall meets the central panel under either Crown's proposed construction, "the lowest end of the can end wall," or Rexam's proposed construction. The peripheral cover hook of the Rexam End and the wall that extends from it are entirely above the central panel. The lowest end of the wall and the location at which it is closest to the central panel are both "the location at which the wall meets the central panel." This is not a difference in claim construction. It is the reality of the Rexam End.

REDACTED

Crown recognizes that the real difference between Crown's expert's position that the wall is at an angle of 33° and the position of Rexam's expert that the wall is at an angle of 18° to 19° is the difference

14

in where they believe the wall ends. Crown's expert believes the wall ends before it reaches the central panel. Rexam's expert does not. (D.I. 263 at 18.)

Crown's expert ignores the folded portion of the wall to locate the lowest point. *Id.* Crown's expert points to nothing in Crown's proposed construction of "wall" as requiring that the lower portion of the wall is ignored. Crown argues that whether this is proper is a question of fact for the jury. *Id.* at 19. Rexam disagrees.

Rexam believes that what constitutes a wall, as required by the claims of Crown's patents, is a question of claim construction – not a question of what a jury can be talked into. If Crown believes that the fold at the central panel of the Rexam End can not be part of the wall, Crown should have proposed a claim construction that limits the wall.[1] Because Crown's construction does not exclude the fold portion from the wall, the lowermost point of the wall is the location where the wall meets the central panel. Under that construction, Crown does not dispute that the angle of a line through that point is 18° – 19°. The question of infringement for this requirement is entirely a question of claim construction – *i.e.* what is a wall and what is not. The Court should enter judgment that the Rexam End does not infringe claims 13 and 14 of the '826 patent and claims 32 through 34 of the '875 patent because it does not meet these requirements under a proper claim construction.[2]

### G. Crown's Argument That The Wall Of The Rexam End Has A First Wall Portion As Required By Claims 13 And 14 Of The '826 Patent Is Based Entirely On The Scope Of The Term "Peripheral Cover Hook" – A Question Of Claim Construction

Rexam's opening brief pointed out that nothing in Crown's proposed construction of the terms "cover hook" or "wall" of claim 13 of the '826 patent indicated the location at which one ended and the other began. (D.I. 215 at 27 – 28.) Under Rexam's construction, the cover hook encompasses the entire

---

[1] Crown argues that a description in a Rexam patent is somehow an admission that the fold in the wall of the Rexam End can not be part of the wall required by Crown's patents. Crown does not explain how Rexam's patent can affect what Crown's patents require of a wall – and that is not apparent to Rexam.

[2] In a footnote, Crown misrepresents the testimony of Rexam's expert concerning this requirement of Crown's claims. Crown asserts that Rexam's expert "applied the claim" in another way and got another result. The cited testimony does not support that assertion. Rexam's expert drew a line through a

(Cont.)

portion of the Rexam End that is deformed during seaming, so the Rexam End does not have a first wall portion that is bent upwardly during seaming. (D.I. 215 at 27.) Instead, the section that is bent is the cover hook.

Crown cites to Rexam's claim construction brief in asserting that Rexam's position is that the claims of Crown's patents require a curved peripheral cover hook and a flat wall. (D.I. 215 at 20.) Rexam has not asserted that the wall required by Crown's claims must be flat. Rexam has asserted that the chuck wall, that Crown's patents depict and describe as extending from the cover hook, is flat. Crown has admitted this is true.

Three years ago, Crown brought an appeal to the United States Court of Appeals for the Federal Circuit of a decision on its U.S. Patent No. 6,065,634 ("'634 patent") (B45-54), a patent that shares the same specification as the '875 and '826 patents. In that appeal, Crown directly contradicted its new position, as asserted here, that the chuck wall 24 shown and described by its patents has a curved upper section that shares with the cover hook the curved region that conforms to radius $r_1$. In that appeal, Crown admitted that the chuck wall 24, which Crown's patents depict and describe as extending from a cover hook, is flat. "While **the specification discloses a can end having a flat chuck wall**, the claims are not so limited." (B19, App. Br. at 10 (emphasis added).)

Crown's new argument that the chuck wall 24 extends into a region that conforms to radius $r_1$ is based on an implication of the label of that radius as "seaming panel/chuck wall radius." (D.I. 263 at 24.) Crown's new theory is directly at odds with its admission that the wall is flat and does not have a curved portion. A claim construction that requires the cover hook to end where the wall is no longer curved is completely supported by Crown's patents, specifically by the flat chuck wall that Crown admitted those patents show and describe.

What Crown's patents require of a cover hook is a question of claim construction, not claim application as Crown argues. (D.I. 263 at 21.) A peripheral cover hook should be what the court

different location and that line is inclined at a different angle. Rexam's expert never testified that this line
(Cont.)

16

construes that requirement to be, not what Crown's expert tries to convince a jury it is. Crown's entire argument is directed to what the term "cover hook" covers. That is claim construction. Under the claim construction Rexam proposes, the Rexam End does not have a first wall portion that is bent upwardly during seaming, and does not infringe claims 13 or 14 for the '826 patent on that basis.

