IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| CROWN PACKAGING TECHNOLOGY, INC. and CROWN CORK & SEAL USA, INC.,       )<br>)<br>) | C. A. No. 05-608 (MPT) |
| Plaintiffs/Counter Defendants,     )<br>) | |
| v.     )<br>) | REDACTED - PUBLIC VERSION |
| REXAM BEVERAGE CAN COMPANY,     )<br>) | |
| Defendant/Counterclaimant.     ) | |

**DEFENDANT REXAM BEVERAGE CAN COMPANY'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF
U.S. PATENT NOS. 4,774,839 AND 5,697,242**

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: March 2, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant/Counterclaimant
Rexam Beverage Can Co.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION ..................................................................................................... 1

II.     SUMMARY OF THE ARGUMENT........................................................................ 2

III.    ARGUMENT ............................................................................................................. 2

        A.     Rexam Has Established A Prima Facie Case Of Infringement Of Claims
               1, 2 And 5 Of The '839 Patent And Crown's Feigned Ignorance As To
               The Significance Of The Evidence Cited By Rexam Does Not Create A
               Genuine Issue Of Material Fact.......................................................................3

               1.     The Evidence Of Record Establishes That Crown Has Infringed
                      Claim 1 ..................................................................................................3

               2.     The Evidence Of Record Establishes That Crown Has Infringed
                      Claim 2 Of The '839 Patent ...............................................................11

               3.     The Evidence Of Record Establishes That Crown Has Infringed
                      Claim 5 Of The '839 Patent ...............................................................12

        B.     Rexam Has Presented Sufficient Evidence Of Record To Establish That
               Crown's Bottom Reforming Method Infringes Claims 11 And 12 Of The
               '242 Patent.......................................................................................................13

               1.     Rexam Has Satisfied Its Burden Of Establishing That Crown's
                      Bottom Reforming Process Infringes Claim 11 Of The '242
                      Patent....................................................................................................14

               2.     Rexam Has Satisfied Its Burden Of Establishing That Crown's
                      Bottom Reforming Process Infringes Claim 12 Of The '242
                      Patent....................................................................................................18

IV.     CONCLUSION .........................................................................................................20

## TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ......................................................................................................2, 3

RULES

Fed. R. Civ. P. 56 ........................................................................................................2

I.    **INTRODUCTION**

Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. (collectively "Crown") contend that Rexam Beverage Can Company has failed to set forth evidence that Crown has infringed U.S. Patent Nos. 4,774,839 and ("the '839 Patent") (relating to methods of smooth die necking beverage cans) and 5,697,242 ("the '242 Patent") (relating to methods of reforming the bottom of a beverage can). Obviously, Rexam disagrees with Crown's contention and believes that it has shown that each and every element of the asserted claims has been shown to be present in the methods that Crown uses in necking its beverage cans and in reforming the bottoms of its beverage cans.

Interestingly, Crown's opposition brief is the first time that Crown has actually set forth any basis for its denial of infringement of the '839 Patent. On November 21, 2006, Crown served its response to Rexam's Interrogatory No. 25, which specifically sought Crown's basis for its denial of infringement of the asserted claims of the '839 Patent.

Redacted

On December 20, 2006, Rexam served Crown with its expert report regarding Crown's infringement of the '839 and '242 Patents (along with the other asserted patents), which demonstrated that every limitation in the asserted claims of the '839 Patent was present in Crown's smooth die necking process. On January 5, 2005, Crown served Rexam with its rebuttal report. However, contrary to Crown's statement

Redacted

Also, on November 21, 2006, Crown served Rexam with its answer to Rexam's Interrogatory No. 27, which specifically sought Crown's basis for its denial of infringement of the asserted claims of the '242 Patent.                    Redacted

Redacted

## II.    SUMMARY OF THE ARGUMENT

1.    Rexam has satisfied its burden for summary judgment and presented indisputable facts from the evidence of record, which establishes that there are no genuine issues of material fact, and that Rexam is entitled to judgment as a matter of law on the issue of Crown's infringement of claims 1, 2 and 5 of the '839 Patent. Fed. R. Civ. P. 56

2.    The record taken as a whole, even with all reasonable inferences viewed in Crown's favor, establishes that no rational trier of fact could find for the nonmovant, Crown, and as such, there is no genuine issue remaining for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3.    Rexam has satisfied its burden for summary judgment and presented indisputable facts from the evidence of record, which establishes that there are no genuine issues of material fact, and that Rexam is entitled to judgment as a matter of law on the issue of Crown's infringement of claims 11 and 12 of the '242 Patent. Fed. R. Civ. P. 56.

