IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CROWN PACKAGING TECHNOLOGY, INC. )
and CROWN CORK & SEAL USA, INC., )
                                 )
        Plaintiffs/Counterclaim Defendants, )   C. A. No. 05-608 (MPT)
                                 )
                                 )   **REDACTED**
v.                               )   **PUBLIC VERSION**
                                 )
REXAM BEVERAGE CAN COMPANY,      )
                                 )
        Defendant/Counterclaimant. )
                                 )

**APPENDIX IN SUPPORT OF**
**DEFENDANT REXAM BEVERAGE CAN COMPANY'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT THAT THE "REXAM END" CAN END DOES**
**NOT INFRINGE CROWN'S UNITED STATES PATENTS NOS. 6,848,875 AND**
**6,935,826**

Of Counsel:
George P. McAndrews
Steven J. Hampton
Gerald C. Willis
Paul W. McAndrews
McAndrews, Held & Malloy, Ltd.
500 W. Madison Street, Suite 3400
Chicago, IL   60601
312-775-8000

Dated:  March 2, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
     *Attorneys for Defendant/Counterclaimant*
     *Rexam Beverage Can Co.*

**TABLE OF CONTENTS**

1. Crown's appeal brief in the Anheuser Busch litigation ........................................B1-B44

2. United States patent number 6,065,634 ........................................................B45-B54

**BRIEF OF DEFENDANT-APPELLANT CROWN CORK & SEAL TECHNOLOGIES CORPORATION**

IN THE

# United States Court of Appeals

FOR THE

# Federal Circuit

04-1185, -1188

ANHEUSER-BUSCH COMPANIES, INC., METAL CONTAINER CORPORATION, and ANHEUSER-BUSCH, INC.,

*Plaintiffs-Cross Appellants,*

v.

CROWN CORK & SEAL TECHNOLOGIES CORPORATION,

*Defendant-Appellant*

and

CROWN CORK & SEAL CO. (USA), INC.,

*Defendant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN IN 03-CV-137, JUDGE JOHN C. SHABAZ AND MAGISTRATE JUDGE JOSEPH W. SKUPNIEWITZ

Dale M. Heist
Kevin M. Flannery
Woodcock Washburn, LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103
(215) 568-3100
*Attorneys for Defendant-Appellant Crown Cork & Seal Technologies Corporation*

Date: March 23, 2004

NON-CONFIDENTIAL

CCS0014946

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B1

## CERTIFICATE OF INTEREST

Counsel for defendant-appellant Crown Cork & Seal Technologies Corporation, certifies the following:

1.    The full name of every party or amicus represented by me are Crown Cork & Seal Technologies Corporation and Crown Cork & Seal Co. (USA), Inc.

2.    The names of the real parties in interest represented by me are Crown Packaging Technology Co. (formerly Crown Cork & Seal Technologies Corporation) and Crown Cork & Seal USA, Inc. (formerly Crown Cork & Seal Co. (USA), Inc.).

3.    The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the parties represented by me are:  Crown Holdings, Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:

Dale M. Heist
Kevin M. Flannery
WOODCOCK WASHBURN LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

Joseph Ranney
David Meany
DEWITT ROSS & STEVENS, S.C.

CCS0014947

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

i

2 East Mifflin Street, Suite 600
Madison, WI 53703

Diane Siegel Danoff
DECHERT LLP
4000 Bell Tower Building
1717 Arch Street
Philadelphia, PA 19103

5.    The following are attorneys who were admitted *pro hac vice* to the

District Court proceedings but who did not make an appearance and who do not

expect to appear before the Court of Appeals for the Federal Circuit in connection

with the captioned matter:

        Robert C. Heim (Dechert LLP)
        Robert Rhoad (Dechert LLP)
        Paul Friedman (Dechert LLP)
        Melvin Schwarz (Dechert LLP)

CCS0014948

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B3

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .................................................................. i

STATEMENT OF RELATED CASES ........................................................ 1

STATEMENT OF JURISDICTION............................................................ 1

STATEMENT OF ISSUES ON APPEAL .................................................. 2

I.    STATEMENT OF THE CASE............................................................ 3

II.   STATEMENT OF FACTS .................................................................. 3

      A.   The Patent Specification .......................................................... 3

      B.   The Prosecution History ........................................................... 5

      C.   The Asserted Patent Claims...................................................... 5

      D.   The District Court's Claim Construction Ruling..................... 6

      E.   The District Court's Claim Application Ruling........................ 7

      F.   The District Court's Doctrine of Equivalents Ruling ............. 8

III.  SUMMARY OF THE ARGUMENT .................................................. 10

IV.   ARGUMENT....................................................................................... 13

      A.   The District Court Erred In Granting Summary Judgment Of No Literal
           Infringement.............................................................................. 13

           1.   The District Court Erred By Concluding That The Plain Meaning
                Of The Phrase "Chuck Wall . . . Inclined . . . At An Angle" Limits
                The Chuck Wall To A Particular Shape ........................... 13

           2.   AB Has Acknowledged That Arcuate Chuck Walls May Be Said
                To Be Inclined At An Angle.............................................. 16

           3.   The District Court Erred To The Extent It Read A *Flat* Chuck Wall
                Limitation Into The Claims From The Patent Specification:........... 17

                a)   The District Court Erroneously Limited The Claims To The
                     Preferred Embodiment.............................................. 19

CCS0014949

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B4

   b) The District Court Erroneously Limited Can End Product
     Claims Based Upon A Specification Passage Relating To A
     Seaming Process ..........................................................................19

     (1) The Process Passage Relied Upon By The District
       Court Is Irrelevant To Construction Of Product
       Claims ..........................................................................20

     (2) Even If Relevant, The Process Passage Contains No
       Clear And Unmistakable Exclusion Of Non-Flat
       Chuck Walls..................................................................21

   c) The District Court's Analysis Has Consistently Been
     Rejected By This Court....................................................................22

  4. The District Court Erred To The Extent It Read A *Flat* Chuck Wall
    Limitation Into The Claims From The Prosecution History.................... 24

 B. The Construction of "*A* Concave Cross-Sectional Radius Of The
   Reinforcing Bead" Can Be Decided By This Court As Part Of Its De Novo
   Review Of Claim Construction........................................................................27

 C. The District Court Erred In Granting Summary Judgment Of Non-
   Infringement Under The Doctrine Of Equivalents .......................................... 29

  1. Summary Judgment Was Improper Because Crown Offered
    Evidence That The Differences Between Elements Of The Claimed
    Can End And LOF+ Were Insubstantial ...................................... 29

  2. There Was Evidence Of Infringement By Equivalents Under A
    Proper Application Of The Optional Function-Way-Result Test............. 31

   a) Crown Offered Evidence That The Elements Of The LOF+
     Performed The Same Function, In Substantially The Same
     Way, To Achieve Substantially The Same Result As The
     Claimed End..................................................................................31

   b) The Fact That The LOF+ Chuck Wall May Not Perform
     An Optional, Unclaimed and Process-Related Function Of
     The Recited Chuck Wall Provided No Basis For Dismissal
     Of Crown's Infringement Claim....................................................32

V. CONCLUSION...................................................................................................... 35

CCS0014950

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B5

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on page 7 is a description of the LOF+ can end by AB; the material omitted on page 8 is a description of the LOF+ can end by an AB employee; the material omitted on pages 9 and 10 is a description of the 634 patent disclosure and the LOF+ can end by AB's expert; the material omitted on page 14 is a description of the LOF+ can end by AB's expert; the material omitted on page 17 is a description of the LOF+ can end by AB's expert; the material omitted on pages 25-26 is a characterization of a portion of the prosecution history of the 634 patent by AB.

CCS0014951

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B6

## TABLE OF AUTHORITIES

### FEDERAL CASES

*3M Innovative Properties Co. v. Avery Dennison Corp.,*
    350 F.3d 1365 (Fed. Cir. 2003) ............................................................. 27

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
    314 F.3d 1313 (Fed. Cir. 2003) ............................................................. 20

Anderson vs. Liberty Lobby, Inc.,
    477 U.S. 242, 255 (1986) ...................................................................... 30

*Biogen, Inc. v. Berlex Laboratoriess, Inc.,*
    318 F.3d 1132 (Fed. Cir. 2003) ............................................................. 18

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,*
    320 F.3d 1339 (Fed. Cir. 2003) ............................................................. 35

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,*
    334 F.3d 1294 (Fed. Cir. 2003) .......................................................... 14, 19

*CCS Fitness Inc. v. Brunswick Corp.,*
    288 F.3d 1359 (Fed. Cir. 2002) ....................................................... 13, 23, 24

*Cultor Corp. v. A.E. Staley Manufacturing Co.,*
    224 F.3d 1328 (Fed. Cir. 2000) ............................................................. 18

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004) .......................................................... 19, 21

*KCJ Corp. v. Kinetic Concepts, Inc.,*
    223 F.3d 1351 (Fed. Cir. 2000) ............................................................. 28

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004) ....................................................... 17, 22, 29

*Liquid Dynamics Corp. v. Vaughan Co., Inc.,*
    355 F.3d 1361 (Fed. Cir. 2004) ............................................................. 13

CCS0014952

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

vi

*Microsoft Corp. v. Multi-Tech System, Inc.,*
  357 F.3d 1340 (Fed. Cir. 2004) .................................................................. 18

*Schumer v. Laboratory Computer System, Inc.,*
  308 F.3d 1304 (Fed. Cir. 2002) .................................................................. 30

*SciMed Life System, Inc. v. Advanced Cardiovascular System, Inc.,*
  242 F.3d 1337 (Fed. Cir. 2001) .................................................................. 18

*Sunrace Roots Enterprise Co. v. SRAM Corp.,*
  336 F.3d 1298 (Fed. Cir. 2003) .................................................................. 25

*Superguide Corp. v. DirecTV Enterprises, Inc.,*
  358 F.3d 870 (Fed. Cir. 2004) .................................................... 22, 23, 24

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
  299 F.3d 1313, 1327 (Fed. Cir. 2002)) ............................................. 18, 31

*Toro Co. v. White Consolidated Industrial, Inc.,*
  266 F.3d 1367 (2001) ................................................ 29, 30, 31, 33, 34

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,*
  520 U.S. 17 (1997)..................................................................... 29, 34

## FEDERAL STATUTES

28 U.S.C. § 1295(a)(1)................................................................................. 1

28 U.S.C. §1331........................................................................................... 1

28 U.S.C. §1338(a) ..................................................................................... 1

28 U.S.C. §2107........................................................................................... 1

CCS0014953

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B8

TABLE OF ABBREVIATIONS

"634 patent" refers to U.S. Patent No. 6,065,634 entitled "Can End and Method for Affixing the Same to a Can Body."

