**RICHARDS, LAYTON & FINGER**
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA

DIRECT DIAL NUMBER
302-651-7539
GAZA@RLF.COM

May 1, 2007

**VIA HAND DELIVERY & E-FILING**
The Honorable Mary Pat Thynge
U.S. Magistrate Judge
U.S. District Court for the District of
Delaware
844 North King Street
Lock Box 8
Wilmington, DE 19801

> Re: *Crown Packaging Technology, Inc. and Crown Cork & Seal USA, Inc. v. Rexam Beverage Can Co.*, C.A. No. 05-608-MPT

Dear Magistrate Judge Thynge:

      I am writing to bring to the Court's attention the long-awaited decision by the U.S. Supreme Court, *KSR International Co. v. Teleflex, Inc., et al.*, 04-1350, slip op. (April 30, 2007). This decision directly impacts 35 U.S.C. § 103's obviousness bar to patentability, and eviscerates Crown's defenses to Rexam Beverage Can Company's Motion For Partial Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,935,826 And 6,848,875 ("Rexam's Brief," D.I. 210).

      In summary, the Supreme Court found that the Federal Circuit had been applying the test for obviousness too narrowly, and that the Federal Circuit had set the bar too high for a showing of a "teaching, suggestion, or motivation" to combine elements from the prior art. "We begin by rejecting the rigid approach of the Court of Appeals. Throughout this Court's engagement with the question of obviousness, our cases have set forth an expansive and flexible approach inconsistent with the way the Court of Appeals applied its TSM test here." *Id.* at 11.

> For over a half century, the Court has held that a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." This is a principle reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.

RLF1-3145727-1

*Id.* at 11-12 (quoting *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152 (1950)).

The Court suggested that the Federal Circuit had deviated from the Court's precedent on the issue of obviousness, reminding the Federal Circuit of the proper application of the obviousness test. "[W]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 13 (quoting *Sakraida v. AG Pro, Inc.*, 425 U.S. 273 (1976)).

Assuming *arguendo* that Crown's asserted patent claims are not anticipated by National Can Company's Dynamic III can end ("Dynamic III") and method of seaming it to beverage cans, or by Toyo Seikan's published Japanese Application Number 57-117323 ("'323 Japanese Publication"), each of the claims would be invalid due to obviousness under the Supreme Court's more flexible approach to applying the obviousness test. The industry standard can end included every element of the claimed can end from Claim 13 of the '826 Patent with the exception of the can end wall inclined at between 30-60 degrees. Crown has not argued otherwise. Crown's stated purpose for changing this angle was metal-savings and added strength. The '323 Japanese Publication described problems with can tops buckling and determined that the use of wall angles from 20 to 70 degrees (as opposed to the standard end's 12 to 14 degrees) could increase strength while decreasing metal usage. "[A]n object [of this invention] is <u>to provide a can top</u> for internally pressurized can <u>which can realize high pressure resistance</u> with a simple construction <u>and which can reduce the volume of raw material used.</u>" '323 Japanese Publication at 2.

The prior art industry standard end includes all of the features described in Crown's claimed invention, such as the peripheral cover hook, end wall, seaming panel, countersink/annular reinforcing bead, etc. Furthermore, the standard end is seamed with standard commercial seaming equipment (just like Crown's patented methods) with the use of a seaming chuck (just like Crown's patented methods). The standard seaming process consists of first and second seaming operations (just like Crown's patented methods) that bring first and second seaming rolls into contact with the peripheral cover hook of the can end (just like Crown's patented methods). The seaming chuck for use with the industry standard end has one frustoconical wall (just like Crown's patented methods) and a substantially vertical wall (just like Crown's patented methods). The upper wall of the industry standard end is reformed from its angled position to a roughly vertical angle of inclination (just like Crown's patented methods). As stated in Rexam's brief, the only difference between Crown's patented methods and the industry standard seaming method is the angle of the can end wall and the corresponding angles of the parts that engage the can end. The '323 Japanese Publication explicitly provides the preferred angles ("20 to 70 degrees") and the motivation to use such angles. The reference also compares the illustrated end to a "conventional beverage can" top that is the same as the conventional can end described in Crown's patents.

RLF1-3145727-1

The Honorable Mary Pat Thynge
May 1, 2007
Page 3

Crown has relied exclusively on the argument that the '323 Japanese Publication discloses only a can end after seaming. Crown's argument is demonstrably false. As explained in Rexam's summary judgment briefs, the '323 Japanese Publication discloses a can end that is "to be rolled and connected" that has a can end wall inclined at between 20 and 70 degrees. (D.I. 210 at 21-25, 31-35). However, even assuming, *arguendo*, that the '323 Japanese Publication only described a can end after seaming, in light of the *KSR v. Teleflex* decision, it would still render Crown's patented can end and methods obvious to a person of ordinary skill in the art. *Id.* As the Supreme Court stated, "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR International Co. v. Teleflex, Inc., et al.*, 04-1350, slip op. at 17 (April 30, 2007). Conventional seaming occurred according to basic beverage can seaming principles, namely the use of the steps described above. A person of ordinary skill in the art would clearly understand the relationship between the angle of the seaming chuck and the angle of the can end wall. Crown's entire argument relies on a complete lack of creativity, instinct and background of persons of ordinary skill in the art. The Supreme Court has definitively rejected such a rigid approach. "[W]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *Id.* at 12. Also, "when a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill in the art can implement a predictable variation, § 103 likely bars its patentability." *Id.* at 13.

The Court further elaborated on its more flexible approach to the obviousness analysis:

> The obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents. The diversity of inventive pursuits and of modern technology counsels against limiting the analysis in this way. In many fields it may be that there is little discussion of obvious techniques or combinations, and it often may be the case that market demand, rather than scientific literature, will drive design trends. Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility.

*Id.* at 15. The Court also warned of the temptation to treat every different combination of elements as patentable:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of

RLF1-3145727-1

> ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*Id.* at 17.

Crown's asserted patent claims cover subject matter that was well within the realm of knowledge and creativity of a person of ordinary skill in the art and should therefore be found invalid due to obviousness.

I have attached the Supreme Court case for the Court's convenience. If Your Honor believes that supplementation of the invalidity briefs would be appropriate in light of the Supreme Court's landmark decision, Rexam would be happy to oblige.

Respectfully,

Anne Shea Gaza
(#4093)

ASG:csi
Enclosure

cc: Barry M. Klayman, Esquire (via hand delivery and electronic mail)
    Dale M. Heist, Esquire (via electronic mail)
    Lynn A. Malinoski, Esquire (via electronic mail)
    Chad E. Ziegler, Esquire (via electronic mail)
    George P. McAndrews, Esquire (via electronic mail)
    Steven J. Hampton, Esquire (via electronic mail)
    Gerald C. Willis, Esquire (via electronic mail)
    Paul W. McAndrews, Esquire (via electronic mail)
    Frederick L. Cottrell, III, Esquire

RLF1-3145727-1