# EXHIBIT G

# EXHIBIT G1

**EXHIBIT G1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CROWN PACKAGING TECHNOLOGY, INC. AND CROWN CORK & SEAL USA, INC.,**<br><br>PLAINTIFFS,<br><br>V.<br><br>**REXAM BEVERAGE CAN CO.,**<br><br>DEFENDANT. | **CIVIL ACTION NO. 05-608 (MPT)** |

**CROWN'S PROPOSED JURY INSTRUCTIONS**

TABLE OF CONTENTS – FINAL INSTRUCTIONS

1. GENERAL INSTRUCTIONS ............................................................................ 5

   1.1 INTRODUCTION.................................................................................... 5

   1.2 JURORS' DUTIES.................................................................................. 6

   1.3 BURDENS OF PROOF ......................................................................... 7

   1.4 EVIDENCE .......................................................................................... 8

   I.5 CONSIDERATION OF EVIDENCE ..................................................... 9

   1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE............................... 10

   1.7 DEPOSITION TESTIMONY ................................................................ 11

   1.8 CREDIBILITY OF WITNESSES ......................................................... 12

   1.9 NUMBER OF WITNESSES ................................................................. 13

   1.10 EXPERT WITNESSES ....................................................................... 14

   1.11 DEMONSTRATIVE EXHIBITS ........................................................ 15

2. THE PARTIES........................................................................................ 16

3. THE PARTIES' CONTENTIONS ......................................................... 17

4. THE PATENT LAWS ............................................................................ 18

5. THE CLAIMS OF THE PATENTS IN SUIT ........................................ 19

   5.1. CONSTRUCTION OF THE CLAIMS............................................... 20

   5.2. INDEPENDENT AND DEPENDENT CLAIMS ................................ 21

   5.3. "COMPRISING" CLAIMS................................................................ 22\\

   5.4 LIMITATIONS OF THE CLAIMS AT ISSUE ................................... 23

6. INFRINGEMENT ................................................................................. 27

   6.1. PATENT INFRINGEMENT -- GENERALLY .................................. 27

   6.2. DIRECT INFRINGEMENT ............................................................. 29

   6.6. INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE
      PRESENT ....................................................................................... 30

6.7. DETERMINATION OF INFRINGEMENT ............................................................ 31

6.8. WILLFUL INFRINGEMENT ....................................................................... 32

7. VALIDITY .......................................................................................... 34

7.1. VALIDITY IN GENERAL ........................................................................ 34

7.2. PRESUMPTION OF VALIDITY ................................................................... 35

7.3. PRIOR ART .................................................................................... 36

    7.3.1. CROWN'S PRIOR ART TO REXAM'S
          PATENTS ............................................................................. 38

    7.3.2. CROWN'S CONTESTED PRIOR ART - ......................................................... 39

7.4. ANTICIPATION/LACK OF NOVELTY .............................................................. 42

7.5. OBVIOUSNESS .................................................................................. 44

    7.5.1. THE SCOPE AND CONTENT OF THE PRIOR
          ART .................................................................................. 47

    7.5.2. DIFFERENCES BETWEEN THE INVENTION
          OF THE CLAIMS AND THE PRIOR ART
          AND THE MOTIVATION TO COMBINE ....................................................... 48

    7.5.3. LEVEL OF ORDINARY SKILL .............................................................. 50

    7.5.4. OBJECTIVE INDICATIONS CONCERNING
          OBVIOUSNESS .......................................................................... 51

8. DAMAGES ........................................................................................... 53

8.1. NOTICE REQUIREMENT FOR PATENTS ............................................................ 54

8.2. DAMAGES--REASONABLE ROYALTY ............................................................... 56

8.3. WHAT IS A REASONABLE ROYALTY? ............................................................. 57

9. DELIBERATIONS AND VERDICT ....................................................................... 60

9.1 INTRODUCTION ................................................................................. 60

9.2 UNANIMOUS VERDICT ........................................................................... 61

9.3 DUTY TO DELIBERATE .......................................................................... 63

**9.4 COURT HAS NO OPINION ................................................................................. 64**

# 1. GENERAL INSTRUCTIONS

## 1.1 INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence

. And last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return. Please listen carefully to everything that I say.

