# EXHIBIT G2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CROWN PACKAGING TECHNOLOGY, INC. AND CROWN CORK & SEAL USA, INC.,**<br><br>**PLAINTIFFS,**<br><br>**V.**<br><br>**REXAM BEVERAGE CAN CO.,**<br><br>**DEFENDANT.** | **CIVIL ACTION NO. 05-608 (MPT)** |

## REXAM'S PROPOSED JURY INSTRUCTIONS

## TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS ................................................................................1

    1.1    INTRODUCTION...............................................................................1

    1.2    JURORS' DUTIES.............................................................................2

    1.3    BURDENS OF PROOF .....................................................................3

    1.4    EVIDENCE ........................................................................................4

    1.5    CONSIDERATION OF EVIDENCE.................................................5

    1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE............................6

    1.7    DEPOSITION TESTIMONY .............................................................7

    1.8    CREDIBILITY OF WITNESSES .....................................................8

    1.9    NUMBER OF WITNESSES .............................................................9

    1.10    EXPERT WITNESSES ...................................................................10

    1.11    DEMONSTRATIVE EXHIBITS ....................................................11

2.    THE PARTIES AND THEIR CONTENTIONS.........................................12

    2.1    THE PARTIES.................................................................................12

    2.2    THE PARTIES' CONTENTIONS...................................................13

    2.3    SUMMARY OF PATENT ISSUES.................................................14

3.    PATENT CLAIMS.............................................................................................15

    3.1    PATENT CLAIMS - GENERALLY................................................15

    3.2    CONSTRUCTION OF CLAIMS ....................................................16

    3.3    PATENT    CLAIMS    -    INDEPENDENT    AND
          DEPENDENT.....................................................................................17

    3.4    OPEN-ENDED OR "COMPRISING" CLAIMS............................18

    3.5    LIMITATIONS OF THE CLAIMS AT ISSUE...............................19

4.    PATENT INFRINGEMENT ...........................................................................23

    4.1    DIRECT INFRINGEMENT ...........................................................23

    4.2    LITERAL INFRINGEMENT..........................................................25

    4.3    DETERMINATION OF INFRINGEMENT ...................................27

    4.4    WILLFUL INFRINGEMENT.........................................................28

5.    VALIDITY ..........................................................................................................30

| | | |
|---|---|---|
| 5.1 | VALIDITY IN GENERAL | 30 |
| 5.2 | PRESUMPTION OF VALIDITY | 31 |
| 5.3 | PRIOR ART | 32 |
| | 5.3.1. CROWN'S PRIOR ART TO REXAM'S PATENTS | 34 |
| 5.4 | ANTICIPATION – GENERALLY | 35 |
| 5.4.1. | ANTICIPATION – PRIOR INVENTION | 36 |
| 5.5 | OBVIOUSNESS | 39 |
| | 5.5.1. THE SCOPE AND CONTENT OF THE PRIOR ART | 42 |
| | 5.5.2. DIFFERENCES OVER THE PRIOR ART | 43 |
| | 5.5.3. LEVEL OF ORDINARY SKILL | 45 |
| | 5.5.4. OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS) | 46 |
| 6. | DAMAGES | 48 |
| 6.1 | COMPENSATORY DAMAGES IN GENERAL | 48 |
| 6.2 | NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS | 50 |
| 6.3 | REASONABLE CERTAINTY | 52 |
| 6.4 | REASONABLE ROYALTY AS A MEASURE OF DAMAGES | 53 |
| 6.5 | FACTORS FOR DETERMINING A REASONABLE ROYALTY | 54 |
| 7. | DELIBERATIONS AND VERDICT | 56 |
| 7.1 | INTRODUCTION | 56 |
| 7.2 | UNANIMOUS VERDICT | 57 |
| 7.3 | DUTY TO DELIBERATE | 59 |
| 7.4 | COURT HAS NO OPINION | 60 |

**FINAL INSTRUCTIONS**

**1.    GENERAL INSTRUCTIONS**

**1.1    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return. Please listen carefully to everything that I say.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.2    JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  I will instruct you about the burdens of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 1.2

2

### 1.3    BURDENS OF PROOF

This is a civil case in which plaintiffs, Crown Packaging Technology, Inc. and Crown, Cork & Seal U.S.A., Inc. charged defendant, Rexam Beverage Can Co. with patent infringement.  Prior to this trial, I decided that Rexam does not infringe any of Crown's patents.  However, Rexam is also charging Crown with patent infringement. That issue will be for you the jury to decide.

The patent holder has the burden of proving patent infringement by what is called a preponderance of the evidence.  That means that the patent holder has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the patent holder asserts is more likely true than not.  For example, in assessing infringement, if you were to put the patent holder's evidence and the alleged infringer's evidence on opposite sides of a scale, the evidence supporting the patent holder's assertions would have to make the scales tip somewhat to their side.