### H. Crown Seeks To Create An Issue Of Fact Regarding Whether The Wall Of The Rexam End Is Bent Upwardly Through An Angle As Required By Claims 32 Through 34, 51 And 53 Of The '875 Patent By Ignoring Claim Requirements And Relying On Unsupported And Conclusory Expert Opinion

Crown is apparently confused by the claims of its patents. This confusion leads Crown to accuse Rexam of inconsistency in its position regarding whether the Rexam End has a wall that is deformed, and if so by how much. (D.I. 263 at 25.) Crown just is not paying attention.

Rexam's position is that no "wall" portion is bent upwardly as required by claims 13 and 14 of the '826 patent. (D.I. 215 at 7, 27 – 30.) That does not mean that the Rexam End is not deformed during seaming. Rather, Rexam asserts that the portion of the Rexam End that deforms is the cover hook, not the wall that claim 13 of the '826 patent requires to extend from the cover hook. Therefore, no portion of the wall, as required by claim 13 of the '826 patent, is deformed.

Claims 32 through 34, 51 and 53 of the '875 patent require a wall that extends from a seaming panel. (D.I. 215 at 7 – 8, 30 – 32.) Those are not the same requirements as those of the '826 patent – and so the portion of the Rexam End that is implicated is different. Assuming that the wall required by the '875 patent includes the section of the Rexam End that is deformed, Rexam considered whether that section meets the 'bent upwardly requirements of the '875 patent. (D.I. 215 at 30 – 32.)

As explained by Rexam's motion, Rexam asserts that the "bent upwardly" requirements of the '875 patent are directed to the region that bends around the juncture of chuck walls, and the Rexam End chuck has no such juncture. (D.I. 215 at 31 – 32.) If the fact that the Rexam End is not bent around a juncture is ignored, and only the amount of deformation is considered, that deformation can not exceed

REDACTED    (D.I. 215 at 32.)

---

was drawn based on applying Crown's claims.

RLF1-3122147-1

Crown tries to create an issue of fact by relying on an opinion of its expert. As set out above in response to Crown's asserted fact no. 8, Crown's expert's opinion is not supported by Crown's patents or even Crown's proposed claim construction. Crown's expert's opinion is therefore irrelevant to whether the Rexam End deforms as required by claims 32 through 34, 51 and 53 of the '875 patent. Under a proper claim construction, the Rexam End is not bent upwardly as required by those claims and is not deformed by the amounts required by those claims.

### I. Crown Raises No Additional Issues As To Noninfringement Of Claim 14 Of The '826 Patent And Claims 50 – 52 Of The '875 Patent By The Rexam End

Crown argues that there is a genuine issue as to whether other limitations other than the annular reinforcing bead that are required by claim 14 of the '826 patent and claims 50 – 52 of the '875 patent are embodied by the Rexam End. Crown is wrong.

Crown argues that its expert's report at paragraphs 50 through 53 is evidence that the Rexam End chuck has a point juncture. Those paragraphs are directed to identifying a first point on the Rexam End, not whether the Rexam End seaming chuck has walls that meet at a juncture. They are irrelevant to whether the Rexam End chuck has walls that meet at a juncture and can not raise a genuine issue of material fact.

Crown argues that its expert opinion that the Rexam End has a wall at an angle of 33° raises a genuine issue of fact as to whether a line through points located on the wall of the Rexam End will fall within the range of angles set out by claims 13 and 32. That assertion is wrong for the reasons set out in section III.F above.

Crown also argues that Crown's expert's opinion raises a genuine issue as to whether the Rexam End has a wall portion that is bent upwardly as required by claims 13 and 14 of the '826 patent, or a section that is bent upwardly around a juncture of chuck walls as required by claim 51. As to the first issue, Crown is wrong for the reasons set out by section III.G above. As to the second issue, Crown is wrong for the reasons set out by section III.E above.

18

IV.    CONCLUSION

Neither Crown's unsupported and conclusory expert opinions nor Crown's vague claim constructions raises a genuine issue of material fact   For the reasons set out above, summary judgment should be entered that Rexam's Rexam End does not infringe Crown's '826 patent and that seaming Rexam's Rexam End using the Rexam End chuck does not infringe Crown's '875 Patent.

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL  60601
312-775-8000

Dated:  March 2, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant/Counterclaimant*
*Rexam Beverage Can Co*

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2007, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>  and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE   19801

I hereby certify that on March 8, 2007, I caused the foregoing document to be served via electronic mail on the following non-registered participants:

> Dale M. Heist, Esq.
> heist@woodcock.com
> Chad E. Ziegler, Esq.
> ziegler@woodcock.com
> Woodcock Washburn LLP
> Cira Centre
> 2929 Arch Street, 12th Floor
> Philadelphia, PA 19104-2891

> Anne Shea Gaza (#4093)
> Gaza@rlf.com
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700

RLF1-3000496-1