4.    The record taken as a whole, even with all reasonable inferences viewed in Crown's favor, establishes that no rational trier of fact could find for the nonmovant, Crown, and as such, there is no genuine issue remaining for trial. *Matsushita*, 475 U.S. at 587.

## III.    ARGUMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In determining whether summary judgment is appropriate, "the evidence of the nonmovant is to be believed, and all justifiable inferences

2

are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this case, there is no genuine material issue of fact as to Crown's infringement of the asserted claims of the '839 and '242 Patents. Even taking all justifiable inferences in Crown's favor, Rexam is still entitled to judgment as a matter of law. *Matsushita*, 475 U.S. at 587.

Crown argues that Rexam's summary judgment position is based on attorney argument and not facts. (D.I. 270, Crown Opp. at 6.) Crown also claims that Rexam has merely cited generally to Crown documents, off-point deposition testimony and physical samples, without explaining the correlation between the evidence and the claim elements. (*Id.*) Crown's position seems to be that it is somehow ignorant about the obvious significance and meaning of its own tooling drawings, its own physical samples and the testimony of its own witnesses. Additionally, Rexam's expert provided an element-by-element analysis in support of his opinion that Crown's smooth die necking process infringed claims 1, 2 and 5 of the '839 Patent. (D.I. 207 at A120-125.) Rexam's expert's opinion regarding Crown's infringement of the asserted claims of the '839 Patent was not rebutted.

**A.    Rexam Has Established A Prima Facie Case Of Infringement Of Claims 1, 2 And 5 Of The '839 Patent And Crown's Feigned Ignorance As To The Significance Of The Evidence Cited By Rexam Does Not Create A Genuine Issue Of Material Fact**

Crown contends that Rexam has failed to show that certain limitations of claim 1 of the '839 Patent are being used in Crown's necking process based upon Crown's inability to understand the documents and testimony cited by Rexam. Contrary to Crown's assertion, the evidence presented by Rexam in its opening brief establishes that Crown is practicing the methods of at least claims 1, 2 and 5 of the '839 Patent.

**1.    The Evidence Of Record Establishes That Crown Has Infringed Claim 1**

Claim 1 of the '839 Patent has four elements, (a) through (d.) Rexam has shown that the evidence demonstrates that element (a) is being used by Crown. Element (a) states:

> producing relative axial movement between a container and a first necking die to engage the external surface of a portion of the open end of the container with said first die at a small acute angle to compress said side wall radially inwardly along a length of said

3

container to produce a reduced cylindrical neck at said open end and form a first taper having a first arcuate segment on the end of said wall and a second arcuate segment on the end of said reduced cylindrical neck;

(D.I. 207 at A18, '839 Patent Claim 1.)

In support of its proof that Crown is using this limitation, Rexam cited testimony of Mr. Golding, Crown's Manager for Cans and Process Development, where he testified:

Redacted

Crown argues that this testimony does not provide any detail about the operations of the process. (D.I. 270, Crown Opp. at 9.) To the contrary, it provides a great deal of information about the operation and process that Crown is using.

Redacted

4

Redacted

The physical samples of Crown's cans, which show Crown's cans after each necking stage, also confirm that Crown is using the patented process. The physical samples confirm that Crown's process uses a "first die at a small acute angle to compress said side-wall radially inwardly." Crown deliberately takes Rexam's interrogatory answer –

Redacted

The physical samples that Crown produced, as Crown knows, showed cans after each stage of the die necking process (in most cases 14 stages). Thus, unlike a can purchased off the store shelf, the samples produced by Crown show each and every progressive step of the necking process used by Crown. The physical samples establish that the first die in the process is at a small acute angle. (D.I 207, A139-153.)

5

Additionally, the tooling drawings and specification sheets, which Crown refers to as "a random collection of papers,"

Redacted

Contrary to Crown's arguments, there is no issue of material fact because the undisputed evidence establishes that Crown is practicing limitation (a) of claim 1 of the '839 Patent.