"Crown" refers to defendant-appellant Crown Cork & Seal Technologies Corporation, the assignee of the 634 patent.

"AB" refers collectively to plaintiffs-appellees, Anheuser-Busch Companies, Inc., Metal Container Corporation, and Anheuser-Busch, Inc.

"JA" refers to a page in the joint appendix.

CCS0014954

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B9

## STATEMENT OF RELATED CASES

1.      No other appeal in, or from, the same civil action or proceeding in the lower court was previously before this or any other appellate court under the same or similar title.

2.      Counsel for defendant-appellant is unaware of any other case pending in this or any other Court that will directly affect or be directly affected by this Court's decision in this appeal.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction of the patent infringement claim that is the subject of this appeal under 28 U.S.C. §§ 1331 and 1338(a).

On December 11, 2003, the District Court entered final judgment under FED. R. CIV. P. 54(b) holding that claims 1-3 and 5 of the 634 patent were not infringed by AB (JA69).

Crown's appeal and AB's cross-appeal were timely filed on January 5, 2004, and January 12, 2004, respectively. The timeliness of the filing of this appeal is governed by 28 U.S.C. § 2107 and FED. R. APP. P. 4.

This Court has exclusive jurisdiction of this appeal under 28 U.S.C. § 1295(a)(1).

CCS0014955

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B10

## STATEMENT OF ISSUES ON APPEAL

1.    Whether the District Court erred as a matter of law in granting summary judgment of no literal infringement based upon its construction of the phrase "chuck wall . . . inclined . . . at an angle between 40° and 60°" as being limited to flat chuck walls when neither the ordinary meaning nor anything in the specification or prosecution history limits the claimed chuck walls to any particular shape?

2.    Whether the construction of the phrase "comprising . . . an outwardly concave annular reinforcing bead . . . wherein . . . a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm," which was not addressed by the District Court but which is disputed by the parties, refers to *at least one* such radius, or to *one and only one* such radius?

3.    Whether the District Court erred in granting summary judgment of no infringement of a product claim under the doctrine of equivalents despite evidence that the differences between claim elements and the accused product were "insubstantial" merely because there was no evidence the accused product could satisfy an unclaimed function of an optional method of using the claimed product?

CCS0014956

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

2

B11

## I.    STATEMENT OF THE CASE

On March 24, 2003, AB filed suit seeking, *inter alia*, a declaration that its "LOF+" can ends do not infringe the 634 patent claims (JA83). Crown counterclaimed for infringement of claims 1-3 and 5 (JA364-365). The parties filed cross motions for summary judgment on the infringement and other issues (JA388; JA2189).

On November 20, 2003, the District Court granted AB's summary judgment motion and denied Crown's cross motion, holding that the asserted claims were not infringed either literally or under the doctrine of equivalents (JA64-65).

## II.    STATEMENT OF FACTS

### A.    The Patent Specification

The 634 patent specification discloses can ends for beer or beverage cans (JA111 at Col. 3, ll. 27-39; JA113 at Col. 8, ll. 35-38; JA107 at Fig. 4). The specification also separately discloses methods and apparatus for seaming can ends to can bodies (JA110 at Col. 2, ll. 13-31; JA107-08 at Figs. 5-7).

The patent specification notes that there was a need for can ends that consumed less metal than conventional ends (JA110 at Col. 1, ll. 20-22 and 54; JA113 at Col. 8, ll. 21-23). A common way to conserve metal is to simply reduce metal gauge (or thickness) (*id.*; *see also* JA113 at Table 6, which, in the column headed "ACTUAL THICKNESS TO CONTAIN PSI," compares metal thickness to contain a given pressure for can ends of the claimed invention and the prior art).

3

CCS0014957

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

Reductions in metal gauge, however, are constrained by pressure retention requirements (JA113 at Col. 8, ll. 35-38; JA107 at Fig. 4).

The geometry of the can ends claimed in the 634 patent permits use of less metal without compromising pressure performance. The inventors discovered that significant metal savings could be achieved by: (1) "increasing the slope" or inclination of the can end chuck wall, thereby reducing center panel diameter compared to overall can end diameter; and (2) limiting "the width of the anti peaking bead" (JA33; JA110 at Col. 1, ll. 20-22; JA113 at Col. 8, ll. 21-23).

Typical prior art chuck walls were inclined at an angle of only about 12° to 15° with respect to vertical (JA111 at Col. 3, ll. 3-5). The claimed ends include a chuck wall inclined at an angle between 40° and 60° (claims 1, 3 and 5) or between 40° and 45° (claim 2). Further, unlike prior ends, the claimed ends employ a narrow reinforcing bead having a concave cross-sectional radius smaller than 0.75 mm (JA110 at Col. 1, ll. 20-22).

In addition to describing the geometry of claimed can ends (Figure 4), the patent specification separately discloses, as a "second aspect" (id. at Col. 2, ll. 13-31), a method and apparatus for seaming can ends to can bodies (Figures 5-7) and contrasts that method and apparatus with the prior art (Figures 1-3). Although the patent specification concludes with nine claims, none are directed to a method or apparatus for seaming can ends to can bodies.

CCS0014958

4

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

All claims, including asserted claims 1-3 and 5, are directed solely to can ends, by themselves, before they are seamed to a can body (JA114).

## B.    The Prosecution History

During patent prosecution, Crown sought examination of product claims directed to unseamed can ends, by themselves, and method claims directed to the seaming of can ends onto a can body (JA988-92). The PTO ruled that the product and method claims were separate and independent inventions (JA994-96) that not only lacked "corresponding technical features" but also were not linked as to form "a single general inventive concept" (JA995). Claims directed to the seaming method were withdrawn from consideration and the 634 patent was ultimately granted with claims directed solely to can ends themselves (JA1011).

## C.    The Asserted Patent Claims

Only four claims of the 634 patent, *i.e.*, claims 1-3 and 5, are in dispute. Claim 1 of the 634 patent recites:

1.  A can end comprising:

a peripheral cover hook;

a chuck wall dependent from an interior of the cover hook;

an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall; and

a central panel supported by an inner portion of the reinforcing bead;

wherein the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 40° and 60°, and a

CCS0014959

5

B14

concave cross-sectional radius of the reinforcing bead is less than 0.75 mm.

Claims 2, 3 and 5 all depend from claim 1. Claim 2 further recites that the chuck wall is inclined at an angle between 40° and 45°. Claim 3 further defines the reinforcing bead outer wall. Claim 5 further defines the central panel.

### D.    The District Court's Claim Construction Ruling

The only claim construction issues presented below relate to the meaning of the phrases: (1) "chuck wall ... inclined ... at an angle between 40° and 60°"; and (2) "a concave cross-sectional radius of the reinforcing bead [being] less than 0.75 mm" (JA40).[1]

As to the first issue, the District Court concluded that the phrase "chuck wall ... inclined ... at an angle between 40° and 60°" required "that the wall be 'flat,' that is, that in a cross section ... the wall appears as a straight line" (JA41-42). The District Court limited the claimed chuck walls to only flat chuck walls because it concluded, with no evidentiary support, that according to the ordinary meaning

---

[1] There was no dispute below regarding the meaning of any of the terms "can end," "peripheral cover hook," "chuck wall," "reinforcing bead," or "central panel" found in the claims. "Can end" refers to an "unseamed" can end (JA549; JA2205). "Peripheral cover hook" refers to "the outer circumferential portion of the unseamed can end that is to be formed into a part of the double seam" (JA2205; JA 549). "Chuck wall" refers to the portion of the lid connecting the cover hook and the reinforcing bead (JA430; JA2205). "Reinforcing bead" refers to a ring-like stiffening channel for adding strength to the can end (JA2205-2206; JA551). "Central panel" means the central structure of the can end held up by the inner portion of the reinforcing bead (JA2206; JA553).

CCS0014960

6

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

of the claim language "only a flat wall would be described as inclining at 'an' angle" (*id.*).

As to the second issue, the District Court never addressed the meaning of the phrase "a concave cross-sectional radius of the reinforcing bead [being] less than 0.75 mm." Crown proposed that the phrase be construed to mean that at least one "cross-section of the reinforcing bead" include the recited radius (JA2210). AB argued that the phrase was limited to a bead having only "a single arcuate portion at its base" with "a single radius of curvature less than 0.75 mm" (JA551; JA556).

### E.    The District Court's Claim Application Ruling

The District Court reprinted a cross section of AB's LOF+ can end in its opinion (JA37).

Deleted Materials Subject
to Protective Order

Further, the District Court correctly noted that LOF+ can ends included a chuck wall that "permits a smaller central panel thereby realizing metal savings in the same way as the lid of the 634 patent" (JA44). The infringement issues, therefore, turned upon whether the chuck wall of an LOF+ can end is inclined at an angle within the claimed range, and weather its reinforcing bead has "a concave cross-sectional radius" smaller "than 0.75 mm."

CCS0014961

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B16

Crown's expert measured the LOF+ chuck wall angle as 45° (JA2352 at ¶ 35j).

63).

Deleted Materials Subject
to Protective Order

The District Court, however, ignored the fact that *both side's* experts measured an angle of inclination for the chuck wall. Instead, the District Court concluded that the LOF+ can ends could not literally infringe any of the asserted claims because the LOF+ chuck wall was arcuate rather than flat (JA43: "[t]he futile of efforts of the competing experts to define the angle between the milti-arcuate [sic] LOF+ chuck wall and the vertical axis makes the non-infringement apparent").

**F.    The District Court's Doctrine of Equivalents Ruling**

The District Court also granted summary judgment of non-infringement under the doctrine of equivalents, despite conflicting expert declarations on the subject.

CCS0014962

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

Crown's expert stated that, even if the claims were limited to flat chuck walls, there was infringement by equivalents because there was no substantial difference between the disputed elements of the claimed can ends and the elements of the LOF+ (JA3476 at ¶ 66).  AB's expert, however, denied that there was infringement by equivalents (JA601 at ¶ 28).

Crown's expert showed that the claimed chuck wall performed the function of reducing "metal usage in the can end when compared to conventional ends while maintaining industry-standard pressure performance" (JA3476 at ¶68).  He concluded that the LOF+ chuck wall satisfied the metal savings function in the same way as the claimed chuck wall and achieved the same result (JA3476-78 at ¶¶ 66-71, 74).