<u>Authority</u>:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.2 JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you heard and saw in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if Rexam has proven , by a preponderance of the evidence, if Crown has infringed Rexam's 242, 728, 230, or 385 patents. I will refer to these patents as the patents in suit. You must likewise decide if Crown has proved by clear and convincing evidence that Rexam's patents in suit are invalid.

It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel towards one side or the other influence your decision in any way.

Authority:
     *Inline v Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.3 BURDENS OF PROOF

Plaintiffs have the burden to prove their claim of patent infringement and their claim of damages by a preponderance of the evidence. That means Rexam must produce evidence, that when considered in light of all the facts, leads you to believe that what Rexam claims is more likely true than not. To put it differently, if you were to put Rexam's and Crown's evidence on the opposite sides of the scale, the evidence supporting Rexam's claims against Crown would have to make the scales tip somewhat on Rexam's side in order for Rexam to prevail on those claims.

Crown is urging that Rexam's patents are invalid. A patent, however, is presumed to be valid. Thus, Crown must prove that Rexam's patents are not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the fact is highly probable.

Finally, keep in mind that proof beyond a reasonable doubt does not play any part in this case, and you should, therefore, not consider it at all in your deliberations.

Authority:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.4 EVIDENCE

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time, it may be the duty of the attorneys to make objections to the evidence that should not be presented at this trial under the Rules of Evidence. It is my duty as a judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by objection or by any reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Make your decisions about the trial based only on the evidence as I have defined it here, and nothing else.

Authority:
 *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

8

## I.5 CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your every day experience with people and events. Give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to lead to that conclusion.

<u>Authority</u>:
> *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.6 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like testimony of an eyewitness, which if you believe it, directly proves a fact. if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

Authority:
  *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.7 DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or by the playing of videotape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in Court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence which may be used to prove particular facts.

Authority:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.8 CREDIBILITY OF WITNESSES

In determining the weight given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some time or another, the witness said or did something that was different from the testimony he gave at trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you should consider whether it was simply an innocent lapse of memory or an intentional falsehood, or that may depend upon whether it concerns an important fact or an unimportant detail.

During the examination of a witness, you may have heard discussions about "impeachment." Impeachment of a witness, whether a fact witness or an expert witness, occurs when his or her testimony is contradicted by other evidence and can be considered when judging the credibility of that witness.

Authority:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.9 NUMBER OF WITNESSES

One more point about witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decision based only on the number of witnesses who testified. What is more important is how believable the witnesses are and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

Authority:
   *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.10 EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has specialized training or experience in that technical field - called an expert witness -- is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon them.


Authority:
     *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.11 DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of exhibits, such as charts, and animations were offered to help illustrate the testimony of various witnesses. These illustrated exhibits called demonstrative exhibits have not been admitted and are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibit that is the evidence in this case.

Authority:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 2. THE PARTIES

Rexam has sued Crown for infringement of Rexam's patents. Rexam's patents
are the 385, 242, 230, and 728 patents.

### 3. THE PARTIES' CONTENTIONS

Rexam contends that Crown is infringing a number of Rexam's patents. Rexam contends that Crown is directly infringing Rexam's 385 and 242 patents by its making, using, selling, and offering for sale certain types of its can bodies. Rexam also contends that Crown is infringing Rexam's 230 and 728 patents by its making, using, selling, and offering for sale certain types of its can ends.

Rexam contends that it is entitled to damages caused by Crown's alleged infringement.

Crown denies that it is infringing, and contends that each of Rexam's patents is invalid for a number of reasons.

I will explain to you the meaning of the parties' respective contentions of invalidity in a moment, but first I will explain the asserted claims of the parties' respective patents and the meaning of certain claim terms in dispute.

## 4. THE PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

## 5. THE CLAIMS OF THE PATENTS IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products or processes for making or using a product.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

## 5.1. CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused product or process infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

## 5.2. INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

<u>Authority</u>

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989).

## 5.3. "COMPRISING" CLAIMS

The beginning, or preamble, portion of a claim can use the word "comprising." In this context, "comprising" means "including" or "containing." A product claim that uses the word "comprising" or "comprises" is not limited to products that have only the elements recited in the claim, but also covers products that have additional elements. Likewise, a process claim that uses the term "comprising" or "comprises" can cover processes that include more steps than what is listed by the claim.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Vehicular Techs. Corp v. Tital Wheel Int'l, Inc*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795,811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372,1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991).