In this case, Crown asserts that Rexam's patent claims are invalid.  Accordingly, Crown has the burden of proving, by clear and convincing evidence, that an asserted claim is invalid.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Finally, keep in mind that proof beyond a reasonable doubt does not play any part in this case, and you should, therefore, not consider it at all in your deliberations.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 1.3

### 1.4    EVIDENCE

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time, it may be the duty of the attorneys to make objections to the evidence that should not be presented at this trial under the Rules of Evidence. It is my duty as a judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by objection or by any reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Make your decisions about the trial based only on the evidence as I have defined it here, and nothing else.


**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your every day experience with people and events. Give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.6    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.7    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or by the playing of videotape excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in Court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence which may be used to prove particular facts.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.8    CREDIBILITY OF WITNESSES

In determining the weight given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some time or another, the witness said or did something that was different from the testimony he gave at trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you should consider whether it was simply an innocent lapse of memory or an intentional falsehood. That may depend upon whether it concerns an important fact or an unimportant detail.

During the examination of a witness, you may have heard discussions about "impeachment." Impeachment of a witness, whether a fact witness or an expert witness, occurs when his or her testimony is contradicted by other evidence and can be considered when judging the credibility of that witness.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

8

### 1.9    NUMBER OF WITNESSES

One more point about witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decision based only on the number of witnesses who testified. What is more important is how believable the witnesses were and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 1.10   EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has specialized training or experience in that technical field— called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon them.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 1.11    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of exhibits, such as charts, and animations were offered to help illustrate the testimony of various witnesses. These illustrated exhibits called demonstrative exhibits have not been admitted and are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibit that is the evidence in this case.

**Authority**:

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

Crown Packaging Technology, Inc. and Crown Cork & Seal USA Inc., collectively "Crown," brought this patent action and are, thus, the plaintiffs. Prior to this trial, I decided that Crown's patents are invalid and that Rexam does not infringe Crown's patents.

> Rexam Beverage Can Co. is a competitor of Crown's and is the defendant. Rexam is also a counterclaim plaintiff, meaning it has counter-sued Crown for infringement of Rexam's own patents. Rexam's patents are the 385, 242, 230, and 728 patents.

## 2.2    THE PARTIES' CONTENTIONS

Rexam has counterclaimed for patent infringement, contending that Crown has and is infringing a number of Rexam's patents.  Rexam contends that Crown is directly infringing Rexam's 385, and 242 patents by its making, using, selling, and offering for sale certain types of its can bodies.  Rexam also contends that Crown has and  is infringing Rexam's  230 and 728 patents by making, using, selling, and offering for sale certain types of its can ends.    Rexam contends that it is entitled to damages caused by Crown's alleged infringement.

I have already decided that Crown has and is infringing claims 11 and 12 of Rexam's '242 patent.  Crown denies that it is infringing or has infringed other claims of Rexam's patents, and contends that each of Rexam's patents is invalid for a number of reasons.

**2.3    SUMMARY OF PATENT ISSUES**

In this case, you must decide several things according to the instructions that I will give you.

As to infringement:

> Whether Rexam has proven, by a preponderance of the evidence, that Crown's 202 LOE CSD and beer can ends infringe claims 2, 5, and 13 of the '230 Patent.

> Whether Rexam has proven, by a preponderance of the evidence, that Crown's 202 LOE CSD and beer can ends infringe claim 7 of the '728 Patent.

> Whether Rexam has proven, by a preponderance of the evidence, that Crown's method of manufacturing can bodies in Fort Bend, TX infringes claim 17 of the '385 Patent.

> Whether Rexam has proven, by a preponderance of the evidence, that Crown's method of manufacturing can bodies in Fort Bend, TX infringes claim 17 of the '242 Patent.

As to validity:

> Whether Crown has proven, by clear and convincing evidence, that claims 2, 5, or 13 of the '230 Patent are invalid.

> Whether Crown has proven, by clear and convincing evidence, that claim 7 of the '728 Patent is invalid.

> Whether Crown has proven, by clear and convincing evidence, that claim 17 of the '385 Patent is invalid.

> Whether Crown has proven, by clear and convincing evidence, that claims 11, 12, and 17 of the '242 Patent are invalid.

Do not make any decisions based on the number of patents or claims either party has asserted. What is important is whether Rexam has proven that the accused Crown products or methods infringe any of the asserted claims and whether Crown has proven that any of the asserted claims are invalid. Concentrate on that, not on the number of patents or claims.

3.    **PATENT CLAIMS**

    **3.1    PATENT CLAIMS - GENERALLY**

    As you may remember from the video shown to you at the beginning of the trial,

the claims of a patent are the numbered sentences at the end of the patent.  The claims

describe the invention made by the inventor and describe what the patent owner owns and

what the patent owner may

prevent others from doing.  Claims may describe products or processes for making or

using a product.

    Claims are usually divided into parts, called "limitations."  For example, a claim

that covers the invention of a table may recite the tabletop, four legs and the glue that

secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation

of the claim.