Crown also makes the absurd argument that Rexam has failed to establish that Crown's method of smooth die necking includes element (b) of claim 1. Element (b) states: "removing said container from said first necking die." (D.I. 207 at A18, '839 Patent Claim 1.) Crown is correct that Rexam believed Crown would not dispute that this step is present in its process, as it is present in every die necking process, including Crown's process. Crown's necking process

Redacted

Thus, the can *must be removed* from the first necking die in order for the second necking die to further reduce the diameter of the end of the can. If the can is not removed from the first necking die, it would never be completed. Crown cannot argue in good faith that its necking process does not include this step in the claimed method. In any event, since Crown is making an issue of a step that is necessarily included in its smooth die necking process, Mr. Bauder, Crown's vice president of machinery tooling,

Redacted

Rexam has shown that the evidence establishes that Crown's method of smooth die necking includes element (c) of claim 1 of the '839 Patent. Element (c) reads:

producing relative axial movement between a second die and said container to engage the external surface of the container with the second die at an acute angle to further compress said reduced cylindrical neck inwardly along a length of the container and form a second taper; and

(D.I. 207 at A18, '839 Patent Claim 1.)

As Rexam stated in its opening brief, the '

Redacted

This limitation is essentially a repeat of element (a), with the addition of a second die. As set forth above, Mr. Golding testified that:

Redacted

We also know that there is a second die in Crown's

Redacted

Similarly, examination of the physical cans after each stage of Crown's necking process establishes that the cans were necked according to this limitation. (D.I. 207 at A139-153.) The physical samples establish that the second die in the process is at a small acute angle to further compress the neck of the can inwardly. (*Id.*) Rexam's expert also relied on these samples to confirm his opinion regarding Crown's infringement of this claim. (D.I. 207 at A105-132.)

7

Finally, :

Redacted

Rexam's expert also relied on the drawings and dimensions shown in Crown's specification sheets to confirm his opinion regarding Crown's infringement of this claim.

Redacted

Therefore, the tooling drawings, physical samples and the testimony of Crown's witnesses do in fact establish that this limitation is present in Crown's necking process. Crown's expert has provided no opinions to the contrary.

Finally, Crown argues that Rexam did not establish that element (d) of claim 1 was present in Crown's method of smooth die necking. Element (d) of claim 1 states:

> forcing said second taper downwardly *until it is contiguous with said first taper and reforms only an upper portion of said first taper while producing an extension of said first taper* to produce an *enlarged smoothly-shaped necked-in profile.* [1]

(D.I. 207 at A18, '839 Patent Claim 1.)

Redacted

---

[1] The parties dispute the meaning of the bolded terms. However, under either party's proposed construction, Crown's process of smooth die necking infringes the asserted method claims of Rexam's '839 Patent.

Redacted

9

Redacted

Unlike patent figures, this figure is from an actual manufacturing specification and is drawn to scale.

Redacted

Moreover, a review of the physical samples produced by Crown, which show the can after each of the fourteen necking stages, also confirms that each successive taper is forced downwardly until it is contiguous with the previous taper and reforms only an upper portion of said previous taper while producing an extension of said first taper to produce an enlarged smoothly-shaped necked-in profile.

Again, as argued in Rexam's opening brief, the tooling drawings, the physical samples and the testimony of Crown's witnesses establish that Crown is practicing the method of smooth die necking claimed in claim 1 of the '839 Patent.

10

2.    **The Evidence Of Record Establishes That Crown Has Infringed Claim 2 Of The '839 Patent**

Crown's only non-infringement argument with respect to claim 2 of the '839 Patent is Crown's claim that since it doesn't infringe claim 1, it cannot infringe claim 2. (D.I. 270 Crown Opp. at 12.) However, Rexam presented undisputed evidence which establishes that Crown's method of smooth die necking infringes claim 2 of the '839 Patent, as well as claim 1.

Claim 2 of the '829 Patent reads:

A method of die necking as defined in claim 1, wherein said second arcuate segment is *reformed as a part of said second taper on* said first taper whereby the two tapers *combine and blend* into a smooth neck profile.[2]

For the reasons stated above in section A.1, Rexam has shown that the evidence of record establishes that Crown is practicing the methods of claim 1 of the '839 Patent. Claim 2 of the '839 Patent depends from claim 1 and adds that the second arcuate segment is reformed as part of the second taper on the first taper such that the two tapers combine and blend to form a smooth neck profile.

Redacted                                    /

---

[2] The parties dispute the meaning of the bolded terms. However, under either party's proposed construction, Crown's process of smooth die necking infringes the asserted method claims of Rexam's '839 Patent.