Deleted Materials Subject
to Protective Order

CCS0014963

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

9

B18

Deleted Materials Subject
to Protective Order

The District Court correctly concluded that the LOF+ not only satisfied the metal savings/pressure retention function of the claimed chuck wall, but did so in the very "same way" as in the patent (JA44). The District Court, however, further concluded that, to show infringement by equivalence, Crown was required to prove not only that the LOF+ chuck wall satisfied the metal savings function, but also the additional and unclaimed process-related function of "facilitating the sealing process by permitting the use of a simple frustoconical chuck which can drive on the wall without entering the anti-peaking bead" (JA44-45).

Notwithstanding the conflicting expert declarations, the District Court dismissed Crown's infringement claim because there was no evidence the "arcuate" LOF+ chuck wall could perform this additional process-related function (JA45).

## III.    SUMMARY OF THE ARGUMENT

The asserted claims are directed to a can end having a chuck wall that is simply said to be "inclined . . . at an angle" within a range of 40° to 60°. While the specification discloses a can end having a flat chuck wall, the claims are not so limited. And when the claims are construed according to the plain and ordinary

CCS0014964

10

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B19

meaning of the claim language, dictionary and agreed-upon definitions for the recited language do not limit the shape of the claimed features of the can end.

The District Court, however, found that the plain meaning of the phrase "chuck wall . . . inclined . . . at an angle" limits the chuck wall to a flat shape. According to the District Court, only a flat structure can be said to be inclined at an angle. This was error. Common usage confirms that many structures may be said to be inclined or sloped at an angle even though the surface of the structure is not flat. In fact, AB has acknowledged that non-flat, curved (or "arcuate") chuck walls may be said to be inclined at an angle.

The District Court also erred to the extent it read a flat chuck wall limitation into the claims from the patent specification. In so doing, the District Court limited the claims to the preferred embodiment, a method of analysis that has been rejected by this Court. Also, while the claims recite a can end by itself, the District Court erroneously limited these *product* claims based upon an irrelevant passage in the specification relating to a *process* of seaming a can end to a can.

The District Court also erred to the extent it read a flat chuck wall limitation into the claims from the prosecution history. The District Court refused to accept a broad construction of the claims that would encompass something other than a flat chuck wall shape because there was no discussion of chuck walls having a non-flat shape in the prosecution history. But there is no requirement that either the

11

CCS0014965

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B20

applicant or examiner make affirmative statements as to the broad scope of a claim for it to be broadly construed. In fact, the law is to the contrary.

In the end, the District Court's claim construction analysis was one that has consistently been rejected by this Court.

In addition, the District Court provided no construction for the otherwise disputed claim phrase reciting that the can end "compris[es] . . . an outwardly concave annular reinforcing bead . . . wherein . . . a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm." The construction of this phrase can be decided by this Court as part of its de novo review of claim construction. This phrase is properly construed to require that the reinforcing bead have at least one such radius within the cross section of the bead, but not one and only one such radius.

Finally, the District Court erred in granting summary judgment of non-infringement under the doctrine of equivalents. Infringement by equivalents requires an intensely factual inquiry. Crown offered evidence that not only satisfied the "insubstantial differences" test, but also that satisfied the optional "function-way-result" test. The District Court was not only required to consider this evidence, but was also required to draw all factual inferences in Crown's favor. This should have precluded the grant of summary judgment of non-infringement. But the District Court ignored Crown's evidence, and instead

CCS0014966

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B21

summarily dismissed its infringement claim because it found that the accused

product does not perform an optional, unclaimed and process-related function of

the recited chuck wall. In addition to the fact that the District Court ignored the

genuine factual dispute as to the tests, this, too, was error.

This Court should reverse the District Court's dismissal of Crown's

infringement claim and remand for further proceedings.

## IV.  ARGUMENT

The applicable standard of review was succinctly stated in *Liquid Dynamics*

*Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1366-1367 (Fed. Cir. 2004) ("The

Federal Circuit reviews the grant of summary judgment de novo").

### A.    The District Court Erred In Granting Summary Judgment Of No Literal Infringement

The District Court erred in granting AB's motion for summary judgment of

no literal infringement of claims 1-3 and 5. The District Court's decision was

based solely upon its erroneous construction of the claims at issue such that it can

be reviewed de novo by this Court.

#### 1.    The District Court Erred By Concluding That The Plain Meaning Of The Phrase "Chuck Wall . . . Inclined . . . At An Angle" Limits The Chuck Wall To A Particular Shape

There is a "heavy presumption" favoring the plain and ordinary meaning of

claim terms. *CCS Fitness Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir.

2002). Further, claim terms may initially be construed in accordance with their

CCS0014967

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B22

ordinary dictionary definitions. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298-1300 (Fed. Cir. 2003) (consulting dictionary definitions is a "first step in the claim construction analysis").

The parties agree that the claim term "chuck wall" refers to the portion of the lid connecting the cover hook and the reinforcing bead (JA430; JA2205). Nothing in that agreed-upon definition, however, limits a chuck wall to any particular shape, including "flat."

Deleted Materials Subject<br>to Protective Order

And the District Court correctly found that prior art can ends having non-flat chuck walls were known at the time of the invention (JA43).

Thus, the phrase reciting that the "chuck wall" is "inclined . . . at an angle between 40° and 60°" merely refers to the angle of inclination of the structure connecting the peripheral curl with the reinforcing bead without regard to the shape of the structure.

Webster's defines the word "inclined" as "having a leaning or slope" (JA2336), and notes that the word "at" is "a function word to indicate presence in, on, or near" (JA2330). Again, there is nothing in these definitions that limits a referenced structure (in this case a chuck wall) to any particular shape, including "flat."

CCS0014968

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

Thus, by mere application of agreed-upon and dictionary definitions of the claim terms, the plain meaning of the phrase "chuck wall . . . inclined . . . at an angle between 40° and 60°" refers to a structure connecting the peripheral curl with the reinforcing bead that leans or has a slope on or near "an angle" in the recited range.

The District Court concluded, and there is no real dispute, that the phrase "*an* angle" refers to "a single angle" (JA42). The dispute arises here because the District Court, with no support whatever, further concluded that according to the ordinary meaning of the claim language "only a flat [chuck] wall would be described as inclining at 'an' angle to a vertical axis" (JA41-42). This was error.

The District Court's conclusion is faulty because neither the term "chuck wall," nor the ordinary meaning of the phrase reciting that the chuck wall is "inclined . . . at an angle" requires, expressly or by implication, that the chuck wall have any particular shape, including flat. It simply does not follow that the *only* chuck wall shape that can be said to be inclined, or to be sloped, or to lean, at *an* angle is a "flat" chuck wall.

Common usage confirms that many structures may be said to be inclined or sloped at "an" angle even though the surface of the structure is not flat. For example, a roofer would have little difficulty stating that a roof has a 45 degree slope even though it is made of corrugated metal or Spanish tiles having an

15

undulating surface rather than a flat surface. Similarly, a skier would have little difficulty stating that a mountain has a 30 degree slope even though the surface of a ski run undulates and is not "flat" along the length of the trail. Nor would a truck driver have difficulty understanding a road sign warning that a highway has a 6 degree slope or grade even though the road surface is not flat.

The plain meaning of the phrase in question, therefore, refutes the claim construction imposed by the District Court.

### 2. AB Has Acknowledged That Arcuate Chuck Walls May Be Said To Be Inclined At An Angle

Although the District Court provided no support for its conclusion that the ordinary meaning of the phrase "chuck wall . . . inclined . . . at an angle" limited the claims to "*flat* chuck walls," there was ample evidence refuting that finding. AB has twice admitted that the non-flat, arcuate LOF+ type chuck walls may be said to be inclined at a single angle.

AB holds a patent directed to LOF+ type can ends, which states that it "contemplates improved aluminum can lids combining a *slanted chuckwall* with a reduced seam" (JA2405 at Col. 2, ll. 17-18) (emphasis supplied). While AB's patent describes its can ends as having "*arcuate*" chuck walls (*id.* at Col. 2, ll. 19-26), the patent claims recite that a line passing through the ends of the arcuate chuck walls is inclined "*at an angle*" within a claimed range (JA2407 at Col. 6, ll. 31-42).

CCS0014970

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

16

The fact that *"arcuate"* chuck walls of LOF+ type can ends may not only be said to be *"slanted,"* but may also be characterized by a line inclined "at *an* angle" is persuasive evidence that arcuate chuck walls may be said to be inclined at *a single* angle even though the wall surface is not flat, as erroneously found by the District Court.

Deleted Materials Subject<br/>to Protective Order

The admission of AB's expert, like the admission in AB's granted patent, is persuasive evidence that those skilled in the art understand that a non-flat structure may nevertheless be said to be inclined at a single angle in accordance with the plain and ordinary meaning of the asserted claims.

3.      **The District Court Erred To The Extent It Read A *Flat* Chuck Wall Limitation Into The Claims From The Patent Specification**

The ordinary and customary meaning of claim terms controls unless the patent specification demonstrates "a clear intention [by the patentee] to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906-08 (Fed. Cir. 2004)

----

[2] A dispute between experts as to the angle at which the LOF+ chuck wall is inclined is clearly a fact issue to be resolved in the claim application step of the literal infringement analysis.

CCS0014971

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

(citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002))

("the specification does not describe the invention as limited to embodiments

having pressure jackets, and none of the other reasons that have been invoked for

giving claims a narrow reading are present").  Here, the specification contains no

such clear intention on the part of the patentee to exclude from the scope of the

claims a chuck wall of a particular shape.[3]

The District Court, however, identified two points in the patent specification

to support its view that the claims were limited to "flat" chuck walls: (1) the

description of a preferred embodiment of the claimed can end, and (2) a process

described in the specification for seaming a can end to a can body (JA42-43).

Neither point supports the view that the patent specification "overwhelmingly"

limits the claims to flat chuck walls as found by the District Court (JA42).   More

importantly, neither point provides the required "clear indication" establishing a

"manifest exclusion" of non-flat chuck walls as required by controlling precedent.