## 5.4 LIMITATIONS OF THE CLAIMS AT ISSUE

It is the Court's duty under the law to define what the words of the patent claims mean. This is a legal determination which I have made. I will now instruct you on the meaning of certain claim terms. You must accept the meaning that I give you for each claim term and use those meanings to make your decision whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copies of the patents that you have been given as I discuss the claims at issue here. I will give you a list of the asserted claims as part of the verdict form when I conclude my instructions

I will now tell you the meanings of the following words and groups of words from the patent claims.


Terms in Rexam's 230 Patent:

**"hinge segment"** The segment of metal between the first end and the second end of the primary score that stays attached to the central panel of the can end under normal opening conditions.

This limitation can be found in claims 1 and 13

**"passing through"** Penetrating into.

This limitation can be found in claim 13.

"passing from the frangible panel into said **adjacent area of the central panel**" Portion of the central panel near the hinge segment.

This limitation can be found in claim 1.

23

**"tail portion"** The end portion of the second score (anti-fracture score).

This limitation can be found in claims 1 and 13.

**"transecting"** Cutting across.

This limitation can be found in claim 1.


Terms in Rexam's 728 Patent:

**"hinge segment"** The segment of metal between the first end and the second end of the primary score that stays attached to the central panel of the can end under normal opening conditions.

This limitation can be found in claim 1 and dependent claim 7.

**"hinge line"** A line between the first end and the second end of the primary score.

This limitation can be found in claim 7.

**"passes through"** Penetrating into.

This limitation can be found in claim 7.

**"direct fracture of metal of said hinge segment in a direction away from said second end of the score"** The second score is near the second end of the primary score and near the hinge segment to provide a path for a fracture of the hinge segment along the second score.

This limitation can be found in claim 1 and dependent claim 7.

Terms in Rexam's 385 Patent:

**"substantial radial alignment with said radial inward support"** At or almost absolute radial alignment with said radial inward support.

This limitation can be found in claim 17.

**"radially inward support"** A device imparting a force directed against the outside of the container and radially inward toward the longitudinal axis.

This limitation can be found in claim 17.

**"moving said reforming roller radially"** Moving the reforming roller from a radially inward position to a radially outward position with respect to the longitudinal axis.

This limitation can be found in claim 17.

**"reforming roller rotating along said longitudinal wall and about an arcuate path"** Reforming roller revolving around its own axis and rolling along the longitudinal wall on a curved path adjacent to the wall.

This limitation can be found in claim 17.

**"reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path"** Reforming roller revolving around its own axis and rolling along the longitudinal wall on a circular path adjacent to the wall.

This limitation can be found in claim 11.

**"affects the angle"** Changes the inclination or shape.

This limitation can be found in claim 17.

Terms in Rexam's 242 Patent:

**"radially inward support"**  A device imparting a force directed against the outside of the container and radially inward toward the longitudinal axis.

This limitation can be found in claim 12.

**"moving said reforming roller radially"**  Moving the reforming roller from a radially inward position to a radially outward position with respect to the longitudinal axis.

This limitation can be found in claim 11.

**"affects the angle"**  Changes the inclination or shape.

This limitation can be found in claims 11 and 17.

**"negative angle"**  Slope that generally tends to move radially outwards as it moves axially upwards.

This limitation can be found in claim 17.

<u>Authority</u>

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm. adapted from The Federal Circuit Bar Association Model Patent Jury Instructions § 7.1; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91 (1996); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); Judge Thynge's Memorandum Order of May 17, 2007

# 6. INFRINGEMENT

## 6.1. PATENT INFRINGEMENT -- GENERALLY

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells, offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement."

In addition to stopping infringement by a direct infringer, a patent owner also has the right to stop those who are known as "indirect infringers."

There are two types of indirect infringers. First, there are those who encourage or induce others to directly infringe a patent. This is called "inducing infringement". Second, there are those who contribute to the infringement of others by, for example, supplying them with components used in the patented invention. I will explain to you in a moment the precise requirements for finding that someone has induced or contributed to infringement by another person.