    Only the claims of the patent can be infringed.  A patent also includes drawings

and a discussion of examples of the invention.  Neither the drawings of a patent or other

portions of a patent can be infringed.  You should not compare the accused product or

method with any specific example set out in the patents in suit; rather, you should only

compare the accused product or method with the claims of the patents in suit when

making your decision regarding infringement.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and
Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

**3.2    CONSTRUCTION OF THE CLAIMS**

In deciding whether or not an accused product or process infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

### 3.3    PATENT CLAIMS - INDEPENDENT AND DEPENDENT

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations of the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989).

### 3.4    OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, portion of a claim can use the word "comprising." In this context, "comprising" means "including" or "containing." A product claim that uses the word "comprising" or "comprises" is not limited to products that have only the elements recited in the claim, but also covers products that have additional elements. Likewise, a process claim that uses the term "comprising" or "comprises" can cover processes that include more steps than what is listed by the claim.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Vehicular Techs. Corp. v. Tital Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795,811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372,1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991).

### 3.5    LIMITATIONS OF THE CLAIMS AT ISSUE

It is the Court's duty under the law to define what the words of the patent claims mean.  This is a legal determination which I have made. I will now instruct you on the meaning of certain claim terms.  As I said earlier, you must accept the meaning that I give you for each claim term and use those meanings to make your decision whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copies of the patents that you have been given as I discuss the claims at issue here.  I will give you a list of the asserted claims as part of the verdict form when I conclude my instructions

I will now tell you the meanings of the following words and groups of words from the patent claims.

Terms in Rexam's '230 Patent:

Claims 1 and 13 of Rexam's '230 patent require a **"hinge segment."**  I have construed that term to mean "The segment of metal between the first end and the second end of the primary score that stays attached to the central panel of the can end under normal opening conditions."

Claim 13 of the '230 patent contains the term **"passing through."**  I have construed that term to mean "Penetrating into."

Claim 1 of the '230 patent contains the term "passing from the frangible panel into said **adjacent area of the central panel.**"  I have construed that to be at the "Portion of the central panel near the hinge segment."

**Claims 1 and 13 of the '230 patent require a "tail portion."** I have construed that term to mean "The end portion of the second score (anti-fracture score)."

Claim 1 of the '230 patent contains the term **"transecting."** I have construed that to mean "Cutting across."

Terms in Rexam's '728 Patent:

Claims 1 and 7 of Rexam's '728 patent require a **"hinge segment."** I have construed that term to mean "The segment of metal between the first end and the second end of the primary score that stays attached to the central panel of the can end under normal opening conditions."

Claim 7 of Rexam's '728 patent requires a **"hinge line."** I have construed that to mean "A line between the first end and the second end of the primary score."

Claim 7 of the '728 patent contains the term **"passes through."** I have construed that term to mean "Penetrating into."

Claims 1 and 7 of the '728 patent contains the term **"direct fracture of metal of said hinge segment in a direction away from said second end of the score."** I have construed that term to mean "The second score is near the second end of the primary score and near the hinge segment to provide a path for a fracture of the hinge segment along the second score."

Terms in Rexam's '385 Patent:

Claim 17 of Rexam's '385 patent requires **"substantial radial alignment with said radial inward support."** I have construed that term to mean "At or almost absolute radial alignment with said radial inward support."

20

Claim 17 of Rexam's '385 patent also requires **"radially inward support."** I have construed that term to mean "A device imparting a force directed against the outside of the container and radially inward toward the longitudinal axis."

Claim 17 of Rexam's '385 patent requires **"moving said reforming roller radially."** I have construed that to mean "Moving the reforming roller from a radially inward position to a radially outward position with respect to the longitudinal axis."

Claim 17 of the '385 patent also requires a **"reforming roller rotating along said longitudinal wall and about an arcuate path."** I have construed that to mean "Reforming roller revolving around its own axis and rolling along the longitudinal wall on a curved path adjacent to the wall."

Claim 17 of the '385 patent requires a **"reforming roller rotating along said longitudinal wall and circumferentially about an arcuate path."** I have construed that to mean a "Reforming roller revolving around its own axis and rolling along the longitudinal wall on a circular path adjacent to the wall."

Claim 17 of the '385 patent contains the term **"affects the angle."** I have construed that to mean "Changes the inclination or shape."

Terms in Rexam's '242 Patent:

Claim 12 of Rexam's '242 patent requires **"radially inward support."** I have construed that to mean "A device imparting a force directed against the outside of the container and radially inward toward the longitudinal axis."

Claim 11 of the '242 patent also requires **"moving said reforming roller radially."** I have construed that to mean "Moving the reforming roller from a radially inward position to a radially outward position with respect to the longitudinal axis."

Claims 11 and 17 of the '242 patent contain the term **"affects the angle."** I have construed that term to mean "Changes the inclination or shape."