Redacted

the physical samples of Crown's cans after **each stage** of the necking process show that the second

arcuate segment is reformed as a part of said second taper on said first taper whereby the two tapers

combine and blend into a smooth neck profile. (D.I. 207 at A139-153.)

Therefore, contrary to Crown's assertions, Rexam did provide evidence which establishes that

Crown's necking process infringes claim 2 of the '839 Patent.

### 3.    The Evidence Of Record Establishes That Crown Has Infringed Claim 5 Of The '839 Patent

Crown's only non-infringement argument with respect to claim 5 of the '839 Patent is Crown's

claim that since it does not infringe claim 1, it cannot infringe claim 5. (D.I. 270, Crown Opp. at 12.)

However, Rexam has presented evidence which establishes that Crown is infringing claim 5, as well as

claim 1.

Claim 5 of the '839 Patent reads:

A method of die necking as in claim 1, further comprising the steps of forming necked-in profile by a series of die elements with each die element forming only a part of the neck profile, and the *part formed by each die element partially integrates and blends with the portion formed by a preceding die element*, and in which the neck profile is axially enlarged by each of said die elements. [3]

For the reasons stated above in section A.1, Rexam has shown that the evidence of record

establishes that Crown is practicing the method of claim 1 of the '839 Patent. Claim 5 adds "a series of

dies" to the smooth die necking method of claim 1.

Redacted

---

[3] The parties dispute the meaning of the bolded terms. However, as with all the disputed terms at issue in this memorandum, Crown's method of smooth die necking still infringes Rexam's '839 Patent.

Redacted

Similarly, the physical samples of Crown's cans, which show the cans after each stage of Crown's necking process, demonstrate that each limitation of claim 5 is present in that process. (D.I. 207 at A139-153.)

Therefore, Crown's smooth die necking process infringes claim 5 of the '839 Patent. For all of the reasons set forth herein and in Rexam's opening brief, Rexam has presented sufficient evidence of record which establishes that Crown's process of smooth die necking infringes at least claims 1, 2 and 5 of the '839 Patent. Further, there are no genuine issues of material fact to preclude summary judgment.

**B.    Rexam Has Presented Sufficient Evidence Of Record To Establish That Crown's Bottom Reforming Method Infringes Claims 11 And 12 Of The '242 Patent**

Crown argues that Rexam has failed to satisfy its burden on summary judgment for failing to identify sufficient evidence in the record to support its motion. (D.I. 270, Crown Opp. at 12-13.) Crown claims that Rexam cited an undifferentiated haze of documents, irrelevant deposition testimony and certain can samples without providing any correlation between the evidence and the claim limitations at issue. (*Id.*) Here again, Crown attempts to claim ignorance regarding the significance and meaning of its own documents and the testimony of its own witnesses. Contrary to Crown's assertion, Rexam has satisfied its burden and is entitled to summary judgment on the issue of Crown's infringement of the '242 Patent.

Rexam's expert provided an element-by-element analysis in support of his opinion that Crown's bottom reforming method infringed claims 11 and 12 of the '242 Patent. (D.I. 207 at A125-131.) Rexam's expert's opinion regarding Crown's infringement of the asserted claims of the '242 Patent was not rebutted.

1.   **Rexam Has Satisfied Its Burden Of Establishing That Crown's Bottom Reforming Process Infringes Claim 11 Of The '242 Patent**

The first element or limitation of claim 11 of the '242 Patent reads:

A method of reforming a bottom of a drawn and ironed beverage container, said container having a longitudinal axis; a generally cylindrical side wall parallel with said longitudinal axis; the bottom having an outer annular wall, a convex U-shaped portion, a preformed bottom wall including a center domed portion, and an annular, substantially longitudinal wall joining said domed portion and said convex U-shaped portion, said method comprising:

Crown claims that Rexam did not believe that Crown would dispute that this limitation is present in Crown's cans. Crown is correct about Rexam's belief and Crown's attempt to argue about this element is absurd. All of Crown's cans at issue in this case have every element of this limitation. Rexam need look no further than the physical can samples that Crown produced in this case. (D.I. 207 at A139-153.)

Redacted

The second element of claim 11 of the '242 Patent reads: "providing said drawn and ironed beverage container." Crown does not dispute that it provides drawn and ironed beverage containers to its bottom reforming process. (D.I. 270, Crown Opp. at 14.) Additionally, Crown's physical samples of its cans establish that they are drawn and ironed beverage containers. (D.I. 207 at A139-153.)