---

[3] Here, unlike *Biogen, Inc. v. Berlex Labs., Inc.* 318 F.3d 1132, 1140 (Fed. Cir. 2003), the specification includes no express limiting definition of the claim language.  And, unlike *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000), the specification includes no narrow characterization distinguishing the invention from prior art on the basis of the chuck wall shape.  And, unlike *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001), the specification includes no statement of express disclaimer.  Finally, unlike *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348-49 (Fed. Cir. 2004), the specification includes no over-arching statement that the invention is drawn to a narrow embodiment.

CCS0014972

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B27

a)    **The District Court Erroneously Limited The
Claims To The Preferred Embodiment**

The District Court found that the "preferred embodiment, drawings and all

references [in the specification] disclose exclusively flat chuck walls" (JA42-43),

and therefore, that the claimed chuck wall is limited to a flat shape (JA42).  This

was error.  The fact that flat chuck walls may be the preferred or even the only

embodiment disclosed in the specification is irrelevant to claim scope.  *See*

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004)

("[W]e have outright rejected the notion that disclosure of a single embodiment

necessarily limits the claims."); *Brookhill-Wilk,* 334 F.3d at 1298 ("Absent a clear

disclaimer of particular subject matter, the fact that the inventor anticipated that the

invention may be used in a particular manner does not limit the scope that

narrowed context.").

b)    **The District Court Erroneously Limited Can
End Product Claims Based Upon A
Specification Passage Relating To A Seaming
Process**

The District Court also pointed to a specification passage describing a

"second aspect of the invention" relating to "a method of forming a double seam

between a can body and can end" to support its view that the asserted product

claims are limited to flat chuck walls (JA43; JA110 at Col. 2, ll. 13-15).  But again,

CCS0014973

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B28

this specification passage provides no "clear indication" establishing a "manifest exclusion" of non-flat chuck walls, for two reasons.

### (1) The Process Passage Relied Upon By The District Court Is Irrelevant To Construction Of Product Claims

The passage relied upon by the District Court relates to an unclaimed and optional seaming method and seaming chuck that are irrelevant to the construction of the asserted product claims. The asserted claims are directed to unseamed can ends and contain no language limiting the claimed ends by any particular seaming method or chuck. In fact, claims directed to the seaming method were found to be separate and independent inventions by the PTO and withdrawn from consideration (JA994-96). Thus, the optional seaming method disclosed in the patent specification in no way limits the scope of the asserted product claims. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1328-29 (Fed. Cir. 2003) (it is "telling that neither in the briefing nor at oral argument did [the accused infringer] direct us to any *specific statement* in the [intrinsic record] to support the contention that the patentability of the product claims in suit depended upon the process by which those products are obtained") (emphasis added).

CCS0014974

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B29

(2)    **Even If Relevant, The Process Passage
Contains No Clear And Unmistakable
Exclusion Of Non-Flat Chuck Walls**

Even if the seaming process passage in the specification relied upon by the

District Court were somehow relevant to construction of product claims, and it is

not, the passage contains no clear and unmistakable exclusion of non-flat chuck

walls for two reasons.

First, the District Court ostensibly concluded that the only reasonable

interpretation of the patent specification passage describing a process that employs

a seaming chuck having a "substantially equal slope" to that of the chuck wall is

that the chuck wall must necessarily be flat. But the District Court ignored other

reasonable interpretations of the passage. At most, the passage states that chuck

wall slope may correspond to seaming chuck slope. The District Court ignored

that the slope of a non-flat chuck wall could still be *substantially equal* to the

seaming chuck slope even if the chuck wall is arcuate and the seaming chuck is

flat. Where, as here, a passage is subject to multiple reasonable interpretations, it

is improper to conclude that it evidences a clear and unmistakable exclusion of

claim scope. *Golight*, 355 F.3d at 1332 ("because . . . statements in the [intrinsic

record] are subject to multiple reasonable interpretations, they do not constitute a

clear and unmistakable departure from the ordinary meaning of [claim terms]").

CCS0014975

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

21

Second, the District Court ignored that the seaming process passage upon which it relied simply describes a preferred embodiment of *that process*. As such, the passage is not even a clear and unmistakable exclusion of *other seaming processes*. *See Liebel-Flarsheim Co.*, 358 F.3d at 906-08. Thus, it is axiomatic that the passage cannot be an exclusion of non-flat chuck walls from the scope of the asserted product claims.

c) **The District Court's Analysis Has Consistently Been Rejected By This Court**

The District Court's reading of the patent specification into the claims has been consistently rejected by this Court. Indeed, the present case is indistinguishable from *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870 (Fed. Cir. 2004) in which a narrow claim construction was rejected because there was no limiting language in the patent specification:

> Had the patentee intended to limit the disputed claim term to [a 'flat' chuck wall], it could have easily done so by explicitly modifying the disputed claim language with the term ['flat']. [There is] nothing in the written description of the [634] patent, much less the claim language, that precludes [the chuck wall from having a non-flat shape]. The law 'does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention.' [There is] no reason here to limit the scope of the claimed invention to [a flat chuck wall], when [the claim language] is broad enough to encompass [chuck walls having non-flat shapes] and those skilled in the art knew [that non-flat shapes could be used for chuck walls]."

CCS0014976

22

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

*Id.* at 880 (patent terms at issue here have been substituted for the analogous claim terms of the original quotation in reported decision).

Similarly, the present case is indistinguishable from *CCS Fitness* where again a narrow claim construction was rejected because there was no limiting language in the patent specification. 288 F.3d at 1366-69. There, the claim term at issue was a "member." *Id.* at 1362. The district court limited the claims to "members" having the shape disclosed in a preferred embodiment in the specification. 288 F.3d at 1362. The district court found that infringement was avoided because the shape of the accused device (a "multicomponent, curved member") differed from that disclosed in the specification ("a single component, straight-bar 'member'"). *Id.* at 1362-64. This Court squarely rejected that analysis:

> [The accused infringer] has not shown that anything in the specification or prosecution history overcomes the 'heavy presumption' that 'member' carries its ordinary meaning. The specification never requires a certain number of components or certain shape; nor does it limit the 'member' in either regard. Contrary to the district court's analysis, moreover, the specifications did not need to include a drawing of a multicomponent, curved member for the claimed invention to cover that particular embodiment. The drawings merely illustrated a particular embodiment of the claimed member and the specifications did not clearly assign a unique definition to 'member,' distinguish 'member' based on the prior art, disclaim subject matter or describe a single component, straight-bar 'member' as important to the invention.

CCS0014977

23

B32

*CCS Fitness*, 288 F.3d at 1367.

In conclusion, the patent specification here simply does not permit the rewriting of the asserted claims to require a flat chuck wall.

### 4. The District Court Erred To The Extent It Read A *Flat* Chuck Wall Limitation Into The Claims From The Prosecution History

The prosecution history nowhere discusses whether the claimed chuck wall requires any particular shape. Neither the applicant nor the patent examiner ever discussed chuck wall shape. The claims were never rejected over prior art on the basis of chuck wall shape. Thus, the prosecution history nowhere supports, let alone requires, a construction limiting the claims to flat chuck walls.

Nevertheless, the District Court concluded that the prosecution history supported its view that the claims were limited to "flat" chuck walls because it "discloses no contemplation by either inventor or examiner of a chuck wall that was not flat, notwithstanding that such configurations were known in the prior art" (JA43). In so doing, the District Court turned the law on its head at AB's request. There is no requirement that either the applicant or examiner make affirmative statements as to the broad scope of a claim for it to be broadly construed. *Superguide*, 358 F.3d at 881 (for claim term to cover digital technology it is "irrelevant that the patentees did not argue during prosecution of the . . . patent

CCS0014978

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B33

that 'regularly received television signal' also included digital technology"). In fact, the law is to the contrary.

For the prosecution history to limit the scope of an otherwise broadly drawn claim, there must be a clear and unmistakable disavowal or disclaimer of subject matter. *Sunrace Roots Enterprise Co. v. SRAM Corp.*, 336 F.3d 1298, 1306 (Fed. Cir. 2003) ("[T]he prosecution history may not be used to infer the intentional narrowing of a claim absent the applicants' clear disavowal of claim coverage."). Such a disavowal must be "clear and unmistakable." *Id.* Thus, while an affirmative statement of disavowal is required to *limit* a claim, it does not follow that an affirmative statement of inclusion is necessary to obtain *broad* scope for patent claims, as erroneously suggested by the District Court.

While the District Court pointed to no particular part of the prosecution history to support its narrow claim construction, it may have been persuaded by AB's characterization of the prosecution history below. AB pointed to a particular passage at which the patent examiner rejected claims over the prior art (JA447-48). In that passage, the Examiner stated that the then-pending claims were disclosed in the prior art except for the recited chuck wall angle range (JA1012-13).

Deleted Materials Subject
to Protective Order

CCS0014979

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

25

B34

Deleted Materials Subject
to Protective Order

But AB incorrectly characterized the patent examiner's comments below. The Examiner never stated that the claimed chuck walls were limited to flat or "frustoconical" walls either in the passage referred to by AB (JA1012-13) or elsewhere in the prosecution history. Thus, there is no evidence whatever that Crown ever acquiesced in the Examiner's supposed view that the claims were limited to flat chuck walls. In any event, neither the Examiner's comment nor Crown's response constituted a clear and unambiguous disavowal of non-flat chuck walls.

In fact, there was no reason for either the examiner or Crown to have limited the claims to flat chuck walls because the prior art relied upon by the examiner already disclosed flat chuck walls. Actually, Crown successfully distinguished the claims from the prior art, not based on chuck wall shape, but rather based on the fact that the prior art failed to disclose chuck walls inclined at an angle within the recited range (see, e.g., JA1027). Thus, because the claims were ultimately allowed, not on the basis of chuck wall *shape*, but rather on the basis of chuck wall *angle*, there was no acquiescence in a supposed construction

CCS0014980

26

limited to flat chuck walls. *See 3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-74 (Fed. Cir. 2003) ("An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization.").[4]

### B. The Construction of "*A* Concave Cross-Sectional Radius Of The Reinforcing Bead" Can Be Decided By This Court As Part Of Its De Novo Review Of Claim Construction

The District Court never construed the disputed phrase "*a* concave cross-sectional radius of the reinforcing bead." The parties disagree as to whether the term "*a*" should be construed to require *at least one* such cross sectional radius as urged below by Crown, or whether the term should be construed to require *one and only one* such cross-sectional radius as urged by AB. Because the disputed phrase is germane to infringement issues, this Court should construe it.

The word "a" in the phrase "*a* concave cross-sectional radius of the reinforcing bead" should be given its plain and ordinary dictionary meaning.