Rexam alleges that Crown has infringed claims 11,12, and 17 of the 242 patent, and claim 17 of the 385 patent, which relate to the making of can end bodies. Rexam also alleges that Crown has infringed claims 2, 5, and 13 of the 230 patent and claim 7 of the 728 patent related to making can ends. The patentee must prove infringement and inducement or contributory infringement by a preponderance of the evidence.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare each of the patent claims, as I have defined them, to the accused product or process, and determine whether or not there is

infringement. You should not compare the competitor's product or process with any specific example in the patent or with the patentee's product or process. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. §§ 271-281); *Payless Shoesource, Inc. v. Reebok Int'l Ltd*, 998 F.2d 985, 990 (Fed. Cir. 1993); *Atlantic Thermoplastics Co. v. Faytex Corp*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985).

## 6.2. DIRECT INFRINGEMENT

As I have just explained, you must decide whether or not the patentee has proved by a preponderance of the evidence that the competitor has made, used, sold, or offered for sale a product or process covered by any of the claims at issue in this case. Whether or not the competitor knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent and even if he or she does not even know of the patent.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*, 520 U.S. 17, 36 (1997); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

## 6.6. INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT

In order to infringe a patent claim, a product must include every limitation of the claim. If the competitor's product omits even a single limitation recited in a claim, then you must find that the competitor has not infringed that claim. You must consider each claim of each patent separately. As I have explained, a dependent claim includes all the limitations of the claim it references plus the additional listed limitations. Thus, if you find that an independent claim is not infringed, any claims dependent on it are also not infringed. But if you find that an independent claim is infringed, you must still decide whether the dependent claim requirements are also met.

<u>Authority</u>

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1309 (Fed. Cir. 2002); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*).

## 6.7. DETERMINATION OF INFRINGEMENT

Taking each claim of each patent separately, if you find that the patentee has proved by a preponderance of the evidence that each limitation of a product claim is present in the competitor's accused product then you must find that the competitor's product infringes that claim.

If you find that an independent claim has been infringed, you must separately determine whether the dependent claim has been infringed. In the case of dependant claims, you must find that the competitor's product contains each limitation of the dependant claim and each of the limitations of the independent claim to which it refers.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Jeneric/Pentron, Inc v Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

## 6.8. WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it, that Crown directly or indirectly infringed at least one claim of Rexam's patents, you must then decide whether or not that infringement was willful. The fact that you may have determined that infringement has occurred does not mean that the infringement was willful. Willfulness requires you to determine whether the infringer's actions before suit was filed were objectively reckless with regard to the infringed patents.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which the patentee may be entitled, if you find infringement. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages for infringing acts. It is my job to decide whether or not to award increased damages to the patentee should you find willful infringement.

To establish willful infringement, the patentee must prove three things by clear and convincing evidence. First, the patentee must prove that the infringer was aware of the patent or patents at issue. Second, the patentee must prove that the infringer's actions before this suit was filed constituted infringement of the patent or patents, and that the infringer took those actions despite an objectively high likelihood that they constituted infringement of the patent or patents. As this relates to Rexam's claim that Crown has willfully infringed its patents, Rexam must prove that such actions by Crown took place before this suit was filed. The infringer's subjective state of mind is not relevant to this objective inquiry.

32

Finally, the patentee must prove that the infringer knew or should have known that its actions taken before the suit was filed created an objectively high risk of infringement. The infringer's state of mind is relevant to this last inquiry. If you find that the patentee has not proved any of these three elements, then you must find that any infringement of the patent or patents was not willful.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *In re Seagate*, 497 F.3d 1360, 1370-71 (Fed. Cir. 2007). *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm., Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minn. Mining & Mfg. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992); *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

## 7. VALIDITY

### 7.1. VALIDITY IN GENERAL

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in a patent must have been new, useful and non-obvious. A patent cannot remove the public's right to use what was known or would have been obvious when the invention was made. The terms "new", "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

An issued patent is accorded a presumption of validity; therefore anyone challenging the patent must prove a patent claim is invalid under the heightened standard clear and convincing evidence.

I will now explain to you each of the grounds for invalidity at issue in this case.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

## 7.2. PRESUMPTION OF VALIDITY

Patents are entitled to a presumption of validity. The presumption of validity, like all legal presumptions, is a procedural device. It imposes on the party against whom it is directed, in this case the competitor accused of infringement, the burden of going forward with evidence to rebut or meet the presumption. The presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence.

When no prior art other than that which was considered by the United States Patent and Trademark Office ("PTO") is relied upon by the challenger, the competitor has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job. When a competitor, however, produces prior art or other evidence not considered by a PTO Examiner, there is no reason to defer to the PTO so far as its effect on validity is concerned. Prior art that was not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 282; F. R. Evid. 301; *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001); *Avia Group Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

### 7.3. PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

To prove that a patent claim is invalid, a competitor must first prove by clear and convincing evidence that the items upon which it relies to invalidate a patent claim qualify as prior art. In order to do so, the competitor must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws.