Claim 17 of the '242 patent requires a **"negative angle."** I have construed that to mean a "Slope that generally tends to move radially outwards as it moves axially upwards."

**Authority:**

Adapted from The Federal Circuit Bar Association Model Patent Jury Instructions § 7.1; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91 (1996); *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); Judge Thynge's Memorandum Order of May 17, 2007.

4.    **PATENT INFRINGEMENT**

   **4.1    DIRECT INFRINGEMENT**

   A patent owner may enforce his right to stop others from making, using or selling the patented invention by filing a lawsuit for patent infringement.  Here, Rexam alleges that Crown makes, uses, or sells an invention covered by the patents in suit.

   Claims are typically divided into parts called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue are each a separate limitation of the claim.

   Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court and I have just told you what the key terms of the asserted claims mean as a matter of law.  In the second step, the interpreted claim must be compared to the accused product or method to determine whether every element of the claim is found in the accused product or method.  The element-by-element comparison is your responsibility as the jury for this case.

   Keep in mind that actual knowledge of a patent or knowledge that you are infringing a patent is not necessary, nor is intent to infringe necessary.  In short, direct infringement can be established even if the company's representatives had a good faith belief that its actions were not infringing any patent and even if the company's representatives did not even know of the patent.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C.  §

271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

**4.2    LITERAL INFRINGEMENT**

For an accused infringer's product or method to literally infringe any one of the asserted patent claims, the subject matter of the patent claim must be found in the accused infringer's product or method.  In other words, a patent is literally infringed if the accused infringer's product or method includes each and every component in a patent claim.  If the accused infringer's product omits any single component or method step recited in the patent claim, the accused infringer does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

Therefore, in determining whether an accused product or method literally infringes any asserted claim, the following steps should be taken by you:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and

Second, you should compare the accused product or method, element by element, to each of the limitations of the asserted claim.

If you do not find each and every limitation of the asserted claim in the accused product or method, you may not return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim as to every accused product or method that is accused of infringing the claim.

In this case, Rexam contends that Crown LOE can ends literally infringe certain claims of Rexam's '230 and '728 patents and that Crown can bodies for which Crown has reformed the inner wall of the bottom stand ring literally infringe certain claims of the '385 and '242 patents.

Remember, the question is whether the accused infringer's product or method infringes any claim of a patent, and not whether the product or method is similar or even identical to a product made by the patent owner. Accordingly, you must be certain to compare the accused product or method with the claim it is alleged to infringe and not with any product or method made or used by the patent holder.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 3.8; *Lava Trading, Inc v Sonic Trading Mgmt*, 445 F.3d 1348, 1352 (Fed. Cir. 2006), *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985)

### 4.3    DETERMINATION OF INFRINGEMENT

Taking each claim of each patent separately, if you find that Rexam has proved by a preponderance of the evidence that each limitation of a product claim is present in Crown's accused product then you must find that Crown's product infringes that claim. Likewise, for process claims, if you find that Rexam has proved by a preponderance of the evidence that each step of the claim is present in Crown's process, you must find infringement of that claim.

If you find that an independent claim has been infringed, you must separately determine whether the dependent claim has been infringed.  In the case of dependent claims, you must find that Crown's product or process contains each limitation of the dependent claim and each of the limitations of the claim or claims to which the dependent claim refers.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; *Jeneric/Pentron, Inc  v  Dillon Co* , 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp  v  United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co  v  David Geoffrey & Assocs* , 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co   v   Frontier, Inc* , 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

### 4.4    WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it, that Crown infringed at least one claim of Rexam's patents, you must then decide whether or not that infringement was willful. The fact that you may have determined that infringement has occurred does not mean that the infringement was willful. Willfulness requires you to determine whether the infringer's actions before suit was filed were objectively reckless with regard to the infringed patents.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which the patentee may be entitled, if you find infringement. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages for infringing acts. It is my job to decide whether or not to award increased damages to the patentee should you find willful infringement.

To establish willful infringement, the patentee must prove by clear and convincing evidence 1) that Crown acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and 2) that this objectively-defined risk was either known or so obvious that it should have been known to Crown.

You should consider whether Crown copied the disclosures of the patent or whether Crown tried "design around" the patent in a manner that Crown believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Crown attempted to avoid infringement by designing around the patent claims is evidence that infringement was not willful. In

addition, evidence that Crown obtained and followed advice of competent counsel is evidence that infringement was not willful.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 2007 U.S. App. LEXIS 19768 (Aug. 20, 2007); *SRI Int'l, Inc. v. Advanced Tech Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Nat'l Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

## 5.    VALIDITY

### 5.1    VALIDITY IN GENERAL

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in a patent must have been new, useful and non-obvious.  A patent cannot remove the public's right to use what was known or would have been obvious when the invention was made.  The terms "new", "useful" and "non-obvious" have special meanings under the patent laws.  I will explain these terms to you.