The third element of claim 11 calls for "providing a reforming roller." Crown claims that the cited testimony and drawings do not confirm that Crown uses a reforming roller. This statement is blatantly false.

Redacted

14

Redacted

Similarly, Crown claims that Rexam has not established the fourth element of claim 11. The fourth element reads:

> moving said reforming roller radially into engagement with said substantially longitudinal wall of said beverage container, said reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path, wherein said reforming roller affects the angle of said substantially longitudinal wall.

Again, Crown ignores the obvious testimony of its own witness which was cited in Rexam's opening brief.

Redacted

15

Redacted

RLF1-3122004-1

Thus, the testimony cited in Rexam's

opening brief establishes that Crown's method of bottom reforming includes having the reforming roller

"rotating along said longitudinal wall and circumferentially about an arcuate path."

     Finally,

Redacted

For all the reasons set

forth herein and in Rexam's opening brief, Rexam has established that Crown's bottom reforming process

employs all of the limitations of claim 11 of the '242 Patent.

### 2.   Rexam Has Satisfied Its Burden Of Establishing That Crown's Bottom Reforming Process Infringes Claim 12 Of The '242 Patent

Crown's only non-infringement argument with respect to claim 12 of the '242 Patent is Crown's

claim that since it does not infringe claim 11, it cannot infringe claims 12 and 17. (D.I. 270, Crown Opp.

at 16.) However, for the reasons stated above, Rexam has presented evidence which establishes that

Crown has been and is infringing claim 11, and has presented evidence which establishes that Crown is

infringing claim 12 as well.[4]

Claim 12 of the '242 Patent depends from claim 11. Claim 12 adds the limitation of "providing

radial inward support for said container." Rexam has presented evidence which establishes that Crown's

method of bottom reforming includes this additional limitation of claim 12.

Redacted

---

[4] Rexam has not moved for summary judgment with respect to claim 17, but reserves the right to present evidence, if necessary, at trial that Crown's method also infringes claim 17.

18

Redacted

Thus, as stated in Rexam's opening brief, the technical drawings and the deposition testimony of Crown's witnesses establish that Crown's bottom reforming process includes providing radial inward support during the bottom reforming process. Crown has not offered any basis for its non-infringement position in either its interrogatory answers or by way of its expert's opinion. Therefore, the evidence of record establishes that Crown's bottom reforming process infringes the method of claim 12 of the '242 Patent.

RLF1-3122004-1

## IV.    CONCLUSION

For all of the reasons stated herein, Rexam has satisfied its burden and established with the evidence of record that Crown's smooth die necking process includes each and every limitation of at least claims 1, 2 and 5 of the '839 Patent. Similarly, Rexam has satisfied its burden and established with the evidence of record that Crown's bottom reforming process includes each and every limitation of at least claims 11 and 12 of the '242 Patent. Crown chose to ignore the evidence cited in Rexam's opening brief and made claims about what that evidence did or did not establish that were clearly false. Crown has failed to establish that there are any genuine issues of material fact as to its infringement of the claims at issue herein, and has failed to establish that Rexam is not entitled to judgment as a matter of law on infringement of those claims. Therefore, Rexam's Motion For Partial Summary Judgment Of Infringement Of U.S. Patent Nos. 4,774,839 and 5,697,242 should be granted. Should the Court deny Rexam's motion, Rexam respectfully requests that the Court enter an order prohibiting Crown's experts from providing any testimony to support Crown's non-infringement position at trial, as Crown has provided no factual basis for its non-infringement position in its interrogatory answers, and Crown's experts have provided no opinions on the issue of non-infringement (as to these two patents) in any of their reports.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
*Attorneys for Defendant/Counterclaimant
Rexam Beverage Can Co.*

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL 60601
312-775-8000

Dated: March 2, 2007

RLFI-3122004-1

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2007, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>   and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE   19801

I hereby certify that on March 8, 2007, I caused the foregoing document to be served via electronic mail on the following non-registered participants:

> Dale M. Heist, Esq.
> heist@woodcock.com
> Chad E. Ziegler, Esq.
> ziegler@woodcock.com
> Woodcock Washburn LLP
> Cira Centre
> 2929 Arch Street, 12th Floor
> Philadelphia, PA 19104-2891

> Anne Shea Gaza (#4093)
> Gaza@rlf.com
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700