---

[4] It is notable that this case is removed from *3M* because there was no "characterization" of the claims by the Examiner here as being drawn to a can end having only a "flat" chuck wall. But even if there was such a characterization of the claims by the Examiner, the facts here *still* fail to support acquiescence in that characterization because the claims were distinguished over the prior art on the basis of chuck wall angle, not shape. Thus, even under those circumstances, the prosecution history could not limit the claims for the reasons discussed in *3M*.

CCS0014981

27

Webster's defines the indefinite article "a" to mean "one or more," which normally will control where, as here, the term "a" is preceded by the open transitional phrase "comprising." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising'"). Here, the claim recites a can end "comprising . . . an outwardly concave annular reinforcing bead . . . wherein . . . a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm."

Thus, under prevailing law, the plain meaning of "a concave cross-sectional radius" refers to at least one such radius. Nothing in the claim language limits the claimed can end to one and only one such radius. In fact, such a construction would be contrary to the ordinary meaning.

Further, the specification imposes no special meaning to the indefinite article "a" in the phrase "*a* concave cross-sectional radius" that is different from the ordinary and customary meaning as set forth above. *See KCJ Corp.*, 223 F.3d at 1356 ("[T]he article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article."). Similarly, there is no evidence in the prosecution history that reflects a clear and unambiguous disavowal of this meaning by the patentees. *See KCJ Corp.*, 223 F.3d at 1357 ("The intrinsic evidence simply provides no support for departing

CCS0014982

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

28

from the general rule."). Thus, the ordinary and customary meaning should control. *Liebel-Flarsheim Co.*, 358 F.3d at 913("[accused infringer] must overcome the 'heavy presumption' that [the claims] mean what they say") (second alteration in original).

### C.    The District Court Erred In Granting Summary Judgment Of Non-Infringement Under The Doctrine Of Equivalents

Infringement under the doctrine of equivalents "requires an intensely factual inquiry." *Toro Co. v. White Consolidated Indus., Inc.*, 266 F.3d 1367, 1369-70 (2001) (citations omitted). Consequently, the District Court's dismissal of Crown's infringement claim could be affirmed here, if and only if, "the record contain[ed] no genuine issue of material fact and [left] no room for a reasonable jury to find equivalence." *Id.* But that is not the case.

#### 1.    Summary Judgment Was Improper Because Crown Offered Evidence That The Differences Between Elements Of The Claimed Can End And LQF+ Were Insubstantial

The District Court's summary dismissal of Crown's infringement claim under the doctrine of equivalents was error because the Court failed to consider and credit Crown's evidence that there were only "insubstantial differences" between the claim element requiring a flat chuck wall (according to the wrong construction) and the LQF+. *Toro*, 266 F.3d at 1370 (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). But while the District Court

cited *Warner-Jenkinson*, it not only ignored the insubstantial differences test, but also Crown's infringement proof under that test.

Whether the insubstantial differences test has been satisfied is a question of fact. *Toro*, 266 F.3d at 1370 ("The question of whether [accused device] is insubstantially different from [claim invention] is a material question of fact."). In opposition to AB's motion, Crown offered evidence, in the form of a declaration by a competent and qualified expert, sufficient to demonstrate that, even if the claims were limited to flat chuck walls, there was infringement by equivalents because there were no substantial differences between LOF+ and claimed can ends (JA3476 at ¶ 66). Although AB's expert disagreed (JA601 at ¶ 28), a reasonable jury certainly could side with Crown's expert, and the District Court was required to draw all factual inferences in Crown's favor. *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1315(Fed. Cir. 2002) ("On summary judgment, all justifiable inferences are made in favor of the nonmovant.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Thus, the conflicting expert declarations, at a minimum, created a genuine issue of material fact that precluded the grant of summary judgment in favor of AB.

This Court should reverse the District Court's summary dismissal of Crown's infringement claim and remand for further proceedings on this basis alone.

CCS0014984

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B39

2.    **There Was Evidence Of Infringement By Equivalents Under A Proper Application Of The Optional Function-Way-Result Test**

In appropriate cases, "the function-way-result test" may offer "additional guidance on the question of equivalence." *Toro*, 266 F.3d at 1370. Whether or not the function-way-result test is satisfied is also a question of fact. *Teleflex*, 299 F.3d at 1323 ("A determination of infringement, both under literal and the doctrine of equivalents, is a question of fact."). Here, in addition to the insubstantial differences test, Crown also proffered evidence of equivalence under the function-way-result test.

a)    **Crown Offered Evidence That The Elements Of The LOF+ Performed The Same Function, In Substantially The Same Way, To Achieve Substantially The Same Result As The Claimed End**

In opposing AB's summary judgment motion, Crown's expert showed that the claimed chuck wall not only performed the function of reducing "metal usage in the can end when compared to conventional ends while maintaining industry-standard pressure performance" (JA3476 at ¶68), but also that the LOF+ chuck wall satisfied the metal savings function in the same way as the claimed chuck wall and achieved the same result (JA3476-78 at ¶¶ 66-71, 74). In fact, AB never refuted Crown's assertion that that the LOF+ chuck wall was equivalent to the claimed chuck wall in terms of metal savings or pressure performance. Thus, the

CCS0014985

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B40

District Court correctly concluded that the LOF+ can ends not only satisfied the metal savings/pressure retention function of the claimed chuck wall, but did so in the very "same way" as in the patent (JA44).

This conclusion, by itself, should have ended the doctrine of equivalents inquiry and compelled the denial of AB's motion. This Court should reverse the District Court's dismissal of Crown's infringement claim on this ground alone, and remand for further proceedings.

> **b)     The Fact That The LOF+ Chuck Wall May Not Perform An Optional, Unclaimed and Process-Related Function Of The Recited Chuck Wall Provided No Basis For Dismissal Of Crown's Infringement Claim**

Even though it found that the LOF+ satisfied the metal savings function of the invention, the District Court nevertheless summarily dismissed Crown's infringement claim because it found:

(1) the "flat chuck wall of the patented lid" also performed "the significant function of facilitating the sealing process by permitting the use of a simple frustoconical chuck which can drive on the wall without entering the anti-peaking bead" (JA44-45); and

(2) the arcuate "chuck wall of the accused lid does not permit the use of a frustoconcial chuck" (JA45).

CCS0014986

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B41

The District Court's conclusion, however, was legally erroneous because it improperly limited the scope of the asserted product claims with reference to an optional and unclaimed method for seaming can ends onto can bodies. *See Toro*, 266 F.3d at 1371 ("[W]hile [claimed] structure could have a variety of other functions (as is often the case with structures), . . . these functions do not become part of the claimed structure unless claimed as such."); *see also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351(Fed. Cir. 2003) ("[T]he relevant analysis is 'of the role played by each element in the context of the specific patent claim,' . . . not whether the accused element is capable of performing different roles than the claim element in other contexts.") (citation omitted).

In *Boehringer*, this Court affirmed a judgment of infringement by equivalents and rejected the alleged infringer's focus on an "optional" function of the accused product that was "irrelevant to the claim in suit." 320 F.3d at 1351-52 ("The fact that [accused product] can perform other functions in different ways to produce different results is not relevant."). In the present case, the patent claims are directed to can ends themselves, regardless of how those ends are seamed onto a can body. Thus, where the process-related function relied upon by the District Court relates to an unclaimed and optional seaming method disclosed in the patent

33

CCS0014987

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B42

specification, a reasonable jury could find that this function is irrelevant to the asserted claims.

In *Toro*, this Court reversed a grant of summary judgment of non-infringement under the doctrine of equivalents because the district court erroneously focused upon unclaimed functions that were not part of the claimed structure. 266 F.3d at 1371-72. As in *Toro*, Crown is entitled to present evidence to the fact finder that the only pertinent function of the claimed can end is the promotion of metal savings. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ("An analysis of the role played by each element *in the context of the specific patent claim* will thus inform the inquiry as to whether a substitute element matches the function, way and result of the claimed element") (emphasis added). For example, Crown is entitled to present to the fact finder evidence in the intrinsic record that 1) metal savings is, *of necessity*, the function linked to the can end of the claims (JA110 at Col. 1, ll. 20-22 and 54; JA113, Col 8, ll. 21-23; JA113 at Table 6); 2) metal savings promoted by the can end of the claims is said to distinguish the claimed invention from prior art can ends (JA110 at Col. 1, l. 54; JA113, JA113 at Table 6); and 3) during prosecution, the applicants distinguished the prior art on the basis of metal savings, which the examiner understood to be the function of the claimed invention (*see e.g.*, JA1040).

The District Court's focus on the optional process-related functions of the claimed can ends was error. There was no need for Crown to show that the unclaimed seaming process would be satisfied in order to avoid dismissal of its infringement claim.

## V.    CONCLUSION

For all of the foregoing reasons, the judgment of the District Court holding that the asserted claims of the 634 patent have not been infringed, either literally or under the doctrine of equivalents, should be reversed and this case remanded to the District Court for further proceedings.

Respectfully submitted,

March 23, 2004

Dale M. Heist
Kevin M. Flannery
WOODCOCK WASHBURN, LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103
(215) 568-3100
Attorneys for Defendant-Appellant
Crown Cork & Seal Technologies
Corporation

CCS0014989

Crown Packaging, et al. v. Rexam
USDC District of DE CA 05-608

B44



US006065634A

# United States Patent [19]

## Brifcani et al.

[11] Patent Number: 6,065,634

[45] Date of Patent: May 23, 2000

[54] CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY

[75] Inventors: **Mouayed Mamdooh Brifcani**, Oxfordshire; **Peter James Hinton**, Swindon Wiltshire; **Mark Christopher Kysh**, Wantage, all of United Kingdom

[73] Assignee: **Crown Cork & Seal Technologies Corporation**, Alsip, Ill.