These categories include:

1) anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention;

2) anything that was in public use or on sale in the United States more than one year before the application for the patent was filed;

3) anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed;

4) anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention; or

5) anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.

Authority

       Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

### 7.3.1. CROWN'S PRIOR ART TO REXAM'S PATENTS

Crown is relying on various items of prior art with respect to Rexam's patents.

With respect to the 728 and 230 patents, Crown is relying four items of prior art. Rexam and Crown agree that these four items are prior art, and there is no dispute that these items came before the invention claimed in the 728 and 230 patents. These four items are:

1) Stolle End;

2) Rexam 206 Open Score End;

3) Neiner Patent; and

4) Published Japanese 467 Reference.

With respect to the 242 and 385 patents, Crown is relying on various items of prior art. Rexam and Crown agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the 242 and 285 patent:

1) Claydon Patent;

2) French Application No. 2 858 332;

3) U.S. Patent No. 3,898,828;

3) U.S. Patent No. 5,105,973; and

4) U.S. Patent No. 4,513,595.

Crown is also relying on one item that Rexam does not agree is prior art. This is the Ball Base Reforming Method. Crown must prove by clear and convincing evidence that this item is prior art.

## 7.3.2. CROWN'S CONTESTED PRIOR ART -

## PRIORITY OF INVENTION

Under U.S. law, a person is entitled to a patent unless, before that person's invention, the claimed invention was made in this country by another who did not abandon, suppress or conceal it.

An invention is considered to have been "made" when it is first reduced to practice. An invention may be constructively reduced to practice when a patent application is filed. An invention may be actually reduced to practice when the invention is made and shown to work for its intended purpose. Thus, if another person actually or constructively reduces an invention to practice before the inventor on the patent actually or constructively reduces his own invention to practice, then the other person will be the first inventor and his prior invention will be prior art to the patent claims.

In this case Crown alleges that the Ball Base Reforming method predates Rexam's invention and is therefore prior art. Crown must prove that the Ball Base Reforming Method qualifies as prior art by clear and convincing evidence. To prove that the Ball Base Reforming method qualifies as prior art, Crown must prove that Ball reduced its invention to practice before Rexam did so.

To establish the date of actual reduction to practice of the Ball Base Reforming Method, Crown must show two things:

1. that Ball had determined the method would work for its intended purpose at the time of reduction to practice; and

2. that there is evidence sufficient to corroborate the testimony of Ball's inventors regarding these events.

If these criteria are met, the Ball Base Reforming Method qualifies as prior art to the claims of Rexam's patent if Crown can also show that Ball did not abandon, suppress or conceal its invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

For the purposes of priority, you are to assume that Rexam constructively reduced its invention to practice in July 1991 when it filed its patent application in the United States. However, Rexam claims that it first constructively reduced its invention to practice, not in July 1991 when it filed its application in the United States, but rather in January 1990, when it filed its international PCT application. In order to get the benefit of the earlier January 1990 filing date, Rexam must prove that it is entitled to benefit of the date of the PCT application by clear and convincing evidence.

In order for the date of the PCT application to be considered the date of constructive reduction to practice of Rexam's invention, the earlier PCT application must contain an adequate written description of the later-claimed subject matter found in Rexam's patents. In order for Rexam to receive the benefit of the January 1990 date of the PCT application as the date of constructive reduction to practice of the invention claimed in its July 1991 U.S. application, Rexam must show that the claimed invention was described in the PCT application in such detail that one skilled in the art can clearly conclude that Rexam invented the later claimed invention as of the date of the PCT application. Rexam cannot meet this burden by showing that the invention would have been obvious to one of ordinary skill in the art looking at the PCT application.

Specifically, to show that the PCT application inherently discloses Rexam's claimed bottom reforming method, Rexam must show that the earlier PCT application necessarily requires that the roller move radially into engagement with the wall of the can during reforming.