The invention claimed in a patent must also be adequately described by the patent. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

An issued patent is accorded a presumption of validity; therefore anyone challenging the patent must prove a patent claim is invalid under the heightened standard clear and convincing evidence.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

### 5.2    PRESUMPTION OF VALIDITY

Patents are entitled to a presumption of validity. The presumption of validity, like all legal presumptions, is a procedural device. It imposes on the party against whom it is directed, in this case the accused infringer, the burden of producing evidence to rebut or meet the presumption. The presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence.

When no prior art other than that which was considered by the United States Patent and Trademark Office ("PTO") is relied upon by the challenger, the challenger has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job. When a challenger, however, produces prior art or other evidence not considered by a PTO Examiner, there is no reason to defer to the PTO so far as its effect on validity is concerned. Prior art that was not before the PTO may so clearly invalidate a patent that the burden is fully sustained merely by proving its existence and applying the proper law.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 282; F. R. Evid. 301; *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001); *Avia Group Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

### 5.3    PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before.  That which came before is referred to as the "prior art."

To prove that a patent claim is invalid, a  challenger must first prove by clear and convincing evidence that the items upon which it relies to invalidate a patent claim qualify as prior art.  In order to do so, the challenger must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws.

These categories include:

1)    anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention;

2)    anything that was in public use or on sale in the United States more than one year before the application for the patent was filed;

3)    anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed;

4)    anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention; or

5)    anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm.

### 5.3.1.  CROWN'S PRIOR ART TO REXAM'S PATENTS

Crown is relying on various items of prior art with respect to Rexam's patents.

With respect to the 728 and 230 patents, Crown is relying four  items of prior art. Rexam and Crown agree that these four items are prior art, and there is no dispute that these items came before the invention claimed in the 728 and 230 patents.  These four items are:

1) Stolle End;

2) Rexam 206 Open Score End;

3) U.S. Patent No. 6,405,889; and

4) Published Japanese Reference 142467.

With respect to the 242 and 385 patents, Crown is relying on various items of prior art.  Rexam and Crown agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the 242 and 385 patent:

1) U.S. Patent No. 4,885,924;

2) French Application No. 2 585 332;

3) U.S. Patent No. 3,898,828; and

4) U.S. Patent No. 4,513,595.

Crown is also relying on two items that Rexam does not agree are prior art.  These are the making of a machine and use of that machine by a company known as Ball Corporation to reform the bottom of a can, and Ball's U.S. Patent No. 5,105,973.  Crown must prove by clear and convincing evidence that this item is prior art.

### 5.4    ANTICIPATION – GENERALLY

A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection.  A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.   Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a person of ordinary skill in the art would understand that to be the case.

There are several categories of events, all defined by the patent laws, that can anticipate and invalidate a patent.  I will now instruct you as to the rules of law for each of these events and the prior art Crown relies upon to establish invalidity.

**Authority:**

Adapted from the Fed. Cir. Model Patent Jury Instructions § 10.8; American Intellectual Property Law Association Patent Model Jury Instructions ("AIPLA Model Instructions"), Anticipation No. 1; *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. V. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed. Cir. 1983)

### 5.4.1.  ANTICIPATION – PRIOR INVENTION

Crown contends that claims 11, 12, and 17 of the '242 Patent and claim 17 of the

'385 Patent were anticipated because the invention defined in those claims was invented

by another, in this case, Ball Corporation, before the patentees invented the subject matter

of the '242 and the '385 Patents.

A patent claim is invalid if the invention defined by the patent claims was

invented by another person in the United States before it was invented by the patentee

and that other person did not abandon, suppress, or conceal the invention.  To show

anticipation of the invention, Crown must show by clear and convincing evidence that

before Rexam's inventors invented the subject matter of the '242 and '385 claims, Ball

Corporation actually practiced a process that included all of the elements of claim 11, 12,

or 17 of the '242 Patent or all of the elements of claim 17 of the '385 Patent.  To establish

the date of actual reduction to practice of the Ball Base Reforming Method, Crown must

show three things:

1)      Ball's performance of a process that met all of the limitations of Rexam's
        claims by the alleged date of reduction to practice;

2)      that Ball had determined the method would work for its intended purpose
        at the time of reduction to practice by the alleged date of reduction to
        practice; and

3)      that there is evidence sufficient to corroborate the testimony of Ball's
        inventors regarding these events.