[21] Appl. No.: 08/945,698

[22] PCT Filed: Mar. 25, 1996

[86] PCT No.: PCT/GB96/00709

§ 371 Date: Apr. 13, 1998

§ 102(e) Date: Apr. 13, 1998

[87] PCT Pub. No.: WO96/37414

PCT Pub. Date: Nov. 28, 1996

[30] Foreign Application Priority Data

May 24, 1995 [GB] United Kingdom ............... 9510515

[51] Int. Cl.[7] ............................................. B21D 51/44

[52] U.S. Cl. ............... 220/619; 220/620; 220/906; 220/623

[58] Field of Search ...................... 220/619, 620, 220/623, 625, 621, 617, 615, 610, 62.22, 62.12, 268, 269, 270, 906

[56] References Cited

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D. 279,265 | 6/1985 | Turner et al. . |
| D. 285,661 | 9/1986 | Brownbill . |
| D. 300,608 | 4/1989 | Taylor et al . |
| D. 304,302 | 10/1989 | Dalli et al . |
| D. 337,521 | 7/1993 | McNulty . |
| D. 347,172 | 5/1994 | Heynan et al . |
| D. 352,898 | 11/1994 | Vacher . |
| D. 406,236 | 3/1999 | Brifcani et al |

| | | | |
|---|---|---|---|
| 3,023,927 | 3/1962 | Ehman | 220/619 |
| 3,967,752 | 7/1976 | Cudzik . | |
| 4,015,744 | 4/1977 | Brown . | |
| 4,024,981 | 5/1977 | Brown . | |
| 4,148,410 | 4/1979 | Brown . | |
| 4,150,765 | 4/1979 | Mazurek . | |
| 4,210,257 | 7/1980 | Radtke . | |
| 4,217,843 | 8/1980 | Kraska | 413/12 |
| 4,276,993 | 7/1981 | Hasegawa . | |
| 4,286,728 | 9/1981 | Fraze et al . . | |
| 4,448,322 | 5/1984 | Kraska | 220/623 |
| 4,606,472 | 8/1986 | Taube et al. | 220/500 |
| 4,674,649 | 6/1987 | Pavely . | |
| 4,681,238 | 7/1987 | Sanchez . | |
| 4,685,582 | 8/1987 | Pulciani et al . | |
| 4,809,861 | 3/1989 | Wilkinson et al | 220/623 |
| 4,893,725 | 1/1990 | Ball et al . | |
| 5,064,087 | 11/1991 | Koch . | |
| 5,129,541 | 7/1992 | Voigt et al. . | |
| 5,494,184 | 2/1996 | Noguchi et al . | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 153 115 A3 | 8/1985 | European Pat. Off . . |
| 2 196 891 | 5/1988 | United Kingdom . |
| 2 218 024 | 11/1989 | United Kingdom . |
| WO 93/17864 | 9/1993 | WIPO . |

*Primary Examiner*—Stephen Castellano
*Attorney, Agent, or Firm*—Burns Doane Swecker & Mathis L.L.P.

[57]                    ABSTRACT

A can end (22) comprising a peripheral cover hook (23), a chuck wall (24) dependent from the interior of the cover hook, an outwardly concave annular reinforcing bead (25) extending radially inwards from the chuck wall, and a central panel (26) supported by an inner portion (27) of the reinforcing bead, characterised in that, the chuck wall (24) is inclined to an axis perpendicular to the exterior of the central panel at an angle between 20° and 60°, and the concave cross-sectional radius of the reinforcing bead (25) is less than 0.75 mm.

9 Claims, 4 Drawing Sheets



U.S. Patent        May 23, 2000        Sheet 1 of 4        6,065,634



**FIG. 1**
*PRIOR ART*

**FIG. 2**
*PRIOR ART*

**FIG. 3**
*PRIOR ART*



**FIG. 4**



**FIG. 5**

**U.S. Patent**        May 23, 2000        Sheet 3 of 4        **6,065,634**



## FIG. 6



## FIG. 7

B48

U.S. Patent    May 23, 2000    Sheet 4 of 4    6,065,634



FIG. 8

FIG. 9

B49

6,065,634

1

### CAN END AND METHOD FOR FIXING THE SAME TO A CAN BODY

This invention relates to an end wall for a container and more particularly but not exclusively to an end wall of a can body and a method for fixing the end wall to the can body by means of a double seam.

U.S. Pat. No. 4,093,102 (KRASKA) describes can ends comprising a peripheral cover hook, a chuck wall dependent from the interior of the cover hook, an outwardly concave annular re-inforcing bead extending radially inwards from the chuck wall and a central panel joined to an inner wall of the reinforcing bead by an annular outwardly convex bead. This can end is said to contain an internal pressure of 90 psi by virtue of the inclination or slope of the chuck wall, bead outer wall and bead inner wall to a line perpendicular to the centre panel. The chuck wall slope D° is between 14° and 16°, the outer wall slope B is between 34° and the inner wall slope C° is between 10 and 16° leading into the outwardly convex bead. We have discovered that improvements in metal usage can be made by increasing the slope of the chuck wall and limiting the width of the anti peaking bead.

U.S. Pat. No. 4,217,813 (KRASKA) describes an alternative design of can end in which the countersink has inner and outer flat walls, and a bottom radius which is less than three times the metal thickness. The can end has a chuck wall extending at an angle of approximately 24° to the vertical. Conversely, our European Patent application EPO340955A describes a can end in which the chuck wall extends at an angle of between 12° and 20° to the vertical.

Our European Patent No. 0153115 describes a method of making a can end suitable for closing a can body containing a beverage such as beer or soft drinks. This can end comprises a peripheral flange or cover hook, a chuck wall dependant from the interior of the cover hook, an outwardly concave reinforcing bead extending radially inwards from the chuck wall from a thickened junction of the chuck wall with the bead, and a central panel supported by an inner portion of the reinforcing bead. Such can ends are usually formed from a prelacquered aluminum alloy such as an aluminum magnesium manganese alloy such as alloy 5182.

Our International Patent Application published no. WO93/17864 describes a can end suitable for a beverage can and formed from a laminate of aluminum/manganese alloy coated with a film of semi crystalline thermoplastic polyester. This polyester/aluminum alloy laminate permitted manufacture of a can end with a narrow, and therefore strong reinforcing bead in the cheaper aluminum manganese alloy.

These known can ends are held during double seaming by an annular flange of chuck, the flange being of a width and height to enter the anti-peaking bead. There is a risk of scuffing if this narrow annulus slips. Furthermore a narrow annular flange of the chuck is susceptible to damage.

Continuing development of a can end using less metal, whilst still permitting stacking of a filled can upon the end of another, this invention provides a can end comprising a peripheral cover hook, a chuck wall dependent from the interior of the chuck wall, an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall, and a central panel supported by an inner portion of the reinforcing bead, characterised in that, the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 30° and 60°, and the concave bead narrower than 1.5 mm (0.060"). Preferably, the angle of the chuck wall to the perpendicular is between 40° and 45°.

In a preferred embodiment of the can end an outer wall of the reinforcing bead is inclined to a line perpendicular to

2

the central panel at an angle between −15° to +15° and the height of the outer wall is up to 2.5 mm.

In one embodiment the reinforcing bead has an inner portion parallel to an outer portion jointed by said concave radius.

The ratio of the diameter of the central panel to the diameter of the peripheral curl is preferably 80% or less.

The can end may be made of a laminate of thermoplastic polymer film and a sheet aluminum alloy such as a laminate of a polyethylene terephthalate film on an aluminium-manganese alloy sheet or ferrous metal typically less than 0.010 (0.25 mm) thick for beverage packaging. A lining compound may be placed in the peripheral cover hook.

In a second aspect this invention provides a method of forming a double seam between a can body and a can end according to any preceding claim, said method comprising the steps of:

placing the curl of the can end on a flange of a can body supported on a base plate, locating a chuck within the chuck wall of the can end to centre the can end on the can body flange, said chuck having a frustoconical drive surface of substantially equal slope to that of the chuck wall of the can end and a cylindrical surface portion extending away from the drive surface within the chuck wall, causing relative motion as between the assembly of can end and can body and a first operation seaming roll to form a first operation seam, and thereafter causing relative motion as between the first operation seam and a second operation roll to complete a double seam, during these seaming operations the chuck wall becoming bent to contact the cylindrical portion of the chuck.

Various embodiments will now be described by way of example and with reference to the accompanying drawings in which:

FIG. 1 is a diagrammatic sketch of known apparatus for forming a double seam;

FIG. 2 is an enlarged sectioned side view of a known chuck and can end before seaming;

FIG. 3 is a sectioned view of a fragment of a known double seam;

FIG. 4 is a sectioned side view of a can end according to this invention before edge curling;

FIG. 5 is a sectioned side view of the can end of FIG. 4 on a can body before forming of a double seam;

FIG. 6 is a like view of the can end and body during first operation seaming;

FIG. 7 is a like view of the can end and body during final second operation seaming to create a double seam;

FIG. 8 is a fragmentary section of a chuck detail; and

FIG. 9 is a side view of the cans stacked one on the other.

In FIG. 1, apparatus for forming a double seam comprises a base plate 1, an upright 2 and a top plate 3.

A lifter 4 mounted in the base plate is movable towards and away from a chuck 5 mounted in the top plate. The top plate supports a first operation seaming roll 6 on an arm 7 for pivotable movement towards and away from the chuck. The top plate also supports a second operation seaming roll 8 on an arm 9 for movement towards and away from the chuck after relative motion as between the first operation roll and can end on the chuck creates a first operation seam.

As shown in FIG. 1 the chuck 5 holds a can end 10 firmly on the flange 11 of a can body 12 against the support provided by the lifter plate 4. Each of the first operation roll 6 and second operation roll 7 are shown clear of chuck before the active seam forming profile of each roll is moved in turn to form the curl of the can end and body flange to a double seam as shown in FIG. 3.

FIG. 2 shows on an enlarged scale the chuck 5 and can end 10. The can end comprises a peripheral curl 13, a chuck

6,065,634

| 3 | 4 |

wall 14 dependent from the interior of the curl, an outwardly concave anti-peaking bead 15 extending inwards from the chuck wall to support a central panel 16. Typically the chuck wall flares outwardly from the vertical at an angle C about 12° to 15°.

The chuck 5 comprises a body 17 having a threaded bore 18 permitting attachment to the rest of the apparatus (not shown). An annular bead 19 projects from the body 17 of the chuck to define with the end face of the body a cavity to receive the central panel 16 of the can end. The fit of panel 16 in annulus 19 may be slack between panel wall and chuck.

The exterior surface of the projecting bead 19 extends upwards towards the body at a divergent angle B of about 12° to the vertical to join the exterior of the chuck body 17 which tapers off an angle A° of about 4° to a vertical axis perpendicular to the central panel. The outer wall of the chuck 5 engages with the chuck wall at a low position marked "D" within the 12° shaped portion of the chuck bead 15.

As can ends are developed with narrower anti-peaking beads the chuck bead 19 becomes narrower and more likely to fracture. There is also a risk of scuffing of the can end at the drive position D which can leave unacceptable unsightly black marks after pasteurisation.