If Rexam can establish by clear and convincing evidence that it is entitled to the earlier PCT application date, you must compare this date with the date shown to be the actual reduction to practice of the Ball Bottom Reforming Method to determine which was first. If Rexam cannot establish this earlier date, and Crown has established that the Ball invention was reduced to practice before the filing of Rexam's U.S. patent application, you must find that the Ball invention has priority of invention and is prior art.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 157, 1169 (Fed. Cir. 2006); *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE.*, 264 F.3d 1111, 119 (Fed. Cir. 2001); *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362-63, 1369-1370 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Genentech Inc. v. Chiron Corp.*, 220 F.3d 1345, 1351 (Fed. Cir. 2000); *Bruning v. Hirose*, 161 F.3d 681, 684-85 (Fed. Cir. 1998); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998); *Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt v. Boone*, 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Checkpoint Sys. v. United States Int'l Trade Comm'n*, 54 F.3d 756, 761-63 (Fed. Cir. 1995); *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115-16 (Fed. Cir. 1994); *Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987); *Bey v. Kollonitsch*, 806 F.2d 1024, 1026 (Fed. Cir. 1986); *Dunlop Holdings Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 34 (7th Cir. 1975); *Wiesner v. Weigert*, 666 F.2d 582, 588-89 (C.C.P.A. 1981); *Palmer v. Dudzik*, 481 F.2d 1377, 1385-87 (C.C.P.A. 1973).

## 7.4. ANTICIPATION/LACK OF NOVELTY

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If it is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not combine two pieces of prior art to find anticipation.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed that it teaches a skilled person how to make and use the invention without undue experimentation. That means that a skilled person reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

To determine the scope of a piece of prior art you must consider not only what is disclosed or taught in the text, but also in the drawings. A drawing can be anticipating if a person of ordinary skill in the art would understand that the drawing discloses the claimed invention. To anticipate, a reference does not have to be in the same words as the claim, but each requirement of the claim must be in the reference.

42

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. A limitation is inherently found in a prior art reference only if that result is a natural result of what was expressly disclosed in the prior art. Just because a result or property may have been possible given the circumstances found in the prior art reference is not enough to show that the feature is inherently found in the prior art reference; the limitation must be the natural result of the disclosure.

Remember I told you that "comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that he claims are open-ended. As such, the claim is not limited to only what is in the claims. Based on this explanation, if you find that a prior art method includes all of the components in any of plaintiff's patent claims, the fact that it may also include an additional method step is irrelevant. The presence of additional method steps in the prior method does not mean that the method does not anticipate.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1319-20 (Fed. Cir. 2006); *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383 (Fed. Cir. 2005); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1376 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed.Cir.1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986).

## 7.5. OBVIOUSNESS

A patent is invalid for obviousness if the differences between the subject matter of the patent and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person of ordinary skill in the art. Unlike anticipation, obviousness may be shown by considering more than one item of prior art.

Obviousness must be proven by clear and convincing evidence by the patent challenger. In looking at whether an invention would have been obvious, you must look back at the state of the art at the time the invention was made. You cannot use hindsight or look at the invention knowing what one of ordinary skill in the art knows today, you must place yourself in the shoes of a person of ordinary skill in the field of technology of the patent at the time the invention was made. Also, the question is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of nonobviousness?

In order to combine references to show an invention would have been obvious, you must find an apparent reason to combine the references in such a manner as to make the invention, coupled with a reasonable expectation of success. This apparent reason to combine may be found in the teaching of the prior art, a suggestion in the prior art, a motivation in the prior art, and may also be found in the common knowledge or be a product of common sense. Demands known in the marketplace or in the design community are also relevant in deciding whether there was an apparent reason to combine the references to make the claimed invention.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in a way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

45

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious. You must make this determination separately for each of the claims.

I will now describe these specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex, Inc.*, No. 04-1350, slip op. at *12-16, 22-23 (Apr. 30, 2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, No. 06-1402, slip op. at *6-11 (Fed. Cir. May 9, 2007); *Dystar Textilfarben GMBH v. C.H. Patrick*, 464 F.3d 1356, 1367 (Fed. Cir. 2006); *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1291 (Fed. Cir. 2006); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed. Cir. 2003); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362 (Fed. Cir. 2003); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877 (Fed. Cir. 1998); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

## 7.5.1. THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should

determine what is disclosed in the prior art relied on by the patent challenger.  You must

decide whether this prior art was reasonably relevant to the particular problem the

inventor faced in making the invention covered by the patent claims.  Such relevant prior

art includes prior art in the field of the invention, and also prior art from other fields that

a person of ordinary skill would look to when attempting to solve the problem.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third
Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm;
*Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234
F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000);
*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir.
2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d
1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863
(Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991).