If these criteria are met, the Ball Base Reforming Method qualifies as prior art as

of the alleged date of reduction to practice as long as Crown can also show that Ball did

36

not abandon, suppress, or conceal its invention.    Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose.  The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

Rexam's inventors are presumed to have made the invention of the '242 and '385 patents on the date that they filed an application for a patent for that invention.  You are to presume that claims 11, 12, and 17 of the '242 Patent and claim 17 of the '385 Patent are entitled to the filing date in January 1990 when Rexam filed its international PCT application from which the '242 Patent and '385 Patent claim priority.  If Crown establishes by clear and convincing evidence that those claims are not entitled to the January 1990 PCT application date, you must compare the filing date of a later application from which the '242 Patent and the '385 Patent also claim priority, July 25, 1991, with the date shown to be the actual reduction to practice date of the Ball Bottom Reforming Method to determine which was first.  Only if you conclude that the Ball Bottom Reforming Method date is before the filing date to which claims 11, 12, and 17 of the '242 Patent and claim 17 of the '385 Patent are entitled, can the Ball Method be considered as prior art.  If, however, the Ball Method date is after Rexam's filing date, it cannot be considered as prior art to claims 11, 12, and 17 of the '242 Patent and claim 17 of the '385 Patent.  If the Ball method is not prior art, it cannot be used to invalidate the claims of the '385 and '242 Patents.

**Authority:**

Adapted from the AIPLA Model Instructions, Anticipation No. 7; Fed. Cir. Model Patent Jury Instructions 10.6.8; 35 U.S.C. § 102(g)(2); *Medichem, S.A  v  Rolabo, S.L.*, 437 F.3d

1157, 1169 (Fed. Cir. 2006); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1341-43 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77; *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1252-53, 1258-59 (Fed. Cir. 2004).

### 5.5    OBVIOUSNESS

A patent is invalid for obviousness if the differences between the subject matter of the patent and the prior art are such that the subject matter would have been obvious at the time the invention was made to a person of ordinary skill in the art.  Unlike anticipation, obviousness may be shown by considering more than one item of prior art.

Obviousness must be proven by clear and convincing evidence by the patent challenger.  In determining whether an invention would have been  obvious, you must look back at the state of the art at the time the invention was made. You cannot use hindsight or look at the invention knowing what one of ordinary skill in the art knows today, you must place yourself in the shoes of a person of ordinary skill in the field of technology of the patent at the time the invention was made.  Also, the question is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art.  Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you should not consider what is known today or what was learned from the teachings of the patent.  You should not use the patent as a road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of nonobviousness?

In order to combine references to show an invention would have been obvious, you must find an apparent reason to combine the references in such a manner as to make the invention, coupled with a reasonable expectation of success. This apparent reason to combine may be found in the teaching of the prior art, a suggestion in the prior art, a motivation in the prior art, and may also be found in the common knowledge or be a product of common sense. Demands known in the marketplace or in the design community are also relevant in deciding whether there was an apparent reason to combine the references to make the claimed invention

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in a way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious. You must make this determination separately for each of the claims.

I will now describe these specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex, Inc.*, No. 04-1350, slip op. at *12-16. 22-23 (Apr. 30, 2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, No. 06-1402, slip op. at *6-11 (Fed. Cir. May 9, 2007); *Dystar Textilfarben GMBH v. C.H. Patrick*, 464 F.3d 1356, 1367 (Fed. Cir. 2006); *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1291 (Fed. Cir. 2006); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed. Cir. 2003); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362 (Fed. Cir. 2003); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-68 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124-31 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877 (Fed. Cir. 1998); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1574-75 (Fed. Cir. 1986).

### 5.5.1.  THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Crown.  The scope and content of the prior art includes but is not limited to references from those areas a person with ordinary skill in the art would look to in achieving the goals described in the invention. The scope and content of the prior art is not limited to the specific subject matter of the challenged claim, you should take into consideration the inferences and creative steps that a person of ordinary skill in the art would employ.  In addition, the scope and content of the prior art includes the adaptation of an old idea or invention using newer technology that is commonly available and understood in the art.  A person of ordinary skill in the art knows of all such references and possesses an ordinary level of creativity in the art with which he would implement predictable variations on the prior art.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 4.8.1, Fed. Cir. Model Patent Jury Instructions § 10.9.1; *Graham v. John Deere Co*, 383 U.S. 1, 27-28 (1966); *KSR Int'l Co. v. Teleflex, Inc., et al*, 04-1350, slip op. 1, 14 (U.S. April 30, 2007); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc*, 2007 U.S. App. LEXIS 10912 at **13-14 (Fed. Cir. 2007)

### 5.5.2.  DIFFERENCES OVER THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation.  You must consider the claimed invention as a whole, and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you must also consider whether a person having ordinary skill in the field at the time would have been motivated to select and combine the prior art references in order to make the claimed invention.  In answering this question you must consider the entire body of knowledge and technical literature in the field, including that which might lead one skilled in the art away from, or toward, the invention.  But, even though you may find that every feature of the patented invention can be found in the prior art, this, by itself, does not prove that the patented invention would have been obvious to one having ordinary skill in the field at the time.  You must also find that there was an apparent reason for one of ordinary skill in the art to combine the prior art in order to make the patented invention.  However, there does not need to be an express or explicit teaching in the prior art that directs one of ordinary skill to combine the references.  For the prior art to render the invention of a claim obvious, it is not necessary that one of ordinary skill in the art, looking at the prior art, could predict with certainty that the invention of the claim would be successful.  Rather, it is sufficient that the prior art would have suggested to one of ordinary skill that the invention of the claim would have a reasonable likelihood of success.  Likewise, it is sufficient that the prior art could be combined with new, commonly available technology to establish obviousness.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 4.8.2; *KSR Int'l Co. v. Teleflex, Inc., et al.*, 04-1350, slip op. (U.S. April 30, 2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 2007 U.S. App. LEXIS 10912 at \*\*13-14 (Fed. Cir. 2007)

### 5.5.3.  LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help in solving the problem.

The testimony of engineers in the industry, inventors, etc. may not necessarily be included in this definition of one of ordinary skill in the art. For example, engineers in practice may not have a "legal" understanding of all of the prior art.