FIG. 3 shows a sectioned fragment of a typical double seam showing a desirable overlap of body hook 21 and end hook 20 between the can end 10 and can body 12.

FIG. 4 shows a can end, according to the invention, comprising a peripheral cover hook 23, a chuck wall 24 extending axially and inwardly from the interior of the peripheral cover hook, and outwardly concave reinforcing or anti-peaking bead 25 extending radially inwards from the chuck wall, and a central panel 26 supported or an inner portion panel with 27. The panel wall is substantially upright allowing for any metal spring back after pressing. The chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle $C_1$ between 20° and 60°; preferably between 40° and 45°. Typically the cross sectional radius of the antipeaking bead is about 0.5 mm.

Preferably the anti-peaking bead 25 is parallel sided, however the outer wall may be inclined to a line perpendicular to the central panel at an angle between −15° and +15° and the height $h_2$ of the outer wall may be up to 2.5 mm.

This can end is preferably made from a laminate of sheet metal and polymeric coating. Preferably the laminate comprises an aluminium magnesium alloy sheet such as 5182, or aluminium manganese alloy such as 3004 with a layer of polyester film on one side. A polypropylene film may be used on the "other side" if desired

Typical dimensions of the example of the invention are:

| d5 | overall diameter (as stamped) | 65.83 mm |
| d4 | PC diameter of seaming panel radius | 61.54 mm |
| d3 | PC diameter of seaming panel/chuck wall radius | 59.93 mm |
| $r_1$ | seaming panel/chuck wall radius | 1.27 mm |
| $r_2$ | seaming panel radius | 5.56 mm |
| $r_3$ | concave radius in antipeaking bead | <1.5 mm |
| $d_2$ | maximum diameter of antipeaking bead | 50.00 mm |
| $d_1$ | minimum diameter of antipeaking bead | 47.24 mm |
| $h_2$ | overall height of can end | 6.86 mm |
| $h_1$ | height to top of antipeaking bead | 5.02 mm |
| $h_3$ | panel depth | 2.29 mm |
| $h_1$ | outer wall height | 1.78 mm |
| c | chuck wall angle to vertical | 43° |

From these dimensions it can be calculated that the ratio of central panel diameter of 47.24 mm to overall diameter of can end 65.84 is about 0.72 to 1.

For economy the aluminium alloy is in the form of sheet metal less than 0.010" (0.25 mm). A polyester film on the metal sheet is typically 0.0005" (0.0125 mm).

Although this example has an overall height $h_2$ at 6.86 mm we have also found that useful can ends may be made with an overall height as little as 6.35 mm (0.25").

FIG. 5 shows the peripheral flange 23 of can end 22 of FIG. 4 resting on the flange 11 of a can body 12 before formation of a double seam as discussed with reference to FIG. 1.

In FIG. 5 a modified chuck 30 comprises a chuck body 31 having a frustoconical drive surface 32 engaging with the chuck wall 24 of the can end 22.

The frustoconical drive surface is inclined outwardly and axially at an angle substantially equal to the angle of inclination C° of between 20° and 60°; in this particular example on chuck angle C of 43° is preferred. The drive surface 32 is a little shorter than the chuck wall 24 of the chuck body. The substantially cylindrical surface portion 33, rising above the drive surface 32, may be inclined at an angle between +4° and −4° to a longitudinal axis of the chuck. As in FIG. 2, this modified chuck 30 has a threaded portion to permit attachment to the rest of the double seam forming apparatus (not shown).

In contrast to the chuck of FIG. 2 the modified chuck 30 is designed to drive initially on the relatively large chuck wall 32 without entering deeply into the anti-peaking bead 25. Further drive is obtained at the juncture of chuck wall 32 and cylindrical wall 33 as chuck wall of end 24 is deformed during 1st and 2nd operation seaming FIGS. 6 and 7. The chuck 30 shown in FIG. 5 has an annular bead of arcuate cross section but this bead is designed to enter the chuck wall without scratching or scuffing a coating on the can end; not to drive on the concave bead surface as shown in FIG. 2.

It will be understood that first operation seaming is formed using apparatus as described with reference to FIG. 1.

FIG. 6 shows the modified can end and chuck during formation of a first operation seam shown at the left of FIG. 2 as formed by a first operation roll 34 adjacent the interfolded peripheral flange of the can end and flange 11 body 12.

During relative rotation as between the can end 22 and first operation roll 34 the edge between the chuck drive wall 32 and cylindrical wall 33 exerts a pinching force between chuck 30 and roll 34 to deform the chuck wall of the can end as shown.

After completion of the first operation seam the first operation roll is swung away from the first operation seam and a second operation roll 38 is swung inwards to bear upon the first operation seam supported by the chuck 30. Relative rotation as between the second operation roll 38 and first operation seam supported by a chuck wall 30 completes a double seam as shown in FIG. 7 and bring the upper portion 24 of the chuck wall 24 to lie tightly against the can body neck in a substantially upright attitude as the double seam is tightened by pinch pressure between the second operation roll 38 and chuck 30.

Can ends according to the invention were made from aluminium alloy 5182 and an aluminium alloy 3004/polymer laminate sold by CarnaudMetalbox under the trade mark ALULITE. Each can end was fixed by a double seam to a drawn and wall ironed (DWI) can body using various chuck angles and chuck wall angle as tabulated in Table 1 which records the pressure inside a can at which the can ends failed:

6,065,634

5          6

### TABLE 1

| | CAN END DATA | | | PRESSURE IN BAR (PSIG) TO FAILURE FOR VARIOUS SEAMING CHUCK ANGLES B° | | | | |
|---|---|---|---|---|---|---|---|---|
| SAMPLE CODE | MATERIAL Thickness mm | MINIMUM Diameter D1 mm | CHUCK WALL ANGLE "C" | 23° | 10°/23° | 4°/23° | 23° WITH D. SEAM RING | 10/20 /23° WITH D. SEAM RING |
| A | ALULITE 0.23 | 52.12 (2.052") | 21 13° | 5.534 (80.20) | 5.734 (83.10) | 5.311 (76.97) | 6.015 (87.17) | 5.875 (85.14) |
| B | 5182 0.244 | 52.12 (2.052") | 21 13° | 5.599 (81.15) | 5.575 (80.79) | 5.381 (77.99) | 5.035 (86.01) | 5.895 (85.43) |
| C | 5182 0.245 | 52.12 (2.052") | 21 13° | 6.004 (87.02) | 5.910 (85.65) | 5.800 (84.06) | 6.224 (90.21) | 6.385 (92.54) |
| D | ALULITE 0.23 | 51.92 (2.044") | 21 13° | 5.334 (77.31) | 5.229 (75.78) | 5.238 (75.91) | 5.730 (83.04) | 5.404 (78.32) |
| E | 5182 0.224 | 51.92 (2.044") | 21 13° | 5.555 (80.50) | 5.514 (79.92) | 5.354 (77.60) | 5.895 (85.43) | 5.930 (55.94) |
| F | 5182 0.245 | 51.92 (2.044") | 23° | 5.839 (84.63) | 5.804 (84.12) | 5.699 (82.59) | 6.250 (90.58) | 6.435 (93.26) |
| G | ALULITE 0.23 | 51.92 (2.044") | 23° | | | 5.123 (74.25) | | |
| H | 5182 0.224 | (51.92) (2.044") | 23° | | | 5.474 (79.34) | | |
| I | 5182 0.245 | 51.92 (2.044") | 23° | | | 5.698 (82.58) | | |

All pressures on unaged shells in bar (psig). 5182 is an aluminium-magnesium-manganese alloy lacquered. The "ALULITE" used is a laminate of aluminium alloy and polyester film.

The early results given in Table 1 showed that the can end shape was already useful for closing cans containing relatively low pressures. It was also observed that clamping of the double seam with the "D" seam ring resulted in improved pressure retention. Further tests were done using a chuck wall angle and chuck drive surface inclined at nearly 45°: Table 2 shows the improvement observed:

### TABLE 2

| Sample Code | $h_2$ mm (inches) | $h_3$ mm (inches) | $h_4$ mm (inches) | Chuck Angles B° | |
|---|---|---|---|---|---|
| | | | | 43° | 43° with seam ring |
| J | 6.86 (0.270) | 2.39(0.094) | 2.29 (0.09) | 4 89(70.9) | 6 15(89.1) |
| K | 7.11 (0.280) | 2.64(0.104) | 2.54 (0.10) | 4 83(70.0) | 5 98(86.6) |
| L | 7.37 (0 290) | 2.80(0.114) | 2.79 (0.11) | 4.74(68.7) | 6.44(93.3) |

Table 2 is based on observations made on can ends made of aluminum coated with polymer film (ALULITE) to have a chuck wall length of 5.029 mm (0.198") up the 43° slope.

It will be observed that the container pressures achieved for samples J, K, L, 4 89 bar (70.9 psig), 4.83 bar (70 0 psig) and 4.74 bar (68.7 psig) respectively were much enhanced by clamping the double seam.

In order to provide seam strength without use of a clamping ring, modified chucks were used in which the drive slope angle C° was about 43° and the cylindrical surface 33 was generally +4° and −4°. Results are shown in Table 3.

### TABLE 3

| SAMPLE CODE | MATERIAL | LINING COMPOUND | CHUCK ANGLES DRIVE/WALL | PRESSURE |
|---|---|---|---|---|
| c | 0.224 5182 | with | 43° | 4.60 (66.7) |
| g | 0.23 Alulite | with | 43°/4° | 5.45 (79.0) |

### TABLE 3-continued

| SAMPLE CODE | MATERIAL | LINING COMPOUND | CHUCK ANGLES DRIVE/WALL | PRESSURE |
|---|---|---|---|---|
| h | 0.224 5182 | with | 43°/4° | 6.46 (93.6) |
| j | 0.23 Alulite | without | 43°/4° | 5.91 (85.6) |
| k | 0.244 5182 | without | 43°/4° | 6.18 (89.6) |
| l | 0.23 Alulite | without | 43°/−4° | 5.38 (77.9) |
| m | 0.25 Alulite | without | 43°/−4° | 6.20 (89.8) |
| n | 0.23 Alulite | without | 43°/0° | 6.11 (88.5) |
| o | 0.25 Alulite | without | 43°/0° | 6.62 (95.9) |

ALL PRESSURES IN BAR (PSIG)
ALL CODES
Reform Pad Dia. 47 24 mm (1.860") (202 Dia.)
6.86 mm (0.270") unit Depth $h_2$ 2.39 mm (0.094") Panel Depth

Table 3 shows Code "O" made from 0.25 mm Alulite to give 6.62 bar (95 psi) Pressure Test Result indicating a can end suitable for pressurised beverages. Further chucks with various band lengths (slope) were tried as shown in Table 4.