## 7.5.2. DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS
## AND THE PRIOR ART AND THE MOTIVATION TO COMBINE

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole, and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you must also consider whether a person having ordinary skill in the field at the time would have been motivated to select and combine the prior art references in order to make the claimed invention. In answering this question you must consider the entire body of knowledge and technical literature in the field, including that which might lead one skilled in the art away from, or toward, the invention. But, even though you may find that every feature of the patented invention can be found in the prior art, this, by itself, does not prove that the patented invention would have been obvious to one having ordinary skill in the field at the time. You must also find that there was an apparent reason for one of ordinary skill in the art to combine the prior art in order to make the patented invention.

However, there does not need to be an express or explicit teaching in the prior art that directs one of ordinary skill to combine the references. The reason to combine the features from the prior art to make the patented invention may be found in the teachings of the prior art references themselves, in the nature of the problem to be solved, or in the knowledge of persons having ordinary skill in the field at the time. However, it is improper to look to the patented invention as a blueprint for assembling the prior art and

you must avoid using hindsight in your determination of whether the prior art obviates

the patented invention.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third
Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm;
Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *KSR Int'l
Co. v. Teleflex, Inc.*, No. 04-1350, slip op. at *12-16. 22-23 (Apr. 30, 2007); *Graham v.
John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
No. 06-1402, slip op. at *6-11 (Fed. Cir. May 9, 2007); *Dystar Textilfarben GMBH v.
C.H. Patrick*, 464 F.3d 1356, 1367 (Fed. Cir. 2006); *Alza Corp. v. Mylan Labs., Inc.*, 464
F.3d 1286, 1291 (Fed. Cir. 2006); *Princeton Biochem., Inc. v. Beckman Coulter, Inc.*, 411
F.3d 1332, 1337-39 (Fed. Cir. 2005); *Group One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d
1297, 1305-06 (Fed. Cir. 2005); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir.
2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45
(Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed.
Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Winner Int'l Royalty
Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000); *Smiths Indus. Med. Sys., Inc. v.
Vital Signs, Inc.*, 183 F.3d 1347, 1355 (Fed. Cir. 1999); *In re Dembiczak*, 175 F.3d 994,
998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998); *ATD
Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp.
v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Pro-Mold v. Great Lake
Plastics*, 75 F.3d 1568, 1573 (Fed. Cir. 1996); *Nyko Mfg. Co. v. Nu-Star*, 950 F.2d 714,
717 (Fed. Cir. 1991).

### 7.5.3. LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help in solving the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, the teaching and disclosures of prior art references such as patents and publications, and the sophistication of the technology in the field.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Calif. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); In re Dance, 160 F.3d 1339, 1343 (Fed. Cir. 1998); Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 718-19 (Fed. Cir. 1991).

### 7.5.4. OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS

You also must consider what are referred to as objective indications of nonobviousness.

Some of these indications are:

1. Commercial success of products covered by the patent claims or made by a process covered by the patent claims;

2. Whether there was a long felt but unresolved need in the art that was satisfied by the invention;

3. Failed attempts by others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. Whether or not others have taken licenses to use the invention;

8. Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9. Whether the patentee proceeded contrary to accepted wisdom of prior art, in other words did the prior art teach away from making the patented invention.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Graham v. John Deere Co*, 383 U.S. 1, 27-28 (1966); *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1376-77 (Fed. Cir. 2005); *Iron Grip Barbell Co., Inc. v. York Barbell Co., Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Lindeman Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460-61 (Fed. Cir. 1984).

## 8. DAMAGES

I have now instructed you as to the law governing the claims of patent infringement and defenses of invalidity and inequitable conduct in this case. If you find that a valid claim of an asserted patent is infringed, then you must determine what damages the infringer must pay to the patentee for that infringement. If, on the other hand, you find that there has been no infringement of any valid claim, then the patentee is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that the patentee is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that a valid claim has been infringed.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

## 8.1. NOTICE REQUIREMENT FOR PATENTS

## WITH PRODUCT CLAIMS

patentee must show that it gave notice of its patent rights to recover damages for infringement that occurred before the complaint was filed.