You are instructed that a person of ordinary skill in the art in this case is:

Someone with a mechanical engineering or technical degree and three to four years of experience working in the field of design and manufacturing of cans and can ends, or someone without a mechanical engineering degree with six to ten years of experience working in the field of design and manufacturing of cans and can ends.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 4.8.3, Fed. Cir. Model Patent Jury Instructions § 10.9.3; *KSR Int'l Co. v. Teleflex, Inc., et al.*, 04-1350, slip op. (U.S. April 30, 2007)

### 5.5.4.  OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)

You also must consider what are referred to as objective indications of nonobviousness.

Some of these indications are:

1.    Commercial success of products covered by the patent claims or made by a process covered by the patent claims;

2.    Whether there was a long felt but unresolved need in the art that was satisfied by the invention;

3.    Failed attempts by others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    Whether or not others have taken licenses to use the invention;

8.    Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9.    Whether the patentee proceeded contrary to accepted wisdom of prior art, in other words did the prior art teach away from making the patented invention.

These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims.  If the commercial success is the result of

something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.


**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1376-77 (Fed. Cir. 2005); *Iron Grip Barbell Co., Inc. v. York Barbell Co., Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667-68 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1129-31 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); *Lindeman Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1460-61 (Fed. Cir. 1984).

6.    **DAMAGES**

### 6.1    COMPENSATORY DAMAGES IN GENERAL

I have now instructed you as to the law governing the claims of patent infringement and defenses of invalidity and inequitable conduct in this case. If you find that Crown has infringed a valid claim of any of Rexam's patents, then you must determine what damages Crown must pay to Rexam for that infringement. If, on the other hand, you find that there has been no infringement of any valid claim, then Rexam is not entitled to any damages and you should not make any findings about damages.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether the accused infringer benefited from, realized profits from, or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate the patent owner for the infringement. Adequate compensation should return the patent owner to the position it would have occupied had there been no infringement. You must consider the amount of injury suffered by the patent holder without regard to the infringer's gains or losses from the infringement.

The fact that I am instructing you about damages does not mean that the patentee is or is not entitled to recover damages. I am expressing no opinion one way or the other.

These instructions are only to guide you in case you find that a valid claim has been infringed.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 6.1; 35 U.S.C. § 284; *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996)Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

## 6.2    NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS

For patents that contain product claims, a patentee must show that it gave notice of its patent rights to recover damages for infringement that occurred before the complaint was filed.    For all of Rexam's asserted product claims in this case, Rexam must show, by a preponderance of the evidence, that it gave notice if it wishes to obtain damages that arose before the filing of the complaint.

A patentee can give notice in two ways. The first way is to give notice to the public in general. A patentee can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patented invention. If it is not practical to mark the patented product itself, marking the product's packaging is sufficient to give notice. It is important to note that the patentee's licensees who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number. This type of notice is effective from the date the patentee and its licensees began to mark substantially all of their products that use the patented invention with the patent number. If the patentee and its licensees did not mark substantially all of their products that use the patented invention with the patent number, then the patentee did not satisfy this form of notice.

A second way the patentee can provide notice of its patent is to tell the competitor that the competitor was infringing the patent and to identify competitor's product that was infringing. This type of notice is effective from the time it is given. If you find that Rexam did not do either of these before notifying Crown of its infringement claims in

50

this lawsuit, then Rexam can only recover damages for infringement that occurred after it

asserted infringement in this lawsuit.


**Authority:**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and
Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. §
287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336
(Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998);
*Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Am. Med. Sys. v. Med.
Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822
F.2d 1062, 1066 (Fed. Cir. 1987); *Hanson v. Alpine Valley Ski Resorts*, 718 F.2d 1075
(Fed. Cir. 1983).