### TABLE 4

| | CHUCK WALL ANGLE | | | |
|---|---|---|---|---|
| | 43°/0° 1.9 mm LAND SHARP TRANSITION | | 43°/0° 1.27 MM LAND R. 0.5 MM BLEND | |
| VARIABLE CODE | NO. D.SEAM RING | WITH D.SEAM RING | NO. D.SEAM RING | WITH D.SEAM RING |
| 7 | 6.699(97.08) | 7.017(101.7) | 6.779(98.24) | 7.006(101.54) |
| 8 | 6.315(91 52) | 6.521(94.5) | 6.293(91 2) | 6.236(90.37) |
| 9 | 6.095(88.33) | 6.30(91 3) | 6.238(90.4) | 6.719(97.38) |

B52

6,065,634

7

ALL PRESSURES IN BAR (PSIG)
CODE

7=0.25 mm Alulite, 47.24 mm (1.860") Reform Pad, 6.86 mm (0.270") $h_2$ Depth, 2.38 mm (0.094") Panel; $b_4$ depth=2.29 mm (0.09")

8=0.23 mm Alulite, 47.24 mm (1.860") Reform Pad, 7.11 mm (0.280") $h_2$ Depth, 2.64 mm (0.104") Panel; $b_4$ depth=2.54 mm (0.10")

9=0.23 mm Alulite, 47.24 mm (1.860") Reform Pad, 7.37 mm (0.290") $h_2$ Depth, 2.90 mm (0.114") Panel; $b_4$ depth=2.79 mm (0.11")

Table 4 shows results of further development to seaming chuck configuration to bring closer the pressure resistance of ring supported and unsupported double seams.

Table 4 identifies parameters for length of generally vertical cylindrical surface 33 on the seaming chuck 30, and also identifies a positional relationship between the chuck wall 24 of the end and the finished double seam. It will be understood from FIG. 7 shows that the forces generated by thermal processing or carbonated products are directed towards the resisted by the strongest portions of the completed double seam.

Table 5 shows results obtained from a typical seam chuck designed to give double seam in accordance with parameters and relationships identified in Table 4. Typically:—As shown in FIG. 8 the chuck comprises a cylindrical land of length 'l' typically 1.9 mm (0.075") and frustoconical drive surface 32 inclined at an angle Y°, typically 43°, to the cylindrical to which it is joined by a radius R typically 0.5 mm (0.020"). Angle "X" is typically 90°.

TABLE 5

| | | DIMENSIONS mm | | PRESSURE | |
|---|---|---|---|---|---|
| CODE | GAUGE | $h_2$ | $b_3$ | bar | (psi) |
| 20 | 23 mm | 7.37 (.290") | 2.36 (.093") | 6.383 | (92.6) |
| 21 | 23 mm | 7.37 (.290") | 2.36 (.093") with compound | 6.402 | (92.8) |

8

TABLE 5-continued

| | | DIMENSIONS mm | | PRESSURE | |
|---|---|---|---|---|---|
| CODE | GAUGE | $h_2$ | $b_3$ | bar | (psi) |
| 26 | 23 mm | 6.87 (.2705") | 2.37 (.0935") | 6.144 | (89.88) |
| 27 | 23 mm | 6.87 (.2705") | 2.37 (.0934") with compound | 6.071 | (88.0) |
| 28 | 23 mm | 7.37 (.290") | 2.36 (.093") | 6.414 | (93.0) |
| 29 | 23 mm | 7.37 (.290") | 2.84 (.112") | 6.725 | (97.5) |
| 30 | 23 mm | 6.86 (.270") | 2.37 (.0935") | 6.062 | (87.9) |
| 31 | 23 mm | 6.86 (.270") | 2.37 (.0935") | 6.013 | (87.2) |
| 34 | 25 mm | 7.37 (.290") | 2.87 (.113") | 7.787 | (112.9) |
| 36 | 25 mm | 7.32 (.288") | 2.34 (.092") | 7.293 | (105.8) |
| 37 | 25 mm | 7.32 (.288") | 2.34 (.092") with compound | 7.402 | (107.3) |
| 38 | 25 mm | 6.87 (.2705") | 2.41 (.095") | 7.077 | (102.6) |
| S16 | 25 mm | 6.35 (.250") | 2.34 (.092") with compound | 6.937 | (100.6) |

All variables made from Alulite, 10 Can per variable.

The can ends may be economically made of thinner metal if pressure retention requirements permit because these can ends have a relatively small centre panel in a stiffer annulus.

FIG. 9 shows a can 12a, closed according to this invention, stacked upon a like can 12b shown sectioned so that stacking of the upper can on the lower can end is achieved by a stand bead 31a of the upper can fits inside the chuck wall 24 of the lower can end with the weight of the upper can resting on the double seam 34 of the lower can end.

The clearance between the bottom of the upper can body and lower can end may be used to accommodate ring pull features (not shown) in the can end or promotional matter such as a coiled straw or indicia.

Using the experimental data presented above, a computer programme was set up to estimate the resistance to deformation available to our can ends when joined to containers containing pressurised beverage. The last two entries on the table relate to a known 206 diameter beverage can end and an estimate of what we think the KRASKA patent teaches.

TABLE 6

| END SIZE Bead O:D:1D $d_2$:$d_1$ mm | OVERALL DIA $d_2$ mm | PANEL DIA $d_1$ mm | RATIO $D_2/D_1$ | CHUCK WALL ANGLE B° | CHUCK WALL LENGTH L mm | RE-ENFORCING RAD $r_3$ mm | INNER WALL HEIGHT $h_3$ mm | OUTER WALL HEIGHT $b_4$ mm | PREDICTED CUT EDGE φ (* DENOTES ACTUAL) | ACTUAL THICKNESS TO CONTAIN PSI |
|---|---|---|---|---|---|---|---|---|---|---|
| 206–204 | 64.39 (2.535") | 49.49 (1.9485") | 1.3010 | 33.07° | 4.22 (0.166") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 75.230 (2.9618*) | 0.255 |
| 206–202 | 64.39 (2.535") | 47.33 (1.7744") | 1.3604 | 42.69° | 4.95 (0.185") | 0.52 (0.0204") | 1.78 (0.092") | 1.78 (0.070") | 74.272 | 0.255 |
| 206–200 | 64.39 (2.535") | 45.07 (1.7744") | 1.4287 | 50.053° | 5.82 (0.229") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.713 (2.9021*) | 0.255 |
| 204–202 | 62.18 (2.448") | 47.33 (1.8634") | 1.3137 | 29.78° | 3.96 (0.156") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 73.767 (2.9042*) | 0.24 |
| 204–200 | 62.18 (2.448") | 45.07 (1.7744") | 1.3796 | 40.786° | 4.70 (0.185") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 72.911 (2.8705*) | 0.24 |
| 202–200 | 71.98 (2.834") | 45.07 (1.7744") | 1.597 | 30.266° | 4.09 (0.161") | 0.52 (0.0204") | 2.34 (0.092") | 1.78 (0.070") | 71.984 (2.834*) | 0.225 |
| 206 std | 64.69 (2.547") | 51.92 (2.044") | 1.2461 | 15.488° | 4.39 (0.173") | 0.56 (0.022") | 2.03 (0.080") | — | 76.454 (3.010")* | 0.28 |
| KRASKA ESTIMATE | 64.39 (eg 2.535") | — | — | 15° | 2.54 (0.100") | 0.81 (0.032") | 1.65 (0.065") | 2.29 (0.090") | 78.080 (3.074") | 0.292 (0.0115") |

All experiments modelled on a notional aluminium alloy of yield strength 310 mpa 0.25 mm thick. The standard was also 310 mpa BUT 0.275 mm thick.

6,065,634

9

What is claimed is:

1. A can end comprising:

a peripheral cover hook;

a chuck wall dependent from an interior of the cover hook;

an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall; and

a central panel supported by an inner portion of the reinforcing bead;

wherein the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 40° and 60°, and a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm.

2. The can end according to claim 1, wherein the angle of the chuck wall to the perpendicular axis is between 40° and 45°.

3. The can end according to claim 1, wherein an outer wall of the reinforcing bead is inclined to a line perpendicular to the central panel of the can end at an angle between –15° and +15° and the height of the outer wall is up to 2.5 mm.

4. The can end according to claim 1, wherein the reinforcing bead has an inner portion parallel to an outer portion joined by said concave radius.

5. The can end according to claim 1, wherein the ratio of the diameter of the central panel to the diameter of the peripheral cover hook is 80% or less.

10

6. The can end according to claim 1, wherein the can end is made of a laminate of thermoplastic polymer film and a sheet aluminum alloy.

7. The can end according to claim 1, wherein the can end is made of tinplate.

8. The can end according to claim 1, wherein the can end is made of electrochrome coated steel.

9. A can end comprising:

a peripheral cover hook;

a chuck wall dependent from an interior of the cover hook;

an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall; and

a central panel supported by an inner portion of the reinforcing bead;

wherein the chuck wall in inclined to an axis perpendicular to the exterior of the central panel at an angle between 30° and 60°, and a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm;

wherein the can end is made of a laminate of thermoplastic polymer film and a sheet aluminum alloy; and

wherein the laminate comprises a polyethylene teraphthalate film on an aluminum-manganese-alloy sheet less than 0.25 mm thick.

* * * * *

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2007, I caused to be served by hand delivery and electronic mail the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Barry M. Klayman, Esq.
> Wolf, Block, Schorr
>  and Solis-Cohen LLP
> Wilmington Trust Center
> 1100 North Market
> Street, Suite 1001
> Wilmington, DE   19801

I hereby certify that on March 9, 2007, I caused the foregoing document to be served via electronic mail on the following non-registered participants:

> Dale M. Heist, Esq.
> heist@woodcock.com
> Chad E. Ziegler, Esq.
> ziegler@woodcock.com
> Woodcock Washburn LLP
> Cira Centre
> 2929 Arch Street, 12th Floor
> Philadelphia, PA 19104-2891

> Anne Shea Gaza (#4093)
> Gaza@rlf.com
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700