A patentee can give notice in two ways. The first way is to give notice to the public in general. A patentee can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patented invention. It is important to note that the patentee's licensees who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number. This type of notice is effective, from the date the patentee and it licensees began to mark substantially all of their products that use the patented invention with the patent number. If the patentee and its licensees did not mark substantially all of their products that use the patented invention with the patent number, then the patentee did not satisfy this form of notice.

A second way the patentee can provide notice of its patent is to tell the competitor that the competitor was infringing the patent and to identify competitor's product that was infringing. This type of notice is effective from the time it is given. If you find that the patentee did not do either of these before notifying the competitor of its infringement claims in this lawsuit, then the patentee can only recover damages for infringement that occurred after it asserted infringement in this lawsuit.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

## 8.2. DAMAGES--REASONABLE ROYALTY

If infringement is shown in this case, the patentee is entitled to damages that are no less than a reasonable royalty for the use made of the invention by the competitor. In this case, the only damages that are being sought are what is called a "reasonable royalty." The patentee has the burden of establishing the amount of its damages. You should award only those damages that the patentee establishes that it more likely than not is entitled to; you should not award damages that are remote or speculative. While the patentee is not required to prove damages with mathematical precision, it must prove them with reasonable certainty. When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Dow Chem. Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 870 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336 (Fed. Cir. 2001); *Grain Processing Corp. v. Am. Maize-Prod. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Rite-Hite Corp. v. Kelley Co., 56* F.3d 1538, *1545* (Fed. Cir. 1995) *(en banc).*

### 8.3. WHAT IS A REASONABLE ROYALTY?

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the amount of royalty payment that a patent holder and the competitor would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the competitor would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and competitor were willing to enter into an agreement. Your role is to determine what that agreement would have been. The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

Although you are to decide what a reasonable royalty would be based on circumstances as of the time just before the competitor began using the patented invention, you may assume that the competitor and patentee knew at that time such things as what level of sales and profits the competitor would later make using the invention.

I will list for you a number of factors you may consider in deciding a reasonable royalty. This is not a list of every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether the patent owner had established a royalty for the patented invention, for example by granting other licenses at that royalty. You should remember, however,

that an established royalty may have been set before the patent was held valid and

infringed in court and, therefore, may not be as much as it would be if both the patent

owner and the party wanting to use the patent know it is valid.  You should also consider

if the royalty given to others is not appropriate for this case because of a special

relationship between the patentee and that party.

      2.  Royalties paid for other patents comparable to the patentee's patent.

      3.  Whether or not the patentee had a policy of licensing or not licensing the

patent.

      4.  Whether or not the patentee and infringer are in business competition.

      5.  Whether being able to use the patented invention helps in making sales of

other products or services.

      6.  The profitability of the product made using the patent, and whether or not

it is commercially successful or popular.

      7.  The advantages and benefits of using the patented invention.

      8.  The extent of the competitor's use of the patented invention and the value of

that use to the competitor.

      9.  Whether or not there is a portion of the profit or selling price that is a

customary royalty in can making business for use of patented inventions.

      10.  The portion of the profit that is due to the patented invention, as compared

to the portion of the profit due to other factors.

      11.  Expert opinions as to what would be a reasonable royalty.

12. Any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. The final factor establishes the framework which you should use in determining a reasonable royalty, *i.e.*, the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Golight, Inc., v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

## 9. DELIBERATIONS AND VERDICT

### 9.1 INTRODUCTION

That concludes the part of my instructions explaining the rules for considering the testimony, and the evidence. Now, let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any questions or messages, you must write them on a piece of paper, sign them, and give them to the jury officer. The officer will then give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages should be sent to me through your foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-5, or 8-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

Authority:
  *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 9.2 UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -judges of the facts. In the end, your vote must be exactly that – your own vote. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. Counsel may discuss with you in closing arguments how to complete the verdict form. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the form of the verdict is intended to suggest or convey in any way or manner what

1 think your verdict should be. What the verdict shall be is your sole and exclusive duty and responsibility.


Authority:
     *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 9.3 DUTY TO DELIBERATE

You are now free to talk about the case in the jury room. In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

Authority:
    *Inline v Earthlink*, 02-272 (MPT), Jury Instructions.

## 9.4 COURT HAS NO OPINION

Let me finish by repeating something that I said to you earlier. Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict was meant to convey what I think your verdict should be or to influence your decision in any way. You must decide the case yourselves based solely on the evidence presented.

Authority:
    *Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.