### 6.3    REASONABLE CERTAINTY

Once the fact of damages has been proven by a finding of infringement, you must determine the amount of damages. Under the patent law, the patent owner is entitled to all damages that can be proven with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to the patent owner. On the other hand, the patent owner is not entitled to speculative damages, that is, you should not award any amount for loss, which, although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of "reasonable certainty" on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against the infringer.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 6.3; *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1361-62 (Fed. Cir. 2005); *Ryco, Inc. v Ag-Bag Corp.*, 857 F.2d 1418, 1427 (Fed. Cir. 1988)

### 6.4    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

Rexam is asking for damages in the amount of a reasonable royalty.  A reasonably royalty in this case is the amount of money that would be agreed to in a hypothetical arms-length negotiation between Rexam and Crown, with both operating under the assumption that the negotiated patent is valid and is being infringed.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms-length negotiation that I just referred to would have been likely to have occurred.  This is typically just before liability for infringement would begin, which in this case would be the following time periods:

November 13, 1995 for the '385 and '242 Bottom Reforming Patents

July 21, 2001 for the '230 patent and for the '728 patent

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of Crown, and who was willing to take a license, would have known that Rexam's patent was valid, was enforceable and was infringed.  You should also assume that both parties knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Crown's use of the patented inventions, including the opinion testimony of experts.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 6.10; 35 U.S.C. § 284; *Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006)

**6.5     FACTORS FOR DETERMINING A REASONABLE ROYALTY**

In determining such a reasonable royalty, some of the factors that should be considered are:

1)     The rates paid by the licensee for the use of other patents comparable to the patent in suit;

2)     The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

3)     The licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

4)     The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

5)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

6)     The duration of the patent and the term of the licenses;

7)     The established profitability of the product made under the patent, its commercial success, and its current popularity;

8)      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

9)      The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

10)     The extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

11)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

12)     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

13)     The opinion testimony of qualified experts; and

14)     Any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Authority:**

Adapted from United States District Court for the District of Delaware Uniform Jury Instructions for Patent Cases § 6.11; *Georgia-Pacific Corp v U S. Plywood-Champion Papers*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)

7.    **DELIBERATIONS AND VERDICT**

### 7.1    INTRODUCTION

That concludes the part of my instructions explaining the rules for considering the testimony, and the evidence. Now, let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any questions or messages, you must write them on a piece of paper, sign them, and give them to the jury officer. The officer will then give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages should be sent to me through your foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 3-3, or 4-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

**Authority:**

*Inline v Earthlink*, 02-272 (MPT), Jury Instructions.

### 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges—judges of the facts. In the end, your vote must be exactly that—your own vote. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. Counsel may discuss with you in closing arguments how to complete the verdict form. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the form of the verdict is intended to suggest or convey in any way or manner what I think your verdict should be. What the verdict shall be is your sole and exclusive duty and responsibility.

**<u>Authority:</u>**

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

### 7.3    DUTY TO DELIBERATE

You are now free to talk about the case in the jury room. In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

**Authority:**

*Inline v Earthlink*, 02-272 (MPT), Jury Instructions.

### 7.4    COURT HAS NO OPINION

Let me finish by repeating something that I said to you earlier. Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict was meant to convey what I think your verdict should be or to influence your decision in any way. You must decide the case yourselves based solely on the evidence presented.

**Authority:**

*Inline v. Earthlink*, 02-272 (MPT), Jury Instructions.

# EXHIBIT G3

EXHIBIT G3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CROWN PACKAGING TECHNOLOGY, INC. AND CROWN CORK & SEAL USA, INC.,**<br><br>    **PLAINTIFFS,**<br><br>    **V.**<br><br>**REXAM BEVERAGE CAN CO.,**<br><br>    **DEFENDANT.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 05-608 (MPT)** |

## CROWN'S OBJECTIONS TO REXAM'S PROPOSED
## PRE-DELIBERATION JURY INSTRUCTIONS

Crown objects to the following Rexam-proposed pre-deliberation jury instructions:

**Rexam Proposed Instruction 2.2**:  Crown objects to this instruction on the ground that it is unfairly prejudicial to inform the jury of the Court's previous finding that Crown infringes claims 11 and 12 of the 242 patent.  Crown notes that this issue is the subject of Crown's motion *in limine* number 2.

**Rexam Proposed Instruction 5.4.1**:  Crown objects to instructing the jury that it must "presume that claims 11, 12, and 17 of the '242 Patent and claim 17 of the '385 Patent are entitled to the filing date in January 1990 when Rexam filed its international PCT application from which the '242 and '385 patents claim priority.  Crown must establish by clear and convincing evidence that those claims are not entitled to the January 1990 filing date[.]"  Crown contends that the cited patents are not presumed to have the January 1990 filing date of the PCT application.  *Pennwalt Corp. v. Akzona, Inc.*, 570 F. Supp. 1097, 1102 (D. Del. 1983) (Latchum,

C.J.), *aff'd* 740 F.2d 1574 (Fed. Cir. 1984).  Crown also contends that it is Rexam's burden to prove entitlement to that filing date.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 24175, **23-24 (D.N.H. Mar. 30, 2007).  This is an issue that the jury should be deciding.  In fact, the Court in denying Crown's summary judgment noted that this was a disputed issue of fact for trial.

Crown reserves the right to assert further objections to any of Rexam's proposed pre-deliberation instructions.